RECEIVED

2007 AUG 16  A 11: 38

___ HACKETT, CLK
DISTRICT COURT
MIDDLE DISTRICT ALA

IN THE DISTRICT COURT OF THE UNITED STATES FOR THE
MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | |
|---|---|
| **Janet May, John Dow** and **William Boyd,** | |
| Plaintiffs, | CIVIL ACTION NO. 2.07-CV-738-MHT |
| v. | |
| **City of Montgomery, Alabama,** a municipal corporation; **Bobby N. Bright,** in his official capacity as Mayor of the City of Montgomery | |
| Defendants. | |

# Complaint
## and Motion for Preliminary Injunction

1. This is an action seeking preliminary and permanent injunctions against the enforcement of Ordinance 42-2007 of the City of Montgomery. **This ordinance calls a city election for the City of Montgomery for 28 August 2007 in violation of federal law and must be enjoined immediately to prevent irreparable harm to the plaintiffs and others.**

2. This action arises under Sections 2 and 5 of the Voting Rights Act, 42 U.S.C. §§ 1973 and 1973c. This Court has jurisdiction to hear this matter under 28 U.S.C. §§ 1331 and 1343. This Court also has supplemental jurisdiction over a related claim arising under state law under 28 U.S.C. § 1367.

1

**Parties**

3.  Janet May is a black citizen of the United States and the State of Alabama, a resident of the City of Montgomery, the incumbent City Councilor on the Montgomery City Council for District 3, and a registered voter in Montgomery County.

4.  John Dow is a black citizen of the United States and the State of Alabama, a resident and registered voter in the City of Montgomery, and a candidate for mayor.

5.  William Boyd is a black citizen of the United States and the State of Alabama, a resident and registered voter in the City of Montgomery, and a candidate for mayor.

6.  The City of Montgomery is a municipal corporation established under State law.  It is located in the Middle District of Alabama.

7.  Bobby N. Bright is the incumbent Mayor of the City of Montgomery.  He is sued in his official capacity only.

**History of Discrimination in Elections**

8.  The City of Montgomery and the State Legislature have tried to minimize the electoral effectiveness of ASU students and other black voters since the adoption of the Mayor-Council form of government in Montgomery.

9.  In 1973, the Alabama Legislature enacted a special local law cited as 1973 Ala. Acts 618, and commonly known as Act 618.  A copy is attached as Exhibit A.  It provided for the city of Montgomery to disband the city commission form of government, made up of three city commissioners elected city-wide.  In its place, Montgomery's government would be composed of a mayor (elected city-wide) and a nine-member council (elected by

2

districts). The voters approved the mayor-council plan in a referendum. Although Montgomery's population was over forty percent black, only two of the nine districts in the original proposal were majority black, in part because the ASU campus and surrounding community were split between two council districts at South Jackson Street, which runs through the center of ASU's campus. Litigation styled *Varner v. Robinson* was initiated. A settlement was reached and new lines were drawn. A new plan, which met constitutional muster, was implemented. In the 1975 municipal election, five white and four black members were elected to the council, and a white man, Jim Robinson, was elected mayor.

      10. Jim Robinson resigned as mayor during the first term of the new council. Councilman Emory Folmar was elected mayor to complete Robinson's term. The council and the new mayor were split along racial lines from the outset. Mayor Folmar immediately set about to dilute black voting strength. First, he refused to present to the council an annexation petition on behalf of the majority-black Southlawn community. He waited until two majority-white areas requested annexation, and proposed an annexation plan he termed the "Greater Montgomery Act." This had the net result of diluting the black population within the city limits. Some black city councilmen opposed the Greater Montgomery Act on the ground that it could dilute the number of black city council districts from 4 to 3. This plan was held up in the Legislature by black legislators. The Greater Montgomery Act was allowed to proceed through the Legislature after the mayor and white

3

councilmen agreed to support the reapportionment plan that ensured the highest number of black districts possible.

11. Despite this signed agreement, following this annexation and the 1980 census, Mayor Folmar set about again to dilute the voting strength of Montgomery's black community. He attempted to reduce the black majority in District 3 in an attempt to defeat the re-election of Councilman Joe L. Reed, a prominent black leader. His transparent attempt was met with litigation. In *Buskey v. Oliver*, 565 F.Supp. 1473 (M.D. Ala. 1983), this Court found that Mayor Folmar's proposed district lines were a racially-discriminatory attempt to dilute black voter strength and ordered new lines drawn. In its opinion, the Court also laid out in greater detail the history of racial discrimination in Montgomery and the racial motivation in the mayor's plan.

12. The mayor's next attempt to suppress black voters, especially in District 3, is strikingly similar to Ordinance 42-2007. Mayor Folmar attempted to piggy-back on a general law setting dates for other municipal elections in Alabama by moving the dates of Montgomery's elections from its statutory date in October to July. By moving the date to July, when most students were out of town, Mayor Folmar would have diluted the black vote substantially. However, the Alabama Supreme Court, in *Siegelman v. Folmar*, 432 So.2d 1246 (Ala. 1983), held that Act 618 was not repealed by the general law cited by the mayor, and ordered that Montgomery's municipal elections remain on the dates provided by Act 618, rather than Ala. Code §§ 11-46-5 and -21.

4

13. Mayor Folmar engineered a reapportionment of the city council districts in 1998. He did so despite the fact that the federal census would be undertaken in 2000, shortly after the 1999 election. The mayor recognized that there had been significant outflow of white voters from council District 7 and significant inflow of black voters into that district. He succeeded in having the city council change the district lines to preserve the majority white racial makeup of district seven before the 1999 city election.

### Facts

14. Alabama State University (ASU), a predominately and historically black university, is located within the city limits of Montgomery and within Montgomery City Council District 3. A significant number of students from ASU vote in city elections. There is an active voter registration organization of the campus of ASU which traditionally attempts to register, and usually succeeds in registering, students who have moved to the ASU campus from other counties or states.

15. Because ASU students must report to campus during the latter half of August, in the past there has been sufficient time to carry out voter registration campaigns before the registration deadline for city elections (10 days before the election, Ala. Code 17-4-120 (1995)).[1] In addition, voters in municipal elections must have "resided in the county 30 days and in the ward 30 days prior to the election." Ala. Code § 11-46-38 (1992).

---

[1] This Complaint cites the 1995 replacement volume of Title 17 of the Alabama Code of 1975 and 2006 Cumulative Supplement because the comprehensive renumbering (and amendment) of the Election Code by Act 2006-570 has not been precleared by the Justice Department.

16. The Mayor and City Council of Montgomery have adopted Ordinance 42-2007 (attached as Exhibit B) to change the time of its city council elections to be held during 2007 to 28 August.

17. Mayor Bright has given notice, in accordance with Ordinance 42-2007, that a city election will be held on 28 August 2007.

18. Earlier this year, the mayor and the city council were advised by attorneys that the voting calendar provided by Act 618 did not comply with the Uniformed and Overseas Citizens Absentee Voting Act (UOCAVA) and/or a recent amendment to the absentee balloting law of Alabama.[2] Under Act 618, a candidate is required to receive a majority vote to take a municipal office. If no candidate receives a majority in the general election, a run-off is held three weeks later between the top two vote-getters in the general election. The city was advised that, in order to be in compliance with UOCAVA, there must be a six-week interval between the general election and runoff, so that ballots can be printed, shipped overseas, and returned.

19. Because no federal candidate is on the Montgomery municipal election ballot, UOCAVA does not apply.

20. To fix the supposed UOCAVA problem, the city council on 6 February 2007 adopted Ordinance 13-2007, which moved the date of the election to earlier in the year. However, the mayor vetoed the ordinance and the council upheld his veto at its 20 February 2007 meeting.

---

[2] The recent act is an amendment to § 17-10-3 (1995, 2006 Supp.). Act 2006-570 amended this provision and renumbered it as § 17-11-3. Act 2006-570 has not been precleared.

21. Interested citizens and the mayor's office worked on a plan to ensure our citizens overseas had the right to participate fully in city elections without depriving thousands of black citizens of the right to vote at all. The mayor and council endorsed the plan, and asked Montgomery's legislative delegation to amend Act 618 to allow this to occur. The plan was incorporated into House Bill 866 (HB 866) (attached as Exhibit C). It easily passed the State House of Representatives, but was blocked in the Alabama Senate by Senator Larry Dixon. Under the Alabama Senate's rules, one senator can effectively kill local legislation. As the number of days remaining in the session began to wane, media coverage of this issue intensified. The comments of Senator Dixon, who is white, reported by the Montgomery Advertiser, confirm the clear motive behind the changes in the election calendar and his purpose for stopping them. "This is about Joe Reed having a larger block of votes to impact the city election ... I'm not going to help." These remarks were reported on 1 June 2007, and a copy of the article is attached as Exhibit D. The term "bloc (or block) vote" has long been a code word referring to black voters. Because Dr. Reed is a black political leader, Sen. Dixon's comment has but one meaning – he wanted to eliminate a large group of black voters from participating in the upcoming election. He used the Senate rules to kill the bill, which would have provided overseas voters the opportunity to participate in the 2007 municipal election while ensuring that voters enrolled at ASU could exercise the franchise.

22. In response to the death of HB 866, the Montgomery City Council adopted Ordinance 42-2007, to move the dates for the 2007 municipal

election from October to August. While the election will take place five days after ASU's students return, it will nonetheless disenfranchise them. Alabama law requires that voter registration must close ten days before a municipal election. It further requires a prospective municipal elector to be a resident of the city for 30 days before the election. Thus, a person must reside in a city for at least 20 days prior to the voter registration deadline in order to vote. This has not been an issue under Act 618, as the residence deadline has been in late August or early September, after ASU students have returned for the fall semester. However, under Ordinance 42-2007, the residency deadline ends on July 29. Thus, all ASU students who have not previously registered to vote, virtually all of whom are black, will be disenfranchised. This is a dramatic change from previous years and eliminates a potential voting block of thousands of young black citizens.

23. Attached as Exhibit E is the affidavit of Alfred Smith stating that 2,809 of the entering or transferring students have non-Montgomery addresses.

24. In short, Ordinance 42-2007 will disenfranchise nearly 3,000 black voters who had been eligible to register and vote before its enactment.

25. The table attached as Exhibit F shows the difference in election schedule caused by Ordinance 42-2007.

26. The election for the city council seat in District 3, in which ASU is located, was decided by 255 votes in 2003. Thus, Ordinance 42-2007 could vastly change the landscape of the election. The plaintiffs intend to campaign for candidates supported by the black community and believe that

8

those candidates will be well-received among the potential voters who enroll in ASU because of the historical patterns of racially polarized voting in the City of Montgomery. The remedy sought by the plaintiffs will redress the problem asserted in this Complaint.

### Preclearance Efforts and City's Knowledge of Violation

27. The jurisdiction making a submission under Section 5 has the burden of proof to convince the Department of Justice or the U.S. District Court for the District of Columbia that the proposed change "neither has the purpose nor will have the effect of denying or abridging the right to vote on account of race," in the words of Section 5 of the Voting Rights Act.

28. The City of Montgomery has not obtained preclearance of Ordinance 42-2007.

29. The City of Montgomery submitted Ordinance 42-2007 to the U.S. Justice Department for preclearance under Section 5 of the Voting Rights Act.

30. On 14 June 2007, the Attorney General sent a letter that he had no objection to the Ordinance, but noted that the Attorney General "reserve[s] the right to reexamine this submission if additional information that would otherwise require an objection comes to our attention during the remainder of the sixty-day review period."

31. In a second letter, dated 23 July 2007 (attached as Exhibit G), from the Justice Department to the City's attorney Larry Menefee noted the information that Dr. Joe L. Reed had supplied to the Attorney General and made two important statements:

> Accordingly, the Attorney General is reexamining the
> submitted changes. Furthermore, in view of the
> additional information we have received, we find the
> information contained in the submission is insufficient to
> enable us to determine the proposed changes do not have
> the purpose and will not have the effect of denying or
> abridging the right to vote on account of race, color, or
> membership in a language minority group, as required
> under Section 5.

The second sentence in the quotation above means that the Attorney General

has effectively withdrawn the preclearance of Ordinance 42-2007.

    32.  The plaintiffs have twice informed the Mayor that the holding

of the city election on 28 August is illegal under federal law.  The first

warning was on or about 3 August.  The second warning was on or about 10

August and consisted of a letter (dated 7 August 2007) from John Tanner,

Chief of the Voting Section, Civil Rights Division, U.S. Department of Justice,

to Joe L. Reed, stating, "As set forth in our July 23, 2007 letter, the changes

[to the election schedule] have not been finally precleared and remain legally

unenforceable until they are precleared."  A copy of the Tanner letter is

attached as Exhibit H.

### Claims

    33.  The City of Montgomery is violating Section 5 of the Voting

Rights Act, 42 U.S.C. § 1973c by enforcing Ordinance 42-2007 without

obtaining preclearance.

    34.  Ordinance 42-2007 violates Section 2 of the Voting Rights Act,

42 U.S.C. § 1973 because it abridges the right to vote in municipal elections

of an identifiable group of black citizens.

35.  Ordinance 42-2007 violates 1973 Alabama Act 618 and is therefore void.  Ordinance 42-2007 is furthermore not authorized by Ala. Code 11-46-5, as Ordinance 42-2007 does not in fact adopt the election dates set forth in Ala. Code 11-46-21 (despite claiming to do so).

## Relief

36.  The plaintiffs pray that the Court convene a panel of three judges to consider the claim under Section 5 of the Voting Rights Act.

37.  The plaintiffs pray that the Court enter preliminary and permanent injunctions enjoining the defendants and those acting in concert with them from enforcing Ordinance 42-2007.

38.  The plaintiffs pray that the Court enter preliminary and permanent injunctions requiring defendant Bright to withdraw his notice of an election under the provision of Ordinance 42-2007.

39.  The plaintiffs pray that the Court grant them their costs, expenses, and reasonable attorneys' fees, as allowed by Section 14 of the Voting Rights Act, 42 U.S.C. § 1973ℓ(e).

