IN THE DISTRICT COURT OF THE UNITED STATES FOR THE
MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | |
|---|---|
| **Janet May, et al.,**<br><br>             Plaintiffs,<br><br>      v.<br><br>**City of Montgomery, Alabama,** a municipal corporation; **Bobby N. Bright,** in his official capacity as Mayor of the City of Montgomery<br><br>             Defendants. | CIVIL ACTION NO.<br>2:07 cv 738-MHT-WC |

# Amended Complaint
# and Motion for Preliminary Injunction

The plaintiffs file this amended complaint to add two additional plaintiffs (Duncan Kirkwood and Kenyada S. Adams) and two additional paragraphs (¶¶ 5a and 5b) concerning them.  No responsive pleading has been served.

   1.  This is an action seeking preliminary and permanent injunctions against the enforcement of Ordinance 42-2007 of the City of Montgomery. **This ordinance calls a city election for the City of Montgomery for 28 August 2007 in violation of federal law and must be enjoined immediately to prevent irreparable harm to the plaintiffs and others.**

1

2. This action arises under Sections 2 and 5 of the Voting Rights Act, 42 U.S.C. §§ 1973 and 1973c.  This Court has jurisdiction to hear this matter under 28 U.S.C. §§ 1331 and 1343.  This Court also has supplemental jurisdiction over a related claim arising under state law under 28 U.S.C. § 1367.

## Parties

3. Janet May is a black citizen of the United States and the State of Alabama, a resident of the City of Montgomery, the incumbent City Councilor on the Montgomery City Council for District 3, and a registered voter in Montgomery County.

4. John Dow is a black citizen of the United States and the State of Alabama, a resident and registered voter in the City of Montgomery, and a candidate for mayor.

5. William Boyd is a black citizen of the United States and the State of Alabama, a resident and registered voter in the City of Montgomery, and a candidate for mayor.

    a. The plaintiff Duncan Kirkwood is a black citizen of the United States and the State of Alabama, a resident of Montgomery City Council District 3, and a registered voter in the City and County of Montgomery.

    b. The plaintiff Kenyada S. Adams is a black citizen of the United States, a student who has recently enrolled at Alabama State University, a resident of Montgomery City Council District 3, and a person

who intends to register as a voter in Montgomery County prior to the Montgomery City Election, if possible.

6. The City of Montgomery is a municipal corporation established under State law. It is located in the Middle District of Alabama.

7. Bobby N. Bright is the incumbent Mayor of the City of Montgomery. He is sued in his official capacity only.

### History of Discrimination in Elections

8. The City of Montgomery and the State Legislature have tried to minimize the electoral effectiveness of ASU students and other black voters since the adoption of the Mayor-Council form of government in Montgomery.

9. In 1973, the Alabama Legislature enacted a special local law cited as 1973 Ala. Acts 618, and commonly known as Act 618. A copy is attached as Exhibit A. It provided for the city of Montgomery to disband the city commission form of government, made up of three city commissioners elected city-wide. In its place, Montgomery's government would be composed of a mayor (elected city-wide) and a nine-member council (elected by districts). The voters approved the mayor-council plan in a referendum. Although Montgomery's population was over forty percent black, only two of the nine districts in the original proposal were majority black, in part because the ASU campus and surrounding community were split between two council districts at South Jackson Street, which runs through the center of ASU's campus. Litigation styled *Varner v. Robinson* was initiated. A settlement was reached and new lines were drawn. A new plan, which met constitutional muster, was implemented. In the 1975 municipal election, five

white and four black members were elected to the council, and a white man, Jim Robinson, was elected mayor.

