IN THE DISTRICT COURT OF THE UNITED STATES FOR THE
MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | |
|---|---|
| **Janet May, John Dow** and **William Boyd,**<br><br>                    Plaintiffs,<br><br>        v.<br><br>**City of Montgomery, Alabama,** a municipal corporation; **Bobby N. Bright,** in his official capacity as Mayor of the City of Montgomery<br><br>                    Defendants. | CIVIL ACTION NO.<br>2:07 cv 738-MHT-WC |

# Plaintiffs' Second Brief on Preliminary Injunction and Temporary Restraining Order under Section 5 of Voting Rights Act

## I.        Introduction

One claim of this case arises under Section 5 of the Voting Rights Act. The complaint alleges that the City of Montgomery has failed to obtain preclearance for a new "practice, procedure, or prerequisite to voting" (for simplicity, "voting practice"), specifically changing the date of the city election from October to August.

The usual questions in a Section 5 "coverage" action are (1) whether the jurisdiction is covered by Section 4(b) of the Voting Rights Act;[1] (2)

---

[1] Alabama is a covered jurisdiction. "Procedures for the Administration of Section 5 of the Voting Rights Act," 28 CFR Part 51, Appendix (also available on the Internet at http://www.usdoj.gov/crt/voting/sec_5/guidelines.htm). *See also Kennedy v. Riley,* 445 F.Supp.2d 1333, 1335 (M.D.Ala. 2006).

whether the jurisdiction has adopted or enforced a voting practice which is different from an earlier voting practice (in effect on 1 November 1964 or later); and (3) whether the jurisdiction has obtained either a letter of preclearance from the U.S. Attorney General or a favorable declaratory judgment from the U.S. District Court for the District of Columbia.

## II.     There has been a "change" which triggers Section 5 of the Voting Rights Act.

Under Act 618 (creating the mayor-council system for Montgomery), the City has held elections in October of the year after gubernatorial elections. Under Ordinance 42-2007, the City will move its election to the fourth Tuesday in August (28 August 2007). All pre-election deadlines, such as those for candidate qualification, voter registration, voter residency, and the like are moved along with the election. (See Exhibit F to the Complaint for the ones pertinent in this case)

In this case, the benchmark against which to judge Ordinance is the situation "in force and effect" immediately before it was enacted. *Abrams v. Johnson,* 521 U.S. 74, 97 (1997); Section 5 Guidelines, 28 C.F.R. § 51.54(b)(1).

## III.    The City of Montgomery has changed voting practices without preclearance.

The City of Montgomery has not obtained preclearance of Ordinance 42-2007.

The City submitted Ordinance 42-2007 to the U.S. Justice Department for preclearance under Section 5 of the Voting Rights Act.

2

On 14 June 2007, the Attorney General sent a letter that he had no objection to the Ordinance, but noted that the Attorney General "reserve[s] the right to reexamine this submission if additional information that would otherwise require an objection comes to our attention during the remainder of the sixty-day review period."

The City argues that its submission has been precleared because the Justice Department did not object within 60 days to the submission. The City cites 28 CFR § 51.43 for the proposition that the Department has two discretionary acts it may take: first, it may "interpose an objection provisionally;" second, it may "advise the submitting authority that examination of the change in light of the newly raised issues will continue and that a final decision will be rendered as soon as possible."[2] Syntactically, the City's reading of the regulation makes no sense. If the Department had

---

[2] The full text of the regulation is as follows: "**§ 51.43 Reexamination of decision not to object.** After notification to the submitting authority of a decision to interpose no objection to a submitted change affecting voting has been given, the Attorney General may reexamine the submission if, prior to the expiration of the 60-day period, information indicating the possibility of the prohibited discriminatory purpose or effect is received. In this event, the Attorney General may interpose an objection provisionally and advise the submitting authority that examination of the change in light of the newly raised issues will continue and that a final decision will be rendered as soon as possible."

This regulation is based on the penultimate sentence of subsection (a) of Section 5: "In the event the Attorney General affirmatively indicates that no objection will be made within the sixty-day period following receipt of a submission, the Attorney General may reserve the right to reexamine the submission if additional information comes to his attention during the remainder of the sixty-day period which would otherwise require objection in accordance with this section."

two possible courses of action, the phrases should be joined by "or" rather than "and."