40.  The plaintiffs pray for such other, further, and reasonable relief as allowed by the circumstances.

11

Submitted by,

/s/ Edward Still

Cecil Gardner
The Gardner Firm
Post Office Drawer 3103
Mobile AL 36652
    phone 251-433-8100
    fax 251-433-8181
    email cgardner@gmlegal.com

Edward Still
2112 11th Avenue South
Suite 201
Birmingham AL 35205-2844
    phone: 205-320-2882
    fax: 877-264-5513
    email: Still@votelaw.com

Sam Heldman
The Gardner Firm
2805 31st St. NW
Washington DC 20008
    phone 202-965-8884
    email sam@heldman.net

Section 4. All laws or parts of laws in conflict with this Act are repealed.

Section 5. This Act shall become effective on the first day of the month next following the date of its enactment.

Approved August 27, 1973.

Time: 5:30 P.M.

Act No. 616

H. 1691—Slate, Cauthen

AN ACT

To provide additional compensation for the official court reporters of the county courts in counties having populations of not less than 75,000 nor more than 90,000.

Be It Enacted by the Legislature of Alabama:

Section 1. In addition to all other compensations provided by law, the official court reporters of the county courts in counties having populations of not less than 75,000 nor more than 90,000, according to the 1970 or any subsequent federal decennial census, shall be entitled to receive as additional compensation the sum of $1,000.00 per annum which shall be payable in equal monthly installments out of the county treasury on the instruction of and the certificate of the judge of the court.

Section 2. All laws or parts of laws which conflict with this Act are repealed.

Section 3. This Act shall become effective on the first day of the month next following the date of its enactment.

Approved August 27, 1973.

Time: 5:35 P.M.

Act No. 617

H. 1697—Headley

AN ACT

To amend Section 3 of Act No. 696, H. 957, Regular Session 1967 (Acts 1967, p. 1521), which requires the county commission of Chilton County to draw warrants in favor of the Register of the Circuit Court, in Equity, so as to require such warrants to be drawn in favor of the Deputy Register.

878

Be It Enacted by the Legislature of Alabama:

Section 1. Section 3 of Act No. 696, H. 957, Regular Session 1967 (Acts 1967, p. 1521), is amended to read as follows:

"Section 3. That the county commission of Chilton County, Alabama, is hereby authorized and required to draw warrants in favor of the Deputy Register of the Circuit Court, in Equity, payable out of the General Fund of said county, upon proper claim being made."

Section 2. This Act shall become effective immediately upon its passage and approval by the Governor, or upon its otherwise becoming a law.

Approved August 27, 1973.

Time: 5:35 P.M.

Act No. 618

H. 796—Jones (F), Taylor, Harris, Barron

AN ACT

To provide a form of municipal government to be known as the Mayor-Council form of government, which may be adopted by any city in the State of Alabama having a population of not less than 7,000 nor more than 25,000 according to the last or any succeeding federal municipal census; to provide the method by which any such city may adopt the Mayor-Council form of government; to provide for the calling and holding of elections to vote thereon; to define and provide the legal status, form of government and powers of any such city under the Mayor-Council form of government; to provide as to the governing body of such city a city council; to provide for the number of members of the council, their election and terms of office; to provide the functions, duties, powers and authority of the city council; to provide for the election, appointment or designation of officers and employees of the city and for their qualifications, duties, functions, powers and authority; to provide for the election, term, qualifications and compensation of a Mayor and for the filling of vacancies in the office of Mayor and to provide the duties and authority of the Mayor; to provide for the control of the finances of such city; to provide for an annual budget its preparation, submission, and adoption and the effect thereof; to create and define the powers, functions and authority of the department of finance and the director of the department of finance; to regulate purchases and contracts of such city; to provide for the terms and effects of succession in government in government in any city adopting the Mayor-Council form of government; to make various other provisions for any such city which adopts the Mayor-Council form of government and for the government thereof; and to provide for the means of abandoning the Mayor-Council form of government and the adoption by the city of other forms of municipal government in lieu thereof.

Be It Enacted by the Legislature of Alabama:

879

Exhibit A

880

# Article I. ADOPTION OF MAYOR-COUNCIL FORM OF GOVERNMENT; ELECTION AND TERM OF FIRST COUNCIL.

1.01. **Cities to which act applies.**—Any city in the state of Alabama which has a population of more than seventy thousand and not exceeding one hundred thirty-five thousand according to the last federal census, or which may hereafter have such population according to any federal census that may be taken hereafter, may adopt the mayor-council form of government by proceeding in the manner hereinafter in this act provided.

1.02. **Petition for election.**—The filing of a petition signed by ten percent (10%) or more of the qualified electors of the such city, asking that the proposition of the adoption of the mayor-council form of government for such city be submitted to the county in which such city is located, shall mandatorily require an election to be held as herein provided. Whenever such a petition purporting to be signed by at least ten percent (10%) of the qualified voters of such city shall be presented to such judge of probate, he shall examine such petition and determine whether or not the same is signed by at least ten percent (10%) of the qualified voters of such city, and if such petition is signed by the requisite number of voters to require such an election, he shall within fifteen days from the receipt of such petition certify such fact to the governing body of the city for which such election is so petitioned, and the certificate of the judge of probate as to the sufficiency of said petition shall be final.

1.03. **Call of election by governing body.**—The governing body of the city shall immediately upon receipt of such certificate from the probate judge, by order, submit the question of the adoption of the mayor-council form of government for such city, under this act, at a special election to be held at a time specified in such proclamation, not less than forty days and not more than sixty days after receipt of said certificate from said probate judge, unless a general or regular election is to be held within 90 days after receipt of such certificate, in which event the special election herein provided for shall be held at the same time as such general or regular election. Should the election not be called by orders of the governing body of the city within 10 days after receipt of such certificate, the judge of probate shall call such election by order at a time specified therein but not less than 40 days and not more than 60 days after the receipt of the certificate of the probate judge.

881

1.04. **Second election not called within two years.**—If the mayor-council form of government is not adopted at the special election so called, the question of adopting such form of government shall not be re-submitted to the voters of such city for adoption within two years thereafter, and then the question of adopting said form of government may be re-submitted in the manner above provided.

1.05. **Proposition submitted; form of ballot.**—At such election the proposition to be submitted shall be printed in plain prominent type on ballots separate and distinct from ballots used for any other office or question, and shall read as follows: "Shall the Mayor-Council form of government, as provided by the Mayor-Council Act of 1973, be adopted for the City of _____?"

"Yes. _____"

"No. _____"

The voter shall mark his ballot with a cross mark before or after the word which expresses his choice. The voter shall express his choice as to one form of government only and no ballot shall be legal which is marked for more than one choice. No other proposition shall be submitted to the voters of such city upon this ballot. If voting machines are used at any voting place in such election, the above proposition may at the discretion of the election commission or other body or official having charge of the conduct of municipal elections in such city, be submitted as a separate proposition on voting machines so used.

1.06. **Conduct, canvassing and declaration of result of election.**—The election thereupon shall be conducted, the vote canvassed and the result declared in the same manner as provided by law in respect to other city elections in such city, and only qualified electors of such city shall vote thereof. If the majority of the votes shall be "yes" or in favor of such proposition, the provisions of this act shall thereby be adopted for such city, and the election commission or other canvassing board or official shall transmit to the governor, to the secretary of state, to the judge of probate of the county, and to the chief executive officer of the city, a certificate stating that such proposition was adopted by such city. If at any such election no proposition received a majority of all votes cast at such election then a second election shall be held on the same day two weeks later at which election only the two propositions receiving the highest number of votes at the first election shall be placed on the ballot. Such second election shall be conducted, the votes canvassed, the result declared

and certificates transmitted as provided herein for the first election.

**1.07. Election of first council and first mayor; term of office.**—Upon the adoption of such form of government, the probate judge with whom the petition was filed shall call an election to be governed by this act, to be held no later than the first Tuesday in September preceding the expiration of the term of office of the members of the city governing body serving when the mayor-council form of government prescribed in this act is adopted, the expense thereof to be paid by such city, for the election by the qualified voters of such city of nine councilmen, said councilmen to be known as district councilmen, and a mayor. Candidates shall qualify as provided in section 3.02 hereof and shall have the qualifications and eligibility set forth in sections 3.03 and 3.04 hereof. Each voter in the election may cast one vote for a candidate from his district. Any district councilman candidate receiving a majority of the total votes cast from the district in which he is a candidate shall be elected as a district councilman from his district. In the event that nine candidates should fail to receive such a majority then and in that event those candidates for the council receiving a majority shall be elected, and another election shall be held upon the same day of the week two weeks thereafter to be called and held in the same mode and manner and under the same rules and regulations. In the second election there shall be two candidates for each place upon the council to be filled in such second election; and these candidates shall be the two candidates receiving the highest number of votes but who were not elected at the first election. The candidate or candidates for the council receiving the highest number of votes cast in the first and second elections shall be elected, so that in the first and second elections only nine councilmen shall be elected. The councilmen so elected shall take office in the first Monday in October following the election. Each councilman shall hold office for four years, but shall serve until his successor shall have qualified. A councilman may succeed himself in office.

[The candidate for mayor receiving the largest number of votes for the office at the first election shall be elected thereto, provided such candidate receives a majority of all votes cast for such office. If at the first election no candidate receives a majority of the votes cast for the office of mayor at such election, then another election shall be held upon the same day of the week two weeks thereafter to be called and held in the same mode and manner and under the same rules and regulations. In the second election there shall be two candidates for the office of mayor; and each candidate shall be the

882

883

two who received the highest number of votes for said office at the first election.

Notwithstanding any notice requirements of any other statute or statutes concerning municipal elections, a notice published by the probate judge, with whom the certificate of adoption was filed at any time not less than twenty (20) days prior to said selection, shall be deemed sufficient notice of said election. Said notice shall, in substance, state the month, day and year of said election and the purpose for which it is called. Said notice shall further recite that the city has been divided into districts as provided under this act and state where a copy of the district division is on file. Said notice shall be published not less than one time in a newspaper published in the city, and if no newspaper is published in the city, then by posting notices in three public places within the municipality. The election of the first council shall, except as otherwise provided herein as to the call and run off elections, the date or dates of elections and run off elections, the qualification of the candidates and other matters specifically declared to be to the contrary in this act, be held and conducted, in the same manner as provided by law in respect to municipal elections in cities of this state which have a population of its size according to the latest Federal Decennial Census for cities not organized under a commission form of government. All municipal officers of the city shall have the same duties and responsibilities as they have with respect to municipal elections. The call of said election by the probate judge shall be sufficient to require any municipal officer or officers to comply with their duties and responsibilities with regard to all municipal elections, including the designation of places of voting, appointment of election, officers and other matters concerning the elections. Said officer or officers shall issue any orders necessary to cause all election requirements to be met. The districts from which the nine (9) district councilmen shall be elected shall be, as near as practicable, of equal population according to the last Federal Decennial Census. The first election of councilmen under this act shall be from the initial council districts as specifically described and set forth in Appendix One hereof.

**1.08. The council.**—The councilmen provided for in this section shall be known collectively as the Council of the City of _____ (Name of said city to be inserted) and shall have the powers and duties hereinafter provided. The councilmen first elected shall qualify and take office in the manner hereinafter prescribed on the second Monday following the date the election of all nine councilmen is completed, and thereupon such city shall at that time and thereby

Exhibit A

Exhibit A

884

be and become organized under the mayor-council form of government provided under this act and shall thereafter be governed by the provisions of this act.

POWERS.

2.01. Legal status.—Any such mayor-council form of government shall continue its existence as a body corporate under the name of "City of _____" (inserting the name of such city). The word "city" as hereinafter used shall mean and refer to any city which has adopted the mayor-council form of government. The city shall continue as a municipal corporation, within the corporate limits as then established, and as thereafter fixed in the manner prescribed by law, subject to all the duties and obligations then pertaining to or incumbent upon it as a municipal corporation and shall enjoy all the rights, immunities, powers and franchises then enjoyed by it, as well as those that may thereafter or hereinafter be granted to it.

2.02. Form of government.—The municipal government of any such city proceeding under this act shall be known as the "mayor-council form of government." Pursuant to the provisions and limitations of this act and subject to the limitations imposed by the Constitution of Alabama and its laws, all powers of the city shall be vested in the council elected as herein provided and hereinafter referred to as "the council," which shall enact ordinances, adopt budgets and determine policies. All powers of the city shall be exercised in the manner prescribed by this act, or if the manner be not prescribed, then in such manner as may be prescribed by law or by ordinance.

2.03. Powers of city.—The city shall have all the powers granted to municipal corporations and to cities by the Constitution and laws of this state together with all the implied powers necessary to carry into execution all the powers granted. The city may acquire property within or without its corporate limits for any city purpose, in fee simple and any lesser interest or estate, by purchase, gift, devise, lease or condemnation, and may sell, lease, mortgage, hold, manage and control such property as its interests may require; and, except as prohibited by the Constitution of this state or restricted by this act, the city shall and may exercise all municipal powers, functions, rights, privileges and immunities of every name and nature whatsoever. The enumeration of particular powers by this act shall not be deemed to be exclusive, and in addition to the powers enumerated therein or implied thereby, or appropriate to the exercise of such powers, it is intended that the city

885

shall have and may exercise all powers which, under the Constitution of this state, it would be competent for this act specifically to enumerate.

Article III. THE COUNCIL.

3.01. Number, election, term.—The council shall consist of nine members who shall be known as district councilmen. Subsequent to the election of the first council, all elections of councilmen shall be held at the same times and in the same manner as provided by law in respect to municipal elections in cities of this state which have a population of its size according to the latest Federal Decennial Census for cities not organized under a commission form of government, with respect to the calling of said elections, notice of said elections, qualifications of candidates and all other matters concerning said elections. The terms of councilmen so elected shall be four years commencing on the date that they shall take office which date shall be the second Tuesday in November following which election.