10.  Jim Robinson resigned as mayor during the first term of the new council. Councilman Emory Folmar was elected mayor to complete Robinson's term. The council and the new mayor were split along racial lines from the outset. Mayor Folmar immediately set about to dilute black voting strength. First, he refused to present to the council an annexation petition on behalf of the majority-black Southlawn community. He waited until two majority-white areas requested annexation, and proposed an annexation plan he termed the "Greater Montgomery Act." This had the net result of diluting the black population within the city limits. Some black city councilmen opposed the Greater Montgomery Act on the ground that it could dilute the number of black city council districts from 4 to 3. This plan was held up in the Legislature by black legislators. The Greater Montgomery Act was allowed to proceed through the Legislature after the mayor and white councilmen agreed to support the reapportionment plan that ensured the highest number of black districts possible.

11.  Despite this signed agreement, following this annexation and the 1980 census, Mayor Folmar set about again to dilute the voting strength of Montgomery's black community. He attempted to reduce the black majority in District 3 in an attempt to defeat the re-election of Councilman Joe L. Reed, a prominent black leader. His transparent attempt was met with litigation. In *Buskey v. Oliver,* 565 F.Supp. 1473 (M.D. Ala. 1983), this Court found that Mayor Folmar's proposed district lines were a racially-

discriminatory attempt to dilute black voter strength and ordered new lines drawn. In its opinion, the Court also laid out in greater detail the history of racial discrimination in Montgomery and the racial motivation in the mayor's plan.

**12.** The mayor's next attempt to suppress black voters, especially in District 3, is strikingly similar to Ordinance 42-2007. Mayor Folmar attempted to piggy-back on a general law setting dates for other municipal elections in Alabama by moving the dates of Montgomery's elections from its statutory date in October to July. By moving the date to July, when most students were out of town, Mayor Folmar would have diluted the black vote substantially. However, the Alabama Supreme Court, in *Siegelman v. Folmar,* 432 So.2d 1246 (Ala. 1983), held that Act 618 was not repealed by the general law cited by the mayor, and ordered that Montgomery's municipal elections remain on the dates provided by Act 618, rather than Ala. Code §§ 11-46-5 and -21.

**13.** Mayor Folmar engineered a reapportionment of the city council districts in 1998. He did so despite the fact that the federal census would be undertaken in 2000, shortly after the 1999 election. The mayor recognized that there had been significant outflow of white voters from council District 7 and significant inflow of black voters into that district. He succeeded in having the city council change the district lines to preserve the majority white racial makeup of district seven before the 1999 city election.

**Facts**

14.  Alabama State University (ASU), a predominately and historically black university, is located within the city limits of Montgomery and within Montgomery City Council District 3.  A significant number of students from ASU vote in city elections.  There is an active voter registration organization of the campus of ASU which traditionally attempts to register, and usually succeeds in registering, students who have moved to the ASU campus from other counties or states.

15.  Because ASU students must report to campus during the latter half of August, in the past there has been sufficient time to carry out voter registration campaigns before the registration deadline for city elections (10 days before the election, Ala. Code 17-4-120 (1995)).[1]  In addition, voters in municipal elections must have "resided in the county 30 days and in the ward 30 days prior to the election."  Ala. Code § 11-46-38 (1992).

16.  The Mayor and City Council of Montgomery have adopted Ordinance 42-2007 (attached as Exhibit B) to change the time of its city council elections to be held during 2007 to 28 August.

17.  Mayor Bright has given notice, in accordance with Ordinance 42-2007, that a city election will be held on 28 August 2007.

18.  Earlier this year, the mayor and the city council were advised by attorneys that the voting calendar provided by Act 618 did not comply with the Uniformed and Overseas Citizens Absentee Voting Act (UOCAVA)

---

[1] This Complaint cites the 1995 replacement volume of Title 17 of the Alabama Code of 1975 and 2006 Cumulative Supplement because the comprehensive renumbering (and amendment) of the Election Code by Act 2006-570 has not been precleared by the Justice Department.

and/or a recent amendment to the absentee balloting law of Alabama.[2]  Under Act 618, a candidate is required to receive a majority vote to take a municipal office.  If no candidate receives a majority in the general election, a run-off is held three weeks later between the top two vote-getters in the general election.  The city was advised that, in order to be in compliance with UOCAVA, there must be a six-week interval between the general election and runoff, so that ballots can be printed, shipped overseas, and returned.