More importantly, the City seems to be arguing that the Department must use the magic words "interpose an objection." However, the Department notified that the City that its submission was deficient in a letter, dated 23 July 2007 (attached to the complaint as Exhibit G), to the City's attorney Larry Menefee. The letter noted the information that Dr. Joe L. Reed had supplied to the Attorney General and made two important statements:

> Accordingly, the Attorney General is reexamining the submitted changes. Furthermore, in view of the additional information we have received, we find the information contained in the submission is insufficient to enable us to determine the proposed changes do not have the purpose and will not have the effect of denying or abridging the right to vote on account of race, color, or membership in a language minority group, as required under Section 5.

The second sentence in the quotation above means that the Attorney General has effectively withdrawn the preclearance of Ordinance 42-2007. The jurisdiction making a submission under Section 5 has the burden of proof to convince the Department of Justice or the U.S. District Court for the District of Columbia that the proposed change "neither has the purpose nor will have the effect of denying or abridging the right to vote on account of race," in the words of Section 5 of the Voting Rights Act. When the Justice Department tells the jurisdiction that "find the information contained in [your] submission is insufficient" to carry that burden of proof, the jurisdiction is put on notice that it has not obtained preclearance.

4

When the Attorney General makes a final objection to a submission, he or she states that the jurisdiction has not carried its burden of proof and therefore the Attorney General objects. See Exhibits K (p. 1, bottom paragraph) and L (p. 2, second paragraph). In contrast, Exhibit G does not include the words "interpose an objection" because the time for consideration has not run out. But the effect is the same. Because the Attorney General has stated that the jurisdiction has not carried its burden of proof yet, the jurisdiction is still in the position in which it started: it has no preclearance and cannot legally enforce the changed voting practice.

Under the reading proposed by the City, the burden of time and inertia shift from the City to the Department of Justice. If the City of Montgomery is correct, a jurisdiction receiving a letter like Exhibit G in the future will simply do nothing in response and wait for the original 60-day period to run out; it will then claim that the Justice Department has failed to object. The only choice the Department will have in the future is to make an objection, without asking for additional information, and allow the jurisdiction to request reconsideration.

The early practice of objecting without allowing the jurisdiction to present additional evidence has been replaced by requests for more information. The language used in Exhibit G is consistent with the "more information requests" the Attorney General sends to a jurisdiction. Exhibit N is a conference paper by Luis Fraga and Maria Lizet Ocampo concerning those requests. On pages 25-33 of the PDF, the authors include three letters requesting more information from jurisdictions making submissions under the

5

Voting Rights Act.[3]  Each of these letters includes this phrase: "the information sent is insufficient to enable us to determine …."  Each letter says to the jurisdiction, in effect, you don't have preclearance yet because you have not given us enough information to carry your burden of proof.

The meaning of Exhibit G is the same.  Montgomery had not submitted sufficient evidence to carry its burden of proof about the City's changed election date.

### IV.     The plaintiffs are entitled to a preliminary injunction or a temporary restraining order.

The Supreme Court, in *Clark v. Roemer,* 500 U.S. 646, 652-53 (1991), recited the grounds on which injunctions should be granted under Section 5:

> Section 5 requires States to obtain either judicial or administrative preclearance before implementing a voting change.  A voting change in a covered jurisdiction "will not be effective as la[w] until and unless cleared" pursuant to one of these two methods.  *Connor v. Waller,* 421 U.S. 656, 95 S.Ct. 2003, 44 L.Ed.2d 486 (1975) *(per curiam).*  See also *United States v. Board of Supervisors of Warren County,* 429 U.S. 642, 645, 97 S.Ct. 833, 834, 51 L.Ed.2d 106 (1977) ("No new voting practice or procedure may be enforced unless the State or political subdivision has succeeded in its declaratory judgment action or the Attorney General has declined to object").  Failure to obtain either judicial or administrative preclearance "renders the change unenforceable."  *Hathorn v. Lovorn,* 457 U.S. 255, 269, 102 S.Ct. 2421, 2430, 72 L.Ed.2d 824 (1982).  If voting changes subject to § 5 have not been

---

[3] The conclusion of the paper is that MIRs (more information requests) have a deterrent effect on jurisdictions and in many cases prevent implementation of changes in voting practices.