3.02. Statement of candidacy.—Any person desiring to become a candidate in any election for the office of councilman may become such candidate by filing in the office of the judge of probate of the county in which such city is situated, a statement in writing of such candidacy and an affidavit taken and certified by him or by a judge of probate or by a notary public that such person is duly qualified to hold the office for which he desires to be a candidate. Such statement shall be filed at least 21 days before the day set for such election and shall be in substantially the following form: "State of Alabama, _____ County. I, the undersigned, being first duly sworn, depose and say that I am a citizen of the City of _____ in said State and County, and reside at _____ that I desire to become a candidate for the office of district councilman for the _____ district, in said city at the election for said office to be held on the _____ day of October next and that I am duly qualified to hold said office if elected thereto and I hereby request that my name be printed upon the official ballot at said election. Signed _____ Subscribed and sworn to before me by said _____ on this _____ day of _____, 19__. _____, Judge of Probate." Said statement shall be accompanied by a qualifying fee in the amount of $40.00, which fee shall be paid over by the judge of probate to the general fund of the city. At every such election all ballots to be used by voters shall be printed and prepared by the election commission or other body or official charged by law with the duty of conducting elec-

tions and at the expense of said city, and shall contain the names of all candidates directly underneath the words "For members of the council." No name shall appear upon said ballot as a candidate for election except the names of such persons as have become candidates according to provisions as above set forth. No ballot shall be used at any such election except the official ballot prepared by the election commission or other body or official charged by law with the duty of conducting elections, except that the names of candidates may be suitably placed on voting machines if such machines are used to conduct such election. No primary election shall be held for the nomination of candidates for the office of councilman and candidates shall be nominated only as hereinabove provided.

**886**

3.03. **Qualification.**—Every person who shall be elected or appointed to the office of member of the council, shall, on or before the second Tuesday of November following his election or before the Tuesday following the date of his appointment or military reserve. If the councilman shall cease to possess qualify by making oath that he is eligible for said office and shall execute the duties of same according to the best of his knowledge and ability. Said oath may be administered by any person authorized to administer an oath under the laws of Alabama.

3.04. **Eligibility.**—Councilmen shall be qualified electors of the city, and shall hold no other public office except that of notary public or member of the national guard or naval or military reserve. If the councilman shall cease to possess any of these qualifications or shall be convicted of crime involving moral turpitude, his office shall immediately become vacant.

3.05. **Compensation.**—The council shall receive such per diem allowance for each meeting attended which shall be effective on such date as the council may by resolution or ordinance prescribe; provided however, that the total per diem allowance paid to each councilman shall not exceed Four Thousand Two Hundred and No/100 Dollars ($4,200.00) annually. Such per diem allowance, and the manner in which it is to be paid shall be established by the council subject to the above limitations.

3.06. **Presiding officer.**—The council shall elect an officer of the city who shall have the title of president of the council and shall preside at meetings of the council. The council shall also elect a president pro tem, who shall act as president of the council during the absence or disability of the president. The terms of office of the president and the president pro tem shall be until the councilmen shall qualify following the

Exhibit A

**887**

next, succeeding biennial election. If a vacancy shall occur in the office of president of the council, the council shall elect a successor for the completion of the unexpired term. Both the president pro tem and the president of the council and the president pro tem shall be elected from among the councilmen.

3.07. **Powers.**—All powers of the city, including all powers vested in it by this act, by the laws, general and local, of the state, and by Title 62 of the Code of Alabama of 1940, as amended, and the determination of all matters of policy, shall be vested in the council. Without limitation of the foregoing, the council shall have power to:

(a) Establish administrative departments and distribute the work of divisions.

(b) Adopt the budget of the city.

(c) Authorize the issuance of bonds or warrants.

(d) Inquire into the conduct of any office, department or agency of the city and make investigations as to municipal affairs.

(e) Appoint the members of all boards, commissions or other bodies authorized hereunder or by law. This provision for appointment of members of boards, commissions or other bodies authorized hereunder or by law shall supersede any different provision for appointment of such members contained in any statute or ordinance in effect at the time of adoption by the city of the mayor-council form of government set up by this act, and shall include power to remove any member of any board, commission or body to the same extent as might be done by the governing body of the city at the time of adoption by the city of the mayor-council form of government set up by this act and to appoint another in his stead. And wherever in any statute in effect at the time of adoption by the city of said mayor-council form of government the chief executive officer of the city is designated to act in any capacity ex-officio, the mayor shall act.

(f) Succeed to all the powers, rights and privileges conferred upon the former governing body of the city by statutes in effect at the time of adoption by the city of the mayor-council form of government and not in conflict with this act.

(g) Levy property and license taxes and local improvement assessments.

3.08. **Council not to interfere in appointment or removals.**—Neither the council nor any of its members shall direct or request the appointment of any person to, or his removal from, office or position by the mayor or by any of his subordinates,

or in any manner take part in the appointment or removal of officers and employees in the administrative service of the city. Except for the purpose of inquiry, the Council and its members shall deal with the administrative service solely through the mayor and neither the Council nor any member thereof shall give orders to any subordinates of the mayor, either publicly or privately.

888

**3.09. Vacancies in council.**—Vacancies in the council shall be filled by the council at the next regular meeting or any subsequent meeting of the council, the person so elected to hold office only until the next election of any kind in which the voters of the city to which this act applies are qualified electors, at which time said unexpired terms shall be filled by said electors in accordance with all provisions of law applicable to such city; in any event, the person elected shall hold office until his successor is elected and qualified.

**3.10. Creation of new departments or offices; change of duties.**—The council by ordinance may create, change, and abolish offices, departments or agencies, other than the offices, departments and agencies established by this act. The council by ordinance may assign additional functions or duties to offices, departments or agencies established by this act, but may not discontinue or assign to any other office, department or agency any function or duty assigned by this act to a particular office, department or agency.

**3.11. City clerk.**—If the city clerk of any city which adopts the mayor-council form of government holds office subject to any civil service or merit system, such clerk shall continue to be the city clerk under the mayor-council form of government of such city, and his successor shall be selected and hold office subject to the provisions of such civil service or merit system. If the city clerk of any city which adopts the mayor-council form of government does not hold office subject to any civil service or merit system, the council shall elect the city clerk. The city clerk shall give notice of special or called meetings of the council, shall keep the journal of its proceedings, shall authenticate by his signature and record in full in a book kept for the purpose all ordinances and resolutions and shall perform such other duties as shall be required by this act or by ordinance, and such duties are imposed by general law of Alabama upon city clerks and as to which other provisions are not made in this act.

**3.12. Induction of council into office; meetings of council.**—The first meeting of each newly elected council for induction into office, shall be held at ten o'clock in the morning on the second Tuesday in November next following its election, after

which the council shall meet regularly at such times as may be prescribed by its rules, but not less frequently than once a week. All meetings of the council shall be open to the public.

**3.13. Council to be judge of qualifications of its members.**—The council shall be the judge of the election and qualifications of its members and for such purpose shall have power to subpoena witnesses and require the production of records, but the decision of the council in any such case shall be subject to review by the courts.

**3.14. Rules of procedure; journal.**—The council shall determine its own rules and order of business. It shall keep a journal of its proceedings and the journal shall be open to public inspection.

**3.15. Meetings, passage of ordinances, etc.**—The council shall hold regular public meetings on Tuesday of each and every week at a regular hour to be fixed by the order of said council from time to time and publicly announced; it may hold such adjourned, called, special or other meetings as the business of the city may require. The president of the council, when present, shall preside at all meetings of said council. A majority of the council members elected shall constitute a quorum for the transaction of any and every power conferred upon said council, and the affirmative vote of a majority of those members present, shall be sufficient for the passage of any resolution, by-law or ordinance, or the transaction of any business of any sort by the said council or the exercise of any of the powers conferred upon it by the terms of this act or by law, or which may hereafter be conferred upon it. No resolution, by-law or ordinance granting any franchise, appropriating any money for any purpose, providing for any public improvements, any regulation concerning the public health, or of any other general or permanent nature, including the proclamation of quarantine, shall be enacted except at a regular public meeting of said council or an adjournment thereof. Every ordinance introduced at any and every such meeting shall be in writing and read before any vote thereon shall be taken, and the yeas and nays thereon shall be recorded; provided that if the vote of all councilmen present be unanimous, it may be so stated in the journal without recording the yeas and nays. A record of the proceedings of every meeting of the council shall be kept, and every resolution or ordinance passed by the council must be recorded and the record of the proceedings of the meeting shall, when approved by the council be signed by the president of the council and the city clerk. Such record shall be kept available for inspection by all citizens of such city at all reasonable times. No ordinance of permanent operation shall be passed at the meeting at which it was introduced except

889

by unanimous consent of all members of the council present, and such unanimous consent shall be shown by the yea and nay votes entered upon the minutes of said meeting; provided, however, that if all members of the council present vote for the passage of the ordinance and their names are so entered of record as voting in favor thereof, it shall be construed as giving unanimous consent to such ordinance on such continuance at the meeting at which it is introduced. Publication of ordinances shall be governed by Alabama Code of 1940, section 462, as amended, Title 37. Provided all ordinances or resolutions, after having been passed by the council, shall by the clerk be transmitted within forty-eight (48) hours after their passage to the mayor for his consideration, who, if he shall approve thereof, shall sign and return the same to the clerk, who shall publish them, if publication thereof is required, and such ordinances and resolutions shall thereupon become effective and have the force of law. Delivery to the office of the mayor shall constitute delivery to the mayor. An ordinance or resolution may be recalled from the mayor at any time before it has become a law, or has been acted on by him, by a resolution adopted by a majority of the members elected to the council, in regular or special session. If the mayor shall disapprove of any ordinance or resolution transmitted to him as aforesaid, he shall, within ten (10) days of the time of its passage by the council, return the same to the clerk with his objections in writing, and the clerk shall make report thereof to the next regular meeting of the city council; and if a majority of the council members present shall at said meeting adhere to said ordinance or resolution, notwithstanding said objections, said vote being taken by yeas and nays and spread upon the minutes, then, and not otherwise, said ordinance or resolution shall after publication thereof, if publication is required, have the force of law. If publication of said ordinance or resolution is not required, it shall take effect upon its passage over objections. The failure of the mayor to return to the city clerk an ordinance or resolution with his veto within ten (10) days after its passage by the council shall operate and have the same effect as an approval of the same, and the city clerk, if publication is required, shall publish the same as is herein provided for the publication of laws and ordinances of said city. And if no publication is required, the ordinance or resolution shall become effective upon the expiration of said ten (10) days. Anything in this section to the contrary notwithstanding, the mayor shall not have the power of veto over appointments of the council, or over any action of the council relating to an investigation as provided for in section 9.03 of Article IX.

3.16. Granting of franchises.—No resolution or ordinance, granting to any person, firm or corporation any franchise,

lease or right to use the streets, public highways, thoroughfares, or public ways of any city organized under the provisions of this act, either in, under, along, through, or over same shall take effect and be enforced until thirty days after the final enactment of same by the council and publication of said resolution or ordinance in full once a week for three consecutive weeks in some daily newspaper published in said city, which publication shall be made at the expense of the persons, firm or corporation applying for said grant. Pending the passage of any such resolution or ordinance or during the time intervening between its final passage, and the expiration of the thirty days during which publication shall be made as above provided, the legally qualified voters of said city may, by written petition or petitions addressed to said council, object to such grant, and if during such period such written petition or petitions signed by at least five percent (5%) of the legally qualified voters of the city shall be filed with said council, said council forthwith order an election, which shall be conducted by the election commission of the city or other body or official charged with the duty of conducting elections therein, at which election the legally qualified voters of said city shall vote for or against the proposed grant as set forth in the said resolution or ordinance. In the call for said election, the said resolution or ordinance making such grant shall be published at length and in full at the expense of the city in at least two newspapers published in said city by one publication. If a majority of the votes cast at such election shall be against the passage of said resolution or ordinance, then and in those events, said resolution or ordinance shall not become effective nor shall it confer any rights, powers or privileges of any kind; otherwise, said resolution or ordinance and said grant shall thereupon become effective as fully and to the same extent as if said election had not been called or held. If, as the result of said election, said resolution or ordinance shall not become effective, then it shall be the duty of said council, after the results of said election shall be determined, to pass a resolution or ordinance to that effect. No grant of any franchise or lease or right of user, or any other right, in, under, upon, along, through, or over the streets, public highways, thoroughfares or public ways of any such city, shall be made or given nor shall any such rights of any kind whatever be conferred upon any person, firm or corporation, except by resolution or ordinance duly passed by the council and published as above provided for in this act; nor shall any extension or enlargement of any such rights or powers previously granted be made or given except in the manner and subject to all the conditions herein provided for as to the original grant of same. It is

expressly provided, however, that the provisions of this sub-section shall not apply to the grant of side track or switching privileges on any railroad for the purpose of reaching and af-fording railway connections, and switch privileges to the owners or users of any industrial plant, store or warehouse; provided further, that said side track or switch shall not extend for a greater distance than one thousand, three hundred twenty feet.

3.17. Codification authorized.—The council may provide at any time it may deem proper, for the revision and codifi-cation of its ordinances, by-laws, and permanent resolution, or for the adoption of a code of codes by ordinance. Such code or codes and the revisions of city by-laws, ordinances and permanent resolutions, or may relate to that portion of such ordinances, by-laws and permanent resolutions which relate to, affect or purport to govern any particular subject or subjects or sub-division of municipal legislation. The council shall have full power and authority to prescribe the manner in which said code or codes, revisions or amendments thereto, shall be made public, whether by proclamation of any officer or officers of the public, or by publication, one or all, but it shall not be necessary unless so prescribed by the council for such code or codes, revisions or amendments thereto, to be published in a newspaper or newspapers. Nor shall it be necessary that such code or codes, revisions or amendments thereto, be spread at length upon the minutes. The council may prescribe that such code or codes, revisions or amendments thereto may be certified by and filed with the city clerk, or other correspond-ing officer, in lieu of spreading the same on the minutes; and the council may prescribe the manner in which copies of such code or codes, revisions, or amendments thereto, may be offi-cially certified for use by the inhabitants or by the courts. The council may adopt and provide for the maintenance in a designated office of the city of a comprehensive zone map of the city open for inspection by the public at all reasonable times, and may make such zone map a part of any ordinance by reference thereto in such ordinance and without publication of such zone map in any newspaper. Such zone map need not be in one piece but may for convenience be in sections. A zone map of territory newly added to the city shall be treated as a comprehensive zone map of the city for purposes of applica-tion of the provisions of the next preceding sentence.