19.  Because no federal candidate is on the Montgomery municipal election ballot, UOCAVA does not apply.

20.  To fix the supposed UOCAVA problem, the city council on 6 February 2007 adopted Ordinance 13-2007, which moved the date of the election to earlier in the year.  However, the mayor vetoed the ordinance and the council upheld his veto at its 20 February 2007 meeting.

21.  Interested citizens and the mayor's office worked on a plan to ensure our citizens overseas had the right to participate fully in city elections without depriving thousands of black citizens of the right to vote at all.  The mayor and council endorsed the plan, and asked Montgomery's legislative delegation to amend Act 618 to allow this to occur.  The plan was incorporated into House Bill 866 (HB 866) (attached as Exhibit C).  It easily passed the State House of Representatives, but was blocked in the Alabama Senate by Senator Larry Dixon.  Under the Alabama Senate's rules, one senator can effectively kill local legislation.  As the number of days remaining

---

[2] The recent act is an amendment to § 17-10-3 (1995, 2006 Supp.).  Act 2006-570 amended this provision and renumbered it as § 17-11-3.  Act 2006-570 has not been precleared.

in the session began to wane, media coverage of this issue intensified. The comments of Senator Dixon, who is white, reported by the Montgomery Advertiser, confirm the clear motive behind the changes in the election calendar and his purpose for stopping them. "This is about Joe Reed having a larger block of votes to impact the city election … I'm not going to help." These remarks were reported on 1 June 2007, and a copy of the article is attached as Exhibit D. The term "bloc (or block) vote" has long been a code word referring to black voters. Because Dr. Reed is a black political leader, Sen. Dixon's comment has but one meaning – he wanted to eliminate a large group of black voters from participating in the upcoming election. He used the Senate rules to kill the bill, which would have provided overseas voters the opportunity to participate in the 2007 municipal election while ensuring that voters enrolled at ASU could exercise the franchise.

      22. In response to the death of HB 866, the Montgomery City Council adopted Ordinance 42-2007, to move the dates for the 2007 municipal election from October to August. While the election will take place five days after ASU's students return, it will nonetheless disenfranchise them. Alabama law requires that voter registration must close ten days before a municipal election. It further requires a prospective municipal elector to be a resident of the city for 30 days before the election. Thus, a person must reside in a city for at least 20 days prior to the voter registration deadline in order to vote. This has not been an issue under Act 618, as the residence deadline has been in late August or early September, after ASU students have returned for the fall semester. However, under Ordinance 42-2007, the

residency deadline ends on July 29. Thus, all ASU students who have not previously registered to vote, virtually all of whom are black, will be disenfranchised. This is a dramatic change from previous years and eliminates a potential voting block of thousands of young black citizens.

23. Attached as Exhibit E is the affidavit of Alfred Smith stating that 2,809 of the entering or transferring students have non-Montgomery addresses.

24. In short, Ordinance 42-2007 will disenfranchise nearly 3,000 black voters who had been eligible to register and vote before its enactment.

25. The table attached as Exhibit F shows the difference in election schedule caused by Ordinance 42-2007.

26. The election for the city council seat in District 3, in which ASU is located, was decided by 255 votes in 2003. Thus, Ordinance 42-2007 could vastly change the landscape of the election. The plaintiffs intend to campaign for candidates supported by the black community and believe that those candidates will be well-received among the potential voters who enroll in ASU because of the historical patterns of racially polarized voting in the City of Montgomery. The remedy sought by the plaintiffs will redress the problem asserted in this Complaint.

**Preclearance Efforts and City's Knowledge of Violation**

27. The jurisdiction making a submission under Section 5 has the burden of proof to convince the Department of Justice or the U.S. District Court for the District of Columbia that the proposed change "neither has the

purpose nor will have the effect of denying or abridging the right to vote on account of race," in the words of Section 5 of the Voting Rights Act.