> precleared, § 5 plaintiffs are entitled to an injunction prohibiting the State from implementing the changes. *Allen v. State Bd. of Elections,* 393 U.S. 544, 572, 89 S.Ct. 817, 835, 22 L.Ed.2d 1 (1969).

The Court reiterated this point in *Lopez v. Monterey County, Cal.,* 519 U.S. 9 (1991): "No new voting practice is enforceable unless the covered jurisdiction has succeeded in obtaining preclearance. If a voting change subject to § 5 has not been precleared, § 5 plaintiffs are entitled to an injunction prohibiting implementation of the change." *Lopez*, 519 U.S. at 20 (citations omitted).

Compliance with § 5 is so important that Justice Kennedy granted a stay of a special election one day before it was to be held (and he issued his order on Memorial Day) in *Lucas v. Townsend,* 486 U.S. 1301 (Kennedy, Circuit Justice 1988). He explained, "Permitting the election to go forward would place the burdens of inertia and litigation delay on those whom the statute was intended to protect, despite their obvious diligence in seeking an adjudication of their rights prior to the election. Even if the election is subsequently invalidated, the effect on both the applicants and respondents likely would be most disruptive. Further, although an injunction would doubtless place certain burdens on respondents, such burdens can fairly be ascribed to the respondents' own failure to seek preclearance sufficiently in advance of the date chosen for the election." *Lucas*, 486 U.S. at 1305.

The plaintiffs have twice informed the Mayor that the holding of the city election on 28 August is illegal under federal law. The first warning was on or about 3 August. The second warning was on or about 10 August and consisted of a letter (dated 7 August 2007) from John Tanner, Chief of

7

the Voting Section, Civil Rights Division, U.S. Department of Justice, to Joe L. Reed, stating, "As set forth in our July 23, 2007 letter, the changes [to the election schedule] have not been finally precleared and remain legally unenforceable until they are precleared." A copy of the Tanner letter is attached to the complaint as Exhibit H.

## V.     Remedy

The first step in the remedy should be a declaratory judgment that the State has violated the Voting Rights Act.

The second step should be an injunction. In *Clark v. Roemer,* 500 U.S. 646, 653 (1991), the Supreme Court held, "If voting changes subject to § 5 have not been precleared, § 5 plaintiffs are entitled to an injunction prohibiting the State from implementing the changes."

Plaintiffs request that the Court enter the following relief:

   (1) a declaratory judgment;

   (2) an injunction (or a temporary restraining order) against enforcement of Ordinance 42-2007 until it is precleared;

   (3) an award of reasonable attorneys' fees and expenses at the close of the case.[4]

---

[4] The plaintiffs have other claims against Ordinance 42-2007 even if the Justice Department grants preclearance. Those other claims – under § 2 of the Voting Rights Act and a state-law claim – are not involved in this motion.

8

|  |  |
|---|---|
|  | Submitted by, |
|  | /s/ Edward Still |
| Cecil Gardner | Edward Still |
| The Gardner Firm | 2112 11th Avenue South |
| Post Office Drawer 3103 | Suite 201 |
| Mobile AL 36652 | Birmingham AL 35205-2844 |
| phone 251-433-8100 | phone: 205-320-2882 |
| fax 251-433-8181 | fax: 877-264-5513 |
| email cgardner@gmlegal.com | email: Still@votelaw.com |

Sam Heldman
The Gardner Firm
2805 31st St. NW
Washington DC 20008
    phone 202-965-8884
    email sam@heldman.net

CERTIFICATE OF SERVICE

    I certify that on 21 August 2007 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following attorneys:

| | |
|---|---|
| J. Gerald Hebert, Esq. | Larry Menefee, Esq. |
| The Campaign Legal Center | 407 South McDonough Street |
| 1640 Rhode Island Ave., NW, Suite 650 | Montgomery, AL 36104 |
| Washington, DC 20036 | |

T. Christian Herren, Esq.
US Dept of Justice, Civil Rights Div.
Voting Section
Room 7254 -- NWB
950 Pennsylvania Ave. NW
Washington, DC 20530

    /s/ Edward Still