3.18. Examination of books and publication of accounts.—The council shall each month print in pamphlet form a detailed statement of all receipts and expenses of the city, and a summary of its proceedings during the preceding month, and furnish printed copies thereof to the daily newspapers of the city and

892

to persons who apply therefor. At the end of each year, the council shall cause a full and complete examination of all the books and accounts of the city to be made by a certified public accountant, or by the state department of public examiner of public accounts, and shall cause the result of such examination to be published in the manner above provided for publication of statements of monthly expenditures. Such examination shall not be made two years in succession by the same accountant.

Article IV. MAYOR.

4.01. Election; term; qualification.—The first mayor shall be elected at the same election at which the councilmen are elected under the provisions of section 1.07 of Article I of this act and shall hold office until the second Tuesday in No-vember of that, year ending in an odd number which would give him a term of office most closely approximating four years and until his successor is elected and qualified. The first mayor shall qualify and take office in the manner hereinafter prescribed on the second Monday following the date the elec-tion of all nine councilmen is completed or on the second Mon-day following the election of such mayor whichever last oc-curs. The regular election for mayor shall be held on the second Tuesday in October of the year during which the term of the first mayor elected hereunder terminates and every four years thereafter. The mayor elected at any such regular elec-tion, shall on or before the second Tuesday of November fol-lowing his election qualify by making oath that he is eligible for said office and will execute the duties of same according to the best of his knowledge and ability. Said oath may be administered by any person authorized to administer an oath under the laws of Alabama. At any election for mayor the candidate receiving the highest number of votes for the office shall be elected thereto, provided such candidate receives a majority of all votes cast for such office. If at the first elec-tion a majority of all votes cast for mayor is not received by any candidate for the office of mayor, then a second election shall be held on the third Tuesday thereafter in the same mode and manner and under the same rules and regulations provided in section 1.07 of Article I hereof with respect to the election of the first mayor.

4.02. Statement of candidacy.—Any person desiring to be-come a candidate at any election for the office of mayor may become such candidate by filing in the office of the judge of probate of the county in which such city is situated, a state-ment in writing of such candidacy, accompanied by an affi-davit taken and certified by such judge of probate or by a notary public that such person is duly qualified to hold the office for which he desires to be a candidate. Such statement shall be filed at least twenty-one days before the day set for

893

## 894

such election and shall be in substantially the following form:

"State of Alabama, _____ County: I, the undersigned, being first duly sworn, depose and say that I am a citizen of the City of _____, in said State and County, and reside at _____, in said city of _____; that I desire to become a candidate for the office of mayor in said city at the election for said office to be held on the _____ day of October next and that I am duly qualified to hold said office if elected thereto, and I hereby request that my name be printed upon the official ballot at said election.

Signed _____

Subscribed and sworn to before me by said _____ 19___, and filed in this office for record on this _____ day of _____ on this _____ day of _____ record on said day.

_____ Judge of Probate."

Said statement shall be accompanied by a qualifying fee in an amount equal to $300.00 which qualifying fee shall be paid over by the judge of probate to the general fund of the city. At every such election on ballots to be used by voters shall be printed and prepared by the election commission or other body or official charged by law with the duty of conducting elections and at the expense of said city, and shall contain the names of all candidates directly underneath the words "For Mayor." No names shall appear upon said ballot as a candidate for election except the names of such persons as have become candidates according to provision as above set forth; no ballot shall be used at any such election except the official ballot prepared by the election commission or other body or official charged by law with the duty of conducting elections, except that the names of candidates may be suitably placed on voting machines if such machines are used to conduct such election. No primary election shall be held for the nominations of candidates for the office of mayor and candidates shall be nominated only as hereinabove provided.

4.03. Eligibility.—The mayor shall be a qualified elector of the city, and shall hold no other public office.

4.04. Compensation.—The mayor shall receive an annual salary of Twenty Five Thousand Dollars ($25,000.00) payable in monthly installments at the end of each month, said installments to be paid at the same rate for any portion of the month during which the mayor shall hold office at the rate thus provided.

4.05. Vacancy in office of mayor.—Whenever a vacancy in the office of mayor shall occur by reason of death, resignation, removal or any other cause, the president of the council shall assume the duties of the office of mayor, effective on the date such vacancy occurs and shall serve as acting mayor until a new mayor is elected and qualified as hereinafter provided. The

## 895

acting mayor shall receive no compensation, expenses or allowances as a councilman while acting as mayor, but he will receive the same rate of pay and allowances provided for the mayor whose vacated office he fills, and the compensation received for days of service as acting mayor shall not be counted in determining the maximum annual per diem compensation permitted council members. While the president of the council is serving as acting mayor he shall not sit with the council or vote on any matters before the council. The election commission of the city, if there be one, and if not then the council thereof, shall within five days of the occurrence of a vacancy in the office of the mayor call a special election to fill such vacancy, such election to be held on a Tuesday not less than thirty (30) days and not more than forty-five days from the occurrence of such vacancy; provided, however, if a regular or special election is scheduled or required to be held within ninety (90) days after the occurrence of such vacancy but more than thirty (30) days after such occurrence, then the vacancy in the office of mayor will be filled at such regular or special election. Notice of such election shall be given at the expense of the city by one publication or more newspapers published in such city. The method, procedure and requirements of qualifying, voting upon and determining the successful candidate shall be same as is provided herein relative to the election of the mayor at regular elections, except that statements of candidacy must be filed at least (20) days before the date set for such election. The successor to the mayor chosen at any such election shall qualify for office as soon as practical thereafter, and shall be clothed with and assume the duties, responsibilities and powers of such office immediately upon such qualification and shall hold office for the unexpired term of his predecessor and until his successor is elected and qualified.

4.06. Powers and duties.—The mayor shall be the head of the administrative branch of the city government. He shall not sit with the council nor shall he have a vote in its proceedings and he shall have the power and duties herein conferred. He shall be responsible for the proper administration of all affairs of the city and, subject to the provisions of any civil service or merit system law applicable to such city and except as otherwise provided herein, he shall have power and shall be required to:

(1) Enforce all laws and ordinances;

(2) Appoint and, when necessary for the good of the service, remove all officers and employees of the city except as otherwise provided by this act and except as he may authorize

Exhibit A

the head of a department or office to appoint and remove subordinates in such department or office; provided that the mayor shall not appoint or remove officers and employees of:

(a) Any library board of the city;

(b) Any board of the city having control over any park, recreation facility, fair or exhibit;

(c) Any municipally-owned public utility, including electric, gas and water systems, while such utility is operating under a board constituted by law or required by the terms of any indenture, mortgage or deed of trust providing for employment by other authority;

(d) Any school board of the city;

(e) Any planning board or zoning board of the city;

(3) Exercise administrative supervision and control over all departments created by this act or by law or hereafter created by the council except those enumerated in items (a) to (e) inclusive of paragraph (2) of this section and except those otherwise given independent status under this act.

(4) Keep the council fully advised as to the financial condition and needs of the city; prepare and submit the budget annually to the council and be responsible for its administration after its adoption; prepare and submit, as of the end of the fiscal year, a complete report on the financial and administrative activities of the city for such year.

(5) Recommend to the council such actions as he may deem desirable.

(6) Prepare and submit to the council such reports as may be required of him.

(7) Perform such other duties as may be prescribed by this act.

(8) Fix the salaries or compensation of all officers and employees of the city who are appointable by him, subject, however, to the provisions of any civil service or merit law applicable to the city.

4.07. **Administrative departments.**—There shall be a department of finance, and such other departments as may be established by ordinance upon the recommendation of the mayor.

4.08. **Directors of departments.**—At the head of each department there shall be a director, who shall be an officer of the city and shall have supervision and control of the department subject to the mayor. Two or more departments may be headed Exhibit A

896

by the same individual, the mayor may head one or more departments, and directors of departments may also serve as chiefs of divisions.

4.09. **Departmental divisions.**—The work of each department may be distributed among such divisions thereof as may be established by ordinance upon the recommendation of the mayor. Pending the passage of an ordinance or ordinances distributing the work of departments under the supervision and control of the mayor among specific divisions thereof, the mayor may establish temporary divisions.

**Article V. BUDGET.**

5.01. **Fiscal year.**—The fiscal year of the city government shall begin on the first day of October and shall end on the last day of September of each calendar year. Such fiscal year shall also constitute the budget and accounting year. As used in this act, the term "budget year" shall mean the fiscal year for which any particular budget is adopted and in which it is administered.

5.02. **Submission of budgets.**—On a day to be fixed by the council but in no case later than the 20th day of August in each year, the mayor shall submit to the council:

(a) A separate current revenue and expense budget for the general operation of the city government, to be known as the "general fund budget";

(b) A budget for each public utility owned and operated by such city;

(c) A capital budget; and

(d) A budget message.

When submitting the budgets to the council, the mayor shall submit his recommendation of new sources of revenue or manner of increasing existing sources of revenue, sufficient to balance the budgets, if such additional revenue is necessary to accomplish that purpose.

5.03. **Preparation of budgets.**—It shall be the duty of the head of each department, and each other office or agency supported in whole or in part by the city, to file with the director of finance, at such time as the mayor may prescribe, estimates of revenue and expenditure for that department, office or agency for the ensuing fiscal year. Such estimates shall be submitted on the forms furnished by the director of finance and it shall be the duty of the head of each such department, office or agency, to supply all the information which the director of finance may require to be submitted thereon. The director of finance shall assemble and compile these estimates

897

and supply such additional information relating to the financial transactions of the city as may be required by the mayor in the preparation of the budgets. The mayor shall hold such hearings as he may deem advisable and with the assistance of the director of finance shall review the estimates and other data pertinent to the preparation of the budgets and make such revisions in such estimates as he may deem proper, subject to the laws of the state of Alabama and any municipal ordinance relating to obligatory expenditures for any purpose.

**5.04. Scope of general fund budget.**—The general fund budget shall include only the net amounts estimated to be received from or to be appropriated to each public utility. The general fund budget shall be prepared in accordance with accepted principles of municipal accounting and budgetary procedure and shall show:

(a) Such portion of the general fund cash surplus as it is estimated will exist, at the end of the current fiscal year, and is proposed to be used for meeting expenditures in the general fund budget for the ensuing year;

(b) An estimate of the receipts from current ad valorem taxes on real estate and tangible personal property during the ensuing fiscal year, assuming that the percentage of the levy collected be no greater than the average percentage of the levy collected in the last three completed tax years;

(c) An estimate of receipts from all other sources of revenue, provided that the estimated receipts from each such source shall not exceed the percentage of estimated revenue in the current fiscal year from the same source, over the amount of the revenue received in the same source, in the last completed fiscal year, unless a law or ordinance under which revenue from any source is derived, has been amended or a new source of revenue has been provided by law or ordinance, in the course of the current fiscal year, in which case the estimated receipts from that source may be fixed by the mayor. If additional revenue is to be derived from the state, the amount fixed by the mayor shall not exceed the amount which the proper state official shall certify in writing to be the reasonable expectation of receipts from such source;

(d) A statement to be furnished by the director of finance of the debt service requirements for the ensuing year;

(e) An estimate of the general fund cash deficit, if any, at the end of the current fiscal year and of any other obligations required by law to be budgeted for the ensuing fiscal year;

898

(f) An estimate of expenditures and appropriations for all other purposes to be met from the general fund in the ensuing fiscal year. All the estimates shall be in detail showing receipts by sources and expenditures by operating units, character and object, so arranged as to show receipts and expenditures as estimated for the current fiscal year and actual receipts and expenditures for the last preceding fiscal year, in comparison with estimated receipts and recommended expenditures for the ensuing fiscal year.

**5.05. A balanced budget.**—In no event shall the expenditures recommended by the mayor in the general fund budget exceed the receipts estimated, taking into account the estimated cash surplus or deficit at the end of the current fiscal year, as provided in section 5.04, unless the mayor shall recommend an increase in or levy of new or increased, taxes or licenses within the power of the city to levy and collect in the ensuing fiscal year, the receipts from which, estimated on the basis of the average experience with the same or similar taxes during the three full tax years last past, will make up the difference. If estimated receipts exceed estimated expenditures, the mayor may recommend revisions in the tax and license ordinances of the city in order to bring the general fund budget into balance. The same balanced budget restrictions shall apply in the adoption of any public utility budget.

**5.06. The budget message.**—The budget message shall contain the recommendations of the mayor concerning the fiscal policy of the city, a description of the important features of the budget plan, an explanation of all salient changes in each budget submitted, as to estimated receipts and recommended expenditures as compared with the current fiscal year and the last preceding fiscal year and a summary of the proposed budget showing comparisons similar to those required by section 5.04 above.

**5.07. Availability of budgets for inspection and publication of the budget message.**—The mayor shall cause the budget message to be printed, mimeographed or otherwise reproduced for general distribution at the time of its submission to the council, and sufficient copies of the proposed general fund, public utility and capital budgets to be made, to supply copies to each member of the council and each daily newspaper of general circulation published in the city, and two copies to be deposited in the office of the city clerk where they shall be open to public inspection during regular business hours.

**5.08. Publication of notice of public hearing.**—At the meeting of the council at which the budget and budget message are submitted, the council shall determine the place and

899

time of the public hearing on the budget, and shall cause to be published a notice of the place and time, not less than seven days after the date of publication, at which the council will hold a public hearing. Publication shall be made at least once in a daily newspaper published and of general circulation in the city. At the time and place so advertised, or at any time and place to which such public hearing shall from time to time be adjourned, the council shall hold a public hearing on the budget as submitted, at which any citizen of the city shall be given an opportunity to be heard, for or against the estimates or any item thereof.

**5.09. Action by the council on the general fund budget.—** After the conclusion of the public hearing the council may insert new items of expenditures or may increase, decrease or strike out items of expenditure in the general fund budget, except that no item of expenditure for debt service, or any other item required to be included by this act or other provision of law, shall be reduced or stricken out. The council shall not alter the estimates of receipts contained in the budget except to correct omissions or mathematical errors and it shall not cause the total of expenditures as recommended by the mayor to be increased without a public hearing on such increase, which shall be held not less than three days after notice thereof by publication in a newspaper of general circulation published in the city. The council shall in no event adopt a general fund budget in which the total of expenditures exceeds the receipts and available surplus, estimated as provided in section 5.04 of this act, unless at the same time it adopts measures for providing additional revenue in the ensuing fiscal year, estimated as provided in sections 5.02 and 5.05 of this act, sufficient to make up the difference.