28. The City of Montgomery has not obtained preclearance of Ordinance 42-2007.

29. The City of Montgomery submitted Ordinance 42-2007 to the U.S. Justice Department for preclearance under Section 5 of the Voting Rights Act.

30. On 14 June 2007, the Attorney General sent a letter that he had no objection to the Ordinance, but noted that the Attorney General "reserve[s] the right to reexamine this submission if additional information that would otherwise require an objection comes to our attention during the remainder of the sixty-day review period."

31. In a second letter, dated 23 July 2007 (attached as Exhibit G), from the Justice Department to the City's attorney Larry Menefee noted the information that Dr. Joe L. Reed had supplied to the Attorney General and made two important statements:

> Accordingly, the Attorney General is reexamining the submitted changes. Furthermore, in view of the additional information we have received, we find the information contained in the submission is insufficient to enable us to determine the proposed changes do not have the purpose and will not have the effect of denying or abridging the right to vote on account of race, color, or membership in a language minority group, as required under Section 5.

The second sentence in the quotation above means that the Attorney General has effectively withdrawn the preclearance of Ordinance 42-2007.

32. The plaintiffs have twice informed the Mayor that the holding of the city election on 28 August is illegal under federal law. The first warning was on or about 3 August. The second warning was on or about 10 August and consisted of a letter (dated 7 August 2007) from John Tanner, Chief of the Voting Section, Civil Rights Division, U.S. Department of Justice, to Joe L. Reed, stating, "As set forth in our July 23, 2007 letter, the changes [to the election schedule] have not been finally precleared and remain legally unenforceable until they are precleared." A copy of the Tanner letter is attached as Exhibit H.

## Claims

33. The City of Montgomery is violating Section 5 of the Voting Rights Act, 42 U.S.C. § 1973c by enforcing Ordinance 42-2007 without obtaining preclearance.

34. Ordinance 42-2007 violates Section 2 of the Voting Rights Act, 42 U.S.C. § 1973 because it abridges the right to vote in municipal elections of an identifiable group of black citizens.

35. Ordinance 42-2007 violates 1973 Alabama Act 618 and is therefore void. Ordinance 42-2007 is furthermore not authorized by Ala. Code 11-46-5, as Ordinance 42-2007 does not in fact adopt the election dates set forth in Ala. Code 11-46-21 (despite claiming to do so).

## Relief

36. The plaintiffs pray that the Court convene a panel of three judges to consider the claim under Section 5 of the Voting Rights Act.


37. The plaintiffs pray that the Court enter preliminary and permanent injunctions enjoining the defendants and those acting in concert with them from enforcing Ordinance 42-2007.

38. The plaintiffs pray that the Court enter preliminary and permanent injunctions requiring defendant Bright to withdraw his notice of an election under the provision of Ordinance 42-2007.

39. The plaintiffs pray that the Court grant them their costs, expenses, and reasonable attorneys' fees, as allowed by Section 14 of the Voting Rights Act, 42 U.S.C. § 1973ℓ(e).

40. The plaintiffs pray for such other, further, and reasonable relief as allowed by the circumstances.

Submitted by,

Cecil Gardner
The Gardner Firm
Post Office Drawer 3103
Mobile AL 36652
    phone 251-433-8100
    fax 251-433-8181
    email cgardner@gmlegal.com

/s/ Edward Still
Edward Still
2112 11th Avenue South
Suite 201
Birmingham AL 35205-2844
    phone: 205-320-2882
    fax: 877-264-5513
    email: Still@votelaw.com

Sam Heldman
The Gardner Firm
2805 31st St. NW
Washington DC 20008
    phone 202-965-8884
    email sam@heldman.net

CERTIFICATE OF SERVICE

        I certify that on 20 August 2007 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following attorneys:

| | |
|---|---|
| J. Gerald Hebert, Esq.<br>The Campaign Legal Center<br>1640 Rhode Island Ave., NW, Suite 650<br>Washington, DC 20036 | Larry Menefee, Esq.<br>407 South McDonough Street<br>Montgomery, AL 36104 |

                                              /s/ Edward Still