**5.10. Adoption of general fund budget.—** Not later than the 20th day of September of the current fiscal year, the council by a majority vote shall adopt the general fund budget, and such ordinances providing for additional revenue as may be necessary to put the budget in balance. If for any reason the council fails to adopt the general fund budget on or before such day, the general fund budget of the current fiscal year shall be the general fund budget for the ensuing year, until such time as a newly revised budget shall be adopted by the council, and, until such time, shall have full force and effect to the same extent as if the same had been adopted by the council, notwithstanding anything to the contrary in this act.

**5.11. Effective date of budget; certification; copies made available.—** Upon final adoption, the budget shall be in effect for

900

the budget year. A copy of the budget as finally adopted, shall be certified by the mayor and city clerk and filed in the office of the director of finance. The budget so certified shall be printed, mimeographed or otherwise reproduced and sufficient copies thereof shall be made available for the use of all offices, departments and agencies and for the use of citizens of the city who request a copy.

**5.12. Utility budgets.—** Separate budget estimates for any public utilities owned and operated by the city shall be submitted to the director of finance at the same time as the budget estimates of other departments, and in the form prescribed by the director of finance. The mayor shall prepare and present to the council a budget for the utility operation, itemizing the receipts and expenditures in manner and form as is generally provided for in section 5.04 of this act as being applicable to the general fund budget. The action of the council on any utility budget thus submitted shall be governed by the same provision as provided in this act with reference to the consideration and adoption of the general fund budget.

**5.13. Work plan and allotments.—** After the current expense budgets have been adopted and before the beginning of the fiscal year the head of each department, office, and agency, shall submit to the director of finance in such form as he shall prescribe a work program which shall show the requested allotments of the appropriations for such department, office or agency for the entire fiscal year by monthly or quarterly periods as the mayor may direct. Before the beginning of the fiscal year the mayor shall approve, with such amendments as he shall determine, the allotments for each such department, office, or agency, and shall file the same with the director of finance who shall not authorize any expenditure to be made from any appropriation except on the basis of approved allotments, provided that such allotments shall be in conformity with the salaries established by ordinance, the provisions of any merit or civil service system applicable to such city, the laws of the state of Alabama and any municipal ordinances of such city, relating to obligatory expenditures for any purpose. The aggregate of such allotments shall not exceed the total appropriation available to each such department, office, or agency for the fiscal year. An approved allotment may be revised during the fiscal year in the same manner as the original allotment was made. If at any time during the fiscal year the mayor shall ascertain that the revenue cash receipts of the general fund or any public utility for the year plus any cash surplus available from the preceding year, will be less than the total appropriations to be met from such receipts

901

Exhibit A

902

and cash surplus, he shall reconsider the work programs and allotments of the departments, offices, and agencies and, subject to the laws of the state of Alabama and any municipal ordinances of the city relating to obligatory expenditures for any purpose, revise the allotments, however, that there shall be no reduction in salaries except by order of the council, or as authorized by law.

5.14. Transfers of appropriations.—The mayor may at any time authorize, at the request of any department, office, or agency, the transfer of any unencumbered balance or portion thereof in any general fund or utility appropriation from one classification of expenditure to another with the same department, office, or agency, provided that for this purpose the water, gas and electric utilities shall be deemed to be separate departments. At the request of the mayor, the council may by resolution transfer any unencumbered balance or portion thereof in any general fund appropriation from one department, office or agency to another.

5.15. Additional appropriations.—Appropriations in addition to those contained in the original general fund budget ordinance, may be made by the council by not less than five affirmative votes, but only on the recommendation of the mayor and only if the director of finance certifies in writing that there is available in the general fund a sum unencumbered and unappropriated sufficient to meet such appropriation. Additional appropriations may be made by the council, by not less than five affirmative votes, from the funds of any utility for the operation of that utility, but only if the director of finance certifies in writing that there is available in the funds of the utility, a sum unencumbered and unappropriated sufficient to meet such appropriation.

5.16. Emergency appropriations.—At any time in any budget year, the council may, pursuant to this section, make emergency appropriations to meet a pressing need for public expenditures, for other than a regular or recurring requirement, to protect the public health, safety or welfare. Such appropriation may be made by the council voting affirmative votes by a majority of the council members present, but only on the recommendation of the mayor. The total amount of all emergency appropriations made in any budget year shall not exceed five per centum of the total general fund operating appropriations made in the budget for that year.

5.17. Appropriations to lapse.—Any portion of an appropriation remaining unexpended and unencumbered at the close of the fiscal year, shall lapse.

5.18. Capital budget.—At the same time that he submits

Exhibit A

903

the general fund budget, the mayor shall submit to the council a capital improvement program covering all recommended capital improvement projects, for the ensuing fiscal year and for the four fiscal years thereafter, with his recommendations as to the means of financing the improvements proposed for the ensuing fiscal year. The council shall have power to accept with or without amendments the proposed program and proposed means of financing for the ensuing fiscal year; and may from time to time during the fiscal year amend by ordinance adopted by affirmative votes by a majority of members present, the program previously adopted by it, or the means of financing the whole or any part thereof or both, provided that the amendment shall have been recommended by the mayor, and further; provided such additional funds are available, in the general fund or in any other fund of the city available therefor. The council may adopt a capital budget prior to the beginning of the fiscal year in which the budget is to take effect. No appropriations for a capital improvement project contained in the capital budget shall lapse until the purpose for which the appropriation was made shall have been accomplished or abandoned, provided that any project shall be deemed to have been abandoned if three fiscal years lapse without any expenditure from or encumbrance of the appropriation thereof. Any such lapsed appropriation shall be applied to the payment of any indebtedness incurred in financing the project concerned and if there be no such indebtedness the funds shall be available for appropriation.

5.19. Certification of funds; penalties for violation.—No payment shall be made and no obligation incurred by or on behalf of the city except in accordance with an appropriation duly made and no payment shall be made from an appropriation and no payment shall be made from an obligation incurred against any allotment or appropriation unless the director of finance shall first certify that there is a sufficient unexpended and unencumbered balance in such allotment or appropriation to meet the same; provided that nothing herein shall be taken to prevent the advance authorization of expenditures for small purchases as provided in subsection (e) of section 6.04 of Article VI of this act. Every expenditure or obligation authorized or incurred in violation of the provisions of this act shall be void. Every payment made in violation of the provisions of this act shall be deemed illegal and every official who shall knowingly authorize or make such payment or knowingly take part therein and every person who shall knowingly receive such payment or any part thereof shall be jointly and severally liable to the city for the full amount so paid or received. If any officer, member of a board, or employee of the city, shall knowingly incur any obligation or shall authorize or make any expenditure in

**904**

violation of the provisions of this act or knowingly take part therein such action shall be cause for his removal. Nothing in this section contained, however, shall prevent the making of contracts of lease or for services providing for the payment of funds at a time beyond the fiscal year in which such contracts are made, provided the nature of such contracts will reasonably require the making of such contracts.

**5.20. Reserve for permanent public improvements.**—The council may by ordinance establish a reserve fund for permanent public improvements and may appropriate thereto to any portion of the general fund cash surplus not otherwise appropriated at the close of any fiscal year. Appropriations from the said fund shall be made only to finance improvements included in the capital budget.

**5.21. Budget continuation.**—Any officially adopted budget in existence at the time that the council is first organized, shall continue in force and effect during the balance of the city's then fiscal year, or until such time as the mayor may submit to the council and the council adopts, an amended, altered or revised budget for the balance of said fiscal year.

**5.22. Budget summary.**—At the head of the budget there shall appear a summary of the budget, which need not be itemized further than by principal sources of anticipated revenue, stating separately the amount to be raised by property tax, kinds of expenditures itemized according to departments, doing so in such a manner as to present to the taxpayer a simple and clear summary of the detailed estimates of the budget.

**Article VI. DEPARTMENT OF FINANCE.**

**6.01. Director of finance; appointment.**—There shall be a department of finance, the head of which shall be the director of finance, who shall be appointed by the mayor, subject to the provisions of any merit or civil service system which is applicable to such city. He shall be the chief financial officer of the city. The chief financial officer of any city which adopts the mayor-council form of government who holds office under any civil service or merit system applicable to such city shall be the first director of finance under the mayor-council form of government.

**6.02. Same; qualifications.**—The director of finance shall be a person skilled in municipal accounting, taxation and financial control.

**6.03. Same; surety bond.**—The director of finance shall provide a bond with such surety and in such amount as the council may require by resolution or ordinance. The premium on said bond shall be paid by the city.

**905**

**6.04. Same; powers and duties.**—The director of finance shall have general management and control of the several divisions and units of the department of finance. He shall have charge, subject to the direction and control of the mayor, of the administration of the financial affairs of the city, and to that end shall have authority and be required to:

(a) Cooperate with the mayor in compiling estimates for the general fund, public utility, and capital budgets.

(b) Supervise and control all encumbrances, expenditures and disbursements to insure that budget appropriations are not exceeded.

(c) Prescribe and install systems of accounts for all departments, offices and agencies of the city and provide instructions for their use; and prescribe the form of receipts, vouchers, bills or claims to be used and of accounts to be kept by all departments, offices and agencies of the city.

(d) Require daily, or at such other intervals as he may deem expedient, a report of receipts from each of such departments, offices and agencies, and prescribe the time and the manner in which moneys received by them shall be paid to the office of the director of finance or deposited in a city bank account under his control.

(e) Examine all contracts, purchase orders and other documents, except bonds and notes which create financial obligations against the city, and approve the same only upon ascertaining that an unexpended and unencumbered balance therefor and that money has been appropriated and allotted is available in such appropriation and allotment to meet the same, provided that the director of finance may give advance authorization for the expenditure from any appropriation for the purchase of supplies, materials, or equipment of such sum, within the current allotment of such appropriation as he may deem necessary during a period of not to exceed the ensuing three calendar months for the purchase of items not to exceed in cost fifty dollars for any one item, and immediately encumber such appropriation with the amount of such advance authorization, and thereafter, within the period specified, purchase orders for such items, to an aggregate not exceeding such authorization, shall be valid without the prior approval of the director of finance endorsed thereon, but each such purchase order shall be charged against such authorization and no such purchase order, which together with all such purchase orders previously charged within the period, specified shall exceed the amount of such authorization, shall be valid.

(f) Have custody of all public funds belonging to or under the control of the city, or any office, department or agency of the city government, and deposit all funds coming into his hands in such depositories as may be designated by resolution or ordinance of the council, or, if no such resolution or ordinance be adopted, by the mayor, subject to the requirements of law as to surety and the payment of interest on deposits. All such interest shall be the property of the city and shall be accounted for and credited to the proper account. He shall not be liable for any loss sustained as to funds of the city which are on deposit in such a designated bank.

(g) Audit and approve before payment, all bills, invoices, payrolls and other evidences of claims, demands or charges against the city government and with the advice of the department of law, determine the regularity, legality and correctness of such claims, demands or charges.

(h) Have custody of all investments and invested funds of the city or in its possession in a fiduciary capacity, unless otherwise provided by this act or by law, ordinance or the terms of any trust, and the safekeeping of all bonds and notes of the city and the receipt and delivery of city bonds and notes for transfer, registration and exchange.

(i) Have supervision over the preparation of bond ordinances, bonds, advertisements for sale of bonds, preparation of bond prospectuses, conduct of sale of bonds, and delivery of bonds, all subject to provisions of law and municipal ordinances, applicable thereto. Bonds shall be authenticated by the manual signature of the director of finance and shall bear the facsimile signature of the mayor and a facsimile of the seal of the city. Interest coupons transferable by delivery shall be attached to the bond and shall be authenticated by the facsimile signature of the director of finance.

(j) Supervise and direct the placing of all types of insurance carried by the city where the premiums in whole or in part are paid by the city, or the premiums in whole or in part are withheld through the payrolls; the amount of all types of insurance on which the city pays the premiums in whole or in part shall be determined by the council after a recommendation by the mayor.

(k) Submit to the mayor for presentation to the council not later than the twelfth day of each month, a statement showing in reasonable detail the revenues received by the city during the preceding month, the revenues received during the preceding month, the revenues received during that fiscal year up to and through the end of the preceding month, the expenditures made during the preceding month, and the accumu-

906

lated expenditures made during that fiscal year up to and through the end of the preceding month, together with a comparison of said items with the budget estimates.

(l) Furnish to the head of each department, office and agency of the city a copy of that portion of the statement as required in item (k) of this section, as same is related to his department, office or agency.

(m) Prepare and submit to the mayor at the end of each fiscal year, for the preceding year, a complete financial statement and report of the financial transactions of the city.

(n) Designate, with the approval of the mayor, and subject to the provisions of any merit or civil service system applicable to such city, an employee of the department of finance as deputy director of finance who during the temporary absence or incapacity of the director of finance shall have and perform all the powers and duties conferred or imposed upon the director of finance.

(o) Protect the interests of the city by withholding the payment of any claim or demand by any person, firm or corporation against the city until any indebtedness or other liability due from such person, firm or corporation shall first have been settled and adjusted.

(p) Collect all special assessments, license fees and other revenues of the city for whose collection the city is responsible and receive all money receivable by the city from the county, state or federal government, or from any court, or from any office, department or agency of the city.

(q) With approval of the mayor to inspect and audit any accounts or records of financial transactions which may be maintained in any office, department or agency of the city government apart from or subsidiary to the accounts kept in his office.

(r) Supervise through the division of purchases as provided for in section 6.07 of this act, and be responsible for the purchase, storage and distribution of all supplies, materials, equipment and other articles used by any office, department or agency of the city government.

6.05. When contracts and expenditures prohibited.—No officer, department or agency shall, during any budget year, expend or contract to expend any money or incur any liability, or enter into any contract which by its terms involves the expenditure of money, for any purpose, in excess of the amounts appropriated for that general classification of expenditure pursuant to this act. Any contract, verbal or written, made in

907

Exhibit A

violation of this act shall be null and void. Any officer or employee of the city who shall violate this section shall be guilty of a misdemeanor and, upon conviction thereof, shall be punishable as in case of misdemeanor conviction and shall also cease to hold his office or employment. Nothing in this section contained, however, shall prevent the making of contracts or the spending of money for capital improvements to be financed in whole or in part by the issuance of bonds, nor the making of contracts of lease or for services for a period exceeding the budget year in which such contract is made, when such contract is permitted by law.

**6.06. Fees shall be paid to city government.**—All fees received by any officer or employee of the city, shall belong to the city government and shall be paid daily to the department of finance.

**6.07. Division of purchases.**—There shall be established in the department of finance a division of purchases, the head of which shall be the city purchasing agent. The purchasing agent, pursuant to rules and regulations established by law, shall contract for, purchase, store and distribute all supplies, materials and equipment required by any office, department or agency of the city government. The purchasing agent shall also have power and shall be required to:

(1) Establish and enforce specifications with respect to supplies, materials, and equipment required by the city government;

(2) Inspect or supervise the inspection of all deliveries, of supplies, materials and equipment, and determine their quality, quantity and conformance with specifications;

(3) Have charge of such general storerooms and warehouses as the council may provide by resolution or ordinance;

(4) Transfer to or between offices, departments or agencies, or sell surplus, obsolete, or unused supplies, material and equipment;

(5) Perform such other duties as may be imposed upon him by resolution or ordinance.

**6.08. Competitive bidding.**—Before the purchasing agent makes any purchase of or contract for supplies, materials or equipment, he shall give ample opportunity for competitive bidding, under such rules and regulations, and with such exceptions, as the council may prescribe by resolution or ordinance, provided, however that the council shall not except individual contracts, purchases, or sales from the requirement of competitive bidding.

908

**6.09. Contracts for city improvements.**—Any city improvement costing more than $2,000 shall be executed by contract except where such improvement is authorized by the council to be executed directly by a city department in conformity with detailed plans, specifications and estimates. All such contracts for more than $2,000 shall be awarded to the lowest responsible bidder after such public notice and competition as may be prescribed by resolution or ordinance, provided the mayor shall have the power to reject all bids and to readvertise again. Alterations in any contract may be made when authorized by the council upon the written recommendation of the mayor.

**6.10. Accounting control of purchases.**—All purchases made and contracts executed by the purchasing agent shall be pursuant to a written requisition from the head of the office, department or agency whose appropriation is to be charged, and no contract or order shall be issued to any vendor unless and until the director of finance certifies that there is to the credit of such office, department or agency, a sufficient unencumbered appropriation balance to pay for the supplies, materials, equipment or contractual service for which the contract or order is to be issued.

**6.11. Borrowing in anticipation of revenues.**—In any budget year, in anticipation of the collection or receipt of revenues of the budget year, the council may by resolution authorize the borrowing of money by the issuance of negotiable notes of the city, each of which shall be designated "revenue note for the year 19.... (stating the budget year)." Such notes may be renewed from time to time; but all such notes, together with the renewals thereof, shall mature and be paid not later than the end of the fiscal year after the budget year in which the original notes have been issued. Such borrowing shall be subject to any limitation on amount provided by statute.

**6.12. Borrowing to meet emergency appropriations.**—In the absence of unappropriated available revenues to meet emergency appropriations under the provisions of section 5.16 of Article V, the council may by resolution authorize the issuance of notes, each of which shall be designated "emergency note" and may be renewed from time to time, but all such notes of any fiscal year and any renewals thereof shall be paid not later than the last day of the fiscal year next succeeding the budget year in which the emergency appropriation was made.

**6.13. Notes redeemable prior to maturity.**—No notes shall be made payable on demand, but any note may be made subject to redemption prior to maturity on such notice and at such time as may be stated in the note.

909

Exhibit A

6.14. **Sale of notes; report of sale.**—All notes issued pursuant to this act may be sold at not less than par and accrued interest at private sale without previous advertisement.

## Article VII. COUNCIL DISTRICTS.

7.01. **Number established.**—There shall be established nine (9) council districts to be designated respectively as district number 1, district number 2, district number 3, district number 4, district number 5, district number 6, district number 7, district number 8, and district number 9, which districts shall have as nearly as is reasonable, the same population. The designation and boundaries of the initial council districts shall be as specifically described and set forth in Appendix One hereof.

7.02. **Reapportionment.**—Whenever there shall be a change in population in any of the nine districts heretofore established, evidenced by a federal census of population published following the last federal census of population preceding the adoption of this act, or if within six months after there shall have been any change in the corporate limits, there shall be a reapportionment of the council districts in the manner hereinafter provided:

(1) The mayor shall within six months after the publication of each federal census of population for the city, following the last federal census of population preceding the adoption of this act, or if within six months after there shall have been any change in the corporate limits of the city, file with the council a report containing a recommended plan for reapportionment of the council district boundaries to comply with the following specifications:

(a) Each district shall be formed of contiguous and to the extent reasonably possible, compact territory, and its boundary lines shall be the center lines of streets or other well-defined boundaries.

(b) Each district shall contain as nearly as is reasonable the same population.

(2) The report shall include a map and description of the districts recommended and shall be drafted as a proposed ordinance and considered by the council as other ordinances are considered. Once filed with the clerk, the report shall be treated as an ordinance introduced by a council member.

(3) The council shall enact a redistricting ordinance within six months after receiving such report. If the council fails to enact the redistricting ordinance within the said six months, the redistricting plan submitted by the mayor shall

910

Exhibit A

become effective without enactment by the council, as if it were a duly enacted ordinance.

(4) Such redistricting ordinance shall not apply to any primary or regular or special election held within six months after its becoming effected. No incumbent councilman or member of the board or commission shall be deprived of his unexpired term of office because of such redistricting.

## Article VIII. SUCCESSION IN GOVERNMENT.

8.01. **Rights of officers and employees preserved.**—Nothing in this act contained, except as specifically provided, shall affect or impair the rights or privileges of officers or employees of the city or of any office, department or agency existing at the time when this act shall take effect, or any provision of law in force at the time when the mayor-council form of government shall be adopted and not inconsistent with the provisions of this act, in relation to the personnel, appointment, ranks, grades, tenure of office, promotion, removal, pension and retirement rights, civil rights or any other rights or privileges of officers or employees of the city or any office, department or agency thereof.

8.02. **Continuance of present officers.**—All persons holding administrative office at the time the mayor-council form of government is adopted shall continue in office and in the performance of their duties until provision shall have been made in accordance therewith for the performance of such duties or the discontinuance of such office. The powers conferred and the duties imposed upon any office, department or agency of the city by the laws of the state shall, if such office, department or agency, be abolished by this act or under its authority, be thereafter exercised and discharged by the office department or agency designated by the council unless otherwise provided herein.

8.03. **Status of officers and employees** holding positions when the mayor-council form of government is adopted.—Any person holding an office or position in the classified service of the city under any civil service or merit system applicable to the city when the mayor-council form of government shall be adopted shall be continued as such officer or employee in the classified service of the city under the mayor-council form of government and with the same status, rights and privileges and subject to the same conditions under such applicable civil service or merit system as if the mayor-council form of government had not been adopted.

8.04. **Transfer of records and property.**—All records, property and equipment whatsoever of any office, department or

911

912

agency or part thereof, all the powers and duties of which are assigned to any other office, department or agency by this act, shall be transferred and delivered to the office, department or agency to which such powers and duties are so assigned. If part of the powers and duties of any office, department or agency or part thereof are by this act assigned to another office, department or agency, all records, property and equipment relating exclusively thereto shall be transferred and delivered to the office, department or agency to which such powers and duties are so assigned.

8.05. Continuity of offices, departments or agencies.—Any office, department or agency provided for in this act with a name or with powers and duties the same or substantially the same as those of an office, department or agency heretofore existing shall be deemed to be a continuation of such office, department or agency and, until otherwise provided, shall exercise its powers and duties in continuation of their exercise by the office, department or agency by which the same were heretofore exercised and, until otherwise provided, shall have power to continue any business, proceeding or other matter within the scope of its regular powers and duties commenced by an office, department or agency by which such powers and duties were heretofore exercised. Any provision in any law, rule, regulation, contract, grant or other document relating to any office, department or agency, shall, so far as not inconsistent with the provisions of this act, applying to such office, department or agency provided for by this act.

8.06. Continuance of contracts and public improvements.— All contracts entered into by the city, or for its benefit, prior to the adoption by such city of the mayor-council form of government, shall continue in full force and effect. Public improvements for which legislative steps have been taken under laws existing at the time of the adoption of the mayor-council form of government may be carried to completion as nearly as practicable in accordance with the provisions of such existing laws.

8.07. Pending actions and proceedings.—No action or proceeding, civil or criminal, pending at the time of the adoption of the mayor-council form of government, brought by or against the city or any office, department or agency or officer thereof, shall be affected or abated by the adoption of the mayor-council form of government or by anything therein contained in this act; but all such actions or proceedings may be continued notwithstanding that functions, powers and duties of any office, department or agency or officer party thereto may by or under this act be assigned or transferred to another office, department or agency or officer, but in that event the same may be prosecuted or defended by the head of the office, de-

913

fended by the head of the office, department or agency to which such functions, powers and duties have been assigned or transferred by or under this act.

8.08. Pension and relief funds.—All laws and parts of laws relating to pension, retirement and relief funds for policemen, firemen and other employees of the city, contained in the general or local laws of the state or in Title 62 of the Code of Alabama, as amended, as the same may apply and be in effect with respect to any city at the time when such city shall elect to be governed by the provisions of this act, shall continue in full force and effect, and without interruption or change as to any rights which have been acquired thereunder, after adoption of the mayor-council form of government by such city.

8.09. Park, play ground and fairground authority.—All laws and parts of laws relating to establishment of an authority for fairgrounds, parks, exhibits, exhibitions and other installations, facilities and place for the amusement, entertainment, recreation and cultural development of the citizens of a city, and for the powers, authority, mode of financing and conduct or in Title 62 of the Code of Alabama, as amended, as the same may apply and be in effect with respect to any city at the time when such city shall elect to be governed by the provisions of this act, shall continue in full force and effect, and without interruption or change as to the establishment or conduct of any authority created thereunder, after adoption of the mayor-council form of government by such city.

8.10. When provisions take effect.—For the purpose of nominating and electing members of the council and the mayor, the provisions of this act shall become applicable to any city adopting the mayor-council form of government upon the filing of the certificate of adoption by the judge of probate with the mayor or other chief executive office of the city as provided for in section 1.06 of Article I hereof. For all other purposes the provisions of this act shall become applicable to said city at the time when the first council of such city elected under the provisions hereof takes office and qualifies.

8.11. Continuance of ordinances and resolution.—All ordinances and resolutions of the city in effect at the time of adoption by the city of the mayor-council form of government herein set up shall continue in effect unless and until changed or repealed by the council.

Article IX.   GENERAL PROVISIONS.

9.01.   Removal of officers and employees.—Subject to the

provisions of any civil service or merit system applicable to the city, any officer or employee to whom the mayor, or a head of any office, department or agency may appoint a successor, may be removed by the mayor or other appointing officer at any time, and the decision of the mayor, or other appointing officer, shall be subject to appeals therefrom, if any provided by applicable law.

9.02. **Right of mayor and other officers in council.**—The mayor, the heads of all departments, and such other officers of the city as may be designated by the council, shall be entitled to attend meetings of the council, but shall have no vote therein. The mayor shall have the right to take part in the discussion of all matters coming before the council, and the department heads and other officers shall be entitled to take part in all discussions of the council relating to their respective offices, departments or agencies.

9.03. **Investigations by council or mayor.**—The council, the mayor, or any person or committee authorized by either of them, shall have power to inquire into the conduct of any office, department, agency or officer of the city and to make investigations as to municipal affairs, and for that purpose may subpoena witnesses, administer oaths, and compel the production of books, papers and other evidence. Failure to obey such subpoena or to produce books, papers or other evidence as ordered under the provisions of this section shall constitute a misdemeanor and shall be punishable by a fine not to exceed $100.00 or by imprisonment not to exceed six months, or both.

9.04. **Contracts extending beyond one year.**—No contract involving the payment of money out of the appropriation of more than one year shall be made for a period of more than five years, nor shall any such contract be valid unless made or approved by resolution or ordinance.

9.05. **Publicity of records.**—All records and accounts of every office, department or agency of the city shall be open to inspection by any citizen, any representative of a citizens' organization or any representative of the press at all reasonable times and under reasonable regulations established by the mayor, except records and documents the disclosure of which would tend to defeat the lawful purpose which they are intended to accomplish.

9.06. **Officers and employees not to be privately interested in city's contracts.**—No member of the council, the mayor, officer or employee elected or appointed shall be interested, directly or indirectly, in any contract for work or material, or for the profits thereof, or services to be furnished or performed for the city, and no such member of the council, the mayor,

914

Exhibit A

officer or employee shall be interested, directly or indirectly, in any contract for work or material, or the profits thereof, or services to be furnished or performed for any person, firm or corporation operating interurban railway, street railway, gas works, electric light or power plant, heating plant, telegraph line or telephone exchange within the territorial limits of said city. No such member of the council, officer or employee of such city shall be interested in or an employee or attorney of and corporation operating any public service utility within said city. No such member of the council, officer or employee shall accept or receive, directly or indirectly, from any person, firm or corporation operating within the territorial limits of said city any interurban railway, railway, street railway, gas works, water works, electric light or power plant, heating plant, telegraph line, or telephone exchange, or operating under a public franchise, any frank, free pass, free ticket or free service, or accept or receive, directly or indirectly, from any such person, firm or corporation, any gift or other thing of value, or any service upon terms more favorable than are granted to the public generally. Any violation of the provisions of this section shall be a misdemeanor, and upon conviction thereof, the guilty person shall be punished by a fine of not less than one hundred nor more than three hundred dollars, and may be imprisoned in the county jail for not more than ninety days. Every such contract or agreement shall be voidable by the mayor or the council. Such prohibition shall not apply to policemen or firemen in uniform nor to policemen in their official capacity; nor shall service to city officials in the discharge of their duty; nor free transportation shall not apply to policemen or firemen in uniform, nor to any service upon terms more favorable than are granted to the public generally. Any violation of the provisions of this section shall be a misdemeanor, and upon conviction thereof, the guilty person shall be punished by a fine of not less than one hundred nor more than three hundred dollars, and may be imprisoned in the county jail for not more than ninety days. Every such contract or agreement shall be voidable by the mayor or the council. Such prohibition in uniform nor to policemen in their official capacity; nor shall service to city officials in the discharge of their duty; nor free transportation shall not apply to policemen or firemen in uniform nor to policemen heretofore provided by any franchise or ordinance be affected by this section.

9.07. **Official bonds.**—The director of finance, and such other officers or employees as the council may by general ordinance required so to do, shall give bond in such amount and with such surety as may be approved by the council. The premiums on such bonds shall be paid by the city.

9.08. **Oath of office.**—Every officer of the city shall, before entering upon the duties of his office, take and subscribe to the following oath or affirmation, to be filed and kept in the office of the city clerk:

" I solemnly swear (or affirm) that I will support the Constitution and will obey the laws of the United States and of the State of Alabama, that I will, in all respects, observe the provisions of the ordinances of the city of ............ and will faithfully discharge the duties of the office of ............ "

915

## Article X. ABANDONMENT OF MAYOR-COUNCIL FORM OF GOVERNMENT.

10.01 **Generally.**—No city may change from the mayor-council form of government within two years after the adoption thereof. At the end of such period, or at any time thereafter, the city may change its form of municipal government, either to:

(a) The form of municipal government applicable to the city prior to its adoption of the mayor-council form of government, or to

(b) The council-manager form of municipal government provided such enabling legislation has been enacted.

(c) One of the commission forms of municipal government provided by Title 37, Alabama Code of 1940, as amended and supplemented.

10.02. **Petition for change of form of government.**—Such change shall, however, first be initiated by petition and submitted to a vote of the qualified electors at an election and shall receive at such election a majority of the votes "yes" or in favor thereof in the same manner and subject to the same requirements as provided in sections 1.02 to 1.05 of Article I of this act except that the proposition on the ballot shall be changed to reflect the proposed form of municipal government to be submitted to the vote of the governing body of such newly adopted form of municipal government shall be elected as soon as may be under the provisions of law applicable thereto; and upon their election and qualification for office the term of office of all members of the council under the mayor-council form of government shall terminate.

10.03. **No election on change more often than two years.**—No election on the abandonment of the mayor-council form of government shall be held within two years after any other election thereon.

## Article XI. GENERAL STATUTORY PROVISIONS.

11.01. **Effect of act on existing law.**—All laws and parts of laws, general, local or special, relating to or affecting the city, its powers, functions, duties and property, in force when this act shall take effect, are hereby continued in effect; but all such laws relating to the exercise of powers, functions and duties by the commission or council-manager or some other form of government shall be superseded to the extent that the same are inconsistent with the provisions of this act.

916

11.02. **Separability clause.**—If any section or part of section of this act shall be held invalid by a court of competent jurisdiction, such holding shall not affect the remainder of this act nor the context in which such section or part of section so held invalid may appear; except to the extent that an entire section or part of section may be inseparably connected in meaning and effect with the section or part of section to which such holding shall directly apply.

11.03. **Short title.**—This act shall be known and may be cited as the "Mayor-Council Act of 1973."

11.04. **Effective date.**—This act shall become effective immediately upon its passage and approval by the Governor, or upon its otherwise becoming a law.

Approved, August 28, 1973.

Time: 3:00 P.M.

## APPENDIX ONE

## COUNCIL DISTRICTS

### COUNCIL DISTRICT 1

Beginning at the point of intersection of US 231 and the city limits in Section 33, Range 18, Township 17, proceed southerly along the centerline of that highway to intersection with Mt. Meigs Road, thence proceed westerly along the centerline of that road to intersection with Ann Street, thence proceed southerly along the centerline of that street to intersection with Thrasher Street, thence proceed easterly along the centerline of that street to the termination of Thrasher Street, thence continue to proceed easterly along the northern boundary of Section 16, Range 18, Township 16, to the northeast corner of said Section 16, thence proceed southerly along the eastern boundary of said Section 16 to intersection with Harrison Road, thence proceed easterly along the centerline of that road to intersection with Perry Hill Road, thence continue to proceed easterly along the northern boundary of the southeastern quarter of Section 16, Range 18, Township 16, to intersection with the city limits, thence proceed easterly along the city limits and continue to proceed along the city limits in such a fashion as to arrive at the point of origin. The area included within this boundary shall compose Council District One.

### COUNCIL DISTRICT 2

Beginning at the point of intersection of US 231 and the city limits in Section 33, Range 18, Township 17, proceed southerly along the centerline of that highway to intersection with

917

ORDINANCE NO. 42-2007

AN ORDINANCE SETTING THE DATES
FOR GENERAL MUNICIPAL ELECTIONS AND RUNOFF ELECTIONS AND
THE DATES FOR FILING AS CANDIDATES IN SUCH ELECTIONS

BE IT ORDAINED BY THE COUNCIL OF THE CITY OF MONTGOMERY,
ALABAMA as follows:

SECTION 1.  Pursuant to and under the authority granted by *Alabama Code* (1975)
§11-46-5, as amended, the City Council of the City of Montgomery, Alabama elects by
ordinance to have the general municipal election and runoff election required by Act 618,
*Acts of Alabama (1973)*, to be held at the same time required by Article 2, Chapter 46 of
Title 11, *Alabama Code (1975)*, as amended, including specifically §11-46-21 thereof, as
follows:

    (A)    The regular municipal elections in the City of Montgomery shall be
held on the fourth Tuesday in August 2007 and quadrennially
thereafter, and, when necessary as provided in said Act 618, a second
or runoff election shall be held on the sixth Tuesday next thereafter
following the general election.

    (B)    The date for filing a statement of candidacy for the office of Mayor or
for member of the City Council shall be no earlier than the first
Tuesday in July and no later than the third Tuesday in July preceding
the regular municipal election for Mayor and members of the City
Council.

Provided nothing contained in Article 2, Chapter 46 of Title 11, *Alabama Code
(1975)*, as amended, shall have the effect of changing the beginning of the term of
office or the time for taking office or the year during which a municipal election is to
be held, or the qualifications or requirements of candidates for election to the office
of Mayor or member of the City Council.

SECTION 2.  The provisions of said Act 618 relating to the dates of the elections
and for filing statements of candidacy for Mayor or City Council in a general municipal
election are superseded to the extent the same are in conflict herewith.

SECTION 3.  This Ordinance shall become effective upon passage, approval and
publication or as otherwise provided by law.

Councillor Spear made a motion to suspend the rules in order that the foregoing
ordinance could be placed upon its final passage, which motion carried with the following
vote:

| | | |
|---|---|---|
| AYES: | UNANIMOUS | --9 |
| NAYS: | NONE | --0 |
| ABSTAINED: | NONE | --0 |
| ABSENT: | NONE | --0 |

The rules having been suspended, Councillor Spear made a motion to adopt the
foregoing ordinance, which motion carried with the following vote:

| | | |
|---|---|---|
| AYES: | UNANIMOUS | --9 |
| NAYS: | NONE | --0 |
| ABSTAINED: | NONE | --0 |
| ABSENT: | NONE | --0 |

The Clerk stated this was the time and place to hear and consider the following
proposed ordinance:

Exhibit B

1     HB866

2     91038-3

3     By Representative Holmes (N & P)

4     RFD: Montgomery County Legislation

5     First Read: 09-MAY-07

Exhibit C

1    91038-3:n:04/12/2007:MF/ll LRS2007-2200R2

2

3

4

5

6

7

8

9                              A BILL

10                         TO BE ENTITLED

11                            AN ACT

12

13          Amending Act 618, H. 796, 1973 Regular Session,

14    insofar as relating to dates of elections and related election

15    matters in municipalities that heretofore adopted or hereafter

16    adopted a municipal form of government under Act 618; amending

17    Sections 3.01, 3.02, 3.03, 3.12, 4.01, and 4.02 of Act 618, H.

18    796, 1973 Regular Session of the Legislature, as last amended,

19    so as to provide further for the dates of elections for

20    council members and the mayor; date for filing statement of

21    candidacy; date for qualifying; date for induction into

22    office; carryover of current officeholders; and related

23    matters.

24    BE IT ENACTED BY THE LEGISLATURE OF ALABAMA:

25          Section 1. Section 3.01 of Act 618 of the 1973

26    Regular Session (Acts 1973, p. 879), is amended to read as

27    follows:

Exhibit C

1    "Section 3.01. Number, election, term. The council
2    shall consist of nine members who shall be known as district
3    councilmen. Subsequent to the election of the first council,
4    all regular general municipal elections of councilmen shall be
5    held on the first Tuesday in October in the year during which
6    its next municipal election is to be held and quadrennially
7    thereafter, and when necessary, a second or runoff election
8    shall be held on the sixth Tuesday next thereafter following
9    the regular election. Except as otherwise provided in this
10   act, the calling of such elections, notice of such elections,
11   qualifications of candidates, and all other matters concerning
12   such elections shall be in the same manner as provided by law
13   in respect to municipal elections in cities of this state
14   which have a population of its size according to the latest
15   Federal Decennial Census for cities not organized under a
16   commission form of government. The terms of councilmen so
17   elected shall be four years commencing on the date that they
18   shall take office which date shall be the third Tuesday in
19   November following their election. Those individuals serving
20   as a member of the council on the effective date of this 2007
21   amendatory act shall serve until the third Tuesday in November
22   following the effective date of this amendatory act.
23       "Nothing contained in this amendatory act shall have
24   the effect of changing the year during which a regular
25   municipal election is to be held, or the qualifications or
26   requirements of candidates for election to the office of

Exhibit C

```
 1    council member. Provisions of this act and other laws shall be
 2    read in pari materia with this amendatory act."
 3            Section 2. Section 3.02 of Act 618 of the 1973
 4    Regular Session, as amended by Act 81-835 of the 1981 Regular
 5    Session (Acts 1981, p. 1484), Act 87-97 of the 1987 Regular
 6    Session (Acts 1978, p. 103), and Act 2001-547 of the 2001
 7    Regular Session (Acts 2001, p. 1101), is amended further to
 8    read as follows:
 9            "Section 3.02. STATEMENT OF CANDIDACY. Any person
10    desiring to become a candidate at any election for the offices
11    of councilperson may become such a candidate by filing in the
12    office of the judge of probate of the county in which such
13    city is situated, a statement in writing of such candidacy,
14    accompanied by an affidavit taken and certified by such judge
15    of probate or by a notary public that such person is duly
16    qualified to hold the office for which he/she desires to be a
17    candidate. Such statement shall be filed no earlier than the
18    fourth Tuesday in July, and no later than the third Tuesday in
19    August preceding the regular municipal election, and shall be
20    in substantially the following form:
21            "'State of Alabama, _____ County. I, the
22    undersigned, being first duly sworn, depose and say that I am
23    a citizen of the City of _____, in said State and County
24    and reside at _____ in said City of
25    _____, that I desire to become a candidate for the office
26    of district councilman for the _____ district, in said city
27    at the election for said office to be held on the _____ day
```

Exhibit C

1   of October next and that I am duly qualified to hold said

2   office if elected thereto and I hereby request that my name be

3   printed upon the official ballot at said election. Signed

4   _____. Subscribed and sworn to before me by said

5   _____ on this _____ day of _____, 2___, and filed in

6   this office for record on said day. _____, Judge

7   of Probate.' Said statement shall be accompanied by a

8   qualifying fee in the amount of $100, (which fee shall be paid

9   over by the judge of probate to the general fund of the city),

10  or a petition of at least 200 signatures of registered voters

11  in said council district. At every such election all ballots

12  to be used by voters shall be printed and prepared by the

13  election commission or other body or official charged by law

14  with the duty of conducting elections and at the expense of

15  said city, and shall contain the names of all candidates

16  directly underneath the words 'For Members of the Council.' No

17  name shall appear upon said ballot as a candidate for election

18  except the names of such persons as have become candidates

19  according to provisions as above set forth. No ballot shall be

20  used at any such election except the official ballot prepared

21  by the election commission or other body or official charged

22  by law with the duty of conducting elections, except that the

23  names of candidates may be suitably placed on voting machines

24  if such machines are used to conduct such election. No primary

25  election shall be held for the nomination of candidates for

26  the office of councilman and candidates shall be nominated

27  only as hereinabove provided."

Exhibit C

1            Section 3. Section 3.03 of Act 618 of the 1973

2    Regular Session (Acts 1973, p. 879), is amended to read as

3    follows:

4           "Section 3.03. Qualification. Every person who shall

5    be elected or appointed to the office of member of the

6    council, shall, on or before the third Tuesday of November

7    following his or her election or before the Tuesday following

8    the date of his or her appointment qualify by making oath that

9    he or she is eligible for the office and will execute the

10    duties of same according to the best of his or her knowledge

11    and ability. The oath may be administered by any person

12    authorized to administer an oath under the laws of Alabama."

13           Section 4. Section 3.12 of Act 618 of the 1973

14    Regular Session (Acts 1973, p. 879), as amended by Act 81-835

15    of the 1981 Regular Session (Acts 1981, p. 1484), is further

16    amended as follows:

17           "Section 3.12. Induction of council into office;

18    meetings of council. The first meeting of each newly elected

19    council for induction into office, shall be held at two

20    o'clock on the third Tuesday in November next following its

21    election, after which the council shall meet regularly at such

22    times as may be prescribed by its rules. All meetings of the

23    council shall be open to the public."

24           Section 5. Section 4.01 of Act 618 of the 1973

25    Regular Session (Acts 1973, p. 879), is amended to read as

26    follows:

Exhibit C

```
 1              "Section 4.01. Election; term; qualification. The
 2      first mayor shall be elected at the same election at which the
 3      councilmen are elected under the provisions of Section 1.07 of
 4      Article I of this act and shall hold office until the second
 5      Tuesday in November of that year ending in an odd number which
 6      would give him or her a term of office most closely
 7      approximating four years and until his or her successor is
 8      elected and qualified. The first mayor shall qualify and take
 9      office in the manner hereinafter prescribed on the second
10      Monday following the date the election of all nine councilmen
11      is completed or on the second Monday following the election of
12      such mayor whichever last occurs.
13              "The regular general municipal election for mayor
14      shall be held on the first Tuesday in October of the year
15      during which its next municipal election is to be held and
16      quadrennially thereafter. The mayor elected at any such
17      regular election shall, on or before the third Tuesday of
18      November following his or her election, qualify by making oath
19      that he or she is eligible for the office and will execute the
20      duties of same according to the best of his or her knowledge
21      and ability. The oath may be administered by any person
22      authorized to administer an oath under the laws of Alabama.
23              "At any election for mayor, the candidate receiving
24      the highest number of votes for the office shall be elected
25      thereto, provided such candidate receives a majority of all
26      votes cast for such office. If at the first election a
27      majority is not received by any candidate for the office of
```

Exhibit C

1    mayor, then a second election shall be held on the sixth

2    Tuesday thereafter in the same mode and manner and under the

3    same rules and regulations provided in Section 1.07 of Article

4    I hereof with respect to the election of the first mayor. The

5    individual serving as mayor on the effective date of this 2007

6    amendatory act shall serve until the third Tuesday in November

7    following the effective date of this amendatory act.

8          "Nothing contained in this amendatory act shall have

9    the effect of changing the year during which a regular

10    municipal election is to be held, or the qualifications or

11    requirements of candidates for election to the office of

12    mayor. Other provisions of this act and other laws shall be

13    read in pari materia with this amendatory act."

14          Section 6. Section 4.02 of Act 618 of the 1973

15    Regular Session (Acts 1973, p. 879), as amended by Act 713 of

16    the 1977 Regular Session (Acts 1977, p. 1255), Act 87-97 of

17    the 1987 Regular Session (Acts 1987, p. 103), and Act 2001-547

18    of the 2001 Regular Session (Acts 2001, p. 1101), is further

19    amended as follows:

20          "Section 4.02. Statement of Candidacy. Any person

21    desiring to become a candidate at any election for the office

22    of mayor may become such candidate by filing in the office of

23    the judge of probate of the county in which such city is

24    situated, a statement in writing of such candidacy,

25    accompanied by a petition signed by one-fourth of one percent

26    of the registered voters of such city endorsing the candidacy

27    of such candidate and by an affidavit taken and certified by

Page 7

Exhibit C

1   such judge of probate or by a notary public that such person
2   is duly qualified to hold the office for which he/she desires
3   to be a candidate. Such statement shall be filed no earlier
4   than the fourth Tuesday in July and no later than the third
5   Tuesday in August preceding the election, and shall be in
6   substantially the following form:
7           "'State of Alabama, _____ County. I, the
8   undersigned, being first duly sworn, depose and say that I am
9   a citizen of the City of _____, in said State and
10  County, and reside at _____ in said City of _____,
11  that I desire to become a candidate for the office of mayor in
12  said city at the election for said office to be held on the
13  _____ day of October next and that I am duly qualified to
14  hold said office if elected thereto and I hereby request that
15  my name be printed upon the official ballot at said election.
16  Signed _____; subscribed and sworn to before me by
17  said _____ on this _____ day of _____,
18  2_____. _____, Judge of Probate.' Said statement
19  shall be accompanied by a qualifying fee in an amount equal to
20  $300.00 which qualifying fee shall be paid over by the judge
21  of probate to the general fund of the city; provided, however,
22  that if a person desiring to qualify as a candidate cannot
23  afford to pay the qualifying fee, he/she may submit, in lieu
24  of said fee, a signed affidavit to that affect accompanied by
25  a petition requesting his/her candidacy signed by not less
26  than 1/4 of one percent of the registered voters qualified to
27  vote in the mayoral election, as determined by the judge of

Exhibit C

1  probate. At every such election on ballots to be used by
2  voters shall be printed and prepared by the election
3  commission or other body or official charged by law with the
4  duty of conducting elections and at the expense of said city,
5  and shall contain the names of all candidates directly
6  underneath the words 'For Mayor.' No names shall appear upon
7  said ballot as a candidate for election except the names of
8  such persons as have been candidates according to provision as
9  above set forth; no ballot shall be used at any such election
10 except the official ballot prepared by the election commission
11 or other body or official charged by law with the duty of
12 conducting elections, except that the names of candidates may
13 be suitably placed on voting machines if such machines are
14 used to conduct such election. No primary election shall be
15 held for the nominations of candidates for the office of mayor
16 and candidates shall be nominated only as hereinabove
17 provided."

18        Section 7. This act shall become effective
19 immediately following its passage and approval by the
20 Governor, or its otherwise becoming law.

Exhibit C

**montgomeryadvertiser.com**

**Montgomery Advertiser**

This is a printer friendly version of an article from the **The Montgomery Advertiser**
To print this article open the file menu and choose Print.

◄ Back

---

# Time short for election bill

**By Jamie Kizzire**
**jkizzire@gannett.com**

June 1, 2007

The chances of Montgomery changing city election dates grew slimmer Thursday after a local senator kept it from coming up for a vote.

That leaves only one legislative day for the bill to pass. It has already passed the House of Representatives.

Sen. Larry Dixon, R-Montgomery, said he believes the dates are being moved simply to allow an influx of college students to vote and possibly sway the election. The original date falls during a time when many college students would be on break.

The head of the Alabama Democratic Conference said it's not about students but protecting the voting rights of military voters overseas.

"What we're supposed to do, as far as I'm concerned, is to set elections for the convenience of the people in this city and not hold them up to allow an influx of college students to be able to vote in this election," Dixon said.

City officials have said they are simply protecting constitutional rights of voters by moving the election date changed from Oct. 2 to Oct. 9. It also sets a Nov. 13 runoff, if needed.

The move was made to allow college students to qualify to vote and possibly even run for office, if they choose, Michael Briddell, executive assistant to Mayor Bobby Bright has said. It also gives military voters serving overseas enough time to vote by absentee ballot.

Briddell has denied the move is being used for political advantage.

"The way everything is structured, the Legislature is holding the high cards," he said.

The issue is protecting the military's voting rights, said Joe Reed, chairman of the Alabama Democratic Conference. The group is the black wing of the state Democratic Party. He said student voting is not the issue.

"It's hurting the soldiers" by not passing the bill, Reed said after contacting the *Montgomery Advertiser* on Thursday after an initial story on the bill.

Briddell said the failure to pass the bill would not disenfranchise military voters because the city can still have elections giving military voters enough time to vote, all without legislative approval.

Briddell said Reed came before the City Council in a work session and "spoke passionately" about moving the election dates because it was about protecting the students. The effort to get legislative

approval for the date change came after that meeting.

Reed could not be reached for additional comment.

"This is about Joe Reed having a larger block of votes to impact the city election," Dixon said. "I'm not going to help."

Sen. Quinton Ross, D-Montgomery, didn't rule out the possibility the bill might pass on the last legislative day, which will be Thursday. He also said the voting rights of students should be protected.

"They're contributing to the tax base," Ross said.

---

STATE OF ALABAMA                    )
COUNTY OF MONTGOMERY                )

### AFFIDAVIT OF ALFRED SMITH

    1.    My name is Alfred Smith. I am over the age of nineteen years, and I have personal knowledge of the matters set forth herein.

    2.    I am the Assistant Vice President for Academic Affairs at Alabama State University.

    3.    In that capacity, I have several duties, including overseeing the university's Office of Admissions.

    4.    Based upon the records of the Office of Admissions, as of this date, Alabama State University has admitted 4,951 incoming freshmen and transfer students for the 2007-08 academic year. Of those, 2,809 have addresses outside Montgomery, Alabama.

ALFRED SMITH

SWORN TO AND SUBSCRIBED TO ME
on this the _1st_ day of _August_, 2007.

Notary Public

NOTARY PUBLIC STATE OF ALABAMA AT LARGE
MY COMMISSION EXPIRES:  Oct 18, 2010
BONDED THRU NOTARY PUBLIC UNDERWRITERS
My Commission Expires

Exhibit E

**Montgomery Municipal Election Timetable**

| Event | Act 618 | Ord. 42-2007 |
|---|---|---|
| Qualifying opens | 28 August (4th Tuesday) | 3 July (1st Tuesday) |
| Qualifying closes | 25 September (4th Tuesday) | 17 July (3rd Tuesday) |
| Students report to ASU | 23 August | 23 August |
| Residency deadline for voters (30 days before election) | 10 September | 29 July |
| Voter registration deadline (10 days before election) | 29 September | 18 August |
| Election | 9 October (2nd Tuesday) | 28 August (4th Tuesday) |
| Runoff | 30 October (3 weeks after election) | 9 October (3 weeks after election) |
| Installation in office | 13 November (2nd Tuesday) | 13 November (2nd Tuesday) |

Exhibit F



**U.S. Department of Justice**

Civil Rights Division

JKT:MSR:NT:jdh
DJ 166-012-3
2007-3091

*Voting Section - NWB*
*950 Pennsylvania Avenue, NW*
*Washington, DC 20530*

July 23, 2007

Larry T. Menefee, Esq.
407 South McDonough
Montgomery, Alabama 36104

Dear Mr. Menefee:

This refers to Ordinance No. 42-2007, which provides for changes in the dates for qualifying and voting in municipal elections for mayor and council members for the City of Montgomery in Montgomery County, Alabama, submitted to the Attorney General pursuant to Section 5 of the Voting Rights Act, 42 U.S.C. 1973c. We received your submission on June 13, 2007, and on June 14, 2007, we expedited consideration and precleared the submitted changes.

Title 28 C.F.R. 51.43 provides that the Attorney General has the right to reexamine a submission if additional information is received within the sixty-day period which indicates the possibility of a prohibited discriminatory purpose or effect. The sixty-day review period of this submissions ends on August 13, 2007. On July 13, 2007, we received a letter alleging that the proposed changes are discriminatory under Section 5. Accordingly, the Attorney General is reexamining the submitted changes. Furthermore, in view of the additional information we have received, we find the information contained in the submission is insufficient to enable us to determine that the proposed changes do not have the purpose and will not have the effect of denying or abridging the right to vote on account of race, color, or membership in a language minority group, as required under Section 5. The following information is necessary so that we may complete our review of your submission:

1. A statement of the legal authority of the Council to change the municipal election date, which is set by state statute. See *Siegelman v. Folmar*, 432 So. 2d 1246, 1248 (Ala. 1983).

2. An explanation of all alternative dates considered formally or informally and the reason for their rejection and the selection of the proposed dates.

3. Copies of all records of all meetings and hearings during which the submitted changes were discussed or voted on, and copies of all press accounts and public comments concerning the selection of municipal election dates.

Exhibit G

-2-

4. In addition, please respond to the allegations that moving the 2007 election date from October to August, was intended to and will interfere with voter registration by African American students at Alabama State University who are eligible to register for and vote in elections of the City of Montgomery

The Attorney General has sixty days to consider a completed submission pursuant to Section 5. This sixty-day review period will begin when we receive the information specified above. See Procedures for the Administration of Section 5 of the Voting Rights Act (28 C.F.R. 51.37). Also, we remind you that if no response is received within sixty days of this request, the Attorney General may object to the proposed change consistent with the burden of proof placed upon the submitting authority. See 28 C.F.R. 51.40 and 51.52(a) and (c). Changes which affect voting are legally unenforceable unless Section 5 preclearance has been obtained. *Clark* v. *Roemer*, 500 U.S. 646 (1991); 28 C.F.R. 51.10. Therefore, please inform us of the action the City of Montgomery plans to take to comply with this request.

If you have any questions concerning this letter or if we can assist you in obtaining the requested information, you should call Ms. Nicole Thorpe (202-514-6334) of our staff. Refer to File No. 2007-3091 in any response to this letter so that your correspondence will be channeled properly.

Sincerely,

John Tanner
Chief, Voting Section



**U.S. Department of Justice**

Civil Rights Division

*Voting Section – NWB*
*950 Pennsylvania Avenue, NW*
*Washington, DC 20530*

JKT:YR:NT:jdh
DJ 166-012-3

August 7, 2007

Dr. Joe L. Reed
Chairman, Alabama Democratic Conference
P.O. Box 6233
Montgomery, Alabama 36106

Dear Dr. Reed:

This is in response to your July 12, 2007, letter regarding your objections to voting changes in Montgomery, Alabama. At issue are changes in the dates for qualifying and voting in municipal elections for mayor and councilmembers in the City of Montgomery, Alabama, pursuant to Ordinance No. 42-2007. The City made a submission containing these changes on June 13, 2007.

Our June 14, 2007 letter to the City on this matter granted preclearance but noted that under the statute, we could reconsider that request. We have reconsidered that request and requested additional information concerning the changes on July 23, 2007. As set forth in our July 23, 2007 letter, the changes have not been finally precleared and remain legally unenforceable until they are precleared.

On July 31, 2007, we received the City's response to the request for more information, and it is our hope to expedite our review. Until we make a final determination, the change in election date remains legally unenforceable. We have sent a copy of this letter to you *via* facsimile.

If you have any further questions, please feel free to call Ms. Nicole Thorpe (202-514-6334), of our staff, to discuss these voting changes.

Sincerely,

John Tanner
Chief, Voting Section

Exhibit H

```
Court Name: U S DISTRICT COURT - AL/M
Division: 2
Receipt Number: 4602000158
Cashier ID: benrobi
Transaction Date: 08/16/2007
Payer Name: EDWARD STILL LAW FIRM
------------------------------------
CIVIL FILING FEE
 For: EDWARD STILL LAW FIRM
 Case/Party: D-ALM-2-07-CV-000738-001
 Amount:        $350.00
------------------------------------
CHECK
 Check/Money Order Num: 2644
 Amt Tendered:  $350.00
------------------------------------
Total Due:         $350.00
Total Tendered: $350.00
Change Amt:        $0.00

JANET MAY V. CITY OF MONTGOMERY
```