IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| Janet May, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Civil Action No. 2:07-cv-738-N |
| v. | ) | |
| | ) | |
| City of Montgomery, Al. et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**DEFENDANTS' EVIDENTIARY SUBMISSION**

Defendants submit the following additional documentary evidence, consisting of 15 numbered exhibits, in support of the Motion to Dismiss or for Summary Judgment filed contemporaneously.

The following six exhibits were previously submitted in opposition to plaintiffs' motion for a temporary restraining order on August 21, 2007 and attached to Doc 18. These exhibits are re-filed with this document for the convenience of the court. These exhibits were admitted into evidence at the August 21st oral argument. Transcript p. 62 ln. 16-22

1. City Council Minutes 15 pages

2. DOJ Submission June 13 9 pages

3. DOJ Preclearance June 14 1 page

4. Affidavit of Brenda Blalock, City Clerk 4 pages

5. UOCAVA Voter list 8 pages

6. Declaration Larry Menefee 1 page

The following two exhibits were previously filed by the Department of Justice. Docs 24-2 & 24-3

7. Letter City of Montgomery (LTM) to Dept of Justice 8-23-07 1page

8. Letter granting preclearance, Dept of Justice to City of Montgomery 8-23-07 1page

The following seven additional exhibits are submitted. Please note that the exhibit to the Deposition of Janet May, Exhibit 11, is Exhibit 1 above, City Council Minutes 15 pages.

9. Declaration of City Clerk Brenda Blalock 13 pages

10. Declaration of City Attorney Walter Byars 2 pages

11. Deposition of Janet May

12. Deposition of Jon Dow

13. Deposition of William F. Boyd

14. Deposition of Duncan E. Kirkwood

15. Deposition of Kenyada Adams

Respectfully submitted this 16st day of November, 2007.

**/s/ Larry Menefee**
LARRY T. MENEFEE

LARRY T. MENEFEE
407 S. McDonough Street
Montgomery, AL 36104
(334) 265-6002
Fax: (334) 832-9476
Bar No: ASB-0745-F35L
lmenefee@knology.net

J. Gerald Hebert
Campaign Legal Center
1640 Rhode Island Ave., NW Suite 650
Washington, DC 20036
(202) 736-2200 ext. 11 (office)
(202) 736-2222 (fax)
Virginia Bar Number 38432
Ghebert@campaignlegalcenter.org

Attorneys for Defendants

### CERTIFICATE OF SERVICE

I certify that on this 16st day of November, 2007, as agreed upon by all counsel, I served via email the foregoing to the following attorneys:

2

Edward Still
Email: still@votelaw.com

Cecil Gardner
cgardner@gmlegal.com

Sam Heldman
sam@heldman.net

**/s/ Larry Menefee**
LARRY T. MENEFEE

Exhibit B

REGULAR MEETING
COUNCIL OF THE CITY OF MONTGOMERY
FEBRUARY 6, 2007 - 10:00 A.M.

The Council met in regular session on Tuesday, February 6, 2007, at 10:00 a.m. in the Council Chambers, City Hall, with the following members present:

PRESENT:   SPEAR, HEAD, AYAY, NUCKLES, CALHOUN, COOK, PRUITT, JINRIGHT.    -8

ABSENT :   ROBY    -1

Councillor Roby entered the Council Chamber at 10:00 a.m.

The President of the Council, Charles Jinright, presided as Chairman of the meeting, and Brenda Gale Blalock, City Clerk, served as the Clerk of the meeting. The meeting was opened with prayer by The Reverend Frank Snowden and the Pledge of Allegiance.

Councillor Nuckles made a motion to adopt the Minutes of the January 16, 2007, Work Session, which motion carried with the following vote:

AYES:     SPEAR, HEAD, COOK, ROBY, PRUITT, JINRIGHT.    -6
NAYS:     NONE.    -0
ABSTAINED:  AYAY, NUCKLES, CALHOUN    -3
ABSENT:    NONE.    -0

Councillor Nuckles made a motion to adopt the Minutes of the January 16, 2007 Regular Session, which motion carried with the following vote:

AYES:     UNANIMOUS    -9
NAYS:     NONE.    -0
ABSTAINED:  NONE.    -0
ABSENT:    NONE.    -0

The Clerk stated this was the time and place to hear and consider all objections and protests to the following proposed ordinance:

ORDINANCE NO. _____

BE IT ORDAINED BY THE COUNCIL OF THE CITY OF MONTGOMERY, ALABAMA as follows:

SECTION 1.  That the Zoning Ordinance of Montgomery, Alabama, adopted September 17, 1963, be amended by removing the following described property from INST (Institutional) Zoning District to a B-2 (Commercial) Zoning District.

Lot 7 and the east half of Lot 8 of the Loeb Realty Company Subdivision of part of Hooper Gilmer and Hall Tract as said Map appears of record in the Office of the Judge of Probate, Montgomery County, Alabama in the Plat Book 4, at page 70, less and except therefrom the westerly 5 ft. of said east one-half of Lot 8.

SECTION 2.  This ordinance shall take effect upon its passage, approval and publication, or as otherwise provided by law.

Tommy Tyson was present representing the Planning Commission.  No one was present representing this item.  Helen Harris, of Capital Heights Neighborhood Association, Marcia Allison and Thomas Kipper were present in opposition of this item.

001765

001752

from any and all liability arising from the construction of said directional signage.

b. The above described directional signage will be allowed to remain during the term of the franchise set out herein upon the written approval by the City Building Inspector and the City Engineer.

c. Should the city determine that it is necessary to enlarge, reconstruct or improve the street or any facility located in said rights-of-way, the city shall be held harmless should such enlargement, reconstruction, or improvement damage or injure any physical property, including the directional signage.

7. That the Mayor and the City Clerk be, and are hereby authorized and directed to execute and attest, respectively, for and on behalf of the city of Montgomery, Alabama the "Franchise Agreement" containing the above terms.

Councilor Roby made a motion to suspend the rules in order that the foregoing ordinance could be placed upon its final passage, which motion carried with the following vote:

| | | |
|---|---|---|
| AYES: | UNANIMOUS | --9 |
| NAYS: | NONE | --0 |
| ABSTAINED: | NONE | --0 |
| ABSENT: | NONE | --0 |

The rules having been suspended, Councilor Roby made a motion to adopt the foregoing ordinance, which motion carried with the following vote:

| | | |
|---|---|---|
| AYES: | UNANIMOUS | --9 |
| NAYS: | NONE | --0 |
| ABSTAINED: | NONE | --0 |
| ABSENT: | NONE | --0 |

The Clerk stated this was the time and place to hear and consider the following proposed ordinance:

ORDINANCE NO. 13-2007

AN ORDINANCE SETTING THE DATES
FOR GENERAL MUNICIPAL ELECTIONS AND RUNOFF ELECTIONS
AND THE DATES FOR FILING AS CANDIDATES IN SUCH ELECTIONS

BE IT ORDAINED BY THE COUNCIL OF THE CITY OF MONTGOMERY, ALABAMA as follows:

SECTION 1. Pursuant to and under the authority granted by *Alabama Code* (1975) §11-46-5, as amended, the City Council of the City of Montgomery, Alabama elects by ordinance to have the general municipal election and runoff election required by Act 618, *Acts of Alabama* (1973), to be held at the same time required by Article 2, Chapter 46 of Title 11, *Alabama Code* (1975), as amended, including specifically §11-46-21 thereof, as follows:

(A)   The regular municipal elections in the City of Montgomery shall be held on the fourth Tuesday in August 2007 and quadrennially thereafter; and, when necessary, as provided in Act 618, a second or runoff election shall be held on the sixth Tuesday next thereafter following the general election.

(B)   The date for filing a statement of candidacy for the office of Mayor or for member of the City Council shall be no earlier than the first Tuesday in July and no later than the third Tuesday in July preceding the regular municipal election for Mayor and members of the City Council.

Provided nothing contained in Article 2, Chapter 46 of Title 11, *Alabama Code (1975)*, as amended, shall have the effect of changing the beginning of the term of office or the time for taking office or the year during which a municipal election is to be held, or the

qualifications or requirements of candidates for election to the office of Mayor or member of the City Council.

SECTION 2. The provisions of said Act 618 relating to the dates of the elections and for filing statements of candidacy for Mayor or City Council in a general municipal election are superseded to the extent the same are in conflict herewith.

SECTION 3. This Ordinance shall become effective upon passage, approval and publication or as otherwise provided by law.

Councilor Nuckles made a motion to suspend the rules in order that the foregoing ordinance could be placed upon its final passage, which motion carried with the following vote:

| | | |
|---|---|---|
| AYES: | UNANIMOUS | --9 |
| NAYS: | NONE | --0 |
| ABSTAINED: | NONE | --0 |
| ABSENT: | NONE | --0 |

The rules having been suspended, Councilor Nuckles made a motion to adopt the foregoing ordinance, which motion carried with the following vote:

| | | |
|---|---|---|
| AYES: | UNANIMOUS | --9 |
| NAYS: | NONE | --0 |
| ABSTAINED: | NONE | --0 |
| ABSENT: | NONE | --0 |

The Clerk stated this was the time and place to hear and consider the following proposed ordinance:

ORDINANCE NO. 14-2007

ORDINANCE AMENDING ORDINANCE NO. 70-2002 APPENDIX A & B TO CHANGE VOTING PRECINCTS 1D, 2A, 2C, 2E, 2F, 3A, 5K and 5L.

WHEREAS, Pursuant to Act 618 of the 1973 Regular Session of the Alabama Legislature the Council of the City of Montgomery adopted Ordinance No. 72-2001 setting forth the nine Council District(s); and

WHEREAS, The Department of Justice has approved said redistricting; and

WHEREAS, Pursuant to Section 11-46-24 of The Code of Alabama the Council of the City of Montgomery adopted Ordinance No. 70-2002 dividing its council districts into voting centers, which are precincts; and

WHEREAS, the Department of Justice has approved said precincts; and

WHEREAS, the City of Montgomery desires to amend 1D, 2A, 2C, 2E, 2F, 3A, 5K and 5L of Appendix A of Ordinance No. 70-2002 which sets forth the legal description of the voting precincts for municipal elections of the City of Montgomery and Appendix B which is a map showing the voting precincts described in Appendix A; and

NOW, THEREFORE, BE IT ORDAINED BY THE COUNCIL OF THE CITY OF MONTGOMERY, ALABAMA, that 1D, 2A, 2C, 2E, 2F, 3A, 5K and 5L of Ordinance No. 70-2002 Appendix A and B are hereby amended as in Attachment Appendix A (Amendment) and Appendix B Amendment (Map) and all previous ordinances establishing voting precincts for the City of Montgomery are hereby superseded to the extent that they are inconsistent herewith.

"Appendix A Amendment"
"Appendix B Amendment (Map) on File in the City Clerk's Office"

001753

REGULAR MEETING
COUNCIL OF THE CITY OF MONTGOMERY
FEBRUARY 20, 2007 – 5:00 P.M.

The Council met in regular session on Tuesday, February 20, 2007, at 5:00 p.m., in the Council Chamber, City Hall, with the following members present:

PRESENT:    SPEAR, HEAD, AIAV, NUCKLES, CALHOUN, COOK, RORY, JINRIGHT    -8

ABSENT:    PRUITT    -1

The President of the Council, Charles Jinright, presided as Chairman of the meeting, and Brenda Gale Blalock, City Clerk, served as the Clerk of the meeting. The meeting was opened with prayer by President Charles Jinright and the Pledge of Allegiance.

Councillor Nuckles made a motion to adopt the Minutes of the February 6, 2007, Work Session, which motion carried with the following vote:

AYES:    SPEAR, HEAD, AIAV, NUCKLES, COOK, RORY, JINRIGHT    -7
NAYS:    NONE    -0
ABSTAINED:    CALHOUN    -1
ABSENT:    PRUITT    -1

Councillor Nuckles made a motion to adopt the Minutes of the February 6, 2007, Regular Session, which motion carried with the following vote:

AYES:    SPEAR, HEAD, AIAV, NUCKLES, CALHOUN, COOK, RORY, JINRIGHT    -8
NAYS:    NONE    -0
ABSTAINED:    NONE    -0
ABSENT:    PRUITT    -1

Councillor Pruitt entered the Council Chamber at 5:02 p.m.

The Clerk stated she was in receipt of the following Mayoral Veto:

ORDINANCE NO. 13-2007

AN ORDINANCE SETTING THE DATES
FOR GENERAL MUNICIPAL ELECTIONS AND RUNOFF ELECTIONS AND
THE DATES FOR FILING AS CANDIDATES IN SUCH ELECTIONS

BE IT ORDAINED BY THE COUNCIL OF THE CITY OF MONTGOMERY, ALABAMA as follows:

SECTION 1. Pursuant to and under the authority granted by *Alabama Code* (1975) §11-46-5, as amended, the City Council of the City of Montgomery, Alabama elects by ordinance to have the general municipal election and runoff election required by Act 618, *Acts of Alabama* (1973), to be held at the same time required by Article 2, Chapter 46 of Title 11, *Alabama Code* (1975), as amended, including specifically §11-46-21 thereof, as follows:

(A)    The regular municipal elections in the City of Montgomery shall be held on the fourth Tuesday in August 2007 and quadrennially thereafter, and, when necessary as provided in said Act 618, a second or runoff election shall be held on the sixth Tuesday next thereafter following the general election.

(b)     The date for filing a statement of candidacy for the office of Mayor or for member of the City Council shall be no earlier than the first Tuesday in July and no later than the third Tuesday in July preceding the regular municipal election for Mayor and members of the City Council.

Provided nothing contained in Article 2, Chapter 46 of Title 11, *Alabama Code (1975)*, as amended, shall have the effect of changing the beginning of the term of office or the time for taking office or the year during which a municipal election is to be held, or the qualifications or requirements of candidates for election to the office of Mayor or member of the City Council.

SECTION 2. The provisions of said Act 618 relating to the dates of the elections and for filing statements of candidacy for Mayor or City Council in a general municipal election are superseded to the extent the same are in conflict herewith.

SECTION 3. This Ordinance shall become effective upon passage, approval and publication or as otherwise provided by law.

Mayor Bright's reason for the Veto:

1. Obtained additional information which will require getting state legislative approval, noting this is no fault of the City Council.

Councillor Spear made a motion to uphold the Mayor's Veto, which motion carried with the following vote:

| | | |
|---|---|---|
| AYES: | UNANIMOUS | --9 |
| NAYS: | NONE | --0 |
| ABSTAINED: | NONE | --0 |
| ABSENT: | NONE | --0 |

The Clerk stated she was in receipt of the following Mayoral Veto:

RESOLUTION NO. 23-2007

RESOLUTION CHANGING THE DATES OF COUNCIL MEETINGS TO COINCIDE WITH MUNICIPAL ELECTIONS

WHEREAS, Municipal Elections will be held August 28, 2007 and the Run-off Election will be held October 9, 2007; and

WHEREAS, the Council desires to change the dates and times of the Regularly Scheduled Council Meetings to coincide with the Canvassing of the Returns for these two elections:

NOW, THEREFORE, BE IT RESOLVED BY THE COUNCIL, OR THE CITY OF MONTGOMERY, ALABAMA, that the Regularly Scheduled Council Meeting of August 21, 2007 at 5:00 p.m. be changed to August 28, 2007, at 7:00 p.m. and the October 2, 2007, 10:00 a.m. Council Meeting be changed to October 9, 2007 at 7:00 p.m.

Mayor Bright's reason for the Veto:

1. Obtained additional information which will require getting state legislative approval, noting this is no fault of the City Council.

Councillor Spear made a motion to uphold the Mayor's Veto, which motion carried with the following vote:

| | | |
|---|---|---|
| AYES: | UNANIMOUS | --9 |
| NAYS: | NONE | --0 |

The Clerk stated this was the time and place to hear and consider the following proposed ordinance:

| | | |
|---|---|---|
| ABSTAINED: | NONE | 0-- |
| ABSENT: | NONE | 0-- |

ORDINANCE NO. 15-2007

BE IT ORDAINED BY THE COUNCIL OF THE CITY OF MONTGOMERY, ALABAMA as follows:

SECTION 1.  That the Zoning Ordinance of Montgomery, Alabama, adopted September 17, 1963, be amended by removing the following described property from INST (Institutional) Zoning District to a B-2 (Commercial) Zoning District:

Lot 7 and the east half of Lot 8 of the Loeb Realty Company Subdivision of part of Hooper Gilmer and Hall Tract as said Map appears of record in the Office of the Judge of Probate, Montgomery County, Alabama in the Plat Book 4, at page 70, less and except therefrom the westerly 5 ft. of said east one-half of Lot 8.

SECTION 2.  This ordinance shall take effect upon its passage, approval and publication, or as otherwise provided by law.

Tommy Tyson was present representing the Planning Commission.  No one was present representing this item. No one was present in opposition of this item.

Councillor Calhoun made a motion to sustain the recommendation of the Planning Commission and adopt the foregoing ordinance, which motion carried with the following vote:

| | | |
|---|---|---|
| AYES: | UNANIMOUS | 9-- |
| NAYS: | NONE | 0-- |
| ABSTAINED: | NONE | 0-- |
| ABSENT: | NONE | 0-- |

The Clerk stated this was the time and place to hear and consider the following proposed ordinance:

ORDINANCE NO. 16-2007

CITY OF MONTGOMERY, ALABAMA

for

$44,400,000
GENERAL OBLIGATION SCHOOL WARRANTS,
SERIES 2007

dated February 1, 2007

Adopted:

001053

SECTION 1. The Report is hereby adopted by the City Council as its ascertainment of the cable-related needs and interests of the community. The City Council further adopts the revisions to the Report and to incorporate final exhibits prior to distribution to the cable operators.

SECTION 2. The City Council hereby closes the ascertainment of cable-related needs and interests and the review of the past performance of the cable operators contemplated by 47 U.S.C. §546(a).

SECTION 3. The City Council hereby establishes that the deadline for submission of responses to the Request For Formal Renewal Proposal for a Cable Franchise shall be thirty (30) days from the date received by the cable operators.

(Report on file in City Clerk's Office)

Councillor Spear made a motion to suspend the rules in order that the foregoing resolution could be placed upon its final passage, which motion carried with the following vote:

| | | |
|---|---|---|
| AYES: | UNANIMOUS | --9 |
| NAYS: | NONE | --0 |
| ABSTAINED: | NONE | --0 |
| ABSENT: | NONE | --0 |

The rules having been suspended, Councillor Spear made a motion to adopt the foregoing resolution, which motion carried with the following vote:

| | | |
|---|---|---|
| AYES: | UNANIMOUS | --9 |
| NAYS: | NONE | --0 |
| ABSTAINED: | NONE | --0 |
| ABSENT: | NONE | --0 |

The Clerk stated this was the time and place to hear and consider the following proposed ordinance:

RESOLUTION NO. 40-2007

WHEREAS, the U.S. Congress has adopted Uniform Overseas and Citizen's Absentee Voting Act (UOCAVA) which sets forth certain standards which must be achieved with regard to elections held by municipalities in Alabama, and elsewhere); and

WHEREAS, Act 618, Acts of Alabama (1973), as amended, sets forth the dates for holding municipal elections and runoff elections and for the qualification of candidates which dates and times are not in compliance with the Federal standards and requirements; and

WHEREAS, the Alabama Legislature has enacted several acts to accommodate the Federal requirements relating to municipal elections, including but not limited to Acts 2006-281 and 2006-354, which have been submitted to the U.S. Department of Justice without its objection, but which Acts are not applicable to the City of Montgomery, which is governed by Act 618, which was not so amended; and

WHEREAS, the City Council of the City of Montgomery enacted an ordinance pursuant to Alabama Code §11-46-5 in an effort to change the election and qualifying dates for municipal elections in the City of Montgomery to bring them in compliance with the Federal laws; and

WHEREAS, the validity of that ordinance was challenged on the basis that changing the dates of elections requires action by the Alabama Legislature and, on that basis, was vetoed by the Mayor of Montgomery to permit legislation to accomplish the necessary changes in the election laws;

NOW, THEREFORE, BE IT RESOLVED BY THE COUNCIL OF THE CITY OF MONTGOMERY, ALABAMA that the Mayor be authorized to have prepared legislation which would place the election dates for the Montgomery City elections in compliance with

000052

the federal laws and that the Montgomery Legislative Delegation be requested to introduce such legislation.

BE IT FURTHER RESOLVED that a copy of this resolution be forwarded to the Montgomery Legislative Delegation.

Councillor Spear made a motion to suspend the rules in order that the foregoing resolution could be placed upon its final passage, which motion carried with the following vote:

| | | |
|---|---|---|
| AYES: | UNANIMOUS | --9 |
| NAYS: | NONE | --0 |
| ABSTAINED: | NONE | --0 |
| ABSENT: | NONE | --0 |

The rules having been suspended, Councillor Spear made a motion to adopt the foregoing resolution, which motion carried with the following vote:

| | | |
|---|---|---|
| AYES: | SPEAR, HEAD, MAY, NUCKLES, CALHOUN, ROBY, PRUITT, JINRIGHT, | --8 |
| NAYS: | COOK | --1 |
| ABSTAINED: | NONE | --0 |
| ABSENT: | NONE | --0 |

The Clerk stated this was the time and place to hear and consider the following proposed resolution:

## RESOLUTION NO. 41-2007

WHEREAS, the City of Montgomery has the legal authority to apply for Federal assistance from the U. S. Department of Housing and Urban Development (HUD); and

WHEREAS, the City of Montgomery has the institutional, managerial and financial capability (including funds to pay the non-Federal share of program costs) to plan, manage and complete the federal programs;

NOW, THEREFORE, BE IT RESOLVED BY THE COUNCIL, OF THE CITY OF MONTGOMERY, ALABAMA, that Mayor Bobby N. Bright is hereby authorized to act as the City of Montgomery's official representative in connection with the proposed FY2007 HUD application for $2,160,366 in CDBG funds; $1,191,043 in HOME funds; $21,813 in ADDI funds; $92,510 in ESG funds; and, to provide any additional information as may be required. (Actual funding in each category is subject to Congressional appropriation and may vary from the foregoing figures).

Councillor Nuckles made a motion to suspend the rules in order that the foregoing resolution could be placed upon its final passage, which motion carried with the following vote:

| | | |
|---|---|---|
| AYES: | UNANIMOUS | --9 |
| NAYS: | NONE | --0 |
| ABSTAINED: | NONE | --0 |
| ABSENT: | NONE | --0 |

The rules having been suspended, Councillor Nuckles made a motion to adopt the foregoing resolution, which motion carried with the following vote:

| | | |
|---|---|---|
| AYES: | UNANIMOUS | --9 |
| NAYS: | NONE | --0 |
| ABSTAINED: | NONE | --0 |
| ABSENT: | NONE | --0 |

The Clerk stated this was the time and place to hear and consider the following proposed resolution:

REGULAR MEETING
COUNCIL OF THE CITY OF MONTGOMERY
MARCH 6, 2007 – 10:00 A.M.

The Council met in regular session on Tuesday, March 6, 2007, at 10:00 a.m., in the Council Chambers, City Hall, with the following members present:

| PRESENT: | SPEAR, HEAD, MAY, NUCKLES, CALHOUN, COOK, | -8 |
| | RORY, PRUITT. | |

| ABSENT : | JINRIGHT. | -1 |

The President Pro Tem of the Council, James Nuckles, presided as Chairman of the meeting, and Brenda Gale Blalock, City Clerk, served as the Clerk of the meeting. The meeting was opened with prayer by Councilor Jim Spear and the Pledge of Allegiance.

Councilor Spear made a motion to adopt the Minutes of the February 20, 2007, Work Session, which motion carried with the following vote:

| AYES: | SPEAR, HEAD, MAY, COOK, RORY, PRUITT. | |
| | JINRIGHT | -6 |
| NAYS: | NONE. | -0 |
| ABSTAINED: | NUCKLES, CALHOUN | -2 |
| ABSENT: | JINRIGHT. | -1 |

Councilor Spear made a motion to adopt the Minutes of the February 20, 2007, Regular Session, with editorial changes to Ordinance No. 16-2007, on Page 25 and Page 37, which motion carried with the following vote:

| AYES: | SPEAR, HEAD, MAY, NUCKLES, CALHOUN, COOK | |
| | RORY, PRUITT. | -8 |
| NAYS: | NONE. | -0 |
| ABSTAINED: | NONE. | -0 |
| ABSENT: | JINRIGHT. | -1 |

Mayor Bright reported that the proposed dates for the municipal elections are:
Election – October 2; Run-Off Election – November 13; Qualifications Begin – July 24;
Qualifications End – August 21; and Assume Office – November 20.

Councilor Spear made a motion to approve the dates of the election as stated above, which motion carried with the following vote:

| AYES: | SPEAR, HEAD, MAY, NUCKLES, CALHOUN, COOK | |
| | RORY, PRUITT. | -8 |
| NAYS: | NONE. | -0 |
| ABSTAINED: | NONE. | -0 |
| ABSENT: | JINRIGHT. | -1 |

The Clerk stated this was the time and place to hear and consider the following proposed ordinance:

ORDINANCE NO. _____

BE IT ORDAINED BY THE COUNCIL OF THE CITY OF MONTGOMERY, ALABAMA, as follows:

SECTION 1. That the Zoning Ordinance of Montgomery, Alabama, adopted September 17, 1963, be amended by rezoning the following described property from an AGR-1 (Residential Agriculture) Zoning District to a PUD (Planned Unit Development) Zoning District.

041116

10

REGULAR MEETING
COUNCIL OF THE CITY OF MONTGOMERY
JUNE 5, 2007 – 10:00 A.M.

The Council met in regular session on Tuesday, June 5, 2007, at 10:00 a.m., in the Council Chamber, City Hall, with the following members present:

PRESENT:    SPEAR, HEAD, AYAV, NUCKLES, CALHOUN, COOK, ROBY, PRUITT, JINRIGHT    -9

ABSENT:    NONE    -0

The President of the Council, Charles Jinright, presided as Chairman of the meeting, and Brenda Gale Blalock, City Clerk, served as the Clerk of the meeting. The meeting was opened with prayer by Councilor Martha Roby and the Pledge of Allegiance.

Councilor Spear made a motion to adopt the Minutes of the May 15, 2007, Work Session, as circulated, which motion carried with the following vote:

AYES:    SPEAR, HEAD, AYAV, ROBY, PRUITT, JINRIGHT    -6
NAYS:    NONE    -0
ABSTAINED:    NUCKLES, CALHOUN, COOK    -3
ABSENT:    NONE    -0

Councilor Spear made a motion to adopt the Minutes of the May 15, 2007, Regular Session, with editorial corrections, which motion carried with the following vote:

AYES:    SPEAR, HEAD, AYAV, COOK, ROBY, PRUITT, JINRIGHT    -7
NAYS:    NONE    -0
ABSTAINED:    NUCKLES, CALHOUN    -2
ABSENT:    NONE    -0

Councilor Cook reported that the Public Safety Standing Committee met May 22, 2007, and passed out copies of the minutes. Councilor Cook stated it was the consensus of the Committee to report to the Council that the Committee supports the Montgomery Police Department (MPD) continuing to field test the Taser Camera System and requests that the MPD give another report at the end of September regarding their field tests.

The Clerk stated that this was the time and place to hear and consider the following proposed ordinance:

ORDINANCE NO.: _____

BE IT ORDAINED BY THE COUNCIL OF THE CITY OF MONTGOMERY, ALABAMA as follows:

SECTION 1. That the Zoning Ordinance of Montgomery, Alabama, adopted September 17, 1963, be amended by removing the following described property from an AGR-1 (Residential Agriculture) Zoning District to a PUD (Planned Unit Development) Zoning District.

A parcel of land in the southwest ¼ of the southwest ¼ of Section 13, in the east ½ of the southeast ¼ of Section 14, and in the northeast ¼ of the northeast ¼ of Section 23, T15N, R17E, Montgomery County, Alabama, more particularly described as follows: Begin at a concrete monument at the SW corner of said Section 13; thence N89°18'16"E along an old fence a distance of 1,271.08 ft. to a paint mark in a concrete water trough at the southeast corner of the southwest ¼ of the southwest ¼ of said Section 13; thence N00°12'44"W along an old fence along the east line of said southwest ¼ of the southwest ¼ a distance of 1,324.44 ft. to a ½" iron pin at an old fence corner; thence S89°32'24"W along an old fence along the north pin of said southwest ¼ of

ORDINANCE NO. 42-2007

AN ORDINANCE SETTING THE DATES
FOR GENERAL MUNICIPAL ELECTIONS AND RUNOFF ELECTIONS AND
THE DATES FOR FILING AS CANDIDATES IN SUCH ELECTIONS

BE IT ORDAINED BY THE COUNCIL OF THE CITY OF MONTGOMERY, ALABAMA as follows:

SECTION 1. Pursuant to and under the authority granted by Alabama Code (1975) §11-46-5, as amended, the City Council of the City of Montgomery, Alabama elects by ordinance to have the general municipal election and runoff election required by Act 618, Acts of Alabama (1973), to be held at the same time required by Article 2, Chapter 46 of Title 11, Alabama Code (1975), as amended, including specifically §11-46-21 thereof, as follows:

(A)     The regular municipal election in the City of Montgomery shall be held on the fourth Tuesday in August 2007 and quadrennially thereafter, and, when necessary as provided in said Act 618, a second or runoff election shall be held on the sixth Tuesday next thereafter following the general election.

(B)     The date for filing a statement of candidacy for the office of Mayor or for member of the City Council shall be no earlier than the first Tuesday in July and no later than the third Tuesday in July preceding the regular municipal election for Mayor and members of the City Council.

Provided nothing contained in Article 2, Chapter 46 of Title 11, Alabama Code (1975), as amended, shall have the effect of changing the beginning of the term of office or the time for taking office or the year during which a municipal election is to be held, or the qualifications or requirements of candidates for election to the office of Mayor or member of the City Council.

SECTION 2. The provisions of said Act 618 relating to the dates of the elections and for filing statements of candidacy for Mayor or City Council in a general municipal election are superseded to the extent the same are in conflict herewith.

SECTION 3. This Ordinance shall become effective upon passage, approval and publication or as otherwise provided by law.

Councillor Spear made a motion to suspend the rules in order that the foregoing ordinance could be placed upon its final passage, which motion carried with the following vote:

| AYES: | UNANIMOUS | --9 |
| NAYS: | NONE | --0 |
| ABSTAINED: | NONE | --0 |
| ABSENT: | NONE | --0 |

The rules having been suspended, Councillor Spear made a motion to adopt the foregoing ordinance, which motion carried with the following vote:

| AYES: | UNANIMOUS | --9 |
| NAYS: | NONE | --0 |
| ABSTAINED: | NONE | --0 |
| ABSENT: | NONE | --0 |

The Clerk stated this was the time and place to hear and consider the following proposed ordinance:

REGULAR MEETING
COUNCIL OF THE CITY OF MONTGOMERY
JULY 3, 2007 – 10:00 A.M.

The Council met in regular session on Tuesday, July 3, 2007, at 10:00 a.m., in the Council Chamber, City Hall, with the following members present:

PRESENT:     SPEAR, HEAD, MAY, NUCKLES, CALHOUN, COOK,          -9
             ROBY, PRUITT, JINRIGHT.

ABSENT:      NONE                                                -0

The President of the Council, Charles Jinright, presided as Chairman of the meeting, and Brenda Gale Blalock, City Clerk, served as the Clerk of the meeting. The meeting was opened with prayer by Councilor Jinright and the Pledge of Allegiance.

Councilor Pruitt left the Council Chamber at 10:01 a.m.

Councilor Nuckles made a motion to adopt the Minutes of the June 19, 2007, Work Session, which motion carried with the following vote:

AYES:        SPEAR, MAY, NUCKLES, COOK, ROBY, JINRIGHT          --6
NAYS:        NONE                                               --0
ABSTAINED:   HEAD, CALHOUN                                      --2
ABSENT:      PRUITT                                             --1

Councilor Nuckles made a motion to adopt the Minutes of the June 19, 2007, Regular Session, which motion carried with the following vote:

AYES:        SPEAR, MAY, NUCKLES, CALHOUN, COOK, ROBY,          --7
             JINRIGHT.
NAYS:        NONE                                               --0
ABSTAINED:   HEAD                                               --1
ABSENT:      PRUITT                                             --1

Councilor Pruitt entered the Council Chamber at 10:03 a.m.

The Clerk stated this was the time and place to hear and consider the following proposed ordinance:

ORDINANCE NO. _____

BE IT ORDAINED BY THE COUNCIL OF THE CITY OF MONTGOMERY, ALABAMA as follows:

SECTION 1.  That the Zoning Ordinance of Montgomery, Alabama, adopted September 17, 1963, be amended by removing the following described property from an AGR-1 (Residential Agriculture) Zoning District to a B-2 (Commercial) Zoning District.

Commence at an iron pin located at the northeast corner of the southwest ¼ of the southwest ¼ of Section 15, T15N, R17E, Montgomery County, Alabama; thence S00°59'31"E, 667.33 ft. to an iron pin; thence S00°44'04"W, 462.77 ft. to an iron pin and point of beginning for the herein described parcel of land; thence S00°44'04"W, 73.08 ft. to an iron pin; thence S89°23'47"E, 105.25 ft. to an iron pin located 102.68 ft. to an iron pin; thence S89°23'47"E, 105.25 ft. to an iron pin located thence along said ROW (ROW varies) the following three (3) courses: (1) S33°50'19"W, 509.11 ft.; (2) S39°03'03"E, 93.20 ft.; (3) S57°35'36"W, 182.06 ft. to an iron pin; thence leaving said ROW N09°09'32"W, 327.17 ft. to an iron pin located on the south side of a cul-de-sac (radius 50') on the proposed ROW (60') of Road "B"; thence along said ROW the following two (2) courses: (1) chord bearing N21°39'06"W, chord distance 79.70 ft., radius 50.00'; (2)

The Clerk stated this was the time and place to hear and consider the following proposed ordinance:

ORDINANCE NO. _____

## REQUIRING COMPLAINT AND LAW ENFORCEMENT CONTACT REPORT TO CITY COUNCIL.

The City Council of Montgomery is requiring by Ordinance that a report be prepared and presented to the City Council in writing, of all complaints issued against and of all official contact with the Montgomery Police Department of the following City employees and their immediate families:

- The Mayor of the City of Montgomery;
- The Executive Assistants to the Mayor
- All City Department Heads
- All Montgomery Police Officers

This report will be compiled by the City Clerk and presented to the Council no later than 5:00 p.m. the Friday before the next council meeting.

This report is for information and status content only and will not preclude or interfere with due process rights of any person.

The penalty for violation of this Ordinance will be a fine of $250.00 per violation.

Councillor Cook made a motion to suspend the rules in order that the foregoing ordinance be placed upon its final passage, which motion was defeated by the following vote; therefore, tabling this item until the next regular meeting:

| | | |
|---|---|---|
| AYES: | MAY, NUCKLES, COOK | --3 |
| NAYS: | SPEAR, HEAD, CALHOUN, RODY, PRUITT, JINRIGHT | --6 |
| ABSTAINED: | NONE | --0 |
| ABSENT: | NONE | --0 |

The Clerk stated this was the time and place to hear and consider the following proposed ordinance:

ORDINANCE NO. _____

BE IT ORDAINED BY THE COUNCIL OF THE CITY OF MONTGOMERY, ALABAMA, that Ordinance No. 42-2007, an Ordinance setting the dates for general municipal elections and runoff elections and the dates for filing as candidates in such elections, be and is hereby repealed.

Councillor May made a motion to suspend the rules in order that the foregoing ordinance be placed upon its final passage, which motion was defeated by the following vote; therefore, tabling this item until the next regular meeting:

| | | |
|---|---|---|
| AYES: | MAY, NUCKLES, CALHOUN, COOK | --4 |
| NAYS: | SPEAR, HEAD, RODY, PRUITT, JINRIGHT | --5 |
| ABSTAINED: | NONE | --0 |
| ABSENT: | NONE | --0 |

The Clerk stated this was the time and place to hear and consider the following proposed resolution:

RESOLUTION NO. 163-2007

WHEREAS, the City of Montgomery owns property known as "Maxwell Heights" on Air Base Boulevard; and

WHEREAS, the property is more particularly shown on the map attached hereto as Exhibit A; and

REGULAR MEETING
COUNCIL OF THE CITY OF MONTGOMERY
JULY 17, 2007 – 5:00 P.M.

The Council met in regular session on Tuesday, July 17, 2007, at 5:00 p.m., in the Council Chamber, City Hall, with the following members present:

PRESENT:       HEAD, NIAV, NUCKLES, CALHOUN, COOK,                   -8
               ROBY, PRUITT, JINRIGHT

ABSENT:        SPEAR                                                 -1

The President of the Council, Charles Jinright, presided as Chairman of the meeting, and Brenda Gale Blalock, City Clerk, served as the Clerk of the meeting. The meeting was opened with prayer by Chaplain Nick Sebastian, MPD, and the Pledge of Allegiance.

Councillor Nuckles made a motion to adopt the Minutes of the July 3, 2007, Work Session, which motion carried with the following vote:

AYES:          NIAV, NUCKLES, ROBY, PRUITT, JINRIGHT                 -5
NAYS:          NONE                                                  -0
ABSTAINED:     HEAD, CALHOUN, COOK                                   -3
ABSENT:        SPEAR                                                 -1

Councillor Nuckles made a motion to adopt the Minutes of the July 3, 2007, Regular Session, which motion carried with the following vote:

AYES:          HEAD, NIAV, NUCKLES, CALHOUN, COOK, ROBY,             -8
               PRUITT, JINRIGHT
NAYS:          NONE                                                  -0
ABSTAINED:     NONE                                                  -0
ABSENT:        SPEAR                                                 -1

Councillor Nuckles stated the Ad Hoc Committee on Copper Theft will meet in the Council Conference Room, Thursday, July 19, 2007, at 9:00 a.m., to further discuss and develop proposed legislation.

Councillor Cook left the Council Chamber at 5:16 p.m.

The Clerk stated this was the time and place to hear and consider the following proposed ordinance:

ORDINANCE NO. _____

REQUIRING COMPLAINT AND LAW ENFORCEMENT CONTACT REPORT TO
CITY COUNCIL

The City Council of Montgomery is requiring by Ordinance that a report be prepared and presented to the City Council in writing, of all complaints issued against and of all official contact with the Montgomery Police Department of the following City employees and their immediate families:

-   The Mayor of the City of Montgomery;
-   The Executive Assistants to the Mayor
-   All City Department Heads
-   All Montgomery Police Officers

This report will be compiled by the City Clerk and presented to the Council no later than 5:00 p.m., the Friday before the next council meeting.

15

This report is for information and status content only and will not preclude or interfere with due process rights of any person.

The penalty for violation of this Ordinance will be a fine of $250.00 per violation.

Councillor Nuckles made a motion to adopt the foregoing ordinance, which motion was defeated by the following vote:

| | | |
|---|---|---|
| AYES: | MAY, NUCKLES, CALHOUN | --3 |
| NAYS: | HEAD, ROBY, PRUITT, JINRIGHT | --4 |
| ABSTAINED: | NONE | --0 |
| ABSENT: | SPEAR, COOK | --2 |

Councillor Cook entered the Council Chamber at 5:19 p.m.

The Clerk stated this was the time and place to hear and consider the following proposed ordinance:

ORDINANCE NO. _____

BE IT ORDAINED BY THE COUNCIL OF THE CITY OF MONTGOMERY, ALABAMA, that Ordinance No. 42-2007, an Ordinance setting the dates for general municipal elections and runoff elections and the dates for filing as candidates in such elections, be and is hereby repealed.

Councillor May made a motion to adopt the foregoing ordinance, which motion failed by the following vote:

| | | |
|---|---|---|
| AYES: | MAY, NUCKLES, CALHOUN, COOK | --4 |
| NAYS: | HEAD, ROBY, PRUITT, JINRIGHT | --4 |
| ABSTAINED: | NONE | --0 |
| ABSENT: | SPEAR | --1 |

The Clerk stated this was the time and place to hear and consider the following proposed ordinance:

ORDINANCE NO. 48-2007

AN ORDINANCE GRANTING TO ATLANTIC AND PACIFIC DEVELOPMENT LLC A FRANCHISE TO CONSTRUCT, INSTALL AND MAINTAIN A BALCONY OVER A PORTION OF THE GRAHAM STREET RIGHT OF WAY

BE IT ORDAINED by the City Council of the City of Montgomery, Alabama:

1. That a franchise, containing the hereinafter prescribed terms and conditions be, and the same hereby is granted unto Atlantic and Pacific Development, LLC and its successors and assigns in the ownership of the following described parcel for the purpose of constructing, installing and maintaining a balcony over and on a portion of the right-of-way of Graham Street owned by the City of Montgomery subject to the terms and conditions contained in the Franchise Agreement which is incorporated herein by reference as if set out here in full:

Commence at the intersection of the north right of way of Cloverdale Road (70' ROW) with the east right of way of Graham Street (60' ROW); thence run along the said east right of way of Graham Street, N 00° 46' 28" W, 171.21 feet to the point of beginning; thence from said point of beginning, leave said right of way and run N 89° 13' 32" W, 4.50 feet to a point; thence run N 0° 46' 28" W, 56.16 feet to a point; thence run N 89° 13' 32" E, 4.50 feet to a point lying on the aforementioned east right of way of Graham Street; thence run along said east right of way, S 00° 46' 28" E, 56.16 feet to the point of beginning.

# LARRY T. MENEFEE
ATTORNEY AT LAW
407 SOUTH McDONOUGH STREET
MONTGOMERY, ALABAMA 36104

TELEPHONE (334) 265-6002
FAX (334) 832-9476

Email: lmenefee@knology.net

June 13, 2007

**By Fax and Express Mail**

Chief, Voting Section
Civil Rights Division
Room 7254 - NWB
Department of Justice
950 Pennsylvania Ave. N.W.
Washington, DC 20530

     Re:    Submission under Section 5 of the Voting Rights Act of 1965
              **Expedited Consideration Requested**
              **Change in qualifying and election dates- City of Montgomery, Alabama**

Dear Sirs:

As required by Section 5 of the Voting Rights Act of 1965, I am submitting for preclearance review of the Department of Justice Ordinance 42-2007 of the City of Montgomery adopted June 5, 2007. The Ordinance elects the dates for qualifying and voting for municipal elections, for mayor and nine council members, as permitted by *Alabama Code* (1975) § 11-46-5, as amended. The Ordinance provides for:

A.  elections on the fourth Tuesday (28th ) in August, runoff six weeks thereafter (October 9th )
B.  qualifying opens the first Tuesday (3rd) in July and closes on the third Tuesday (17th) in July.

Ordinance 42-2007 was unanimously adopted by the City Council and signed by the Mayor. A copy of the Ordinance, the minutes of the City Council meeting, and referenced state statues are attached at pages A through F.

This is a change from the prior election dates which were provided for in Act No. 618 of the 1973 Regular Session of the Alabama Legislature. Act 618 is the act that provides for the Mayor Council form of government for Montgomery. Article IV of that Act provides that elections shall be held on the second Tuesday in October with any necessary runoff three weeks later.

The City was concerned that the provisions of The Uniformed and Overseas Citizens Absentee Voting Act of 1986, 42 U.S.C. §§ 1973ff may not be adequately met. The guidance from the Department of Justice recommends 45 days between any general and runoff election. See the letter from DOJ to state election officials September 29, 2004 at the DOJ website. During the recently completed regular session of the Alabama Legislature the City sought to have passed an act that would amend the election dates provided in the Act 618.  Finally, on June 5th,

Civil Rights Division
June 13, 2007
Page 2

with only one day left in the legislative session and it impossible for the legislature to pass the needed legislation, the City Council adopted Ordinance 42-2007. The City exercised the authority granted it under *Alabama Code* (1975) § 11-46-5 which provides:

> The governing body of a municipality having a general municipal election or runoff election required by general or local act at a time different from the dates now or hereafter provided by Article 2, Chapter 46 of Title 11, may **elect by ordinance to have the election at the same time required by Article 2** and the election made by ordinance shall not have the effect of changing the beginning of a term of office or the time for taking office.

The election schedule is provided for in § 11-46-21 and the schedule for qualifying is provided for in §§ 11-46-22 and 25(g). Excerpts of those statutes are attached. Ordinance 42-2007 did not have the purpose nor will it have the effect of discriminating against minority voters. The Ordinance does not constitute a retrogression of minority voting strength in the City.

There is currently before you two other submissions for preclearance from the City of Montgomery. They are numbered 2007-2417 and 2007-2669 and are part of the City's effort to prepare for the upcoming municipal elections. The City of Montgomery has a population of 201,564 persons according to the 2000 census and Montgomery County has a population of approximately 224,000. The City is governed by a Mayor and nine member council elected from single-member districts. The City is approximately half black and half white. Four of the City Council members are black. The Mayor is white.[1] The City has responsibility for conducting the municipal elections every four years. The County has responsibility for conducting all other national, state and local elections.

Responses to some of the criteria in the regulations published at 28 CFR § 51.27 that are appropriate are set forth below. We refer you to those prior recent submissions for the historical electoral and demographic data identified in Footnote 1.

    a. A copy of the Ordinance is attached.
    b. This submission is made by Larry Menefee, 407 S. McDonough Street, Montgomery, AL., 36104, 334-265-6002, fax 334-832-9476, lmenefee@knology.net, attorney for the City of Montgomery, Alabama. If Mr. Menefee is not available you may contact

---

[1] The prior submission of the reapportioned city council districts (2002-2838) and the subsequent submission of polling places for use in city elections (2003-0344), both of which were precleared, had an extensive history of election returns, candidate identification, and demographic data both in print and electronic format. Additionally a prior submission of an annexation (2005-3680) which was precleared November 16, 2005, included election results for the 2003 elections for Mayor and City Council and registered Voters at Tab C to that submission.

Civil Rights Division
June 13, 2007
Page 3

       Mr. J. Gerald Hebert, 202-736-2200 ext 11 or Mr. Walter Byars, City Attorney, at 334-241-2050.

c. The City of Montgomery is the submitting authority and responsible for the change.
d. The submitting authority is located in Montgomery County, Alabama.
e. The City of Montgomery has authority to change the election and qualifying dates pursuant to the provision of Section 11-46-5, *Code of Alabama*, 1975.
f. The changes were made to comply with The Uniformed and Overseas Citizens Absentee Voting Act of 1986, 42 U.S.C. §§ 1973ff and guidance from DOJ.
g. There is no pending litigation regarding this ordinance.
h. Current minority members of the Montgomery City Council are:

      Janet May, 1412 S. Perry Street., 269-0093
      James A. Nuckles, 3134 Patrick Road, 834-4015
      Cornelius "C.C" Calhoun, 1055 Largo Lane, 613-9100
      Willie Cook, 5060 Woodley Rd., 281-7775

Other community contacts:

      Jerome Gray, ADC, 263-4040
      Joe A. Reed, fmr. City Concillor, 834-9790
      John F. Knight, Jr., State Representative, 242-7751
      Sidney T. Williams, fmr. City Concillor, 281-6546
      Kenneth L. Thomas, Esq., Atty., 270-1033
      Terry G. Davis, Esq., Atty., 270-0592

### Conclusion

    The submitted ordinance was adopted to follow The Uniformed and Overseas Citizens Absentee Voting Act of 1986, 42 U.S.C. §§ 1973ff and guidance from the Department of Justice. There will be no retrogressive effect on the political participation of minority residents. I hope you will find this submission complete, will be able to give it your expedited attention, and preclear these four ordinances. If you need any further information please promptly contact me.

                Sincerely,

                Larry T. Menefee

Enclosures:  Pages A through F

ORDINANCE NO. 42-2007

AN ORDINANCE SETTING THE DATES
FOR GENERAL MUNICIPAL ELECTIONS AND RUNOFF ELECTIONS AND
THE DATES FOR FILING AS CANDIDATES IN SUCH ELECTIONS

BE IT ORDAINED BY THE COUNCIL OF THE CITY OF MONTGOMERY,
ALABAMA as follows:

SECTION 1.  Pursuant to and under the authority granted by *Alabama Code* (1975) §11-46-5, as amended, the City Council of the City of Montgomery, Alabama elects by ordinance to have the general municipal election and runoff election required by Act 618, *Acts of Alabama (1973)*, to be held at the same time required by Article 2, Chapter 46 of Title 11, *Alabama Code (1975)*, as amended, including specifically §11-46-21 thereof, as follows:

(A)    The regular municipal elections in the City of Montgomery shall be held on the fourth Tuesday in August 2007 and quadrennially thereafter, and, when necessary as provided in said Act 618, a second or runoff election shall be held on the sixth Tuesday next thereafter following the general election.

(B)    The date for filing a statement of candidacy for the office of Mayor or for member of the City Council shall be no earlier than the first Tuesday in July and no later than the third Tuesday in July preceding the regular municipal election for Mayor and members of the City Council.

Provided nothing contained in Article 2, Chapter 46 of Title 11, *Alabama Code (1975)*, as amended, shall have the effect of changing the beginning of the term of office or the time for taking office or the year during which a municipal election is to be held, or the qualifications or requirements of candidates for election to the office of Mayor or member of the City Council.

SECTION 2.  The provisions of said Act 618 relating to the dates of the elections and for filing statements of candidacy for Mayor or City Council in a general municipal election are superseded to the extent the same are in conflict herewith.

SECTION 3.    This Ordinance shall become effective upon passage, approval and publication or as otherwise provided by law.

ADOPTED this the ___5th___ day of ___June___, 2007.

_Bobby Bright_

BOBBY N. BRIGHT, MAYOR

ATTEST:

_Brenda Gale Blalock_

BRENDA GALE BLALOCK, CITY CLERK                    42-2007

A

REGULAR MEETING
COUNCIL OF THE CITY OF MONTGOMERY
JUNE 5, 2007 -- 10:00 A.M.

The Council met in regular session on Tuesday, June 5, 2007, at 10:00 a.m., in the Council Chamber, City Hall, with the following members present:

PRESENT:    SPEAR, HEAD, MAY, NUCKLES, CALHOUN, COOK,
            ROBY, PRUITT, JINRIGHT
                                                                    -9

ABSENT:     NONE
                                                                    -0

The President of the Council, Charles Jinright, presided as Chairman of the meeting, and Brenda Gale Blalock, City Clerk, served as the Clerk of the meeting. The meeting was opened with prayer by Councillor Martha Roby and the Pledge of Allegiance.

* * * * *

The Clerk stated this was the time and place to hear and consider the following proposed ordinance:

ORDINANCE NO. 42-2007

AN ORDINANCE SETTING THE DATES
FOR GENERAL MUNICIPAL ELECTIONS AND RUNOFF ELECTIONS AND
THE DATES FOR FILING AS CANDIDATES IN SUCH ELECTIONS

BE IT ORDAINED BY THE COUNCIL OF THE CITY OF
MONTGOMERY, ALABAMA as follows:

SECTION 1. Pursuant to and under the authority granted by *Alabama Code* (1975) §11-46-5, as amended, the City Council of the City of Montgomery, Alabama elects by ordinance to have the general municipal election and runoff election required by Act 618, *Acts of Alabama (1973)*, to be held at the same time required by Article 2, Chapter 46 of Title 11, *Alabama Code (1975)*, as amended, including specifically §11-46-21 thereof, as follows:

(A)    The regular municipal elections in the City of Montgomery shall be held on the fourth Tuesday in August 2007 and quadrennially thereafter, and, when necessary as provided in said Act 618, a second or runoff election shall be held on the sixth Tuesday next thereafter following the general election.

(B)    The date for filing a statement of candidacy for the office of Mayor or for member of the City Council shall be no earlier than the first Tuesday in July and no later than the third Tuesday in July preceding the regular municipal election for Mayor and members of the City Council.

Provided nothing contained in Article 2, Chapter 46 of Title 11,

B

*Alabama Code (1975)*, as amended, shall have the effect of changing the beginning of the term of office or the time for taking office or the year during which a municipal election is to be held, or the qualifications or requirements of candidates for election to the office of Mayor or member of the City Council.

SECTION 2.  The provisions of said Act 618 relating to the dates of the elections and for filing statements of candidacy for Mayor or City Council in a general municipal election are superseded to the extent the same are in conflict herewith.

SECTION 3.  This Ordinance shall become effective upon passage, approval and publication or as otherwise provided by law.

Councillor Spear made a motion to suspend the rules in order that the foregoing ordinance could be placed upon its final passage, which motion carried with the following vote:

AYES:              UNANIMOUS
          --9
NAYS:              NONE
          --0
ABSTAINED:         NONE
          --0
ABSENT:            NONE
          --0

The rules having been suspended, Councillor Spear made a motion to adopt the foregoing ordinance, which motion carried with the following vote:

AYES:              UNANIMOUS
          --9
NAYS:              NONE
          --0
ABSTAINED:         NONE
          --0
ABSENT:            NONE
          --0

                              * * * * *

There being no further business to come before the Council, the meeting, upon motion, duly adjourned at 5:34 p.m.

_____
BRENDA GALE BLALOCK, CITY CLERK

_____
CHARLES W. JINRIGHT, PRESIDENT
COUNCIL OF THE CITY OF MONTGOMERY

*Signed copies will be available and/after approval at the next Council meeting.*

C

Excerpts from Code of Alabama (1975) as amended, found at
http://alisdb.legislature.state.al.us/acas/ACASLogin.asp    Emphasis added.

### Section 11-46-5

1. **Date of elections in certain municipalities.**

The governing body of a municipality having a general municipal election or runoff election required by general or local act at a time different from the dates now or hereafter provided by Article 2, Chapter 46 of Title 11, **may elect by ordinance to have the election at the same time required by Article 2** and the election made by ordinance shall not have the effect of changing the beginning of a term of office or the time for taking office.

*(Acts 1980, No. 80-243, p. 320; Acts 1993, No. 93-760, p. 1514, §1.)*

### Section 11-46-21

1. **Time of elections; notice; assumption of duties by elected officers.**

(a) The regular municipal elections in cities and towns **shall be held on the fourth Tuesday in August 1984,** and quadrennially thereafter, and, when necessary as provided in subsection (d) of Section 11-46-55, a second or runoff election shall be held on the sixth Tuesday next thereafter following the regular election.

*(Acts 1961, No. 663, p. 827, §2; Acts 1971, No. 159, p. 434; Acts 1980, No. 80-94, p. 140, §1; Acts 1982, No. 82-458, p. 711, §2; Acts 1987, No. 87-581, p. 928, §1; Act 2006-354, §2.)*

### Section 11-46-22

1. **Notice of elections.**

(a) It shall be the duty of the mayor to give notice of all municipal elections by publishing notice thereof in a newspaper published in the city or town, and, if no newspaper is published in the city or town, then by posting notices thereof in three public places in the city or town. When the notice is of a regular election, **the notice shall be published on the first Tuesday in July** preceding the election ...  **Candidates may begin to qualify after the notice of election is given by the mayor.**

### Section 11-46-25

1. **Ballots; statements of candidacy; withdrawal of candidacy.**

(g) The mayor shall cause to be printed on the ballots the name of any qualified elector who has, **by 5:00 P.M. on the third Tuesday in July preceding the date set for the election, filed a statement of candidacy,**....

D

Case 2:07-cv-00738-MHT-WC    Document 41-3    Filed 11/16/2007    Page 8 of 9

Each Probate Judge, Sheriff, and the Clerk and Register of
the Circuit Court is required by law to preserve this slip or
pamphlet in a book kept in his office until the Act is published
in permanent form.

# ALABAMA LAW

### (Regular Session, 1973)

---

Act No. 618    H. 796—Jones (F), Taylor, Harris, Barron

## AN ACT

To provide a form of municipal government to be known as the
Mayor-Council form of government, which may be adopted by any city
in the State of Alabama having a population of not less than 70,000 nor
more than 135,000 according to the last or any succeeding Federal or
municipal census; to provide the method by which any such city may
adopt the Mayor-Council form of government; to provide for the calling
and holding of elections to vote thereon; to define and provide the legal
status, form of government and powers of any such city under the
Mayor-Council form of government; to provide as the governing body
of such city a city council; to provide for the number of members of
the council, their election and terms of office; to provide the functions,
duties, powers and authority of the city council; to provide for the
election, appointment or designation of officers and employees of the
city and for their qualifications, duties, functions, powers and authority;
to provide for the election, term, qualifications and compensation of a
Mayor and for the filling of vacancies in the office of Mayor and to
provide the duties and authority of the Mayor; to provide for the control
of the finances of such city; to provide for an annual budget its prepar-
ation, submission, and adoption and the effect thereof; to create and
define the powers, functions, duties and authority of the department of
finance and the director of the department of finance; to regulate
purchases and contracts of such city; to provide for the terms and effects
of succession in government of any city adopting the Mayor-Council
form of government; to make various other provisions for any such
city which adopts the Mayor-Council form of government and for the
government thereof; and to provide for the means of abandoning the
Mayor-Council form of government and the adoption by the city of
other forms of municipal government in lieu thereof.

*Be It Enacted by the Legislature of Alabama:*

E

893

to persons who apply therefor. At the end of each year, the
council shall cause a full and complete examination of all the
books and accounts of the city to be made by a certified public
accountant, or by the state department of public examiner of
public accounts, and shall cause the result of such examination
to be published in the manner above provided for publication
of statements of monthly expenditures. Such examination shall
not be made two years in succession by the same accountant.

### Article IV.   MAYOR.

4.01.  Election; term; qualification.—The first mayor shall
be elected at the same election at which the councilmen are
elected under the provisions of section 1.07 of Article I of
this act and shall hold office until the second Tuesday in No-
vember of that year ending in an odd number which would
give him a term of office most closely approximating four years
and until his successor is elected and qualified. The first
mayor shall qualify and take office in the manner hereinafter
prescribed on the second Monday following the date the elec-
tion of all nine councilmen is completed or on the second Mon-
day following the election of such mayor whichever last oc-
curs. The regular election for mayor shall be held on the
second Tuesday in October of the year during which the term
of the first mayor elected hereunder terminates and every four
years thereafter. The mayor elected at any such regular elec-
tion, shall on or before the second Tuesday of November fol-
lowing his election qualify by making oath that he is eligible
for said office and will execute the duties of same according
to the best of his knowledge and ability. Said oath may be
administered by any person authorized to administer an oath
under the laws of Alabama. At any election for mayor the
candidate receiving the highest number of votes for the office
shall be elected thereto, provided such candidate receives a
majority of all votes cast for such office. If at the first elec-
tion a majority is not received by any candidate for the office
of mayor, then a second election shall be held on the third
Tuesday thereafter in the same mode and manner and under
the same rules and regulations provided in section 1.07 of
Article I hereof with respect to the election of the first mayor.

4.02.  Statement of candidacy.—Any person desiring to be-
come a candidate at any election for the office of mayor may
become such candidate by filing in the office of the judge of
probate of the county in which such city is situated, a state-
ment in writing of such candidacy, accompanied by an affi-
davit taken and certified by such judge of probate or by a
notary public that such person is duly qualified to hold the
office for which he desires to be a candidate. Such statement
shall be filed at least twenty-one days before the day set for

U.S. Department of Justice

Civil Rights Division

JKT:MSR:ALP:par
DJ 166-012-3
2007-3091

*Voting Section - NWB*
*950 Pennsylvania Avenue, NW*
*Washington, DC 20530*

June 14, 2007

Larry T. Menefee, Esq.
407 South McDonough Street
Montgomery, Alabama 36104

Dear Mr. Menefee:

This refers to the Ordinance No. 42-2007 (2007), which provides for changes in the dates for qualifying and voting in municipal elections for mayor and council members for the City of Montgomery in Montgomery County, Alabama, submitted to the Attorney General pursuant to Section 5 of the Voting Rights Act, 42 U.S.C. 1973c. We received your submission on June 13, 2007.

The Attorney General does not interpose any objection to the specified changes. However, we note that Section 5 expressly provides that the failure of the Attorney General to object does not bar subsequent litigation to enjoin the enforcement of the changes. In addition, as authorized by Section 5, we reserve the right to reexamine this submission if additional information that would otherwise require an objection comes to our attention during the remainder of the sixty-day review period. Procedures for the Administration of Section 5 of the Voting Rights Act (28 C.F.R. 51.41 and 51.43).

Sincerely,

John Tanner
Chief, Voting Section

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

JANET MAY, JOHN DOW, AND
WILLIAM BOYD,                              )
                                           )
        Plaintiffs,                        )
                                           )
v.                                         )  CASE NO.  2:07cv738
                                           )
CITY OF MONTGOMERY,                        )
ALABAMA, A MUNICIPAL                       )
CORPORATION; BOBBY N. BRIGHT,              )
IN HIS OFFICIAL CAPACITY AS                )
MAYOR OF THE CITY OF                       )
MONTGOMERY,                                )

        Defendants.

## AFFIDAVIT OF BRENDA BLALOCK

STATE OF ALABAMA            )

COUNTY OF MONTGOMERY   )

Before me, a Notary Public in and for said State and County, personally appeared **Brenda Blalock** and, after first being duly sworn by me, did depose and state as follows:

My name is Brenda Gale Blalock. I am over nineteen years of age. I am employed by the City of Montgomery, Alabama, and hold the position of City Clerk. I have held this position since 1997. As Clerk I am responsible for, among other matters, the conduct of municipal elections and maintaining records of city meetings. It is in that capacity and with personal knowledge that I state the following:

As City Clerk, I began preparation for the 2007 Montgomery municipal elections in late 2006. One of the most pressing concerns was compliance with the Uniformed Overseas Citizens' Absentee Voting Act (hereafter UOCAVA). I had conversations regarding UOCAVA compliance with other election officials, the Alabama League of Municipalities and the City Attorney's office. I came to the conclusion that Montgomery would have to comply with

UOCAVA or be subject to suit for the failure to do so; and that our election schedule under Act 618 did not allow enough time for our ballots to make the round trip overseas for voters casting ballots under UOCAVA.    The main problem was that Act 618, which governs our municipal election schedule, provided only three weeks between the first election and the runoff.  The federal authorities had indicated that in order to comply with UOCAVA, election officials should allow at least six weeks for the mailing and return of overseas and military absentee ballots.  In 2006, the U.S. Department of Justice sued the State of Alabama for failure to comply with UOCAVA.

In early 2007, I became aware that there was an optional election schedule available under Alabama Code (1975) §11-46-5, by the adoption of an ordinance electing to have the same election dates set forth in § 11-46-21, which statute is applicable to other municipalities having the mayor-council form of government.  I discussed this option with the City Attorney, and we began this discussion with the City Council in January, 2007.  In February 6, 2007, the City Council unanimously enacted Ordinance 13-2007 adopting the alternative schedule available in §11-46-21 of the Alabama Code.  This was vetoed by the Mayor based on information that legislative approval was required to change the election dates set forth in Act 618.

A second option was to seek a change in the election schedule as set out in Act 618, which would require legislative action.  After the veto, a joint effort was made to get the Montgomery legislative delegation to change our election dates by legislation.  Legislation was drafted by the City Attorney's Office both general legislation amending the election schedule of Class 3 municipalities and local legislation to amend Act 618.  The legislative delegation elected to pursue a local bill amending Act 618 to change our election dates and, when that failed, the City Council on June 5, 2007, to achieve compliance with UOCAVA, unanimously suspended the rules and unanimously adopted Ordinance 42-2007, under the authority of Alabama Code

2

§11-46-5. This election schedule that was ultimately adopted by the City of Montgomery in Ordinance 42-2007 has six weeks between the first election and runoff.

Within two days of adoption, I communicated with counsel about submission of Ordinance 42-2007 to the Department of Justice for Section 5 preclearance. The preclearance submission was made on June 13, 2007 and it requested expedited consideration. Preclearance was received the next day on June 14, 2007.

Upon receipt of the preclearance letter to the City from the Department of Justice (Copy attached as Exhibit 1), and relying expressly on it, I immediately began the steps to implement this year's municipal elections. The legal notice to the public and potential candidates ran in local papers beginning on July 3, 2007. Candidate qualifying opened on July 3rd and closed on July 17th. Four candidates qualified for Mayor. Sixteen candidates qualified for the nine council seats. Five of the council seats are uncontested. The ballot was sent to the printer on July 18, 2007. The first absentee ballots were mailed on July 20, 2007, including those registered voters who are on the UOCAVA list. Based upon my personal count, at least 42 of those UOCAVA voters who have been sent absentee ballots are black.

Postcards notifying the 114,000 registered voters in the City were specially printed, and were mailed on July 26, 2007.

The City of Montgomery uses County election staff and facilities to help with our election preparation. I am in regular contact with that staff during our election years. I specifically informed the county election staff of Ordinance 42-2007 on June 6, 2007. I had to and did confirm that all 44 polling places were available with necessary utilities and contracts for rental, where applicable. We identified 650 poll workers who would be trained and available for work on the election dates—August 28 and October 9, 2007.

At this point, August 21, 2007—one week before the election: all poll workers have attended a day of poll worker training; all the voting facilities have been arranged; the ballots are currently being packaged for delivery to the polling sites; and absentee ballots are being returned from voters; and other voters have already cast ballots early at the voting machine in City Hall.

To date, the City of Montgomery has incurred the following expenses in connection with the scheduled 2007 municipal election:

Ballot printing $50,000

Postcards to voters $10,846.90

Advertising approximately $ 63,000.00 +

In addition to these expenses, the City has incurred expenses to the County for fees for the County's services to be calculated in accordance with the rates established in the contract with the County.

These expenses do not include the extensive time expended by the City staff in preparing for the election and their related expenses. The only remaining significant expenses are the fees to pay the poll workers for work on Election Day. Those fees vary from $75 to $125 each, depending on the duties of each poll worker. Essentially all the costs to date would be lost if, at this late date, the elections are not permitted to go forward as scheduled in accordance with Ordinance 42-2007, which was passed unanimously by the City Council.

Further Affiant saith not.

Brenda Blalock

**SWORN to and SUBSCRIBED before me this the** 21 **day of August, 2007.**

My commission expires 10/16/09

Notary Public

4

MONTGOMERY

Processed: 07/30/2007 10:39 AM
Printed: 07/30/2007 10:39 AM

# Registrant Search Results

**MONTGOMERY**

| Registrant ID Status | Registrant Name Address | Birth Date | Reg. Date | Precinct Part | Party | Gender | Race |
|---|---|---|---|---|---|---|---|
| 030053409 ACTIVE | PARKER, PHILLIP LEROY 1143 LAKEWOOD DR MONTGOMERY, AL 36109-5017 | 8/1/1947 | 10/26/1990 | 0305.05 | | MALE | WHITE |
| 030040012 ACTIVE | PATTERSON, KENNETH A 2517 CHESTNUT ST MONTGOMERY, AL 36107-3030 | 3/18/1966 | 10/15/1984 | 0414.03 | | MALE | BLACK |
| 030002063 ACTIVE | PERSONS, SETH GORDON, III 104 ARLINGTON RD MONTGOMERY, AL 36105-1704 | 11/16/1958 | 5/26/1978 | 0101.10 | | MALE | WHITE |
| 030055066 ACTIVE | RIEWALD, DEAN CHARLES 523 CAPITOL PARKWAY CT MONTGOMERY, AL 36107-1233 | 6/22/1966 | 5/8/1992 | 0407.06 | | MALE | WHITE |
| 030073020 ACTIVE | SHUMWAY, JEFFREY WAYNE 1800 PARKVIEW DR S MONTGOMERY, AL 36117-7701 | 8/15/1959 | 6/18/1997 | 0308.03 | | MALE | WHITE |
| 030125361 ACTIVE | SIEBERT, EVITA A APT F 1012 MAGNOLIA CURV MONTGOMERY, AL 36106-2161 | 1/30/1946 | 10/23/2006 | 0101.05 | | FEMALE | WHITE |
| 030100814 ACTIVE | SMITH, KIMBERLY VONTRICE 5862 VIRGIL CT MONTGOMERY, AL 36116-6928 | 6/14/1984 | 10/25/2002 | 0505.07 | | FEMALE | BLACK |
| 030004588 ACTIVE | SMITH, MILDRED BROUN 953 E FAIRVIEW AVE MONTGOMERY, AL 36106-2143 | 2/13/1930 | 4/11/1968 | 0101.05 | | FEMALE | WHITE |
| 030128228 ACTIVE | PERDUE, DANA J 3610 SHAGG ST MONTGOMERY, AL 36108-4325 | 3/30/1977 | 4/26/2007 | 0207.01 | | MALE | BLACK |
| 030115099 ACTIVE | CHAPPELL, MARIO R 2137 MONA LISA DR MONTGOMERY, AL 36111-2709 | 10/11/1986 | 10/25/2004 | 0201.02 | | MALE | BLACK |
| 030125882 ACTIVE | EASTMAN, ANTHONY CARL 1128 BEECHDALE RD MONTGOMERY, AL 36109-5109 | 6/16/1987 | 7/27/2006 | 0305.05 | | MALE | WHITE |



MONTGOMERY

# Registrant Search Results

**MONTGOMERY**

| Registrant ID Status | Registrant Name Address | Birth Date | Reg. Date | Precinct Part | Party | Gender | Race |
|---|---|---|---|---|---|---|---|
| 030123495 ACTIVE | GILMORE, DAVID D<br>4323 SUNSHINE DR<br>MONTGOMERY, AL 36116-2854 | 12/13/1986 | 9/25/2006 | 0501.02 | | MALE | BLACK |
| 030128028 ACTIVE | HALBERT, WILA JOAN<br>1003 COLISEUM BLVD<br>MONTGOMERY, AL 36109-1211 | 12/6/1951 | 10/25/2006 | 0303.02 | | FEMALE | WHITE |
| 030088644 ACTIVE | HELM, KHAMPHOUY THAMMAVONG<br>6328 SYCAMORE DR<br>MONTGOMERY, AL 36117-4530 | 12/27/1976 | 10/25/2000 | 0415.11 | | FEMALE | ASIAN |
| 030121055 ACTIVE | MUHAMMAD, SHUKURA ANISE<br>9213 STILLFOREST CT<br>MONTGOMERY, AL 36117-8408 | 10/14/1985 | 1/21/2005 | 0512.07 | | FEMALE | BLACK |
| 030042240 ACTIVE | PETERS, ROSSIE LEE<br>4087 CLOVIS DR<br>MONTGOMERY, AL 36105-2711 | 9/2/1958 | 10/1/1980 | 0202.05 | | MALE | BLACK |
| 030073574 ACTIVE | SANFORD, BRIAN F<br>124 W VANDERBILT LOOP<br>MONTGOMERY, AL 36109-3234 | 11/27/1978 | 2/9/1998 | 0306.01 | | MALE | WHITE |
| 030073021 ACTIVE | SHUMWAY, YVONNE<br>1800 PARKVIEW DR S<br>MONTGOMERY, AL 36117-7701 | 10/24/1954 | 6/18/1997 | 0308.03 | | FEMALE | WHITE |
| 030067711 ACTIVE | SIMMONS, KAVORIS LAKEY<br>3332 E BROOKWOOD<br>MONTGOMERY, AL 36116-3046 | 3/5/1978 | 3/5/1996 | 0501.08 | | MALE | BLACK |
| 030079762 ACTIVE | THRASHER, JOE DAVID<br>3518 OAK GROVE CIR<br>MONTGOMERY, AL 36116-1177 | 4/17/1978 | 9/2/1999 | 0105.01 | | MALE | WHITE |
| 030126477 ACTIVE | WATTS, BRIDGETT<br>42 FISHER DR<br>MONTGOMERY, AL 36115-3016 | 3/28/1972 | 10/3/2006 | 0304.01 | | FEMALE | WHITE |
| 030088989 ACTIVE | BRIGGS, DONALD SCOTT<br>301 NAVAJO DR<br>MONTGOMERY, AL 36117-4016 | 6/7/1962 | 10/16/2000 | 0511.01 | | MALE | WHITE |

MONTGOMERY

# Registrant Search Results

**MONTGOMERY**

| Registrant ID Status | Registrant Name Address | Birth Date | Reg. Date | Precinct Part | Party | Gender | Race |
|---|---|---|---|---|---|---|---|
| 030015902 ACTIVE | COLE, RICHARD DOUGLAS, II 4156 JOHNSTOWN DR MONTGOMERY, AL 36109-2512 | 2/8/1960 | 3/15/1978 | 0304.01 | | MALE | WHITE |
| 030045593 ACTIVE | DAVIS, STEVEN WYATT 437 FOREST HILLS DR MONTGOMERY, AL 36109-3511 | 3/17/1969 | 5/7/1987 | 0305.03 | | MALE | WHITE |
| 030127922 ACTIVE | DEMERATH, JOSEPH JOHN-PAUL 3158 KNIGHTSBRIDGE CURV MONTGOMERY, AL 36111-1206 | 2/24/1981 | 10/16/2006 | 0104.02 | | MALE | WHITE |
| 030124456 ACTIVE | GIBSON, CHRISTOPHER KEVIN 5809 DARIEN DR MONTGOMERY, AL 36117-3021 | 6/29/1987 | 3/13/2006 | 0415.09 | | MALE | WHITE |
| 030025211 ACTIVE | JACKSON, MICHAEL RUFUS 660 MAYFLOWER DR MONTGOMERY, AL 36116-5417 | 8/9/1954 | 8/24/1976 | 0514.02 | | MALE | BLACK |
| 030093499 ACTIVE | KENDRICK, KIMBERLY LAVONNE 2067 REXFORD RD MONTGOMERY, AL 36116-1133 | 11/8/1976 | 8/29/2002 | 0105.01 | | FEMALE | BLACK |
| 030094233 ACTIVE | MAYS, EDWARD O 4973 VIRGINIA LOOP RD MONTGOMERY, AL 36116-4705 | 7/13/1972 | 3/22/2002 | 0505.07 | | MALE | BLACK |
| 030123492 ACTIVE | PATTERSON, LAWRENCE, SR 174 LAUDERDALE ST MONTGOMERY, AL 36116-3702 | 8/21/1961 | 9/25/2006 | 0514.05 | | MALE | BLACK |
| 030090746 ACTIVE | ALLEN, JAQUETTA RENEE 912 HALLWOOD LN MONTGOMERY, AL 36117-8907 | 4/26/1983 | 4/26/2001 | 0509.05 | | FEMALE | BLACK |
| 030121757 ACTIVE | BAXLEY, WESLEY K 1041 DAVID DR MONTGOMERY, AL 36117-4488 | 1/10/1967 | 5/24/2006 | 0415.11 | | MALE | WHITE |
| 030110467 ACTIVE | CANNON, CHARLES SEDBERRY 7331 LAKESIDE CT MONTGOMERY, AL 36117-3957 | 9/4/1950 | 9/14/2004 | 0309.02 | | MALE | WHITE |

Processed: 07/30/2007 10:39 AM
Printed: 07/30/2007 10:39 AM

# Registrant Search Results

**MONTGOMERY**

| Registrant ID Status | Registrant Name Address | Birth Date | Reg. Date | Precinct Part | Party | Gender | Race |
|---|---|---|---|---|---|---|---|
| 030035582 ACTIVE | GIVAN, SANDRA DENISE<br>6119 MARGO PL<br>MONTGOMERY, AL 36117-2508 | 7/2/1963 | 5/30/1983 | 0103.01 | | FEMALE | BLACK |
| 030077116 ACTIVE | HOLYFIELD, MELISSA CHERIE<br>816 BALFOUR RD<br>MONTGOMERY, AL 36117-3014 | 5/2/1980 | 6/16/1998 | 0415.09 | | FEMALE | BLACK |
| 030022165 ACTIVE | MANN, DARREN KEITH<br>1400 BUCKINGHAM DR<br>MONTGOMERY, AL 36116-2881 | 11/27/1962 | 5/15/1981 | 0501.02 | | MALE | WHITE |
| 030045227 ACTIVE | MORGAN, BONNIE, JR<br>APT C<br>4211 STRATHMORE DR<br>MONTGOMERY, AL 36116-3251 | 7/26/1969 | 10/2/1987 | 0106.03 | | MALE | BLACK |
| 030126491 ACTIVE | SAMONTE, ALBERTO C<br>3512 CLAIBORNE CIR<br>MONTGOMERY, AL 36116-8800 | 8/7/1966 | 10/3/2006 | 0513.10 | | MALE | WHITE |
| 030037027 ACTIVE | SANDERS, CHARLES DUNCAN, JR<br>30 CREEK DR<br>MONTGOMERY, AL 36117-4131 | 8/19/1966 | 9/7/1984 | 0511.01 | | MALE | WHITE |
| 030085209 ACTIVE | SMART, HUNTER BARRETT<br>3236 FERNWAY DR<br>MONTGOMERY, AL 36111-1832 | 9/9/1981 | 12/22/1999 | 0104.02 | | MALE | WHITE |
| 030099277 ACTIVE | THAMES, JOEL LEE<br>APT 520<br>3721 WARES FERRY RD<br>MONTGOMERY, AL 36109-2882 | 6/12/1970 | 10/16/2002 | 0305.02 | | MALE | WHITE |
| 030086794 ACTIVE | WARD, MAXWELL BENSON<br>2157 MEADOW LANE DR<br>MONTGOMERY, AL 36106-2518 | 2/1/1970 | 9/11/2000 | 0101.03 | | MALE | WHITE |
| 030102213 ACTIVE | WESTBROOK, EDWARD KYLE<br>5244 MILLWOOD RD<br>MONTGOMERY, AL 36109-4800 | 1/20/1984 | 2/4/2003 | 0306.03 | | MALE | WHITE |
| 030123494 ACTIVE | ANDREWS, BARBARA A<br>2139 DOROTHY ST<br>MONTGOMERY, AL 36108-3425 | 12/21/1971 | 9/25/2006 | 0413.02 | | FEMALE | BLACK |

## Registrant Search Results

**MONTGOMERY**

| Registrant ID Status | Registrant Name Address | Birth Date | Reg. Date | Precinct Part | Party | Gender | Race |
|---|---|---|---|---|---|---|---|
| 030120524 ACTIVE | BREWER, MARK LORENZO, SR 2707 KNOLLWOOD DR MONTGOMERY, AL 36116-3816 | 12/10/1973 | 1/9/2006 | 0106.03 | | MALE | BLACK |
| 030124505 ACTIVE | JOHNSON, CHEQUEA ARNAZ 252 HUNTLEY DR MONTGOMERY, AL 36105-3131 | 7/19/1980 | 10/5/2004 | 0208.02 | | MALE | BLACK |
| 030005361 ACTIVE | PERNELL, JOE NATHAN 1307 CLAY ST MONTGOMERY, AL 36104-2973 | 12/13/1951 | 3/8/1976 | 0204.10 | | MALE | BLACK |
| 030123498 ACTIVE | SAMSON, CAITLIN RENE 2840 PAGE PL MONTGOMERY, AL 36116-3143 | 8/8/1988 | 9/25/2006 | 0106.03 | | FEMALE | WHITE |
| 030076786 ACTIVE | SCARVER, JOSLYNN DENISE 7142 MITYLENE FOREST TRL MONTGOMERY, AL 36117-7636 | 10/5/1980 | 10/7/1998 | 0309.02 | | FEMALE | BLACK |
| 030094096 ACTIVE | STEPHENS, MARCUS B 402 GATSBY DR MONTGOMERY, AL 36106-2688 | 5/22/1982 | 2/27/2002 | 0102.09 | | MALE | WHITE |
| 030082211 ACTIVE | JENKINS, PRINTIS R 473 PLANTERS RD MONTGOMERY, AL 36109-1831 | 7/7/1981 | 10/1/1999 | 0304.01 | | MALE | BLACK |
| 030094310 ACTIVE | CLINKSCALES, DAVID EARL 148 HILLABEE CT MONTGOMERY, AL 36117-4135 | 6/6/1963 | 4/30/2002 | 0511.01 | | MALE | BLACK |
| 030097446 ACTIVE | GOODWIN, BORIS T 4228 E LAWNWOOD DR MONTGOMERY, AL 36108-5012 | 5/20/1970 | 9/6/2002 | 0206.01 | | MALE | BLACK |
| 030126478 ACTIVE | HENRY, REGGIE VAN, JR 4838 SUNSHINE DR MONTGOMERY, AL 36116-2828 | 1/14/1981 | 10/3/2006 | 0501.02 | | FEMALE | WHITE |
| 030118299 ACTIVE | JONES, TANESHA RENEE 6041 WARES FERRY RD MONTGOMERY, AL 36117-3213 | 4/18/1985 | 10/27/2004 | 0415.04 | | FEMALE | BLACK |

MONTGOMERY

Processed: 07/30/2007 10 39 AM
Printed: 07/30/2007 10 39 AM

# Registrant Search Results

**MONTGOMERY**

| Registrant ID Status | Registrant Name Address | Birth Date | Reg. Date | Precinct Part | Party | Gender | Race |
|---|---|---|---|---|---|---|---|
| 030053900 ACTIVE | SANKEY, DONALD RAY 739 CAPRI ST MONTGOMERY, AL 36105-1511 | 1/31/1973 | 9/19/1991 | 0412.02 | | MALE | BLACK |
| 030048480 ACTIVE | SHIELDS, REGIS CARL 207 HILLTOP TER MONTGOMERY, AL 36109-2805 | 2/4/1959 | 10/25/1988 | 0305.02 | | MALE | WHITE |
| 030125362 ACTIVE | SIEBERT, MICHAEL F APT F 1012 MAGNOLIA CURV MONTGOMERY, AL 36106-2161 | 5/11/1951 | 10/23/2006 | 0101.05 | | MALE | WHITE |
| 030076514 ACTIVE | SMITH, KEVIN JAMES 5860 GREEN WAY MONTGOMERY, AL 36117-2302 | 1/15/1980 | 6/16/1998 | 0103.01 | | MALE | WHITE |
| 030128227 ACTIVE | BOSWELL, CARMAL D APT C 4908 HATTON AVE MONTGOMERY, AL 36108-5503 | 8/6/1988 | 4/26/2007 | 0209.05 | | FEMALE | BLACK |
| 030069761 ACTIVE | CHRISTEN, LAVON M 7285 GREENFIELD RD MONTGOMERY, AL 36117-7507 | 6/17/1960 | 8/30/1996 | 0309.02 | | MALE | BLACK |
| 030035024 ACTIVE | FRANK, MICHAEL WILLIAM 9914 DOGWOOD CT MONTGOMERY, AL 36117-5604 | 9/28/1953 | 9/20/1983 | 0512.02 | | MALE | WHITE |
| 030105826 ACTIVE | HARRIS, PAUL 7305 LIVE OAK CT MONTGOMERY, AL 36117-3575 | 4/6/1953 | 1/14/2004 | 0308.03 | | MALE | BLACK |
| 030064922 ACTIVE | KELLIHER, JOHN PHILLIP 2624 CHESTERFIELD CT MONTGOMERY, AL 36117-3032 | 2/5/1969 | 11/2/1994 | 0513.04 | | MALE | WHITE |
| 030109031 ACTIVE | MCKINNON, STEPHANIE LA CHIEL 212 DELLWOOD CT MONTGOMERY, AL 36108-5304 | 10/21/1977 | 8/31/2004 | 0209.05 | | FEMALE | BLACK |
| 030114233 ACTIVE | PARQUETTE, MICHAEL DAVID 104 CEDAR ST MONTGOMERY, AL 36110- | 12/14/1983 | 10/14/2004 | 0406.02 | | MALE | WHITE |

Processed: 07/30/2007 10:39 AM
Printed: 07/30/2007 10:39 AM

# Registrant Search Results

## MONTGOMERY

| Registrant ID Status | Registrant Name Address | Birth Date | Reg. Date | Precinct Part | Party | Gender | Race |
|---|---|---|---|---|---|---|---|
| 030101987 ACTIVE | SHARPE, DEBBIE ELAINE<br>3720 QUENBY CT<br>MONTGOMERY, AL 36116-4532 | 10/2/1960 | 8/4/2003 | 0514.05 | | FEMALE | BLACK |
| 030123978 ACTIVE | SMART, BENJAMIN A<br>806 AUTUMN RIDGE RD<br>MONTGOMERY, AL 36117-6967 | 10/30/1964 | 9/26/2006 | 0308.03 | | MALE | WHITE |
| 030037414 ACTIVE | TRAVIS, WILLIAM TERRY<br>27 GABON WAY<br>MONTGOMERY, AL 36109-2864 | 3/29/1956 | 6/11/1984 | 0305.01 | | MALE | WHITE |
| 030129095 ACTIVE | TODD, SHARRON ELISE<br>10 BROADWAY ST<br>MONTGOMERY, AL 36110-2104 | 1/20/1979 | 5/11/2007 | 0411.01 | | FEMALE | WHITE |
| 030127433 ACTIVE | BARROWS, JOHN R<br>APT A<br>4108 PERDIDO DR<br>MONTGOMERY, AL 36110-4207 | 3/27/1975 | 10/12/2006 | 0408.03 | | MALE | BLACK |
| 030070843 ACTIVE | DAWSON, TOMMY WRIGHT, JR<br>3320 WOODPARK DR<br>MONTGOMERY, AL 36116-3623 | 8/29/1976 | 10/21/1996 | 0514.05 | | MALE | BLACK |
| 030107334 ACTIVE | DEAN, DONALD Q<br>37 MICHIGAN AVE<br>MONTGOMERY, AL 36110-1735 | 12/17/1978 | 7/23/2004 | 0406.03 | | MALE | BLACK |
| 030124659 ACTIVE | GAY, TERRY<br>39 DAVIS DR<br>MONTGOMERY, AL 36105-2902 | 11/29/1981 | 9/27/2006 | 0202.02 | | MALE | BLACK |
| 030098586 ACTIVE | HEMPHILL, SHAREE WHITE<br>21 KIRKPATRICK AVE<br>MONTGOMERY, AL 36113-6343 | 7/3/1962 | 10/21/2002 | 0204.06 | | FEMALE | WHITE |
| 030047791 ACTIVE | JOHNSON, DARRELL KURT<br>5886 BRIDLE PATH LN<br>MONTGOMERY, AL 36116-1032 | 4/18/1964 | 8/23/1988 | 0105.01 | | MALE | BLACK |
| 030099176 ACTIVE | LOFSTROM, JOCELYN STEVENS<br>325 OAK ST<br>MONTGOMERY, AL 36113-6230 | 12/9/1968 | 3/3/2003 | 0204.06 | | FEMALE | WHITE |

# Registrant Search Results

**MONTGOMERY**

| Registrant ID Status | Registrant Name Address | Birth Date | Reg. Date | Precinct Part | Party | Gender | Race |
|---|---|---|---|---|---|---|---|
| 030096521 ACTIVE | MORSE, CAROLINE DIANA 3055 LANSDOWNE DR MONTGOMERY, AL 36111-1818 | 4/10/1984 | 5/3/2002 | 0104.02 | | FEMALE | WHITE |
| 030077425 ACTIVE | STEWART, WILLIE EDWARD 617 MARTHA ST MONTGOMERY, AL 36104-3333 | 9/23/1973 | 10/21/1998 | 0404.01 | | MALE | BLACK |
| 030015751 ACTIVE | TAYLOR, JIMMY W 545 CHATSWORTH DR MONTGOMERY, AL 36109-2326 | 1/28/1955 | 6/10/1982 | 0304.01 | | MALE | WHITE |
| 030124038 ACTIVE | WEBSTER, KEDRIC E 7154 WHITE OAK LN MONTGOMERY, AL 36117-3570 | 3/12/1972 | 10/4/2006 | 0308.03 | | MALE | BLACK |
| 030077912 ACTIVE | WHEAT, HERBERT TONY 3218 BROOKWOOD MONTGOMERY, AL 36116-3012 | 12/17/1979 | 10/14/1998 | 0501.08 | | MALE | BLACK |
| 030029026 ACTIVE | BUSH, CHARLES WILLIAM 739 FELDER AVE MONTGOMERY, AL 36106-1928 | 2/2/1954 | 3/9/1972 | 0403.03 | | MALE | WHITE |
| 030087764 ACTIVE | CHOI, JONG WOONG 4640 HARVEST WAY MONTGOMERY, AL 36106-3137 | 10/20/1980 | 9/6/2000 | 0102.04 | | MALE | ASIAN |
| 030123497 ACTIVE | GANT, CYNTHIA RACHEL 3836 MACLAMAR RD MONTGOMERY, AL 36111-1522 | 7/13/1987 | 9/25/2006 | 0101.15 | | FEMALE | BLACK |
| 030004079 ACTIVE | MAY, PATRICK W 2824 TREMONT ST MONTGOMERY, AL 36110-1135 | 7/23/1962 | 10/15/1980 | 0408.03 | | MALE | BLACK |
| 030123496 ACTIVE | MILNER, JOHN C 2080 W ABERDEEN DR MONTGOMERY, AL 36116-2145 | 7/14/1970 | 9/25/2006 | 0105.01 | | MALE | BLACK |

Total for MONTGOMERY :     87

Total number of Registrants :     87

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| Janet May, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Civil Action No. 2:07-cv-738-N |
| v. | ) | |
| | ) | |
| City of Montgomery, Al. et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**DECLARATION OF LARRY T. MENEFEE**

I, Larry T. Menefee, make the following declaration in the above-styled case.

1. I am counsel of record for Defendants in this action. I make this Declaration in response to the court's direction on August 20th to submit evidence by noon, August 21st.

2. I asked Mr. Charles Pyron, Applications Development Manager for Montgomery County, to conduct a search of the voter registration database maintained by the County to determine the number of 18 through 22 year olds, a five year age cohort, who registered to vote during the month of September at Alabama State University during each of the following years. The results of that search by Mr. Pyron are:

| | |
|---|---|
| September, 2003 | 18 |
| September, 2004 | 141 |
| September, 2005 | 1 |
| September, 2006 | 142 |

I declare, under penalty of perjury, that the foregoing is true and correct to the best of my knowledge and belief.

Executed on _August 21,_ , 2007.

_Larry T. Menefee_
Larry T. Menefee

**LARRY T. MENEFEE**
ATTORNEY AT LAW
407 SOUTH McDONOUGH STREET
MONTGOMERY, ALABAMA 36104

TELEPHONE (334) 265-6602
FAX (334) 832-9476

Email: lmenefee@knology.net

August 23, 2007

**By email and Mail**

John Tanner, Esq.
Chief, Voting Section, Civil Rights Division
Room 7254 - NWB, Department of Justice
950 Pennsylvania Ave. N.W.
Washington, DC 20530

Re:     Change in election dates- City of Montgomery, Al 2007-3091

Dear Mr. Tanner:

This letter confirms the understanding we reached yesterday in your office and we confirmed by email. On behalf of the City of Montgomery, the above submission should be considered to apply to the 2007 elections only. The submission is withdrawn in so far as it applies to all future elections, and as a recurring practice.

It was good with you and the other members of you staff. Please fax a copy of your preclearance letter to my office at 334-286-9205. Best regards.

Sincerely,

Larry T. Menefee

**Attachment 1**

U.S. Department of Justice

Civil Rights Division

JKT:MSR:NT:jdh:maf
DJ 166-012-3
2007-3091

*Voting Section - NWB.*
*950 Pennsylvania Avenue, N.W.*
*Washington, DC 20530*

August 23, 2007

Larry T. Menefee, Esq.
407 South McDonough
Montgomery, Alabama 36104

Dear Mr. Menefee:

This refers to the changes to the qualifying period and general and runoff election schedules for the 2007 municipal elections, pursuant to Ordinance No. 42-2007, for the City of Montgomery in Montgomery County, Alabama, submitted to the Attorney General pursuant to Section 5 of the Voting Rights Act, 42 U.S.C. 1973c. We received your response to our July 23, 2007, request for additional information on July 31, 2007; supplemental information was received through August 23, 2007. Specifically, we received your letter dated August 23, 2007, confirming that the instant submission is applicable to the 2007 election cycle only and that the submission is withdrawn as to future elections occurring after 2007, and withdrawn as a recurring practice.

The Attorney General does not interpose any objection to the specified changes as modified by the city's partial withdrawal. However, we note that Section 5 expressly provides that the failure of the Attorney General to object does not bar subsequent litigation to enjoin the enforcement of the changes. Procedures for the Administration of Section 5 of the Voting Rights Act (28 C.F.R. § 51.41).

To be clear, we have reviewed the changes (pursuant to your August 23, 2007, letter), relying upon the city's representation that the proposed changes are temporary and applicable to the 2007 election cycle only. Thus, if the City of Montgomery wishes to implement these changes for future election cycles occurring after 2007, they must be submitted for Section 5 review. Procedures for the Administration of Section 5 of the Voting Rights Act (28 C.F.R. Section 51.10).

Sincerely,

John Tanner
Chief, Voting Section

**Attachment 2**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| Janet May, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Civil Action No. 2:07-cv-738-N |
| v. | ) | |
| | ) | |
| City of Montgomery, Al. et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## DECLARATION OF BRENDA GALE BLALOCK

My name is Brenda Gale Blalock . I am of legal age and of full legal capacity. I make the

following statements of my own personal knowledge.

I am the City Clerk for the City of Montgomery, Alabama. I have served in this capacity

for ten years. As City Clerk I am responsible for organizing and conducting the municipal

elections. Attached to this declaration are true and correct copies of the following.

1.    2007 Election dates. Page 2

2.    A list of all registered voters in the city as of August, 2007, grouped by City Council
      District and showing a breakdown by race for each precinct. Pages 3-4

3.    A list of all qualified candidates for city elections held August 28, 2007. To the left of
      each name I placed an "I" if the candidate was an incumbent. In the right margin I placed
      a "W" or "B" to indicate the race of the candidate as either white or black.   Pages 5-6

4.    The official results of the August 28, 2007 city elections for Mayor and four contested City
      Council seats.  Pages 7-12

5.    The official results of the October 9, 2007 runoff elections for two City Council seats.
      Pages 13

Under penalty of perjury, I affirm that the foregoing statements are true and correct.

Signed on  9th day of November,  2007.

BRENDA GALE BLALOCK

<u>MUNICIPAL ELECTION – AUGUST 28, 2007</u>
<u>RUN-OFF ELECTION – OCTOBER 9, 2007</u>
**Polls Open: 7:00 a.m. - 7:00 p.m.**

| | |
|---|---|
| Notice of Election | July 3 |
| First Day to Qualify with Probate Judge | July 3 |
| Last Day to Qualify - 5:00 p.m. | July 17 |
| Report of Contributions & Expenditures | July 14 |
| Designate Election Officials | July 17 or Aug.7 |
| Mail Voters Cards | * |
| Publish Voters List (11-46-36 -5 days before election) | August 23 |
| Publish List of Election Officials | by August 18 |
| Last day to Register to Vote for August 28th election | August 18 |
| Report of Contributions & Expenditures | August 18-23 |
| Publish Notice of Election School | * |
| Election School | * |
| Last Day Application for Absentee Ballot will be accepted for regular election | August 23 |
| **ELECTION** | **AUGUST 28** |
| Contest Time Expires | September 2 |
| Council Meeting to Canvass Returns - 10 a.m. | September 4 |
| Last Day to Register to Vote in October 9th Run-off Election | September 29 |
| Report of contributions & Expenditures | Sept 29 – Oct 4 |
| Last Day Application for Absentee Ballot will be accepted for Run-off Election | October 4 |
| **RUN-OFF ELECTION** | **OCTOBER 9** |
| Contest Time Expires | October 14 |
| Council Meeting to Canvass Returns | October 16 |
| **SWEARING-IN & ORGANIZATIONAL MEETING 10:00 A.M.** | **NOVEMBER 13** |

2

## Registered ALL Voter Demographics

| District | Precinct | Black | Black Percentage | Caucasion | Caucasion Percentage | Other | Other Percentage | TOTAL |
|---|---|---|---|---|---|---|---|---|
| 1 | 03E | 122 | 0.055 | 2074 | 0.934 | 25 | 0.011 | 2221 |
| 1 | 03F | 562 | 0.11 | 4496 | 0.877 | 66 | 0.013 | 5124 |
| 1 | 03H | 43 | 0.089 | 435 | 0.897 | 7 | 0.014 | 485 |
| 1 | 03I | 904 | 0.339 | 1675 | 0.628 | 88 | 0.033 | 2667 |
| 1 | 04N | 13 | 0.382 | 20 | 0.588 | 1 | 0.029 | 34 |
| 1 | 04O | 881 | 0.465 | 953 | 0.503 | 62 | 0.033 | 1896 |
| 1 | 05K | 422 | 0.147 | 2377 | 0.827 | 74 | 0.026 | 2873 |
| | | 2947 | 0.193 | 12030 | 0.786 | 323 | 0.021 | 15300 |
| | | | | | | | | |
| 2 | 03A | 158 | 0.126 | 1072 | 0.855 | 24 | 0.019 | 1254 |
| 2 | 03B | 250 | 0.182 | 1096 | 0.8 | 24 | 0.018 | 1370 |
| 2 | 03C | 157 | 0.055 | 2685 | 0.934 | 32 | 0.011 | 2874 |
| 2 | 03D | 499 | 0.127 | 3337 | 0.848 | 97 | 0.025 | 3933 |
| 2 | 03E | 20 | 0.049 | 375 | 0.921 | 12 | 0.029 | 407 |
| 2 | 04J | 439 | 0.971 | 10 | 0.022 | 3 | 0.007 | 452 |
| 2 | 04K | 467 | 0.41 | 631 | 0.554 | 41 | 0.036 | 1139 |
| 2 | 04O | 356 | 0.47 | 385 | 0.508 | 17 | 0.022 | 758 |
| | | 2346 | 0.193 | 9591 | 0.787 | 250 | 0.021 | 12187 |
| | | | | | | | | |
| 3 | 01A | 40 | 0.248 | 120 | 0.745 | 1 | 0.006 | 161 |
| 3 | 03A | 114 | 0.182 | 498 | 0.796 | 14 | 0.022 | 626 |
| 3 | 04A | 118 | 0.849 | 20 | 0.144 | 1 | 0.007 | 139 |
| 3 | 04B | 1126 | 0.97 | 31 | 0.027 | 4 | 0.003 | 1161 |
| 3 | 04C | 3965 | 0.941 | 189 | 0.045 | 61 | 0.014 | 4215 |
| 3 | 04D | 175 | 0.529 | 150 | 0.453 | 6 | 0.018 | 331 |
| 3 | 04E | 60 | 0.382 | 92 | 0.586 | 5 | 0.032 | 157 |
| 3 | 04F | 993 | 0.836 | 180 | 0.152 | 15 | 0.013 | 1188 |
| 3 | 04G | 728 | 0.466 | 798 | 0.511 | 35 | 0.022 | 1561 |
| 3 | 04H | 2514 | 0.883 | 312 | 0.11 | 22 | 0.008 | 2848 |
| 3 | 04K | 21 | 0.356 | 32 | 0.542 | 6 | 0.102 | 59 |
| 3 | 04N | 143 | 0.28 | 360 | 0.705 | 8 | 0.016 | 511 |
| | | 9997 | 0.772 | 2782 | 0.215 | 178 | 0.014 | 12957 |
| | | | | | | | | |
| 4 | 02C | 177 | 0.994 | 0 | 0 | 1 | 0.006 | 178 |
| 4 | 02D | 936 | 0.702 | 378 | 0.283 | 20 | 0.015 | 1334 |
| 4 | 02F | 1678 | 0.952 | 72 | 0.041 | 13 | 0.007 | 1763 |
| 4 | 02G | 1247 | 0.839 | 232 | 0.156 | 8 | 0.005 | 1487 |
| 4 | 02J | 441 | 0.669 | 210 | 0.319 | 8 | 0.012 | 659 |
| 4 | 04A | 1252 | 0.943 | 48 | 0.036 | 27 | 0.02 | 1327 |
| 4 | 04M | 1712 | 0.981 | 24 | 0.014 | 9 | 0.005 | 1745 |
| | | 7443 | 0.876 | 964 | 0.114 | 86 | 0.01 | 8493 |
| | | | | | | | | |
| 5 | 02A | 1008 | 0.758 | 311 | 0.234 | 10 | 0.008 | 1329 |
| 5 | 02B | 3710 | 0.977 | 67 | 0.018 | 21 | 0.006 | 3798 |
| 5 | 02C | 1237 | 0.981 | 13 | 0.01 | 11 | 0.009 | 1261 |
| 5 | 02F | 70 | 0.959 | 3 | 0.041 | 0 | 0 | 73 |
| 5 | 02H | 860 | 0.95 | 36 | 0.04 | 9 | 0.01 | 905 |
| 5 | 02I | 2656 | 0.978 | 45 | 0.017 | 15 | 0.006 | 2716 |

3

| | | | | | | | | |
|---|---|---:|---:|---:|---:|---:|---:|---:|
| 5 | 04L | 858 | 0.984 | 8 | 0.009 | 6 | 0.007 | 872 |
| 5 | 05A | 1670 | 0.825 | 337 | 0.166 | 18 | 0.009 | 2025 |
| 5 | 05E | 19 | 0.655 | 10 | 0.345 | 0 | 0 | 29 |
| 5 | 071 | 5 | 0.152 | 28 | 0.848 | 0 | 0 | 33 |
| | | 12093 | 0.927 | 858 | 0.066 | 90 | 0.007 | 13041 |
| | | | | | | | | |
| 6 | 01F | 3991 | 0.896 | 401 | 0.09 | 63 | 0.014 | 4455 |
| 6 | 05A | 722 | 0.729 | 257 | 0.26 | 11 | 0.011 | 990 |
| 6 | 05E | 2489 | 0.799 | 579 | 0.186 | 46 | 0.015 | 3114 |
| 6 | 05N | 2084 | 0.885 | 241 | 0.102 | 29 | 0.012 | 2354 |
| | | 9286 | 0.851 | 1478 | 0.135 | 149 | 0.014 | 10913 |
| | | | | | | | | |
| 7 | 01A | 552 | 0.113 | 4264 | 0.873 | 69 | 0.014 | 4885 |
| 7 | 01B | 197 | 0.173 | 920 | 0.81 | 19 | 0.017 | 1136 |
| 7 | 02A | 1589 | 0.789 | 408 | 0.203 | 17 | 0.008 | 2014 |
| 7 | 02B | 328 | 0.927 | 24 | 0.068 | 2 | 0.006 | 354 |
| 7 | 03E | 62 | 0.053 | 1088 | 0.938 | 10 | 0.009 | 1160 |
| 7 | 04B | 16 | 0.615 | 8 | 0.308 | 2 | 0.077 | 26 |
| 7 | 04C | 164 | 0.55 | 126 | 0.423 | 8 | 0.027 | 298 |
| 7 | 04D | 417 | 0.939 | 22 | 0.05 | 5 | 0.011 | 444 |
| 7 | 04E | 1725 | 0.958 | 66 | 0.037 | 10 | 0.006 | 1801 |
| 7 | 04L | 68 | 0.819 | 15 | 0.181 | 0 | 0 | 83 |
| 7 | 04N | 157 | 0.315 | 332 | 0.667 | 9 | 0.018 | 498 |
| | | 5275 | 0.415 | 7273 | 0.573 | 151 | 0.012 | 12699 |
| | | | | | | | | |
| 8 | 01B | 771 | 0.296 | 1779 | 0.683 | 53 | 0.02 | 2603 |
| 8 | 01D | 984 | 0.252 | 2876 | 0.736 | 48 | 0.012 | 3908 |
| 8 | 01E | 2426 | 0.625 | 1381 | 0.356 | 76 | 0.02 | 3883 |
| 8 | 05E | 69 | 0.821 | 14 | 0.167 | 1 | 0.012 | 84 |
| 8 | 05L | 304 | 0.141 | 1777 | 0.827 | 69 | 0.032 | 2150 |
| 8 | 05M | 556 | 0.202 | 2106 | 0.767 | 85 | 0.031 | 2747 |
| | | 5110 | 0.332 | 9933 | 0.646 | 332 | 0.022 | 15375 |
| | | | | | | | | |
| 9 | 01B | 380 | 0.181 | 1679 | 0.802 | 35 | 0.017 | 2094 |
| 9 | 01C | 1227 | 0.317 | 2533 | 0.654 | 116 | 0.03 | 3876 |
| 9 | 03G | 709 | 0.434 | 875 | 0.536 | 48 | 0.029 | 1632 |
| 9 | 03H | 609 | 0.175 | 2767 | 0.793 | 113 | 0.032 | 3489 |
| 9 | 05L | 88 | 0.041 | 2032 | 0.943 | 35 | 0.016 | 2155 |
| 9 | 05M | 247 | 0.117 | 1805 | 0.854 | 62 | 0.029 | 2114 |
| | | 3260 | 0.212 | 11691 | 0.761 | 409 | 0.027 | 15360 |

4

# 2007 Montgomery City Election – Qualifying/final

| Mayor | Address | Pay/Petition | Verified/ Date | Date Qualify | BC | To: CC |
|---|---|---|---|---|---|---|
| Bobby N. Bright | 9716 Timbermill Court | $300 & Petition | July 5 | July 3 | Yes | 7/5/2007 | ③ |
| William Franklin Boyd | 4325 Danville | $300 & Petition | July 17 | July 12 | Yes | 7/17/2007 | ③ |
| Scott Simmons | 11 South Capitol Parkway | $300 & Petition | July 17 | July 16 | Yes | 7/17/2007 | ③ |
| Jon Dow | 6121 Jennifer Lane | $300 & Petition | July 17 | July 16 | Yes | 7/17/2007 | ③ |
| **District One** | | | | | | |
| Jim Spear | 648 Pimblico Road | $100/#1006 | N/A | July 3 | Yes | 7/3/2007 | ③ |
| **District Two** | | | | | | |
| Charles W. Smith | 514 Wakefield Drive | $100/#1002 | N/A | July 3 | Yes | 7/3/2007 | ③ |
| **District Three** | | | | | | |
| Willie D. Knight | 446 Burton Avenue | $100/Cash | N/A | July 16 | Yes | 7/16/2007 | ⑬ |
| Janet Thomas May | 1412 So. Perry Street | $100/#0041 | N/A | July 16 | Yes | 7/17/2007 | ⑬ |
| Tracy Larkin | 128 Clanton Avenue | $1000/#7384 | N/A | July 17 | Yes | 7/17/2007 | ⑬ |
| **District Four** | | | | | | |
| James A. Nuckles | 3143 Patrick Road | $100/Cash | N/A | July 3 | Yes | 7/3/2007 | ⑬ |
| David Burkette | 2441 Beecher Street | $100/Cash | N/A | July 13 | Yes | 7/16/2007 | ⑬ |
| James Brown, Jr. | 1271 High Street | $100/Cash | N/A | July 13 | Yes | 7/16/2007 | ⑬ |

7/17/2007

5:02:40 PM

| District Five | Address | Pay/Petition | Verified | Date Qualify | EC | CC | |
|---|---|---|---|---|---|---|---|
| Cornelius C.C. Calhoun | 1055 Larzo Lane | $100/#1002 | N/A | July 3 | Yes | 7/3/2007 | B |
| Wilhelmina Howard Harris | 4834 Alamont Drive | $100/#5025 | N/A | July 5 | Yes | 7/5/2007 | B |
| Terance "Watch Dog" Dawson | 3329 Loveless Curve | $100/Cash | N/A | July 17 | Yes | 7/5/2007 | B |
| **District Six** | | | | | | | |
| Willie Cook | 5060 Woodley Road | $100/Cash | N/A | July 13 | Yes | 7/16/2007 | B |
| **District Seven** | | | | | | | |
| Martha Roby | 3260 Bankhead Ave. | $100/#1063 | N/A | July 3 | Yes | 7/3/2007 | 3 |
| Adell Sankey | 729 Mildred Street | $100/cash | N/A | July 13 | Yes | 7/16/2007 | B |
| **District Eight** | | | | | | | |
| Glen O. Pruitt, Jr. | 1266 Stafford Drive | $100/#44514 | N/A | July 3 | Yes | 7/3/2007 | 3 |
| **District Nine** | | | | | | | |
| Charles W. Jinright | 9501 Fendall Hall Circle | $100/#1063 | N/A | July 3 | Yes | 7/3/2007 | 3 |

7/17/2007

5:02:40 PM

6

**City of Montgomery Municipal Election - August 28, 2007**

**Mayor - Official**

| | | William Franklin Boyd | Bobby N. Bright | Jon Dow | Scott Simmons |
|---|---|---|---|---|---|
| 1-A | Cloverdale Community | 7 | 1334 | 47 | 713 |
| 1-B | Vaughn Park Church | 5 | 1394 | 81 | 924 |
| 1-C | Montgomery Museum of Fine Arts | 8 | 603 | 44 | 369 |
| 1-D | Whitfield Memorial United Methodist Church | 11 | 950 | 55 | 593 |
| 1-E | Aldersgate United Methodist Church | 25 | 705 | 75 | 268 |
| 1-F | AIDT | 33 | 801 | 177 | 207 |
| 2-A | St. Paul AME Church | 39 | 607 | 165 | 233 |
| 2-B | Beulah Baptist Church | 50 | 905 | 251 | 241 |
| 2-C | Carver Community Center | 13 | 357 | 57 | 77 |
| 2-D | Montgomery Boys Club | 12 | 95 | 25 | 66 |
| 2-F | Fire Station #14 | 29 | 428 | 99 | 112 |
| 2-G | Hayneville Road Community Center | 28 | 268 | 59 | 115 |
| 2-H | Harrison Elementary | 17 | 197 | 48 | 57 |
| 2-I | Southlawn Elementary | 50 | 549 | 132 | 184 |
| 2-J | Hunter Station | 8 | 118 | 13 | 65 |
| 3-A | Capitol Heights Baptist | 2 | 258 | 18 | 269 |
| 3-B | Highland Gardens | 3 | 154 | 9 | 237 |
| 3-C | Coliseum Boulevard Library | 4 | 672 | 21 | 599 |
| 3-D | Lagoon Park Fire Station | 11 | 781 | 31 | 720 |
| 3-E | Flowers Elementary | 6 | 661 | 12 | 848 |
| 3-F | Goodwyn Community Center | 10 | 1090 | 28 | 1003 |
| 3-G | Alcazar Shrine Temple | 5 | 250 | 14 | 190 |
| 3-H | AUM | 7 | 778 | 38 | 489 |
| 3-I | Eastdale Baptist | 15 | 507 | 54 | 269 |
| 4-A | Franklin Boys and Girls Club | 5 | 197 | 45 | 67 |
| 4-B | Houston Hill Community Center | 11 | 226 | 22 | 63 |
| 4-C | Alabama State University | 17 | 234 | 47 | 91 |
| 4-D | Hamner Hall Fire Station | 10 | 129 | 29 | 49 |
| 4-E | Cleveland Avenue YMCA | 28 | 358 | 60 | 112 |
| 4-F | Newtown Community Center | 9 | 129 | 42 | 59 |
| 4-G | King Hill Community Center | 7 | 227 | 31 | 177 |
| 4-H | North Montgomery (Sheridan Heights) | 46 | 662 | 116 | 198 |
| 4-J | Union Chapel AME Zion | 3 | 118 | 28 | 15 |
| 4-K | Chisholm Community Center | 6 | 153 | 29 | 137 |

7

| | | William Franklin Boyd | Bobby N. Bright | Jon Dow | Scott Simmons |
|---|---|---|---|---|---|
| 4-L | Bellingrath Community Center | 7 | 230 | 49 | 65 |
| 4-M | McIntyre Community Center | 38 | 282 | 67 | 116 |
| 4-N | Highland Avenue | 9 | 133 | 9 | 140 |
| 4-O | Wares Ferry Road School | 14 | 482 | 73 | 236 |
| 5-A | Seth Johnson Elementary | 40 | 544 | 137 | 203 |
| 5-E | Fitzpatrick Elementary | 13 | 487 | 154 | 171 |
| 5-K | Lakeview Baptist | 7 | 783 | 20 | 528 |
| 5-L | Vaughn Forest Baptist | 3 | 1165 | 26 | 641 |
| 5-M | Bell Road YMCA | 13 | 1064 | 39 | 706 |
| 5-N | Peter Crump School | 31 | 556 | 131 | 170 |
| AB | Absentee | 5 | 311 | 7 | 184 |
| PR | Provisional | 1 | 60 | 7 | 27 |
| | CANDIDATE TOTAL | 721 | 22992 | 2721 | 13003 |
| | CANDIDATE PERCENTAGE | 1.83 | 58.28 | 6.89 | 32.98 |

8

## City of Montgomery Municipal Election - August 28, 2007
### City Council - District 3 - Official

| | | Willie D. Knight | Tracy Larkin | Janet May |
|---|---|---|---|---|
| 1-A | Cloverdale Community | 0 | 15 | 32 |
| 3-A | Capitol Heights Baptist | 6 | 88 | 78 |
| 4-A | Franklin Boys and Girls Club | 0 | 0 | 0 |
| 4-B | Houston Hill Community Center | 27 | 196 | 96 |
| 4-C | Alabama State University | 24 | 147 | 134 |
| 4-D | Hamner Hall Fire Station | 7 | 56 | 23 |
| 4-E | Cleveland Avenue YMCA | 2 | 28 | 30 |
| 4-F | Newtown Community Center | 45 | 107 | 83 |
| 4-G | King Hill Community Center | 35 | 229 | 163 |
| 4-H | North Montgomery (Sheridan Heights) | 100 | 410 | 505 |
| 4-K | Chisholm Community Center | 1 | 11 | 2 |
| 4-N | Highland Avenue | 10 | 69 | 74 |
| AB | Absentee | 4 | 18 | 19 |
| PR | Provisional | 2 | 1 | 4 |
| | CANDIDATE TOTAL | 263 | 1375 | 1243 |
| | CANDIDATE PERCENTAGE | 9.08 | 47.8 | 43.11 |

9

## City of Montgomery Municipal Election - August 28, 2007
### City Council - District 4 - Official

| | | James Brown, Jr. | David Burkette | James A. Nuckles |
|---|---|---|---|---|
| 2-C | Carver Community Center | 9 | 7 | 14 |
| 2-D | Montgomery Boys Club | 42 | 69 | 83 |
| 2-F | Fire Station #14 | 121 | 180 | 367 |
| 2-G | Hayneville Road Community Center | 68 | 179 | 220 |
| 2-J | Hunter Station | 37 | 96 | 65 |
| 4-A | Franklin Boys and Girls Club | 89 | 88 | 135 |
| 4-M | McIntyre Community Center | 106 | 130 | 264 |
| AB | Absentee | 2 | 1 | 5 |
| PR | Provisional | 1 | 1 | 2 |
| | CANDIDATE TOTAL | 475 | 751 | 1155 |
| | CANDIDATE PERCENTAGE | 19.94 | 31.55 | 48.5 |

10

City of Montgomery Municipal Election - August 28, 2007

City Council - District 5 - Official

| | | Cornelius "C.C." Calhoun | Terance "Watch Dog" Dawson | Wilhelmina Howard Harris |
|---|---|---|---|---|
| 2-A | St. Paul AME Church | 229 | 75 | 100 |
| 2-B | Beulah Baptist Church | 714 | 347 | 298 |
| 2-C | Carver Community Center | 223 | 96 | 150 |
| 2-F | Fire Station #14 | 0 | 0 | 0 |
| 2-H | Harrison Elementary | 173 | 63 | 80 |
| 2-I | Southlawn Elementary | 609 | 205 | 100 |
| 4-L | Bellingrath Community Center | 164 | 76 | 76 |
| 5-A | Seth Johnson Elementary | 474 | 80 | 136 |
| 5-E | Fitzpatrick Elementary | 0 | 4 | 0 |
| AB | Absentee | 12 | 2 | 8 |
| PR | Provisional | 2 | 0 | 0 |
| | CANDIDATE TOTAL | 2600 | 948 | 948 |
| | CANDIDATE PERCENTAGE | 57.81 | 21.09 | 21.09 |

11

## City of Montgomery Municipal Election - August 28, 2007
### City Council - District 7 - Official

| | | Martha Roby | Adell Sankey |
|---|---|---|---|
| 1-A | Cloverdale Community | 1937 | 97 |
| 1-B | Vaughn Park Church | 416 | 32 |
| 2-A | St. Paul AME Church | 347 | 257 |
| 2-B | Beulah Baptist Church | 31 | 39 |
| 3-E | Flowers Elementary | 435 | 29 |
| 4-B | Houston Hill Community Center | 2 | 1 |
| 4-C | Alabama State University | 54 | 20 |
| 4-D | Hamner Hall Fire Station | 65 | 63 |
| 4-E | Cleveland Avenue YMCA | 291 | 194 |
| 4-L | Bellingrath Community Center | 16 | 14 |
| 4-N | Highland Avenue | 96 | 23 |
| AB | Absentee | 80 | 4 |
| PR | Provisional | 4 | 1 |
| | CANDIDATE TOTAL | 3774 | 774 |
| | CANDIDATE PERCENTAGE | 82.98 | 17.01 |

12

**City of Montgomery**
**Municipal Run-Off Election**
**October 9, 2007**

**City Council - District 3 (Official)**

|  | Tracy Larkin | Janet May |
|---|---|---|
| 1A - Cloverdale Comm. Ctr. | 16 | 11 |
| 3A - Capitol Heights Baptist | 40 | 40 |
| 4A - Franklin Boys & Girls Club | 8 | 1 |
| 4B - Houston Hill Comm. Ctr. | 126 | 60 |
| 4C - Alabama State University | 137 | 86 |
| 4D - Hamner Hall | 24 | 17 |
| 4E - Cleveland Ave. YMCA | 17 | 22 |
| 4F - Newtown Comm. Ctr. | 94 | 50 |
| 4G - King Hill Comm. Ctr. | 128 | 75 |
| 4H - N. Montgomery Comm. Ctr. | 321 | 359 |
| 4K - Chisholm Comm. Ctr. | 3 | 1 |
| 4N - Highland Ave. Baptist | 28 | 50 |
| AB - Absentee | 26 | 11 |
| PR - Provisional | 1 | 3 |
| **CANDIDATE TOTAL** | 969 | 786 |
| **CANDIDATE PERCENTAGE** | 55.21 | 44.79 |

**City of Montgomery**
**Municipal Run-Off Election**
**October 9, 2007**

**City Council - District 4 (Official)**

|  | David Burkette | James A. Nuckles |
|---|---|---|
| 2C - Carver Comm. Ctr. | 11 | 12 |
| 2D - Montgomery Boys & Girls Club | 76 | 47 |
| 2F - Fire Station 14 | 168 | 198 |
| 2G - Hayneville Road Comm. Ctr. | 196 | 142 |
| 2J - Hunter Station Comm. Ctr. | 107 | 28 |
| 4A - Franklin Boys & Girls Club | 118 | 51 |
| 4M - McIntyre Comm. Ctr. | 161 | 107 |
| AB - Absentee | 5 | 2 |
| PR - Provisional | 0 | 1 |
| **CANDIDATE TOTAL** | 842 | 588 |
| **CANDIDATE PERCENTAGE** | 58.88 | 41.12 |

13

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| Janet May, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Civil Action No. 2:07-cv-738-N |
| v. | ) | |
| | ) | |
| City of Montgomery, Al. et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

### DECLARATION OF WALTER BYARS

My name is Walter Byars. I am of legal age and of full legal capacity. I make the following statements of my own personal knowledge.

I am the City Attorney for the City of Montgomery, Alabama. I have served in this capacity for approximately six years. I have practiced law for over fifty-five years and I am a member and former President of the Alabama State Bar Association. I am admitted to practice in all state and federal courts in Alabama, the U.S. Court of Appeals for the Eleventh Circuit and the United States Supreme Court.

I am familiar with the City Council's adoption of Ordinance 42-2007 at the City Council meeting of June 5, 2007 which set election dates for municipal offices. The election dates were adopted to allow time to provide absentee ballots to persons serving overseas, commonly known as UOCAVA voters after the federal act providing registration standards for such persons.

At this time the only legally enforceable election schedule for the City of Montgomery is that contained in Act No. 618 of the 1973 Regular Session of the Alabama Legislature. I do not believe there is any significant likelihood that the City of Montgomery will use the election schedule contained in Ordinance 42-2007 for the next municipal elections in 2011. The City and

interested citizens worked hard, but unsuccessfully, in the Spring of 2007 to pass local legislation with election dates similar to those in Act 618 that would still accommodate the needs of the UOCAVA voters. The City has continued in recent weeks to seek other alternatives to election dates for the 2011 election. We have had conversations with the Department of Justice and have begun research on options including extending the time for receipt of absentee ballots beyond election day, having an instant runoff ballot or a blank runoff ballot, fax and internet absentee voting. I expect that we will try local legislation again or legislation for a class three municipality in the next legislative session. I believe that we will find other and better alternatives to accommodate the UOCAVA voters in 2011.

Under penalty of perjury, I affirm that the foregoing statements are true and correct. Signed on the 14th   day of November, 2007.

WALTER BYARS

# DEPOSITION OF JANET MAY

## October 1, 2007

## Pages 1 through 66

## PREPARED BY:

**Haislip, Ragan, Green, Starkie & Watson, P.C.**
**566 South Perry Street**
**Post Office Box 62**
**Montgomery, AL  36104**
**Phone: (334) 263-4455**
**Fax: (334) 263-9167**
**E-mail: haislipragan@charter.net**

Case 2:07-cv-00738-MHT-WC    Document 41-12    Filed 11/16/2007    Page 2 of 19

Deposition of Janet May  MAY vs. CITY OF MONTGOMERY        October 1, 2007

Page 1

IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF ALABAMA

NORTHERN DIVISION


JANET MAY, et al.,

      Plaintiffs,

vs.                            CIVIL ACTION NO.
                               2:07-cv-738-N

CITY OF MONTGOMERY,
ALABAMA, et al.,

      Defendants.



* * * * * * * * * * *


      DEPOSITION OF JANET MAY, taken pursuant to
stipulation and agreement before Julie A. Duncan,
Certified Court Reporter and Commissioner for the
State of Alabama at Large, in the Law Offices of Larry
T. Menefee, 407 South McDonough Street, Montgomery,
Alabama, on Monday, October 1, 2007, commencing at
approximately 11:15 a.m.



* * * * * * * * * * * *

830cc3b3-9d9a-4fd0-8399-138a0bb4deba

Case 2:07-cv-00738-MHT-WC   Document 41-12   Filed 11/16/2007   Page 3 of 19

Deposition of Janet May  MAY vs. CITY OF MONTGOMERY       October 1, 2007

Page 2

```
 1              APPEARANCES
 2   ON BEHALF OF THE PLAINTIFFS:
 3   Mr. Edward Still
     EDWARD STILL LAW FIRM, L.L.C.
 4   Attorney at Law
     2112 11th Avenue South
 5   Suite 201
     Birmingham, Alabama 35205-2844
 6
     ON BEHALF OF THE DEFENDANTS:
 7
     Mr. Larry T. Menefee
 8   Attorney at Law
     407 South McDonough Street
 9   Montgomery, Alabama 36104
10
11       * * * * * * * * * * * * *
12
13
14          EXAMINATION INDEX
15
     JANET MAY
16
       BY MR. MENEFEE . . . . . . . . . . .  4
17
18
19       * * * * * * * * * * * * *
20
21
22
23
```

Page 3

```
 1          EXHIBIT INDEX
 2                    MAR
     DEFENDANTS' EXHIBITS
 3
 4   1   Council of the City of Montgomery,     7
         Minutes, etc.
 5
 6
 7       * * * * * * * * * * * * *,
 8
 9          STIPULATION
10       It is hereby stipulated and agreed by and
11   between counsel representing the parties that the
12   deposition of JANET MAY is taken pursuant to the
13   Federal Rules of Civil Procedure and that said
14   deposition may be taken before Julie A. Duncan, Court
15   Reporter and Commissioner for the State of Alabama at
16   Large, without the formality of a commission, that
17   objections to questions other than objections as to
18   the form of the question need not be made at this time
19   but may be reserved for a ruling at such time as the
20   said deposition may be offered in evidence or used for
21   any other purpose by either party provided for by the
22   Statute.
23       It is further stipulated and agreed by and
```

Page 4

```
 1   between counsel representing the parties in this case
 2   that the filing of said deposition is hereby waived
 3   and may be introduced at the trial of this case or
 4   used in any other manner by either party hereto
 5   provided for by the Statute regardless of the waiving
 6   of the filing of the same.
 7       It is further stipulated and agreed by and
 8   between the parties hereto and the witness that the
 9   signature of the witness to this deposition is hereby
10   not waived.
11
12       * * * * * * * * * * * * *
13
14              JANET MAY
15       The witness, after having first been duly sworn
16   to speak the truth, the whole truth and nothing but
17   the truth testified as follows:
18              EXAMINATION
19   BY MR. MENEFEE:
20   Q.  Would you please state your name.
21   A.  Janet May.
22   Q.  And your address, please?
23   A.  1412 South Perry.
```

Page 5

```
 1   Q.  And your age?
 2   A.  Thirty -- fifty-three.
 3   Q.  Are you married?
 4   A.  Yes.
 5   Q.  Have you ever been a plaintiff or a defendant
 6       in any litigation before?
 7   A.  Yes.  Does that include small claims?
 8   Q.  Sure.
 9   A.  Yes.
10   Q.  Other than small claims, have you ever been a
11       plaintiff or defendant in any litigation?
12   A.  Not that I remember.
13   Q.  How many times have you been a plaintiff or
14       defendant in small claims?
15   A.  Oh, maybe three or four.
16   Q.  Were they related to some business matters?
17   A.  Business, yes.
18   Q.  Are you in business?
19   A.  Yes.
20   Q.  What do you do?
21   A.  Advertising and public relations.
22   Q.  Okay.  And your husband?
23   A.  He's in management with BellSouth.
```

Case 2:07-cv-00738-MHT-WC     Document 41-12     Filed 11/16/2007     Page 4 of 19

Deposition of Janet May   MAY vs. CITY OF MONTGOMERY                    October 1, 2007

Page 6

1  Q.  Have you ever given a deposition before?
2  A.  Yes.
3  Q.  Where do you vote?  What --
4  A.  The precinct?
5  Q.  Yes, ma'am.  Polling place.
6  A.  Cleveland Avenue YMCA.
7  Q.  And you are in, therefore, council district
8     three?
9  A.  Yes.
10 Q.  And you are the city council member from that
11    district?
12 A.  Yes.
13 Q.  And you are finishing your first term; is that
14    correct?
15 A.  Yes.
16 Q.  Okay.  And you are currently in the midst of a
17    re-election bid?
18 A.  Yes.
19 Q.  There will be a runoff a week from tomorrow?
20 A.  Yes.
21 Q.  When did you first register to vote; do you
22    recall?
23 A.  I believe it was my eighteenth birthday.

Page 7

1  Q.  Here in Montgomery?
2  A.  No.
3  Q.  Where?
4  A.  Calhoun County.
5  Q.  When did you come to Montgomery?
6  A.  1976.
7  Q.  And did you soon register to vote in
8     Montgomery?
9  A.  I did.
10 Q.  What brought you to Montgomery?
11 A.  Marriage.
12 Q.  Marriage.  Okay.  I assume you voted on
13    August 28th?
14 A.  Oh, yes, sir.
15 Q.  Did this new election schedule, the
16    August 28th and early October election
17    schedule, deprive you of your right to vote?
18 A.  No.
19 Q.  And you plan to vote in the runoff a week from
20    Tuesday, don't you?
21 A.  Yes.
22         (Defendants' Exhibit Number 1 marked
23          for identification.)

Page 8

1  Q.  I'm going to mark this as Defendants'
2     Exhibit 1.  It's a set of the city council
3     meeting minutes.  And I'll show it to you.
4     I'll give you a copy.  I've got the complete
5     minutes.  These are just the ones that are
6     related to these -- I'll mark it Defendants'
7     Exhibit 1.  We previously filed it with the
8     court.  If you'll look at that.  I've got the
9     same thing here.
10        There's a handwritten number down in the
11    bottom right-hand corner that I'll -- the
12    first one is the minutes from February 6th,
13    2007.  And if you will, turn to page 2.  At
14    that -- do you recall that on February 6th,
15    2007 the city council adopted an ordinance,
16    number 13-2007, that set an election schedule,
17    the same election schedule they just -- you're
18    in the middle of now?
19 A.  Yes.
20 Q.  And did you vote in favor of that?  I think
21    it's shown on page 3.
22 A.  Yes.
23 Q.  Okay.  And isn't it true that in order to vote

Page 9

1     at that time y'all had to take a vote to
2     suspend the rules --
3  A.  Yes.
4  Q.  -- in order --
5  A.  Yes.
6  Q.  And you voted in favor of suspension of the
7     rules?
8  A.  Yes.
9  Q.  And is it the custom that if one person
10    objects to suspending the rules it does
11    not -- it fails?
12 A.  Yes.
13 Q.  Why did you vote in favor of that ordinance?
14 A.  I believe we had discussed this ordinance.  We
15    had discussed this ordinance.  And we were
16    told that this was a precleared date, and this
17    date was okay.
18 Q.  So you were in -- you had a work session,
19    what's called an informal work session, before
20    each city council meeting, didn't you?
21 A.  Yes.
22 Q.  So you would have had an opportunity to
23    discuss the ordinance at that work session

830cc3b3-9d9a-4fd0-8399-138a0bb4deba

Deposition of Janet May  MAY vs. CITY OF MONTGOMERY                October 1, 2007

Page 10

1    and, again, you could have asked questions in
2    the council meeting?
3    A.  Yes.
4    Q.  Did you ask any questions at either of those
5    two opportunities?
6    A.  Yes.
7    Q.  And what questions do you recall asking?
8    A.  I asked why we were voting on this date, if I
9    can -- because I believe at that time we
10   had -- that's been so long ago.  This was back
11   in February.
12   Q.  Right.
13   A.  I know that we had talked about this -- this
14   date.  And it seemed to be okay.  From the
15   discussion at the work session, there was
16   a -- a clearance on this date, and everything
17   was fine.  So there -- I saw no reason not
18   to -- not to do that.
19   Q.  Okay.  Did you have any understanding why you
20   would change from what's called the Act 618
21   dates, the old dates?  Why was there any
22   effort to change?
23   A.  There was a discussion about Help America

Page 11

1    Vote.
2    Q.  Could it have been the overseas voting
3    provision, the --
4    A.  Yes.
5    Q.  -- UOCAVA, Uniform Overseas --
6    A.  Yes.  The HAVA.  Yes, the Help America Vote
7    Act.  There was a discussion about that.
8    Q.  And what was your understanding of that -- or
9    memory of that discussion, that there were
10   problems with compliance?
11   A.  That seemed to have been the discussion,
12   yeah.  Problems with the time frame for
13   voting.
14   Q.  Did it have to do with the fact that the old
15   dates only had three weeks between the first
16   election and the runoff?
17   A.  I believe so, yes.
18   Q.  And that this new date allowed six weeks
19   between the first election and the runoff?
20   A.  Uh-huh (positive response).
21   Q.  Does that sound correct?
22   A.  That sounds like that was probably it.
23   Q.  Okay.  And did you understand that for

Page 12

1    overseas voters, typically people in the
2    military, the six weeks would allow them time
3    to return ballots between the first election
4    and the runoff?
5    A.  Right.
6    Q.  Does that sound correct?
7    A.  It does.
8    Q.  Okay.  I will prompt you to speak answers
9    rather than just nod your head.
10   A.  Oh, okay.
11   Q.  I'm trying --
12   A.  Just verbalize?
13   Q.  Yes, that's what --
14   A.  Okay.
15   Q.  That's what she gets.
16   A.  Okay.
17   Q.  Okay.  So on two occasions, on the
18   February 6th meeting you voted in relationship
19   to ordinance 13-2007, you voted to suspend the
20   rules --
21   A.  Uh-huh (positive response).
22   Q.  -- and you voted in favor of that ordinance;
23   is that correct?

Page 13

1    A.  Yes.
2    Q.  And both of those were unanimous votes?
3    A.  Uh-huh (positive response).
4    Q.  All members of the council voted in favor; is
5    that correct?
6    A.  Uh-huh (positive response).
7    Q.  Okay.
8    A.  That's what it says.
9    Q.  And is that consistent with your memory?
10   A.  From what I remember, yes.
11   Q.  Okay.  If you'll turn to page 4 of that
12   exhibit, we have got the excerpts from the
13   minutes of the February 20th meeting.  And at
14   the bottom of page 4 and the top of page 5 you
15   will see that the council appears to have
16   voted unanimously to uphold the mayor's veto
17   of that ordinance.
18   A.  Uh-huh (positive response).
19   Q.  Does that sound correct and trigger some
20   memory?
21   A.  Yes, it does.
22   Q.  So at this point, again, the council was
23   unanimous along with the mayor, right?

830cc3b3-9d9a-4fd0-8399-138a0bb4deba

Page 14

1   A.   Yes.
2   Q.   What was your understanding of what was to
3        occur next with the veto of this, if
4        anything?
5   A.   We were -- I guess we were looking at another
6        date --
7   Q.   Okay.
8   A.   -- obviously.
9   Q.   Well, turn, if you will, to page 7. And you
10       will see a resolution down at the bottom
11       portion of the page, resolution 40-2007. And
12       it has to do with a request to the -- well,
13       the first sentence speaks of the Uniform
14       Overseas and Citizens Absentee Voting Act.
15       UOCAVA is the way folks are pronouncing that
16       acronym. And then down at the very bottom it
17       says, the -- it says, now, therefore be it
18       resolved that the mayor be authorized to have
19       prepared legislation which would place the
20       election dates for the Montgomery city
21       elections in compliance with federal laws, and
22       that the Montgomery legislative delegation be
23       requested to introduce such legislation.

Page 15

1        So this was a resolution from the city
2        council -- from the city of Montgomery,
3        adopted as a resolution, requesting the
4        legislature to pass a special act; is that
5        correct?
6   A.   Yes.
7   Q.   And the vote was, first, to suspend the rules
8        and consider it, and that was unanimous; is
9        that correct?
10  A.   Yes.
11  Q.   And the next vote to adopt it was eight to
12       one. You voted in the majority, eight. And
13       Mr. Cook opposed that. Does that seem correct
14       to you?
15  A.   Yes.
16  Q.   Do you have any idea why Mr. Cook opposed it?
17  A.   No.
18  Q.   Did you feel satisfied with the plan to ask
19       the legislature to pass a law --
20  A.   Yes.
21  Q.   -- to address this?
22  A.   Yes.
23  Q.   Okay. And so with the exception of Mr. Cook's

Page 16

1        one negative vote on the ultimate passage,
2        again, the mayor and all of the council
3        continued to be on the same track?
4   A.   Yes.
5   Q.   Is that right?
6   A.   Yes.
7   Q.   Now, if you will, turn to page 9 of that
8        exhibit.
9            It's from the March 6th, 2007 city
10       council meeting. And turn to page 11. And it
11       adopted an ordinance, 42-2007 -- I'm sorry.
12       I'm sorry. Excuse me. I have -- I skipped a
13       page. Excuse me.
14           Let's look at page 9, March 6th, 2007.
15       And if you will go down midway, slightly below
16       the top -- at the top of the second half of
17       the page it says, Mayor Bright reported that
18       the proposed dates for the municipal elections
19       are -- and then it said, election October 2nd,
20       runoff election November 13, qualifying begins
21       July 24, qualifying ends August 21, and assume
22       office November 20.
23           And then it said there was a motion to

Page 17

1        approve the dates by Councilor Spear, and then
2        an -- eight affirmative votes in favor of
3        adopting those election dates.
4            Does that sound correct to you?
5   A.   Yes.
6   Q.   There was one absent vote of council member
7        Mr. Jinright?
8   A.   Yes.
9   Q.   So, again, the council and the mayor are all
10       in agreement on the course of action; is that
11       correct?
12  A.   Yes.
13  Q.   Okay. If you will, turn to page 10. And this
14       is the city council meeting of June 5th, 2007
15       at ten o'clock in the morning. Let me ask
16       you, the city council meetings alternate
17       between a ten a.m. start time and a five p.m.
18       start time; is that custom?
19  A.   Yes.
20  Q.   When you have a ten o'clock in the morning
21       starting time, when is the work session for
22       that meeting typically scheduled?
23  A.   Eight-thirty.

830cc3b3-9d9a-4fd0-8399-138a0bb4deba

Deposition of Janet May  MAY vs. CITY OF MONTGOMERY                October 1, 2007

Page 18

1   Q.  At eight-thirty.  Okay.  So you would have
2       probably had an eight-thirty work session that
3       morning, and then went into a ten o'clock
4       council meeting; is that correct?
5   A.  Yes.
6   Q.  And on page 11, it shows ordinance 42-2007
7       that was then considered, first by suspension
8       of the rules, and then by adopting, again, by
9       a vote of nine to zero.  And you voted, as did
10      all council members unanimously, for
11      suspension of the rules and adoption of
12      ordinance 42-2007; is that correct?
13  A.  Yes.
14  Q.  Okay.  So, again, the mayor and all of the
15      city council are unified in their -- what
16      course to follow for setting city election
17      dates; is that correct?
18  A.  Yes.
19  Q.  Okay.  And those were the election dates that
20      are now in place that was in early June; is
21      that correct?
22  A.  Yes.
23  Q.  Okay.  Now, if you had voted against the

Page 19

1       motion at that meeting to suspend the rules to
2       bring that ordinance up, it would not have
3       been considered at that time; isn't that
4       correct?
5   A.  Yes.
6   Q.  Did you express any opposition to the adoption
7       of this ordinance?
8   A.  I remember questioning why were we voting on
9       this date.
10  Q.  You mean the date of June 5th that you were
11      casting the vote or while you were adopting
12      those dates for the elections?
13  A.  While we were adopting the dates.
14  Q.  For the elections?
15  A.  Yes.
16  Q.  They were the same ones you adopted in
17      February?
18  A.  Right.  Because it -- if I remember correctly
19      from what we had done, we had asked the
20      legislature to set the dates.  And if I
21      remember correctly, we were voting on this
22      before we -- the legislature had acted on the
23      dates requested.

Page 20

1   Q.  If the legislature had in fact, by that point,
2       reached so late in the term that it had been
3       impossible to pass Montgomery's Special Act,
4       would that cause you to reach a different
5       conclusion?  This is June 5th.  It's very near
6       the end of the legislative session.
7   A.  State your question again.
8   Q.  Sure.  If in fact the legislature was so near
9       the end of its term on June 5th that it would
10      have been impossible for the legislature to
11      pass this special act for the -- for
12      Montgomery elections, so, therefore, there was
13      no longer a possibility of the legislature
14      taking any action to help Montgomery.
15  A.  Are you asking me that or are you telling me
16      that?
17  Q.  Well, I suggest that that's the situation.
18  A.  Well, I didn't know that.
19  Q.  Okay.  If it was the situation, would that
20      help you understand why you were voting on it
21      at this time?
22  A.  Well, I never thought that it was too late as
23      long as they were in session.

Page 21

1   Q.  Did you understand that the legislature takes
2       several readings of a bill and then voting in
3       each of the two houses?
4   A.  Uh-huh (positive response).
5   Q.  So you can't pass a bill in one day; you
6       understand the legislative process?
7   A.  I understand that.  I understand -- yes, I do
8       understand.
9   Q.  Much like your council.  Y'all have to --
10      unless you suspend the rules and get a
11      unanimous agreement, you have to have time to
12      consider an ordinance for the city?
13  A.  I do understand that.
14  Q.  Okay.
15  A.  But I still -- as I said, since the
16      legislature was in session, it never occurred
17      to me that it would be too late.
18  Q.  Did you have any other concern about the bill
19      that you voiced?
20  A.  It just -- from what I can remember, I asked
21      about the time.  Because the legislation was
22      still with the delegation.  And it just seemed
23      early.

830cc3b3-9d9a-4fd0-8399-138a0bb4deba

Page 22

1  Q.  Okay.  That's all you -- that was your major
2      concern?
3  A.  Right.  Because from what I had been told,
4      there was not a problem with the
5      legislation --
6  Q.  Meaning --
7  A.  -- with the delegation.
8  Q.  -- you expected it to go through?
9  A.  Yes.
10 Q.  Did you make any efforts to talk to any of the
11     legislative delegation?  Were you involved in
12     any lobbying on behalf of this?
13 A.  No one asked me to do anything for the
14     legislation moving from the city to the
15     delegation.  I wished they had, but I was not
16     asked.
17 Q.  You were not asked and you did not?
18 A.  Well, I talked to -- I talked to
19     Representative Knight --
20 Q.  Okay.
21 A.  -- about it.
22 Q.  Sometime during the legislative session?
23 A.  Yes.

Page 23

1  Q.  And what was the gist of your conversation and
2      his response?
3  A.  Basically, you know, what's going on with the
4      legislation.  I think I mentioned that to him
5      a couple of times.  When it was moving so
6      slowly in the Senate, like everything else,
7      you know, I asked about it a couple of times.
8      And he says, well, it seems to be -- you know,
9      I think -- I still think it's going to be
10     okay.  And I never spoke directly with
11     Senator Ross.  But in speaking with
12     Senator Cook, who had spoken directly with
13     Senator Ross -- I mean, Councilor Cook, who
14     had spoken directly with Senator Ross, at that
15     time, Senator Ross seemed to think that the
16     legislation was okay.
17         And I remember the last time I talked to
18     Representative Knight he said, well, now,
19     we've done our job.  It has passed the house,
20     so ...
21 Q.  I see.  You didn't speak to Senator Dixon by
22     chance, did you?
23 A.  No, I did not.

Page 24

1  Q.  Do you know anyone who did?
2  A.  Councilor Roby did.  I know that.  And --
3      well, I know that.
4  Q.  Do you have pretty good communication with
5      Ms. Roby?
6  A.  We speak fairly often.  We certainly speak
7      when we need to speak to each other.
8  Q.  Sure.  It's cordial at least?  It's not a
9      hostile relationship or anything --
10 A.  Not --
11 Q.  -- adversarial relation?
12 A.  Not ever.
13 Q.  Okay.  So with the action by the council on
14     June 5th, the city has adopted election
15     dates.  With that, were you then contacted by
16     Joe Reed or anyone else expressing concern
17     about that action?
18 A.  Yes, I talked to Dr. Reed.
19 Q.  Okay.  And did you call him saying -- or did
20     he call you?
21 A.  I called him.
22 Q.  What was the -- for that reason?
23 A.  I don't -- I don't remember.

Page 25

1  Q.  Okay.  And what concerns did you raise or did
2      he raise?  Who raised what concerns, if any?
3  A.  He was concerned about the date being early,
4      just like we had talked about earlier.  So
5      certainly he was concerned about the
6      August 28th date as not being -- well, not --
7      not giving students enough time to
8      participate.
9  Q.  Was that -- had y'all talked about that
10     earlier?
11 A.  Yes.  Yes.
12 Q.  When was that discussed, that issue of
13     students having -- not having the chance to
14     register and vote?
15 A.  It was talked about some months earlier.
16 Q.  Back in those February meetings that we -- we
17     have the -- that begin at the first page of
18     this?
19 A.  It was talked about between the --
20 Q.  Page 1 is the first meeting of February 6th.
21 A.  So it was talked about between then and then
22     the vote that we took to change the -- to
23     change the dates.

Deposition of Janet May  MAY vs. CITY OF MONTGOMERY                October 1, 2007

Page 26

1   Q.  The February --
2   A.  Whenever that was.
3   Q.  The February 20th, meeting?
4   A.  What did we do on February 20th?
5   Q.  The February -- let's see.  The first meeting
6       was on February 6th.  That's page 1 --
7   A.  Right.
8   Q.  -- of the exhibit.  And the second meeting,
9       two weeks later, was February 20th, page 4.
10  A.  Page 4.
11  Q.  That's when you voted to uphold the mayor's
12      veto of the first ordinance you passed.
13  A.  Yes.
14  Q.  Okay.  So you're saying, yes, that that
15      concern about students registering to vote
16      would have been expressed by Dr. Reed by
17      February 20th?
18  A.  Yes.
19  Q.  Okay.  And you were aware of that?
20  A.  Yes.
21  Q.  And did you share that concern?
22  A.  Yes.
23  Q.  And you shared that concern back in February?

Page 27

1   A.  Yes.
2   Q.  Were you also concerned about the overseas
3       voters being able to cast absentee ballots?
4   A.  Yes.
5   Q.  Well, let's go back to the more current --
6       just to finish up this exhibit.  You passed
7       the ordinance on June 5th.  You would have had
8       a meeting on June 19th.  Nothing was brought
9       up about it at that -- at that meeting.  The
10      next time was July 3rd.  The first meeting in
11      July.  And at that time -- that's on page 12
12      of the exhibit.  Let's see.  If you'll look at
13      the bottom half of page 13 it says, there was
14      a motion to repeal the ordinance passed on
15      June 5th.  You made the motion, according to
16      these minutes, to suspend the rules in order
17      that that could be considered at that time.
18          Does that sound correct?  Do you remember
19      that meeting on --
20  A.  Yes.
21  Q.  -- July 3rd?
22          And your motion failed by a vote of four
23      to five.  Does that sound correct?

Page 28

1   A.  Yes.
2   Q.  So you were not able to consider the motion at
3       that meeting?
4   A.  Right.
5   Q.  Okay.  Who did you solicit support from for
6       your motion to suspend the rules?
7   A.  From everyone.
8   Q.  You spoke to every council member and asked
9       their support?
10  A.  If I'm not mistaken, I made an appeal to the
11      people at the work session, yes.
12  Q.  At the work session.  So it was a general --
13  A.  Yes.
14  Q.  -- as opposed --
15  A.  Yes.
16  Q.  Did you contact anybody one-on-one, any
17      council members one-on-one by phone or a
18      face-to-face meeting prior to a group meeting?
19  A.  One-on-one.  I may have talked to some people
20      on the telephone.
21  Q.  Okay.  Who might you have talked to on the
22      telephone?
23  A.  I'm sure I talked to Cook.

Page 29

1   Q.  Okay.  And he was agreeable?
2   A.  Yes.
3   Q.  Okay.
4   A.  He may have been the only one I talked to on
5       the phone about that.
6   Q.  What about Nuckles?
7   A.  I don't remember.
8   Q.  And Calhoun?
9   A.  I don't remember talking to him either.
10  Q.  Did you ask Ms. Roby if she would support --
11  A.  In work session.  I asked for support in work
12      session for the people I didn't talk to.
13  Q.  You didn't talk to any others personally with
14      a direct phone call or a one-on-one meeting?
15  A.  Not that I remember.
16  Q.  So then at page 14 of the meeting -- the
17      minutes of July 17th, that same motion was
18      then able -- was brought up.  Since it had
19      been introduced at the previous meeting, it
20      was not necessary to suspend the rules; is
21      that correct?
22  A.  Yes.
23  Q.  And the efforts that are shown on page 15, the

830cc3b3-9d9a-4fd0-8399-138a0bb4deba

Deposition of Janet May  MAY vs. CITY OF MONTGOMERY              October 1, 2007

Page 30

1    effort to repeal ordinance 42-2007, failed on
2    a four to four vote, with one councilman,
3    Spear, absent; is that correct?
4    A.  Yes.
5    Q.  Okay.  Now, what, it seems to me, we have is
6    that from early February to early June, the
7    city council repeatedly voted unanimously
8    along with the same plan as the mayor for the
9    election schedule.  And then sometime between
10   the June 5th election -- council date and
11   July 3rd minds changed.
12       What caused the change, in your mind, to
13   change that course?
14   A.  To change from --
15   Q.  The resolution -- the ordinance, 42-2007, that
16   you adopted on June 5th and a month later, on
17   July 3rd, you make a motion to repeal it?  Why
18   did you change?
19   A.  I believe the legislature was out of session
20   at that time.  And there was no recourse from
21   the legislature.
22   Q.  I'm sorry.  I don't understand.  You
23   didn't -- tell me that again.

Page 31

1    A.  The legislature was out of session, if I
2    remember correctly.
3    Q.  Why did you change your mind --
4    A.  Because --
5    Q.  -- from June 5th?
6    A.  -- there was no -- there was no way that we
7    were going to get any action from the
8    legislature on changing the date.
9    Q.  So you thought it better not to change the
10   date?
11   A.  If the delegation was not going to be
12   responsive, yes.
13   Q.  Well, why did you vote to change the date on
14   June 5th?
15   A.  Because there was still time.
16   Q.  So you were hoping that the legislature would
17   overrule what the city did?
18   A.  Hoping they would -- they would do what we
19   asked them to do.
20   Q.  Well, why would you vote for the city to adopt
21   an ordinance if you were still thinking the
22   legislature was going to change it?
23   A.  Well, you're hoping that the legislature will

Page 32

1    do what we unanimously asked them to do.
2    Q.  Well, why would you go -- why would the city
3    adopt an ordinance that has a different date
4    than what you're asking the legislature to do?
5    A.  Because at that time, it seemed like, from
6    what we were told, we were almost between a
7    rock and a hard place.
8    Q.  And that rock and -- the rock was what and the
9    hard place was what?
10   A.  The hard place was the 28th, and the rock was
11   the 2nd.
12   Q.  The 2nd of what, I'm sorry?
13   A.  I'm sorry, October.  2nd of October.
14   Q.  I don't quite understand your metaphor of the
15   rock and the hard place of --
16   A.  I don't know how --
17   Q.  -- August 28th to the 2nd.  What's the
18   difficulty with that?
19   A.  Well, I guess, the -- there's not really any
20   difficulty.  The situation is that you want
21   the election to be when we ask for it, which
22   was October 2nd, you know.  And we hope that
23   they do that.  But they tell us that if we --

Page 33

1    if the legislature doesn't do that, this is
2    all we can do.
3    Q.  And when you say -- what is this -- what is
4    all we can do?  What do you mean by that?
5    A.  To vote on the date.
6    Q.  That date being?
7    A.  August 28th.
8    Q.  August 28th.  I see.  If the legislature --
9    let me make sure I'm understanding.  You
10   understood that if you didn't -- didn't vote
11   on October 2nd the only other thing you could
12   do would be to vote on August 28th?
13   A.  Well, we could never vote on October 2nd.
14   Q.  Okay.  I'm a little confused then on the rock
15   and the hard place.  Let's go back to that.
16   Tell me what you understood the concern to
17   be.
18   A.  I don't know.  I'm having a bit of a time
19   explaining it to you.  So you're going to have
20   to ask me a question again so that I can
21   answer it so I can be a bit -- a bit more
22   clear.
23   Q.  Well, what was your -- you described a rock

830cc3b3-9d9a-4fd0-8399-138a0bb4deba

Page 34

1 and a hard place, some dilemma that you had.
2    You had to go one way or the other.
3 A. Right.
4 Q. And what was that? Describe that to me,
5    again, please.
6 A. Because you -- you want the legislature to
7    pass the October 2nd date that you have asked
8    them to do.
9 Q. Okay.
10 A. But if they don't do that, then the only other
11    place we have to go is August 28th.
12 Q. Okay. You understood that to be the option?
13 A. Yes.
14 Q. I see. So is that why you made the motion to
15    repeal the ordinance, 42-2007, at the July 3rd
16    meeting and, again, on July 17?
17 A. That seems to be -- if I'm following the time
18    line, that would be after the legislative --
19 Q. That's right.
20 A. -- session is over.
21 Q. Yes.
22 A. Yes.
23 Q. Okay. At that point in time, July 17th, you

Page 35

1    made the motion to repeal the ordinance,
2    42-2007?
3 A. Uh-huh (positive response).
4 Q. What did you understand would be the effect of
5    that?
6 A. Then we would -- we would hold our election at
7    our authorized date.
8 Q. Authorized by what?
9 A. 618.
10 Q. I see. And did you determine that there was
11    time to conduct the elections under the
12    schedule of Act 618?
13 A. Yes.
14 Q. What did you understand would happen to the
15    candidates who had already qualified to run
16    for office under the 42-2007 schedule?
17 A. What would happen to them?
18 Q. Yes. You know candidate qualifying opened on,
19    I think it was, July 3rd when you had the city
20    council meeting. And it closed the same day
21    you had the next city council meeting two
22    weeks later, July 17th. What would happen to
23    those candidates who had qualified to run?

Page 36

1 A. They would still be qualified to run.
2 Q. Would they?
3 A. I assume.
4 Q. And the notice of election? Would the city
5    have to issue a new notice of election under
6    the repeal that you advocated?
7 A. I would assume.
8 Q. Did you talk to any lawyers about that?
9 A. No.
10 Q. Did you talk to anyone who advised you on
11    that, even if they weren't a lawyer?
12 A. I'm sure I spoke with Dr. Reed.
13 Q. Okay. And are you sure that he advised you
14    that there was still time?
15 A. No. No, I'm just saying I'm sure I spoke with
16    him.
17 Q. I see. Did he advise you that there was still
18    time to conduct the elections under Act 618?
19 A. I don't know if he advised. He -- I -- he
20    probably felt strongly it was. Yes.
21 Q. That there was time?
22 A. Yes.
23 Q. Not just that he wanted that to happen, but

Page 37

1    that it was -- it was possible to conduct
2    those elections under the existing Act 618,
3    even at that date of July 17th?
4 A. Yes.
5 Q. And what did he advise about the candidates
6    who had already qualified to run under
7    ordinance 42-2007?
8 A. There was no advice.
9 Q. Did you ask his ideas on those?
10 A. No.
11 Q. Did you seek anyone else's advice on what
12    would happen to those candidates?
13 A. No. Those candidates, in my mind, again,
14    would still be qualified to run.
15 Q. Do you have any basis for believing that?
16 A. No, just that I was qualified and I was
17    running.
18 Q. And it didn't matter when the election date
19    was?
20 A. At that time, no.
21 Q. Would candidate qualifying be reopened to
22    allow other people to run at the later date if
23    you changed the date as you wanted?

Page 38

1  A.  I don't know.
2  Q.  Who would decide that if you had -- if your
3     motion had prevailed?
4  A.  I don't know.
5  Q.  Did you seek advice from anybody on those
6     issues?
7  A.  Yes.
8  Q.  Who?
9  A.  I talked to -- well, seek advice, no.  No.
10    Advice --
11 Q.  Did you get advice from anybody on those
12    issues, about candidate qualifying?
13 A.  No.
14 Q.  On any other matters about the election
15    schedule and how it would work if it was set
16    at that date?
17 A.  No.
18 Q.  Okay.  I think that's all I have on that
19    exhibit.
20        After the June 5th city council meeting
21    when y'all adopted ordinance 42-2007 by
22    unanimous vote, you had a conversation with
23    Dr. Reed about that election schedule; is that

Page 39

1     correct?
2  A.  I'm sure I did.
3  Q.  Did he contact you or did you contact him?
4  A.  No.  June 5th, what did we adopt?
5  Q.  That's when you adopted the election schedule
6     that we're operating under now.  And it's --
7     if it helps you, we can -- you can look at
8     that.  That's on page 10, if that helps
9     refresh your memory.  That's where y'all
10    adopted the ordinance that you have sued --
11 A.  Okay.  What was the question?
12 Q.  After that council meeting, did you have a
13    conversation with Dr. Reed about the adoption
14    of that ordinance --
15 A.  I'm sure I did.
16 Q.  -- and challenging it?
17 A.  And challenging it, yes.
18 Q.  Did you call him or did he call you?
19 A.  I don't remember.
20 Q.  Did you -- was it your idea to file the
21    lawsuit or was it Dr. Reed's?
22 A.  It was -- it was actually -- well, I guess it
23    was advice on what do you do, if you're stuck

Page 40

1     in this -- if you've voted for a date that's
2     not going to work, then what do you do?  And I
3     guess it was advice that that -- yes, that's
4     what you can do.
5  Q.  Okay.  And the date wouldn't work?  What
6     wouldn't work about the date?
7  A.  Well, if the date was -- if it would not work
8     for students who wanted to participate.
9  Q.  Okay.  And when did you realize, first, that
10    it wouldn't work for students who wanted to
11    participate?
12 A.  I guess it really started to crystallize
13    during the summer, during the summer --
14    sometime this summer, that it would just -- it
15    would not allow them to -- to vote.  And so
16    when, I can't be specific, but just sometime
17    this summer.
18 Q.  Okay.  And who organized the litigation?  Who
19    hired the lawyers and got the other
20    plaintiffs?
21 A.  Dr. Reed.
22 Q.  Okay.  Are you paying Mr. Still?  Do you have
23    any obligation to pay his fees or the cost of

Page 41

1     this litigation?
2  A.  No.
3  Q.  Do you know who is paying that?
4  A.  No.
5  Q.  Do you know if anyone is paying --
6  A.  No.
7  Q.  -- either those costs or fees?
8  A.  No.
9  Q.  Have you met either of the other lawyers on
10    the case other than Mr. Still?
11 A.  No.
12 Q.  Did you ever call the Department of Justice to
13    complain about the ordinance 42-2007 that you
14    voted in favor of?
15 A.  No.
16 Q.  In an attempt to get through this a little
17    more rapidly, do I understand that your
18    complaint in this lawsuit is the burden it
19    places on newly arriving students,
20    African-American students, at Alabama State
21    University?
22 A.  Burden?
23 Q.  Burden to vote, to register and vote.

830cc3b3-9d9a-4fd0-8399-138a0bb4deba

Deposition of Janet May  MAY vs. CITY OF MONTGOMERY                October 1, 2007

Page 42

1  A.  Yes.
2  Q.  Yes.  Is there any other aspect to your
3      complaint other than the burden on
4      African-American students arriving -- newly
5      arriving to Montgomery to register and vote?
6  A.  Well, my concern as city council
7      representative of district three is certainly
8      that group of voters in Montgomery city
9      council district three.
10 Q.  Do you have any others that you're bringing in
11     this lawsuit?  I'm not saying if you have any
12     others in the world.  You may have many other
13     concerns in the world, but anything else in
14     this lawsuit?
15 A.  No.  My concerns are the voters in this
16     district certainly being concerned about
17     the voter base in city council district three.
18 Q.  Okay.  And only African-American voters or are
19     you concerned about, also, white students
20     newly arriving to ASU?
21 A.  I'm certainly -- when you -- when you look at
22     the history of that district, your major
23     concern is African-American voters.  But

Page 43

1      not -- it's certainly not to the exclusion of
2      all voters similarly situated.  But you have
3      to be, first and foremost, concerned about
4      that particular demographic because of the
5      history of voting rights in that district.
6  Q.  How many students at Alabama State register to
7      vote in Montgomery?
8  A.  I don't know.
9  Q.  How many actually end up voting in city
10     elections?
11 A.  I don't know.  I guess it varies.
12 Q.  On August 28th, during the first election
13     where you were a candidate, how many
14     African-American students at Alabama State
15     University voted?
16 A.  I don't know.
17 Q.  Do you know any way to determine?
18 A.  I suppose you could -- you've got one box over
19     there that's in the student union building.
20 Q.  At ASU?
21 A.  At ASU there's one box.  And, yeah, I -- I
22     suppose you could -- you could tell.  You
23     would have to watch.  You would be -- you

Page 44

1      would have to place people at the various
2      entrances and, you know, you -- you would have
3      to actually take a poll.
4  Q.  There's no way to go back now and determine
5      how many students voted on August 28th, is
6      there?
7  A.  I -- well, you could extract, I suppose.  I
8      guess you could look at people who actually
9      vote at that box and back them out.
10 Q.  Who actually voted on August 28th?
11 A.  Well, who vote at that box, who vote at
12     Alabama State, I suppose.  Now, I'm not saying
13     that you could actually do that.  But I'll
14     just say I suppose you could.
15 Q.  How many students do you think vote?  Do you
16     have an idea, from a political judgment
17     standpoint?
18 A.  How many students vote?
19 Q.  Yes, at ASU.
20 A.  You mean like an average number?
21 Q.  Well, no, I would -- let's just use this past
22     election as a --
23 A.  I think it was --

Page 45

1  Q.  -- marker.
2  A.  There were -- I think I got a hundred and
3      thirty-seven votes, and Mr. Larkin may have
4      got a hundred and forty something over there.
5      Something like that.
6  Q.  Right.
7  A.  But I can't tell you how many of those are
8      students.
9  Q.  They're not all students, are they?
10 A.  No.
11 Q.  There are a number of -- who else votes at
12     that ASU polling place, other than just
13     students?
14 A.  You've got the Cloverdale neighborhood.
15 Q.  Dr. Reed?
16 A.  Yeah, I would think he votes there.
17 Q.  Yes.
18 A.  So you've got John Brown Terrace, Felder,
19     maybe some Cloverdale Road, Dunbar Street,
20     Felder Terrace, Finley, that area over there.
21 Q.  Just on the south side of ASU?
22 A.  Uh-huh (positive response).  Well, actually it
23     would be -- yeah.  Yeah.

830cc3b3-9d9a-4fd0-8399-138a0bb4deba

Deposition of Janet May MAY vs. CITY OF MONTGOMERY                October 1, 2007

Page 46

1   Q.  Does it capture any other areas off of the
2       campus to the north or to the east or the
3       west?
4   A.  No.
5   Q.  Do you know?
6   A.  No, I don't -- I don't believe so.  That box
7       covers, basically, Cloverdale and the
8       residential area south of Alabama State,
9       across Carter Hill Road, and some -- maybe a
10      little -- well, seven -- it's a split box.  So
11      it covers district three and district seven.
12      So it would get some area that's to the east
13      also going out Carter Hill Road.
14  Q.  Do you have any idea how many students at
15      Alabama State have registered in past years of
16      September -- during past municipal elections,
17      such as September of 2003?  Have you ever
18      heard that data?
19  A.  No.
20  Q.  Okay.  Would it surprise you to know that less
21      than twenty registered to vote in 2003 during
22      the month of September, or does that number
23      sound totally farfetched?

Page 47

1   A.  It sounds -- it sounds low considering all of
2       the voter registration drives and things you
3       hear about on campus.  And so --
4   Q.  Is there a greater registration drive on
5       campus on the general election years, the even
6       numbered years when there are state and
7       presidential elections occurring?
8   A.  I'm sure.
9   Q.  Okay.
10  A.  I'm sure.
11  Q.  The city elections are not as significant to
12      the students, are they?
13  A.  No, I wouldn't think so.
14  Q.  Did you campaign hard on campus?
15  A.  Not hard.
16  Q.  Did you speak at any campaign forums there?
17  A.  If there was an opportunity to speak --
18  Q.  Was there an opportunity to speak?
19  A.  I don't believe so.
20  Q.  Did you have a student campaign manager that
21      was heading up the Reelect Janet May Campaign
22      for Alabama State students, or something like
23      that?

Page 48

1   A.  Not in August, no.
2   Q.  Do you now?
3   A.  Yes, absolutely.
4   Q.  Isn't it true that all other students at all
5       other colleges in the Montgomery area were
6       affected by this election schedule just like
7       the ASU students?
8   A.  I would think so.
9   Q.  Are you aware that this election schedule was
10      only approved for this one time use by the
11      Department of Justice?
12  A.  I had heard that.
13  Q.  Okay.
14  A.  I did not know definitively.  I've not seen
15      anything in writing.  No one has shown me
16      anything.  No one has told me anything.
17  Q.  Have you seen the letter from the Department
18      of Justice?
19  A.  No.  I've requested information.  I've
20      requested that the city share with us
21      correspondence from the Department of
22      Justice.  I have made a request to the city
23      clerk asking for copies of letters to the --

Page 49

1       to the city from the justice department.  And
2       to this date, I have gotten zero.
3   Q.  Well, I think Mr. Still has it.  I have it.
4       I'll be glad to show you the letter from the
5       Department of Justice that granted the
6       preclearance.
7   A.  But it -- you would think that if I had asked
8       the city of Montgomery to share with me
9       correspondence that they could have done
10      that.
11  Q.  Do you seek to cancel the elections held on
12      August 28th?
13  A.  I beg your pardon?
14  Q.  Do you think that the elections held on
15      August 28th should be cancelled, overturned,
16      reheld?
17  A.  No, I never -- I never saw a reason to do
18      that.  It didn't seem like there was any -- at
19      this particular point in time, there's
20      anything to redo them for.
21  Q.  Do you know how many students have registered
22      to vote during this September, during this
23      past month?

13 (Pages 46 to 49)

830cc3b3-9d9a-4fd0-8399-138a0bb4deba

Case 2:07-cv-00738-MHT-WC    Document 41-12    Filed 11/16/2007    Page 15 of 19

Deposition of Janet May  MAY vs. CITY OF MONTGOMERY                October 1, 2007

Page 50

1   A.  No.  Again, I know that there have been two
2       voter registration drives.  I know of two
3       during the last month.  And I don't know.
4       It's hard to say.
5   Q.  Do you know how many folks were signed up
6       during those two drives?
7   A.  It seems like -- no, I don't.  No, I can't --
8       I can't say.
9   Q.  Okay.  The two gentlemen that are also named
10      plaintiffs with you that are students at ASU,
11      were they involved in those drives, do you
12      know?
13  A.  I don't, because I don't know if those two
14      students were active -- I mean, directly
15      active.
16  Q.  Do you know them?
17  A.  I know the student body president.
18  Q.  Okay.
19  A.  I know him when I see him.  I've been
20      introduced to him.
21  Q.  Okay.  Do you understand that students who
22      registered during September would be able to
23      vote in the runoff election?

Page 51

1   A.  Yes.
2   Q.  And you hope they'll vote for you?
3   A.  Of course.
4   Q.  Have you had a chance to read the amended
5       complaint that was filed by your -- by
6       Mr. Still in this action?
7   A.  If that's -- if that's what I got.  No, not
8       the amended.
9   Q.  Let me direct your attention in that amended
10      complaint beginning at paragraph number 8.
11      It's the history.  If you saw the original
12      complaint, I think this is pretty much the
13      same.  Did you see the original complaint?
14  A.  Uh-huh (positive response).
15  Q.  Okay.  What I wanted to ask you was about
16      paragraphs 8 through 13, which are basically
17      three pages there.  When you read that in the
18      original complaint, that history, did you have
19      any knowledge that was different or in
20      addition to this information in the complaint
21      about these events?
22  A.  Did I have any knowledge that was different?
23  Q.  Different or in addition to it about these

Page 52

1       events.
2   A.  Different or in addition to, no.
3   Q.  Okay.  If you read this after this deposition
4       and find out that you have additional
5       information, will you let us -- let your
6       lawyer know?
7   A.  Yes.
8   Q.  Okay.  Thank you.  That will save us a lot of
9       time rather than you having to read through
10      it.
11  A.  Uh-huh (positive response).
12  Q.  Do you think people in city government were
13      racially motivated when they suggested and
14      supported this election schedule of
15      August 28th, the first election?
16  A.  Do I think people -- people in city government
17      meaning?
18  Q.  Meaning the council and --
19  A.  City council.
20  Q.  -- and the mayor, basically.  And if so, who?
21  A.  I don't think -- I don't think people in city
22      government were racially motivated primarily.
23      I think maybe in the discussion about the

Page 53

1       dates, because it is dealing with Alabama
2       State University and Alabama State students,
3       that it becomes a racial discussion.  I don't
4       think there was -- there was any racial
5       motivation, but just by the mere fact of what
6       it is, it becomes racial.
7   Q.  I see.  Do you think any of the members of the
8       city council or the mayor sought to have the
9       August 28th election schedule in order to deny
10      African-American students at ASU an
11      opportunity to vote?
12  A.  No.  I don't think that the city or the -- I
13      don't think the city or the city council as a
14      whole, you know, voted for that for denial.
15      It just happened to do that.
16  Q.  Do you think a motivation was to accommodate
17      the overseas military voters, motivation for
18      the August 28th date?
19  A.  I think maybe motivation by the council,
20      because that's what we were told.
21  Q.  And the mayor, do you think that was his
22      motivation?
23  A.  I think he was -- he was told the same thing.

830cc3b3-9d9a-4fd0-8399-138a0bb4deba

Page 54

1  Q.  Okay.  The council members that would be most
2     impacted by students at ASU is primarily
3     yourself, right?
4  A.  Yes.
5  Q.  Okay.  And you voted in favor of this
6     August 28th date on several occasions, didn't
7     you?
8  A.  Yes.
9  Q.  There may be a few ASU students that live
10    maybe in Martha Roby's district, but not many;
11    is that correct?
12 A.  Well, I think there -- you know, everybody
13    doesn't live on campus at Alabama State, so
14    certainly there could be lots of students in
15    district seven.  Because district seven is --
16 Q.  Now, we're talking about students who are not
17    residents of Montgomery who are not part of a
18    Montgomery family, right?
19 A.  You're talking about students who live out of
20    town?
21 Q.  Who were from out of town --
22 A.  Yes.
23 Q.  -- who moved to Montgomery --

Page 55

1  A.  Right.
2  Q.  -- and don't have time to establish residency
3     in Montgomery.  If you're an ASU student from
4     Montgomery, you've already got residency
5     established.  So we're talking about students
6     who moved from out of town to attend
7     Alabama State, their ability to establish
8     residency here.  Where else in the city, other
9     than around ASU, do you think there's student
10    housing?
11 A.  They don't necessarily have to live in student
12    housing to be a student.
13 Q.  No.  But apartment-type housing, generally.
14    Wouldn't you agree most students would be
15    seeking apartments and that type of housing?
16 A.  Yes.
17 Q.  And where else in the city do you think many
18    students are likely to live?
19 A.  They will -- close to campus, they could live
20    in district eight and district seven and
21    district three and district five.  Those are
22    the closest.
23 Q.  Now, eight -- who is the council member for

Page 56

1     eight?
2  A.  Pruitt.
3  Q.  And five?
4  A.  Calhoun.
5  Q.  Calhoun.
6  A.  And seven is Roby.  And three is May.
7  Q.  Those would be the main ones that --
8  A.  Those would be the closest to campus.
9  Q.  Closest.  Okay.  Do you think enough students
10    vote from Alabama State that these newly
11    moved-in students would have been able to
12    affect the results in the mayor's election?
13 A.  Do enough of them vote?
14 Q.  Yes.
15 A.  I don't know.  And I don't know historically
16    how they vote in municipal elections.  I just
17    know from the last time that I ran the
18    election was in October.  And I did what I
19    could to rally support from that campus.
20 Q.  Did you carry that ASU box --
21 A.  No, I think I --
22 Q.  -- four years ago?
23 A.  No, but it was close.  It was -- it may have

Page 57

1     been in the teens.
2  Q.  You didn't carry it this time, did you?
3  A.  No, but it was close.
4  Q.  All right.  Why isn't Alabama State at the
5     core of your constituency?
6  A.  Why?
7  Q.  Yes, or has Mr. Larkin got closer ties over
8     there?
9  A.  Well, it's his alma mater, so that would give
10    him a little bit closer ties.
11 Q.  I see.  Okay.  You're campaigning hard for
12    office, I assume?
13 A.  Yes.
14 Q.  Have you bought much TV time?  Is that a way
15    that you're campaigning?
16 A.  No TV.
17 Q.  You're a member of the Alabama Democratic
18    Conference?
19 A.  Yes.
20 Q.  How long have you been a member?
21 A.  I don't remember.  Maybe, oh, six years, eight
22    years.  Something like that.
23 Q.  Something of that nature?

Deposition of Janet May  MAY vs. CITY OF MONTGOMERY                October 1, 2007

Page 58

1   A.  Uh-huh (positive response).
2   Q.  Okay.  And John Knight is the chair of the
3       county ADC?
4   A.  The county, uh-huh (positive response).
5   Q.  Are you an officer?
6   A.  With the county?
7   Q.  Yes.
8   A.  No.
9   Q.  Or at any other level of ADC?
10  A.  Not with ADC, but with the party.
11  Q.  The Democratic party?
12  A.  Yes.
13  Q.  Okay.  Did ADC endorse candidates for the
14      municipal election?
15  A.  No.
16  Q.  Did the county ADC endorse candidates?
17  A.  Yes.
18  Q.  Who did the county endorse for city offices?
19  A.  The line up?
20  Q.  Yes, as best you can.  They endorsed you,
21      didn't they?
22  A.  May, Calhoun, Cook, who was unopposed.
23  Q.  Cook was unopposed.  They endorsed Nuckles

Page 59

1       and --
2   A.  Nuckles.
3   Q.  And didn't they co-endorse in that district
4       his opponent that's in the runoff?
5   A.  I don't know that.
6   Q.  And they endorsed Mr. Dow for mayor?
7   A.  Right.
8   Q.  Is that right?
9   A.  Uh-huh (positive response).
10  Q.  Did they endorse Mr. Jinright?
11  A.  Unopposed.
12  Q.  Did they endorse Ms. Sankey or Ms. Roby?
13  A.  Sankey.
14  Q.  Well, all that you have named and can recall
15      are all black; is that correct?
16  A.  That's correct.
17  Q.  Is ADC an important political organization in
18      Montgomery?
19  A.  Well, when you say ADC, are you talking about
20      the county party?
21  Q.  County.  At county level politics.
22  A.  I think historically it has been.
23  Q.  Is it still today?

Page 60

1   A.  I think so.
2   Q.  You sought their endorsement, I assume?
3   A.  Yes.
4   Q.  And glad to get it?
5   A.  Yes.
6   Q.  And the endorsement is mainly carried out
7       through printed ballots that are handed out at
8       polling places?
9   A.  Yes.
10  Q.  Are there other similar endorsing
11      organizations in the city of Montgomery?
12  A.  Not political.
13  Q.  You lived here while Mayor Folmar was still in
14      office?
15  A.  Yes.
16  Q.  Okay.  What was his reputation in the black
17      community while he was mayor?
18  A.  Racist.
19  Q.  Okay.  Was the defeat of Mayor Folmar in 1999
20      considered a significant change in city
21      government in the view of most black citizens?
22  A.  Yes.
23  Q.  For the better?

Page 61

1   A.  Yes.
2   Q.  As an office holder, have you been responsive
3       to the needs of the African-American community
4       in your district?
5   A.  Yes.
6   Q.  Okay.  Are black-elected city council
7       members -- are blacks elected to city council
8       positions in approximately the same proportion
9       to the percentage of black voting-age
10      population in the city, about as many
11      representatives as the voting-age population?
12  A.  I don't think so.
13  Q.  Oh, really.  What do you think?
14  A.  I think we are probably less represented.  I
15      think our -- our voting-age population
16      shows -- well, and I don't know.  I'm
17      guessing.  I mean, I can't state this for --
18      you know, for a fact.
19  Q.  Well, there are four on the -- four blacks on
20      the city council?
21  A.  I would think the voting-age population could
22      probably sustain five.
23  Q.  And how about in terms of the local

830cc3b3-9d9a-4fd0-8399-138a0bb4deba

Case 2:07-cv-00738-MHT-WC    Document 41-12    Filed 11/16/2007    Page 18 of 19

Deposition of Janet May  MAY vs. CITY OF MONTGOMERY          October 1, 2007

Page 62

1   legislative delegation?
2   A.  I think that's stretched as far as it can go.
3       I think the representation is -- it mirrors --
4   Q.  Mirrors the population?
5   A.  -- the population.
6   Q.  And the county commission?
7   A.  I think that mirrors also, I think.
8   Q.  Okay.  And the county school board?
9   A.  Yes.
10  Q.  Do you think you had support from white voters
11      in your district?
12  A.  Yes.
13  Q.  Did they raise funds for you?
14  A.  Yes.
15  Q.  Do you think you got more support from the
16      white community than Mr. Larkin did in your
17      district?
18  A.  The last election?
19  Q.  Yes, ma'am, August 28th.
20  A.  Yes.  Well -- August 28th, yes.  I think
21      maybe.  Uh-huh (positive response).
22  Q.  Okay.  Do you think that Mayor Bright got more
23      votes in the black community than Mr. Dow and

Page 63

1       Mr. Boyd?
2   A.  Yes.
3   Q.  Okay.  Do you think Ms. Roby got more votes
4       from the black community than Ms. Sankey did?
5   A.  I don't know.
6   Q.  Would looking at -- never mind.  That's all
7       right.
8           MR. MENEFEE:  I think that's all.
9           Thank you very much.
10          THE WITNESS:  Oh, you're welcome.
11          MR. MENEFEE:  I'm sorry it took as
12          long as it did.
13          Ed, do you have anything?
14      MR. STILL:  Nothing from me.
15
16      (The deposition concluded at
17      approximately 12:30 p.m.)
18
19      * * * * * * * * * * * * *
20      FURTHER DEPONENT SAITH NOT
21      * * * * * * * * * * * * *
22
23

Page 64

1               SIGNATURE PAGE
2           I, JANET MAY, hereby certify that I
3   have read the foregoing transcript of my deposition
4   given on Monday, October 1, 2007, and it is a true
5   and correct transcript of the testimony given by me
6   at the time and place stated with the corrections,
7   if any, and the reasons therefor noted below.
8   PAGE   LINE   CORRECTION AND REASON THEREFOR
9
10
11
12
    _____
13  JANET MAY
14
        SWORN TO AND SUBSCRIBED before me this
15  _____ day of _____, 20 __.
16
17  _____
18  NOTARY PUBLIC
19
    MY COMMISSION EXPIRES:
20  _____
21
22
23      * * * * * * * * * * * * *

Page 65

1           REPORTER'S CERTIFICATE
2   STATE OF ALABAMA:
3   BUTLER COUNTY:
4       I, Julie A. Duncan, Court Reporter and
5   Commissioner for the State of Alabama at Large, do
6   hereby certify that I reported the deposition of:
7                 JANET MAY
8   who was first duly sworn by me to speak the truth,
9   the whole truth and nothing but the truth, in the
10  matter of:
11          JANET MAY, et al.,
12          Plaintiffs,
13          vs.
14          CITY OF MONTGOMERY, ALABAMA,
15  et al.,
16          Defendants.
17      In the United States District Court
18      for the Middle District of Alabama,
19      Northern Division,
20      Civil Action No. 2:07-cv-738-N,
21  on Monday, October 1, 2007.
22      The foregoing 65 computer-printed pages
23  contain a true and correct transcript of the

830cc3b3-9d9a-4fd0-8399-138a0bb4deba

Deposition of Janet May  MAY vs. CITY OF MONTGOMERY          October 1, 2007

Page 66

```
 1    examination of said witness by counsel for the parties
 2    set out herein.  The reading and signing of same is
 3    hereby not waived.
 4          I further certify that I am neither of kin
 5    nor of counsel to the parties to said cause nor in any
 6    manner interested in the results thereof.
 7          This 15th day of October, 2007.
 8
 9
10          _____
            Julie A. Duncan, ACCR#: 256
11          Certified Court Reporter and
            Commissioner for the State
12          of Alabama at Large
13
14
15
16
17
18
19
20
21
22
23
```

830cc3b3-9d9a-4fd0-8399-138a0bb4deba

# DEPOSITION OF JON DOW

## October 1, 2007

## Pages 1 through 39

## PREPARED BY:

**Haislip, Ragan, Green, Starkie & Watson, P.C.**
**566 South Perry Street**
**Post Office Box 62**
**Montgomery, AL  36104**
**Phone: (334) 263-4455**
**Fax: (334) 263-9167**
**E-mail: haislipragan@charter.net**

Case 2:07-cv-00738-MHT-WC    Document 41-13    Filed 11/16/2007    Page 2 of 12

Deposition of Jon Dow MAY vs. CITY OF MONTGOMERY    October 1, 2007

Page 1

IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF ALABAMA

NORTHERN DIVISION


JANET MAY, et al.,

      Plaintiffs,

vs.                                      CIVIL ACTION NO.
                                         2:07-cv-738-N

CITY OF MONTGOMERY,
ALABAMA, et al.,

      Defendants.



* * * * * * * * * * *


      DEPOSITION OF JON DOW, taken pursuant to

stipulation and agreement before Julie A. Duncan,

Certified Court Reporter and Commissioner for the

State of Alabama at Large, in the Law Offices of Larry

T. Menefee, 407 South McDonough Street, Montgomery,

Alabama, on Monday, October 1, 2007, commencing at

approximately 2:05 p.m.


* * * * * * * * * * * *

Deposition of Jon Dow MAY vs. CITY OF MONTGOMERY        October 1, 2007

---

Page 2

```
1                APPEARANCES
2    ON BEHALF OF THE PLAINTIFFS:
3    Mr. Edward Still
     EDWARD STILL LAW FIRM, L.L.C.
4    Attorney at Law
     2112 11th Avenue South
5    Suite 201
     Birmingham, Alabama 35205-2844
6
     ON BEHALF OF THE DEFENDANTS:
7
     Mr. Larry T. Menefee
8    Attorney at Law
     407 South McDonough Street
9    Montgomery, Alabama 36104
10
11
12           * * * * * * * * * * * * *
13
14
            EXAMINATION INDEX
15
16   JON DOW
17     BY MR. MENEFEE . . . . . . . . . . .   4
18
19
20
            * * * * * * * * * * * * *
21
22
23
```

Page 3

```
1               EXHIBIT INDEX
2
3       (No exhibits marked to this deposition.)
4
5           * * * * * * * * * * * * *
6
7
8               STIPULATION
9        It is hereby stipulated and agreed by and
10   between counsel representing the parties that the
11   deposition of JON DOW is taken pursuant to the Federal
12   Rules of Civil Procedure and that said deposition may
13   be taken before Julie A. Duncan, Court Reporter and
14   Commissioner for the State of Alabama at Large,
15   without the formality of a commission, that objections
16   to questions other than objections as to the form of
17   the question need not be made at this time but may be
18   reserved for a ruling at such time as the said
19   deposition may be offered in evidence or used for any
20   other purpose by either party provided for by the
21   Statute.
22        It is further stipulated and agreed by and
23   between counsel representing the parties in this case
```

Page 4

```
1    that the filing of said deposition is hereby waived
2    and may be introduced at the trial of this case or
3    used in any other manner by either party hereto
4    provided for by the Statute regardless of the waiving
5    of the filing of the same.
6        It is further stipulated and agreed by and
7    between the parties hereto and the witness that the
8    signature of the witness to this deposition is hereby
9    not waived.
10
11           * * * * * * * * * * * * *
12
13               JON DOW
14        The witness, after having first been duly
15   sworn to speak the truth, the whole truth and nothing
16   but the truth testified as follows:
17               EXAMINATION
18   BY MR. MENEFEE:
19   Q.  Would you please state your name and address.
20   A.  Jonathan Dow, 6121 Jennifer Lane, Montgomery,
21       Alabama 36116.
22   Q.  How old are you, Mr. Dow?
23   A.  Forty-seven.
```

Page 5

```
1    Q.  And married?
2    A.  Yes.
3    Q.  Have you ever been a plaintiff or defendant in
4        any other litigation?
5    A.  No.
6    Q.  Have you ever had a deposition taken before?
7    A.  No.
8    Q.  What do you do?
9    A.  I work for the State of Alabama, field
10       director for the Children's Trust Fund.
11   Q.  What does the field director for the
12       Children's Trust Fund do?
13   A.  Nonprofit supply to the state of Alabama for
14       funding for child abuse and prevention
15       programs and activities.  The state is divided
16       up into seven congressional districts.  Each
17       district has a field director.  And I'm the
18       field director -- one of the field directors
19       for district three and district seven.
20   Q.  I see.  You previously worked for the City of
21       Montgomery, didn't you?
22   A.  No.  I worked for a nonprofit organization
23       called the BONDS Program, part of the Central
```

f6a832ae-6536-4b53-816c-7cc1e6836266

Deposition of Jon Dow MAY vs. CITY OF MONTGOMERY        October 1, 2007

---

Page 6

1    Alabama Community Foundation.  And we received
2    funding from the City of Montgomery.
3  Q.  Thanks.  I recall your work in that, but I was
4    vague on exactly --
5  A.  A lot of people think I worked for the city,
6    but I didn't.
7  Q.  Okay.  Where did you grow up?
8  A.  Louisville, Kentucky.
9  Q.  When did you come to Montgomery and what
10    brought you here?
11  A.  In 1978 I joined the Air Force and got
12    stationed at Maxwell Air Force Base.  I've
13    been here ever since.
14  Q.  I'm sorry, what was the date?
15  A.  1978.
16  Q.  Where do you vote now?
17  A.  At Fitzpatrick Elementary.
18  Q.  And what council district is that?
19  A.  Six.
20  Q.  Who is your representative?
21  A.  Willie Cook.
22  Q.  When and where did you first register to vote?
23  A.  When?

---

Page 7

1  Q.  Approximately.
2  A.  I would have to say -- I was at Maxwell when I
3    registered to vote.
4  Q.  Okay.
5  A.  In '79, here in Montgomery.
6  Q.  How old were you then?
7  A.  Nineteen.
8  Q.  Nineteen?
9  A.  Uh-huh (positive response).
10  Q.  Did you go any further -- was that Air War
11    College?
12  A.  No.
13  Q.  No.
14  A.  Air Force.
15  Q.  Air Force.
16  A.  I was active duty Air Force.
17  Q.  Did you get any further, higher education?
18  A.  Yes.  I graduated from Troy State University
19    here in Montgomery.
20  Q.  And that was a bachelor's degree?
21  A.  A bachelor's degree.
22  Q.  Any further beyond that?
23  A.  No.

---

Page 8

1  Q.  Do you recall what prompted you to register
2    and vote in 1978, '79?
3  A.  I always wanted to be involved, and it was my
4    right to vote.
5  Q.  Sure.  How long did you stay in Montgomery
6    with the Air Force?
7  A.  I got out of active duty in '82, and I stayed
8    in Montgomery.
9  Q.  Did you vote in the last city election in
10    2003?
11  A.  Yes, I did.
12  Q.  And did you vote on August 28th?
13  A.  2003, I can't remember.
14  Q.  No.
15  A.  No?
16  Q.  I'm sorry, this year.
17  A.  Oh, this year.
18  Q.  Yes.
19  A.  Yes, I did.
20  Q.  Did you vote on the day of August 28th or did
21    you vote by absentee?
22  A.  I voted on the day of August 28.
23  Q.  Okay.  You went to the polling place?

---

Page 9

1  A.  Yes, I did.
2  Q.  You marked a box?
3  A.  I marked a box and fed it through the machine.
4  Q.  Okay.  This new schedule did not deprive you
5    of your right to vote, did it?
6  A.  No, it did not.
7  Q.  Okay.  Do you plan to vote in the runoff a
8    week from tomorrow?
9  A.  They're not in my council district.
10  Q.  Okay.  So you have no runoff?
11  A.  I have no runoff.
12  Q.  So the new election schedule doesn't deprive
13    you of your right to vote in the runoff?
14  A.  No, it does not.
15  Q.  Did you ever attend any of the city council
16    meetings starting in February through July
17    that city election dates were discussed?
18  A.  I have attended city council meetings, but I'm
19    not sure if those were actually discussed
20    during the times that I attended.
21  Q.  You never -- did you ever speak at any city
22    council meeting on the election date issue?
23  A.  Not at the city council meetings, no.

---

f6a832ae-6536-4b53-816c-7cc1e6836266

Deposition of Jon Dow MAY vs. CITY OF MONTGOMERY         October 1, 2007

|  | Page 10 |
|---|---|
| 1 | Q. Or the work sessions before the city council |
| 2 | meeting? |
| 3 | A. No. |
| 4 | Q. How did you end up becoming a plaintiff in the |
| 5 | case? |
| 6 | A. I was asked. |
| 7 | Q. By who? |
| 8 | A. Joe Reed. |
| 9 | Q. Okay. |
| 10 | A. To -- if I would be interested. |
| 11 | Q. Okay. When was that, before or after you |
| 12 | qualified for mayor? |
| 13 | A. After I qualified. |
| 14 | Q. And what was your discussion with Dr. Reed? |
| 15 | A. He had asked me if I was -- if I was aware of |
| 16 | what was possibly taking place. And I told |
| 17 | him I was. And he asked me if I would be |
| 18 | interested in joining some others, and I told |
| 19 | him that I would. |
| 20 | Q. Do you have an obligation to pay any |
| 21 | attorneys' fees or costs in this case? |
| 22 | A. No. |
| 23 | Q. Do you know who is paying it? |

|  | Page 11 |
|---|---|
| 1 | A. No, I don't. |
| 2 | Q. Have you met your lawyers other than |
| 3 | Mr. Still? |
| 4 | A. Other than Mr. Still, no. |
| 5 | Q. Do you know you have lawyers other than |
| 6 | Mr. Still? |
| 7 | A. No, I did not know that. |
| 8 | Q. Okay. Have you ever seen the complaint in |
| 9 | this case that was filed in federal court? |
| 10 | A. No, I have not. |
| 11 | Q. Between the time that Dr. Reed contacted you, |
| 12 | sometime probably in middle to late July -- |
| 13 | A. Okay. |
| 14 | Q. -- had you taken any action on your own to |
| 15 | challenge the election dates? |
| 16 | A. No. |
| 17 | Q. Did you call the Department of Justice or |
| 18 | write a letter? |
| 19 | A. No. Well, I do want to say this, that |
| 20 | Dr. Reed did bring over -- have me sign a |
| 21 | piece of paper initially saying that I was |
| 22 | agreeing to this lawsuit, but that was the |
| 23 | only document that I've signed. |

|  | Page 12 |
|---|---|
| 1 | Q. Would that be something like an agreement with |
| 2 | an attorney to represent you? |
| 3 | A. Yes. I would say yes. |
| 4 | Q. He's shaking his head yes. That's fine. |
| 5 | A. Okay. |
| 6 | MR. STILL: That's what it is. I'll |
| 7 | just tell you that, Larry. |
| 8 | Q. Do you know what role, if any, AEA is playing |
| 9 | in this case? |
| 10 | A. No, I do not. |
| 11 | Q. Have you had any meetings at AEA? |
| 12 | A. At AEA? |
| 13 | Q. Yes. |
| 14 | A. I have meetings, but not the AEA meeting. |
| 15 | Q. Have you ever had any meetings at AEA about |
| 16 | this lawsuit? |
| 17 | A. No. |
| 18 | Q. Are you aware that this discussion of the |
| 19 | election schedule began as early as |
| 20 | February 6th in formal city council meetings? |
| 21 | A. I was aware that it began, but I -- okay. |
| 22 | February the 6th. I know it's been a while. |
| 23 | Q. And you did not deem it important enough to go |

|  | Page 13 |
|---|---|
| 1 | to the meetings and comment on that? |
| 2 | A. Well, February the 6th I was not thinking |
| 3 | about running for mayor. |
| 4 | Q. Okay. |
| 5 | A. So it was not -- |
| 6 | Q. Or anytime after that? |
| 7 | A. -- it was not on my radar screen, no. |
| 8 | Q. Through June 5th. Were you at the June 5th |
| 9 | meeting? |
| 10 | A. I can't vouch if it was the June 5th meeting. |
| 11 | Q. But in any event, you did not speak up in |
| 12 | opposition to the city council? |
| 13 | A. No, I did not. |
| 14 | Q. Why not? |
| 15 | A. Whether it was job related or not being able |
| 16 | to go to the city council, I'm not sure. But |
| 17 | had I been there, I'm sure I would have said |
| 18 | something. |
| 19 | Q. By June 5th had you made a decision to run for |
| 20 | mayor? |
| 21 | A. The qualifying was July the 5th. And by June |
| 22 | the 5th I had made a decision, yes. |
| 23 | Q. You were following election-day issues by that |

f6a832ae-6536-4b53-816c-7cc1e6836266

Page 14

```
 1    time?
 2  A.  Yes.
 3  Q.  What caused you to change your mind about the
 4    importance of the issue of the election date
 5    between the June 5th passage by the city
 6    council and sometime in middle to late July
 7    the phone call from Dr. Reed such that you
 8    decided to be a plaintiff in a federal
 9    lawsuit?
10  A.  I talked to the city council independently,
11    outside the city council meeting, and voiced
12    my concern for the changing of the dates and
13    the disenfranchising of not only ASU students
14    but all other students who are incoming
15    freshmen who would not have the opportunity to
16    do that.
17        And when I was approached about this, I
18    saw this as another opportunity to reinforce
19    my belief that all -- that incoming freshmen
20    were being disenfranchised.
21  Q.  When did you express those views to the city
22    council members and who were they?
23  A.  We've had conversations everywhere from --
```

Page 15

```
 1    anywhere from Willie Cook.  We've talked about
 2    that to maybe C.C. Calhoun, just in general or
 3    at a function, that the dates are definitely
 4    disenfranchising.
 5  Q.  When did you express this, after the June 5th
 6    adoption of these dates?
 7  A.  I could not say.  I know it -- I know it's
 8    been a conversation on the campaign trails
 9    when we run into each other at various
10    functions.  We may mention that.  So I'm not
11    sure if it was June the 5th, before or after.
12    But I know we've discussed it.
13  Q.  Now you're saying campaign.  So it sounds like
14    to me that's more of a -- you were running
15    campaign-type activities, and that would
16    have -- there really was no campaigning
17    before --
18  A.  Well, really, it's campaigning before the
19    actual qualifying date.  You do know who is
20    going to run, and you do see them at various
21    neighborhoods or communities.  So there is
22    precampaigning prior to the official.
23  Q.  And you think you spoke to them prior to --
```

Page 16

```
 1  A.  I'm sure we --
 2  Q.  -- that?
 3  A.  Yes.
 4  Q.  About this issue?
 5  A.  I'm sure we've had -- yes.
 6  Q.  Can you think of any other council members?
 7  A.  I don't run into any of the white county --
 8    city council members, because they -- we're
 9    not in the same -- so I would --
10  Q.  So as I understand, your concern is the
11    disenfranchising effect this election schedule
12    has on all college students?
13  A.  And the timing, yes.  And I understand your
14    conversation from Mr. Duncan that this was a
15    2006 item of discussion.  But the last
16    election we were in was 2003.  And so we had
17    2004 that we really could have looked at
18    this.  We've had runoffs in past elections.
19  Q.  I see what you mean by timing.
20  A.  Yes.
21  Q.  It was decided late?
22  A.  Late.  Yes, it was decided late as opposed to
23    prior --
```

Page 17

```
 1  Q.  Well, let's --
 2  A.  -- opportunities.
 3  Q.  Well, let me try that.  Let's take that just
 4    a -- tease that out a little further.
 5  A.  Okay.
 6  Q.  If it had been decided much earlier, would you
 7    still have the same complaints?
 8  A.  No.
 9  Q.  Okay.
10  A.  No.
11  Q.  Are you aware that this has only been
12    precleared by the Department of Justice for
13    this one time use?
14  A.  Yes.
15  Q.  So why do you continue the lawsuit?  Because,
16    obviously, there would be plenty of notice for
17    the future for --
18  A.  Because those possible six thousand votes
19    could have threw it in a runoff.
20  Q.  I see.
21  A.  For either one.  And that's something that
22    we're not going to get back.
23  Q.  Do you intend to -- do you think that the
```

Deposition of Jon Dow MAY vs. CITY OF MONTGOMERY          October 1, 2007

---

Page 18

1    election should be cancelled and redone?
2    A.  My opinion?
3    Q.  Yes.
4    A.  Yes.
5    Q.  You do?
6    A.  Yes, I do.
7    Q.  For all elections?
8    A.  No.  For all -- the city council and the
9        mayor?
10   Q.  Yes.
11   A.  Yes.
12   Q.  For all nine -- well, all of the contested
13       city council and for the mayor, they should --
14   A.  Yes.
15   Q.  The August 28th election should be thrown out?
16   A.  Should be cancelled, yes.
17   Q.  Okay.
18   A.  The results may be the same, but at least you
19       would have had inclusion that you didn't have
20       before.
21   Q.  Do you think the city council election dates
22       have to be set then in relation to all
23       incoming residents of -- new residents of the

---

Page 19

1    city?
2    A.  I don't think we should move our election date
3        to compensate them, but I do feel that we
4        should set a date that is uniform, that gives
5        everybody opportunity to vote in the
6        election.  And if ASU students came in or are
7        coming in -- incoming freshmen came in where
8        they don't have the thirty-day window, then if
9        we're set this is when we're going to have it,
10       then that's what we need to do.  And they'll
11       adjust their schedule accordingly.
12   Q.  When do most of the Maxwell students come
13       in --
14   A.  I'm not sure.
15   Q.  -- Air War College?
16   A.  I'm not sure.
17   Q.  Isn't it June 30th?
18   A.  Okay.
19   Q.  Let's suppose it is.
20   A.  Let's suppose it is June 30th.
21   Q.  So would you say that the city election date
22       has to be set at a time that they can get in
23       town and register to vote?

---

Page 20

1    A.  Somebody is going to be disenfranchised no
2        matter -- and I think that's the point you're
3        trying to make today.
4    Q.  That's right.
5    A.  Somewhere along the line somebody is going to
6        be disenfranchised to this.
7    Q.  Yes.
8    A.  But when you look at the number of incoming
9        freshmen at all of our colleges, that -- that
10       single entity is greater than the incoming
11       people who may want to relocate because of job
12       or military.
13   Q.  And then you'll know where I head with the
14       next issue about the overseas voters.
15   A.  Yes.
16   Q.  How would you balance the need of the overseas
17       voters to have what some standards suggest, or
18       at least six weeks between the first and the
19       runoff election with the need to try to
20       accommodate your incoming students?
21   A.  Well, I want to say this, that Mayor Folmar
22       and Mayor Bright ran off and had a -- had a
23       runoff in their election, but it was October

---

Page 21

1    when they ran.  And there was no problem
2    then.
3        Okay.  Then Mayor Bright ran a second
4    term.  No problem.  No runoff.
5        Now, third term, we're running and we
6    want to change the date.  That's my pattern --
7    that's my concern, is that if Mayor Bright and
8    Mayor Folmar ran, and there was a runoff, and
9    then the votes were also tabulated and
10   absentees and overseas and all that was put
11   into the equation, then why now do we have to
12   change the vote or this sudden push to have
13   military absentee and exclusion of incoming
14   freshmen, when it wasn't an issue when
15   Mayor Bright and Mayor Folmar had their
16   runoff?
17   Q.  In 1999?
18   A.  Yes.
19   Q.  I see.
20   A.  So that's my point, is that you had a runoff
21       back then, and there was no talk of changing
22       the dates prior to the election in '99.  But
23       now there's a question of changing the date in

---

f6a832ae-6536-4b53-816c-7cc1e6836266

Deposition of Jon Dow MAY vs. CITY OF MONTGOMERY        October 1, 2007

Page 22

```
1        2007.  And that was my concern.
2    Q.  Okay.  I see.  So why eight years ago --
3    A.  Yes.
4    Q.  -- was there not a need to accommodate those
5        overseas voters and now there is?
6    A.  Yes.
7    Q.  Is that correct?
8    A.  Yes, sir.
9    Q.  Okay.  Would it make any difference if you
10       knew that the Alabama law changed in that
11       time?
12   A.  Yes.
13   Q.  Okay.
14   A.  I'm sure.  I'm sure.  But it does lead to
15       suspicion, that you didn't have it before, the
16       law has changed, people are not made aware of
17       the law that's changed, and now you want to
18       change the process.
19   Q.  Okay.  If you're aware that the city council
20       voted on numerous occasions, I count seven
21       occasions, between February 6th and June 5th,
22       unanimously, to change the dates to try to
23       accommodate the overseas voters --
```

Page 23

```
1    A.  Right.  Right.
2    Q.  -- do you think there's a -- do you think they
3        were racially motivated in trying to change
4        those election dates?
5    A.  I have no idea what they were motivated by.
6    Q.  Some of their formal resolutions say that it
7        was to accommodate the overseas voters and
8        that it was a requirement of law.
9    A.  I've heard that many times in discussions.
10   Q.  Okay.
11   A.  Yes.
12   Q.  And did they -- you've spoken to some of
13       them.  Did they ever say that was a reason?
14       They voted in favor of it.
15   A.  Yes.  Yes.  And what you vote on as a city
16       council and what you say when you get out in
17       public are two different things sometimes.
18   Q.  Do you know how many ASU students would have
19       actually registered to vote?
20   A.  No, I do not.
21   Q.  Do you know how many registered to vote during
22       the month of September in 2003 in the last
23       municipal election?
```

Page 24

```
1    A.  No.
2    Q.  Would it make much difference to you if it was
3        a very small number?
4    A.  It probably would have made a difference.
5    Q.  Suppose it was less than twenty?
6    A.  Yes.
7    Q.  How would you characterize that fact, that
8        there might be twenty students that registered
9        to vote in September of 2003 compared to the
10       eighty to a hundred overseas voters?
11   A.  That -- we didn't know that until after the
12       numbers had come in.  You still do the
13       process.  You hope you get more.  But if you
14       know going in you're only going to get twenty,
15       then that's different than registering and
16       seeing the numbers on the back end of it.  I'm
17       sure you don't know.  You -- I'm sure going in
18       you believe that you will get more ASU
19       students than you would get overseas, but you
20       don't know that --
21   Q.  If history --
22   A.  -- until after you do that.
23   Q.  If history hadn't shown that --
```

Page 25

```
1    A.  Yes.
2    Q.  -- why would you know that?
3    A.  Because there's more local students here that
4        are -- and from being in the military and
5        being stationed overseas, the ability to
6        actually do paperwork and send it back and get
7        it back in a timely fashion is not as
8        efficient as right here, going across the
9        street and getting students registered.
10       Things get lost.
11   Q.  Sure.
12   A.  Jobs get busy.  You forget about the absentee
13       ballot.
14   Q.  Okay.  I'm sorry.  I may have lost -- I was
15       trying to get you to assess the importance or
16       not of the fact that there might actually be
17       very few ASU students --
18   A.  But we don't know --
19   Q.  -- registering.
20   A.  Right.  But you wouldn't know that until after
21       the fact.
22   Q.  Wouldn't you know some -- wouldn't you be
23       informed about that, about how they registered
```

7 (Pages 22 to 25)

Deposition of Jon Dow MAY vs. CITY OF MONTGOMERY          October 1, 2007

Page 26

1    in past municipal elections in September?
2  A.  And I see that we as blacks -- we voted in low
3       numbers in past municipal elections, but we
4       still go out and canvass and we still go out
5       and try and get people and hope that they
6       would come out and vote.  But that doesn't
7       deter you, or deter us of having voter
8       registration campaigns to get them to come
9       out.  Even though past history may show that
10      it's been low numbers, you still try.
11 Q.  Well, let me try it this way --
12 A.  Okay.
13 Q.  -- because I'm not sure we're --
14 A.  Okay.
15 Q.  Maybe I'm misunderstanding you, or maybe
16      I'm --
17 A.  It could be me as well.  It may be the water.
18 Q.  I may be getting tired too.
19 A.  Yes.
20 Q.  Suppose the best information indicated that
21      approximately twenty or less ASU students
22      registered to vote during September of 2003
23      before the last municipal election.

Page 27

1  A.  Okay.
2  Q.  And that there were currently almost ninety
3       overseas voters who were entitled to absentee
4       ballots.
5  A.  Okay.
6  Q.  And half of those were African-Americans.
7  A.  Okay.
8  Q.  Now, suppose you've got two choices on
9       election schedules, one accommodates the
10      students interested in registering in
11      September, the old schedule; the new one
12      accommodates the ability to get absentee
13      ballots to the overseas voters.  Which do you
14      choose?  There are only two options.
15 A.  In going on the numbers on the situation -- on
16      the scenario you just --
17 Q.  Assuming -- assuming that's the data.
18 A.  Yes.  Well, the logical choice, I'm sure,
19      would be to get the military.  But I still
20      feel that those who are here -- I would get
21      better -- I would have a better opportunity
22      for the ASU students, because I can put my
23      hands on those.  I can actually provide

Page 28

1    transportation.  I can provide --
2  Q.  And you're talking about now as a candidate?
3  A.  Yes.  Well, now as a candidate.  Right.  You
4       know, I can't speak for what the city may have
5       looked at and saw, the more advantageous way
6       of getting voters or -- I'm only speaking of
7       me as a candidate now, what would I have tried
8       to do.  And my option would have been to try
9       to get the ASU students.
10 Q.  What about you as a public office holder and
11      meeting the needs of the citizens?
12 A.  Then I would try to go for where the best
13      opportunity is to meet the greatest amount of
14      people who could respond.
15 Q.  And what would that be in that hypothetical --
16 A.  I don't know.  It might be the military.  Yes.
17 Q.  Well, they're already citizens?
18 A.  Yes.
19 Q.  And they're already registered to vote?
20 A.  Right.
21 Q.  And have already indicated an interest in
22      getting a ballot for that election?
23 A.  I would not disenfranchise them, no.  I would

Page 29

1    still include them in the process and would
2       want to accommodate them as well.  But I would
3       also try to make sure that in our
4       accommodating of the military that we would
5       try to take care of the locals as well.
6  Q.  Do you know how that would be done under the
7       current state law?
8  A.  No.  I would have to research it to find out.
9       But like I said, the old system worked well
10      before it was changed.  There was no outcry.
11      There was no lawsuits.  There was no --
12 Q.  But you don't know what the law was?
13 A.  No.
14 Q.  Or whether the law changed in those eight
15      years?
16 A.  Well, the law had to change after the runoff.
17      The law had to change -- or you said the law
18      has changed since the runoff of Mayor Folmar
19      and Mayor Bright.
20 Q.  I suggested --
21 A.  So, therefore, that led to this change here.
22      But my -- me saying is that prior to
23      Mayor Bright and Mayor Folmar in the runoff,

8 (Pages 26 to 29)

f6a832ae-6536-4b53-816c-7cc1e6836266

Deposition of Jon Dow MAY vs. CITY OF MONTGOMERY                October 1, 2007

|  | Page 30 |
|---|---|
| 1 | the process worked well.  You had runoffs with |
| 2 | city council prior to then, and so ... |
| 3 | Q.  Okay.  Thanks. |
| 4 | A.  Okay. |
| 5 | Q.  Thanks for patience and your -- |
| 6 | A.  No problem. |
| 7 | Q.  -- explanation. |
| 8 | A.  No problem. |
| 9 | Q.  You don't have any way of knowing how many ASU |
| 10 | students actually vote, do you? |
| 11 | A.  No. |
| 12 | Q.  Do you know how many ASU student votes you |
| 13 | received? |
| 14 | A.  No, I don't. |
| 15 | Q.  Did you campaign on ASU? |
| 16 | A.  No, I did not. |
| 17 | Q.  Why? |
| 18 | A.  One person, big city. |
| 19 | Q.  Too many other places to go? |
| 20 | A.  Too many other places I had to go. |
| 21 | Q.  And I think you've agreed, all other colleges |
| 22 | in this area were similarly affected depending |
| 23 | on when their enroll date was? |

|  | Page 31 |
|---|---|
| 1 | A.  True. |
| 2 | Q.  Okay. |
| 3 | A.  Well, I want to go back.  As far as campus -- |
| 4 | I did attend an event -- two events on the |
| 5 | campus of ASU. |
| 6 | Q.  Okay. |
| 7 | A.  But get out and walk the campus during the |
| 8 | school hours and meet the students, I did not. |
| 9 | Q.  Did you make an effort to put your signs |
| 10 | around campus? |
| 11 | A.  We tried to find opportunities, but we were |
| 12 | not as successful as we could have been. |
| 13 | Q.  Have you ever seen the complaint?  You have |
| 14 | not seen the complaint filed in this case? |
| 15 | A.  No, I have not seen it. |
| 16 | Q.  Okay.  Excuse me if I've asked this before -- |
| 17 | A.  Sure. |
| 18 | Q.  -- but I don't think I have. |
| 19 | A.  Yes. |
| 20 | Q.  Do you suggest -- are you in this lawsuit |
| 21 | contending that any person in city government, |
| 22 | that is, any member of the city council or the |
| 23 | mayor, was racially motivated when they set |

|  | Page 32 |
|---|---|
| 1 | the election dates on August 28th and six |
| 2 | weeks later? |
| 3 | A.  Did they do it because they were racially |
| 4 | motivated? |
| 5 | Q.  Yes. |
| 6 | A.  I don't know that, but I hope that they |
| 7 | weren't. |
| 8 | Q.  You hope that they were -- |
| 9 | A.  That they were not. |
| 10 | Q.  And you don't know any reason to say that they |
| 11 | are? |
| 12 | A.  You're right. |
| 13 | Q.  Okay.  Are you aware that the city council, |
| 14 | black and white members, voted unanimously |
| 15 | continuously from February through early June |
| 16 | on this? |
| 17 | A.  I am now.  Yes. |
| 18 | Q.  And they were in agreement with the mayor on |
| 19 | all of those -- at all of those times. |
| 20 | Are you aware of that? |
| 21 | A.  I am now. |
| 22 | Q.  Are you a member of the ADC? |
| 23 | A.  No. |

|  | Page 33 |
|---|---|
| 1 | Q.  Did you seek their endorsement? |
| 2 | A.  Yes. |
| 3 | Q.  And did you receive it? |
| 4 | A.  Yes. |
| 5 | Q.  Would you describe the process by which you |
| 6 | went to obtain the endorsement of the ADC. |
| 7 | A.  They had a candidate forum, which all of the |
| 8 | candidates for mayor and city council came, |
| 9 | presented their platform to their committee or |
| 10 | to their group of members, then they made |
| 11 | their determination. |
| 12 | Q.  Were you required to pay any fee or sum of |
| 13 | money? |
| 14 | A.  No. |
| 15 | Q.  Did all four candidates for mayor appear, to |
| 16 | your knowledge? |
| 17 | A.  Yes.  All four of us did appear. |
| 18 | Q.  Is ADC an important political organization in |
| 19 | Montgomery? |
| 20 | A.  Yes. |
| 21 | Q.  Okay.  Are you aware of any white members of |
| 22 | ADC? |
| 23 | A.  No. |

f6a832ae-6536-4b53-816c-7cc1e6836266

Deposition of Jon Dow MAY vs. CITY OF MONTGOMERY          October 1, 2007

Page 34

1  Q.  Are there any other similar endorsing
2      political organizations in the city of
3      Montgomery?
4  A.  Yes.
5  Q.  Who?  What?
6  A.  The ones I appeared before were the Police
7      Benevolent Association and the Police and
8      the -- it was listed as AFL-CIO, which was the
9      police and fire department that I went
10     before.  Other than that, it was just
11     neighborhood organizations.
12 Q.  Do you recall when Emory Folmar was mayor?
13 A.  Yes.
14 Q.  What was his reputation in the black
15     community?
16 A.  I would have to say this, I -- he was feared.
17 Q.  Was the defeat of Mayor Folmar in 1999 a
18     significant change in city government in the
19     view of most black citizens?
20 A.  Yes, it was.
21 Q.  Do you think Mr. Cook, your city council
22     member, is responsive to the needs in the
23     black community in his district?

Page 35

1  A.  Yes, he is.
2  Q.  Would you say that also for the other three
3      African-American council members?
4  A.  I can't speak for -- I only know them
5      personally, not on city council issues.  So I
6      don't know.
7  Q.  Are blacks elected to city council positions
8      approximately in proportion to the percentage
9      of blacks who are voting-age population in the
10     city?
11 A.  Yes.
12 Q.  Is that also true for the local legislative
13     delegation?
14 A.  I'm sure it is, yes.
15 Q.  And what about the city council -- I mean, the
16     county commission?
17 A.  Yes.
18 Q.  And the county school board?
19 A.  Yes.
20 Q.  Do you think that Mayor Bright got significant
21     support from the black community?
22 A.  In this election or past?
23 Q.  This election.

Page 36

1  A.  Yes.
2  Q.  Do you think he got -- not only did he get
3      more votes than you and Mr. Boyd, he got more
4      votes than you, Mr. Boyd, and Mr. Simmons?
5  A.  Yes.
6  Q.  Do you think that he got more black votes than
7      you and Mr. Boyd?
8  A.  Yes.
9  Q.  Okay.
10         MR. MENEFEE:  I think that's it.
11         That's all.
12         Thank you very much.
13         THE WITNESS:  Thank you.
14
15         (The deposition concluded at
16         approximately 2:35 p.m.)
17
18     * * * * * * * * * * * *
19     FURTHER DEPONENT SAITH NOT
20     * * * * * * * * * * * *
21
22
23

Page 37

1          SIGNATURE PAGE
2          I, JON DOW, hereby certify that I have
3  read the foregoing transcript of my deposition
4  given on Monday, October 1, 2007, and it is a true
5  and correct transcript of the testimony given by me
6  at the time and place stated with the corrections,
7  if any, and the reasons therefor noted below.
8  PAGE   LINE   CORRECTION AND REASON THEREFOR
9
10
11
12
                  _____
13                JON DOW
14
         SWORN TO AND SUBSCRIBED before me this
15  _____ day of _____, 20 __.
16
17                _____
                  NOTARY PUBLIC
18
19                MY COMMISSION EXPIRES:
20                _____
21
22
             * * * * * * * * * * * *
23

f6a832ae-6536-4b53-816c-7cc1e6836266

Deposition of Jon Dow MAY vs. CITY OF MONTGOMERY        October 1, 2007

Page 38

```
 1           REPORTER'S CERTIFICATE
 2    STATE OF ALABAMA:
 3    BUTLER COUNTY:
 4          I, Julie A. Duncan, Court Reporter and
 5    Commissioner for the State of Alabama at Large, do
 6    hereby certify that I reported the deposition of:
 7                JON DOW
 8    who was first duly sworn by me to speak the truth,
 9    the whole truth and nothing but the truth, in the
10    matter of:
11          JANET MAY, et al.,
12          Plaintiffs,
13          vs.
14          CITY OF MONTGOMERY, ALABAMA,
15          et al.,
16          Defendants.
17          In the United States District Court
18          for the Middle District of Alabama,
19          Northern Division,
20          Civil Action No. 2:07-cv-738-N,
21    on Monday, October 1, 2007.
22          The foregoing 38 computer-printed pages
23    contain a true and correct transcript of the
```

Page 39

```
 1    examination of said witness by counsel for the parties
 2    set out herein.  The reading and signing of same is
 3    hereby not waived.
 4          I further certify that I am neither of kin
 5    nor of counsel to the parties to said cause nor in any
 6    manner interested in the results thereof.
 7          This 15th day of October, 2007.
 8
 9
10          _____
            Julie A. Duncan, ACCR#: 256
11          Certified Court Reporter and
            Commissioner for the State
12          of Alabama at Large
13
14
15
16
17
18
19
20
21
22
23
```

f6a832ae-6536-4b53-816c-7cc1e6836266

# DEPOSITION OF WILLIAM F. BOYD

## October 1, 2007

## Pages 1 through 35

## PREPARED BY:

**Haislip, Ragan, Green, Starkie & Watson, P.C.**
**566 South Perry Street**
**Post Office Box 62**
**Montgomery, AL  36104**
**Phone: (334) 263-4455**
**Fax: (334) 263-9167**
**E-mail: haislipragan@charter.net**

Case 2:07-cv-00738-MHT-WC    Document 41-14    Filed 11/16/2007    Page 2 of 11

Deposition of William F. Boyd    MAY vs. CITY OF MONTGOMERY                October 1, 2007

                    IN THE UNITED STATES DISTRICT COURT

                FOR THE MIDDLE DISTRICT OF ALABAMA

                        NORTHERN DIVISION


JANET MAY, et al.,

        Plaintiffs,

vs.                             CIVIL ACTION NO.
                                2:07-cv-738-N

CITY OF MONTGOMERY,
ALABAMA, et al.,

        Defendants.



            * * * * * * * * * * *


        DEPOSITION OF WILLIAM FRANKLIN BOYD, taken

pursuant to stipulation and agreement before Julie A.

Duncan, Certified Court Reporter and Commissioner for

the State of Alabama at Large, in the Law Offices of

Larry T. Menefee, 407 South McDonough Street,

Montgomery, Alabama, on Monday, October 1, 2007,

commencing at approximately 1:05 p.m.



            * * * * * * * * * * * *

Deposition of William F. Boyd     MAY vs. CITY OF MONTGOMERY                October 1, 2007

---

Page 2

```
 1              APPEARANCES
 2  ON BEHALF OF THE PLAINTIFFS:
 3  Mr. Edward Still
    EDWARD STILL LAW FIRM, L.L.C.
 4  Attorney at Law
    2112 11th Avenue South
 5  Suite 201
    Birmingham, Alabama  35205-2844
 6
    ON BEHALF OF THE DEFENDANTS:
 7
    Mr. Larry T. Menefee
 8  Attorney at Law
    407 South McDonough Street
 9  Montgomery, Alabama  36104
10  ALSO PRESENT:
11  Mr. John Dow
    Mr. Duncan Kirkwood
12
13
14
          * * * * * * * * * * * *
15
16
17          EXAMINATION INDEX
18
    WILLIAM FRANKLIN BOYD
19
      BY MR. MENEFEE . . . . . . . . . . .   4
20
21
22          * * * * * * * * * * * *
23
```

---

Page 3

```
 1            EXHIBIT INDEX
 2
 3    (No exhibits marked to this deposition.)
 4
 5
          * * * * * * * * * * * *
 6
 7
 8            STIPULATION
 9      It is hereby stipulated and agreed by and
10  between counsel representing the parties that the
11  deposition of WILLIAM FRANKLIN BOYD is taken pursuant
12  to the Federal Rules of Civil Procedure and that said
13  deposition may be taken before Julie A. Duncan, Court
14  Reporter and Commissioner for the State of Alabama at
15  Large, without the formality of a commission, that
16  objections to questions other than objections as to
17  the form of the question need not be made at this time
18  but may be reserved for a ruling at such time as the
19  said deposition may be offered in evidence or used for
20  any other purpose by either party provided for by the
21  Statute.
22      It is further stipulated and agreed by and
23  between counsel representing the parties in this case
```

---

Page 4

```
 1  that the filing of said deposition is hereby waived
 2  and may be introduced at the trial of this case or
 3  used in any other manner by either party hereto
 4  provided for by the Statute regardless of the waiving
 5  of the filing of the same.
 6      It is further stipulated and agreed by and
 7  between the parties hereto and the witness that the
 8  signature of the witness to this deposition is hereby
 9  not waived.
10
11          * * * * * * * * * * * *
12
13        WILLIAM FRANKLIN BOYD
14      The witness, after having first affirmed to
15  speak the truth, the whole truth and nothing but the
16  truth testified as follows:
17            EXAMINATION
18  BY MR. MENEFEE:
19  Q.  Will you state your name and address, please.
20  A.  William Franklin Boyd, 4325 Danville Street.
21  Q.  How old are you, Mr. Boyd?
22  A.  Forty-three.
23  Q.  And are you married?
```

---

Page 5

```
 1  A.  Yes.
 2  Q.  Have you ever been a plaintiff or defendant in
 3      any lawsuit before?
 4  A.  Yes.
 5  Q.  Tell me about those, please.
 6  A.  I was a plaintiff against the City of
 7      Montgomery whereby -- it was a zoning -- a
 8      zoning issue.  I owned some commercial
 9      property.  To make a long story short, I
10      wanted the property to be zoned a certain way
11      and the City wanted the property to be zoned
12      another way.
13  Q.  Okay.  Any other?
14  A.  Not that I can remember.
15  Q.  What's your occupation?
16  A.  Self-employed, hair stylist.
17  Q.  Do you have a shop, a beauty parlor?
18  A.  Yes.
19  Q.  Do you cater to women mainly?
20  A.  Yes.
21  Q.  Do you have a shop someplace?
22  A.  Yes.
23  Q.  Where is that?
```

db6c6add-9a1a-4a99-aed2-fa74d6b3ebb2

Page 6

1  A. 631 West Fairview Avenue, here in Montgomery.
2  Q. What side of the street, north or south side?
3     I'm trying to think where it is.
4  A. That's in the western -- western portion of
5     the city.
6  Q. I know where Fairview is. Is it --
7  A. Okay. It's --
8  Q. If I'm going down Fairview heading towards --
9  A. Fairview runs east and west. But it's going
10    towards the interstate, I-65.
11 Q. And it's on the right side or the left side as
12    you go toward the interstate?
13 A. As you go towards the interstate, it's on the
14    left.
15 Q. I see.
16 A. Yes.
17 Q. Okay. Let's see. Where do you vote?
18 A. I vote at --
19 Q. What's your polling place?
20 A. -- the fire station on Selma Highway.
21 Q. What council district are you in?
22 A. City Councilor James Nuckles.
23 Q. Okay. Nuckles. When and where did you first

Page 7

1     register to vote?
2  A. If I can recall, probably in 1981 or '82.
3  Q. Here in Montgomery?
4  A. Yes.
5  Q. Are you from Montgomery?
6  A. Yes, I am.
7  Q. Did you go to public schools here?
8  A. Yes, I did.
9  Q. Did you go to college?
10 A. For a short while.
11 Q. Where did you go?
12 A. Alabama State University.
13 Q. How long were you a student there?
14 A. Nine months.
15 Q. Do you still have family, parents or siblings
16    living in Montgomery?
17 A. Yes, I do.
18 Q. Did you vote in the last two city elections,
19    in '03 and this current, '07?
20 A. No, I didn't.
21 Q. You didn't vote in '03?
22 A. '03?
23 Q. 2003.

Page 8

1  A. No, I didn't.
2  Q. Okay. Did you vote on August 28th of this
3     year?
4  A. No, I didn't.
5  Q. You didn't vote this year?
6  A. I voted, by absentee.
7  Q. By absentee. I see. Okay. And you did that
8     because you -- why? Why did you vote
9     absentee?
10 A. Because I knew I would be ripping and running
11    all day, and I didn't want to get the
12    opportunity to -- to not vote for myself.
13 Q. This current election schedule of an
14    August 28th election did not deprive you of
15    your right to vote, did it?
16 A. No, it didn't.
17 Q. Okay. Do you plan to vote in the runoff a
18    week from tomorrow?
19 A. Yes, I will.
20 Q. Does that election schedule deprive you of
21    your right to vote?
22 A. No, it don't.
23 Q. This election schedule that was adopted by the

Page 9

1     city council that you are challenging in this
2     lawsuit, did you ever attend any city council
3     meeting or the work session prior to the city
4     council meeting and complain about this
5     election schedule?
6  A. I attended a meeting. I was never -- never
7     given the opportunity. It was never -- it was
8     never -- this issue never came before the
9     public. The public had no input on this
10    ordinance that was passed, which I also think
11    was in violation. It never came before the
12    public for public input.
13 Q. Well, they held a council meeting on
14    February 6th where they adopted this
15    schedule. Did you show up at that council
16    meeting and offer any comment on it?
17 A. Like I said, it wasn't open to the public.
18 Q. Oh, it was a public meeting.
19 A. I did not -- I wasn't aware, but I did attend
20    it.
21 Q. You did go to it?
22 A. Which date?
23 Q. February 6th.

db6c6add-9a1a-4a99-aed2-fa74d6b3ebb2

Deposition of William F. Boyd    MAY vs. CITY OF MONTGOMERY                October 1, 2007

Page 10

1    A.  Well, they had numerous meetings pertaining to
2        this issue.  That was one of them.  Did you attend the
3    Q.  That was one of them.  Did you attend the
4        February 6th meeting?
5    A.  I don't know exactly which date that it was,
6        but I did attend the meeting whereby that it
7        was passed.  As a matter of fact, it was
8        passed -- the date that it was passed, that's
9        the meeting that I attended, whatever date
10       that was.  Whatever date that it -- whatever
11       date that they passed this item, I was there
12       present.
13   Q.  And did you ask to speak?
14   A.  No, I didn't.
15   Q.  Okay.  Now, they -- the final passage was on
16       June 5th.
17   A.  Okay.
18   Q.  But they first passed the same dates on
19       February 6th.
20   A.  Yes.
21   Q.  And did you attend that meeting?
22   A.  I wasn't aware of it.  I think I came -- I
23       became aware of it on or about after

Page 11

1        I -- after I announced when -- when I realized
2        that the date was going to be changed, then --
3        after hearing the rumor, then I realized the
4        impact that it might have on people that
5        were -- wanted to vote in this election, you
6        know, after the allegation came across the
7        public airway, the pros and the cons.
8            And to the best of my understanding, I
9        realized that this would affect me as a
10       candidate running for office when it comes
11       down to the students over there at Alabama
12       State University.
13   Q.  I see.  So that was during the summer?
14   A.  A possibility during the summer, yes.
15   Q.  Had you already qualified to run for mayor?
16   A.  Yes.
17   Q.  Do you remember what date you qualified to run
18       for mayor?  It opened, I believe, on July 3rd
19       and it closed on July 17th, I believe.
20   A.  I qualified July 16.
21   Q.  Okay.  So I'm a little confused.  You did
22       attend a council meeting when these dates were
23       adopted?

Page 12

1    A.  Yes.  Correct.
2    Q.  But you weren't concerned about it until it
3        came over the airways?
4    A.  When -- when I was there at the council
5        meeting, I wasn't aware of the impact that
6        this would have on the election.
7    Q.  I see.
8    A.  Not -- you know, but after it was publicized
9        through the airways on what they was trying to
10       do, then I became aware that this would have
11       an impact on myself as a candidate.
12   Q.  So you're probably referring to the June 5th
13       meeting when they adopted the final
14       ordinance?
15   A.  Yes, I was there.  Yes, sir.
16   Q.  You were not at the -- probably not at the
17       February 6th meeting?
18   A.  February 6th was my birthday.  So I don't -- I
19       can't recall that I was at the city council
20       meeting.
21   Q.  Or February 20th?
22   A.  I can't -- I don't remember.  I attend the
23       city council meetings.  If it's an item that

Page 13

1        was on the agenda, whether or not I stayed for
2        the duration of that time frame, I can't -- I
3        can't recall.
4    Q.  What about March 6th?
5    A.  I can't recall.
6    Q.  Did you follow the effort to get a legislative
7        enactment by the state legislature to change
8        the election date?
9    A.  Yes.  I tried to notify my state
10       representative.
11   Q.  Who did you speak with?
12   A.  I tried to get in contact with Alvin Holmes.
13   Q.  In favor of that?
14   A.  To -- not to go with the change of the date.
15   Q.  Was that, again, some effort during the
16       summer?
17   A.  It was -- it would have to be after the
18       primary vote, which was June the 5th, if that
19       was the date that --
20   Q.  Okay.  Sometime after that?
21   A.  Yes.
22   Q.  Well, prior to that --
23   A.  Prior to that --

4 (Pages 10 to 13)

Deposition of William F. Boyd    MAY vs. CITY OF MONTGOMERY                    October 1, 2007

Page 14

1  Q.  -- beginning in early March --
2  A.  Okay.
3  Q.  -- the legislature had before it a bill to try
4      to change the election dates?
5  A.  Yes, sir.
6  Q.  Did you make any effort to contact Mr. Holmes
7      or others about passage of that?
8  A.  Yes.
9  Q.  Who did you contact?
10 A.  Larry Dixon.
11 Q.  And when did you speak with him?
12 A.  It had to be after the bill came before --
13     before them, due to the fact that he was
14     against it on the talk radio.  And I pleaded
15     my concern about those dates.
16 Q.  So you spoke with him on the phone?
17 A.  Yes.
18 Q.  And as best you can, give me some time frame
19     with that.
20 A.  It had to be on or about -- after June 5th.
21 Q.  On or after.  And you heard Mr. Dixon on --
22     Senator Dixon on talk radio?
23 A.  Yes.

Page 15

1  Q.  Okay.  Did you speak -- have you spoken to any
2      other state legislators about this issue,
3      other than Mr. Holmes and Senator Dixon?
4  A.  I can't recall.
5  Q.  Did you speak to any members of the city
6      council about this?
7  A.  Yes, I did.
8  Q.  Who did you speak with?
9  A.  My council person.
10 Q.  Reverend Nuckles?
11 A.  Yes.
12 Q.  And was that after the June 5th adoption?
13 A.  Yes.  That's correct.
14 Q.  Okay.  And what was your -- did you contact
15     him, and what did you say?
16 A.  I asked him why did they vote for that city
17     ordinance.  And to make a long story short,
18     they tried to repeal it.  They tried to repeal
19     it and get the date changed back to its
20     original date after they realized that there
21     was a possibility that they were trying to run
22     a political scheme.
23 Q.  Run a political scheme?

Page 16

1  A.  Yes, disenfranchisement, trying to keep a
2      certain race of people out of the -- out of
3      the election.
4  Q.  I see.  And that's what -- Reverend Nuckles
5      told you that?
6  A.  No.
7  Q.  He called it a scheme or is that your
8      language?
9  A.  That's my -- that's my analogy.
10 Q.  I see.  Do you think this -- is the main part
11     of your complaint in this lawsuit that it
12     disenfranchises African-American students
13     attending Alabama State University?
14 A.  And also according to Alabama Act 618, I don't
15     think that the city council had the power to
16     change such ordinance.  When they went to the
17     state legislature before requesting a change,
18     it was denied; and, therefore, that's just
19     some type of format whereby if they went to
20     them requesting the change, that means if they
21     had the power to change it for themselves they
22     would have never went to the state
23     legislature.  They would have never went to --

Page 17

1      to higher -- to higher -- people that make the
2      law to try to -- to try to request a change,
3      you know.  So I think they went -- went
4      outside of their boundary of -- with --
5      disenfranchising the students at Alabama
6      State.
7  Q.  Okay.  Are you concerned about
8      disenfranchisement of other students?
9  A.  Well, my primary concern is about students
10     that would affect me directly.
11 Q.  What does that mean?
12 A.  And that's the people -- African-American
13     people that normally -- that would vote black
14     before they would vote white.
15 Q.  Okay.  And is that where you look for most of
16     your support?
17 A.  I had -- my primary target was Alabama State.
18     Yes, it was.  And I was planning on
19     campaigning -- doing a lot of campaigning -- a
20     lot of time spent on my campaign would have
21     been spent at Alabama State University.
22 Q.  How much time did you spend campaigning at
23     Alabama State?

db6c6add-9a1a-4a99-aed2-fa74d6b3ebb2

Page 18

1  A.  Well, I didn't have the opportunity to spend
2      no time due to the fact that, you know, they
3      would not be a part of this election, so why
4      campaign in the -- when you won't receive
5      nothing out of it.
6  Q.  How many students do you think are registered
7      to vote at Alabama State?
8  A.  Anywhere from fifteen to -- fifteen to two
9      thousand.  And we never -- we would never --
10     we would have known if they were given the
11     opportunity to register to vote.  So that --
12     that number varies.
13 Q.  No.  I mean, there are some -- there are a lot
14     of students registered already at
15     Alabama State --
16 A.  That's correct.
17 Q.  -- isn't there?
18 A.  Uh-huh (positive response).
19 Q.  How many students are already registered to
20     vote at Alabama State?
21         (Brief interruption in proceedings.)
22         (Mr. John Dow present.)
23 Q.  (Mr. Menefee continuing) Mr. Boyd, what is

Page 19

1      your -- do you know how many students
2      currently attending Alabama State University
3      are registered to vote?
4  A.  I would -- to the best of my knowledge,
5      probably a little bit over twelve hundred.
6  Q.  Twelve hundred are currently registered to
7      vote at --
8  A.  To the best --
9  Q.  -- Alabama State?
10 A.  To the best -- to the best of my knowledge.
11 Q.  How did you determine that?
12 A.  We had the stats, the voter stats on how many
13     registered students that were registered at
14     Alabama State.
15 Q.  And that's looking at -- how do you determine
16     that they're Alabama State University
17     students?
18 A.  It's a breakdown by average.  It's -- like a
19     zip code will tell you exactly.
20 Q.  Okay.  Now, how many new incoming students do
21     you think would have registered at
22     Alabama State?
23 A.  Well, if I was given an opportunity to go over

Page 20

1      there and campaign, probably all of them; if I
2      was given an opportunity to go over there to
3      do a voter registration drive, then, you know,
4      who knows.  You know, maybe I had a message
5      for them.
6  Q.  Okay.
7  A.  That's an assumption.
8         (Off-the-record discussion.)
9         (Mr. Duncan Kirkwood present.)
10 Q.  How many votes did you receive at Alabama
11     State University from the students?
12 A.  I can't -- I can't answer that question.  I
13     don't know the answer.
14 Q.  Okay.  What --
15 A.  I don't have the stats to say that.
16 Q.  What do you need to know that information?
17 A.  I would need to have some type of voter
18     breakdown.  You know, just because they voted
19     at Alabama State don't mean that they went to
20     school at Alabama State.  People in the
21     area -- the residents -- Alabama State was
22     probably just a polling precinct for the
23     people in the residence -- resident area who

Page 21

1      voted at Alabama State.  So I can't tell how
2      many -- I don't have the number to show me an
3      indication on how many students voted.
4  Q.  You got seventeen votes --
5  A.  Okay.
6  Q.  -- at Alabama State University?
7  A.  Yes, sir.  That's correct.
8  Q.  And you think that if you had been able to
9      campaign --
10 A.  Yes.
11 Q.  Well, you were able to campaign, right?
12 A.  Not at Alabama State.
13 Q.  Why?
14 A.  Because it was a ghost town.  Who was there?
15     Election -- there was -- there was -- you
16     know, people were registering.  They were
17     trying to register for school the week of the
18     elections.  You know, a lot of stuff was going
19     on, so ...
20 Q.  But, I mean, like you just said, a lot of
21     folks who vote at ASU don't necessarily live
22     right there.
23 A.  I said people that vote at Alabama State

Page 22

1    University -- it don't mean that they go to
2    school there.  They could be just a normal
3    resident in the area and just went there to
4    vote at that precinct.
5    Q.  Okay.  It's true, isn't it, that students of
6    all other colleges in the area were affected
7    by this election date?
8    A.  I can't tell you -- I can't say -- I can't
9    answer that question, because I don't know the
10   date that those students actually, you know --
11   Q.  Do you know how many ASU students have
12   registered at ASU during September in previous
13   municipal election years?
14   A.  No, I don't.  I don't have those numbers.
15   Q.  But you could get those, couldn't you?
16   A.  Yes.
17   Q.  Okay.  Are you aware that the election
18   schedule used this year was approved for one
19   year only by the Department of Justice?
20   A.  For one year only?
21   Q.  Only this time, only this election cycle.
22   A.  No.
23   Q.  Do you think that -- are you contending in

Page 23

1    this lawsuit that the inability of newly
2    arriving ASU students to vote in this election
3    would change -- would have changed the results
4    on August 28th?
5    A.  Yes.
6    Q.  In what race?
7    A.  In the mayoral race.  In the mayoral race.
8    Q.  You think -- tell me what you mean.  What do
9    you think would have happened?
10   A.  Well, number one, if -- if I had an
11   opportunity to speak at Alabama State, to hold
12   some type of voter registration drive, I think
13   that -- that those students --
14        (Brief interruption.)
15        (Off-the-record discussion.)
16        (Mr. John Dow present.)
17   A.  Ask the question again.
18   Q.  You were going to describe to me how -- if the
19   students, newly arriving students at
20   Alabama State had been able to register and
21   vote, how it would have changed the results in
22   the mayoral race.
23   A.  Well, that's kind of a -- let me -- let me

Page 24

1    rephrase.  I'm going to consider that kind of
2    a trick question due to the fact that, number
3    one, I think -- this is me thinking -- that
4    we're dealing with electronic machines.  I
5    really don't --
6    Q.  I'm sorry?
7    A.  Due to the fact that we are dealing with paper
8    ballots, I never was convinced that those were
9    the actual votes cast by voters at that
10   particular precinct.
11   Q.  At ASU?
12   A.  Right.  As a matter of fact, all the
13   precincts.
14   Q.  All the precincts?
15   A.  Yes, sir.  I did a walk-through, waiting on an
16   affidavit, still planning on challenging the
17   election due to the fact that --
18   Q.  You're still planning to challenge the
19   election?
20   A.  Yes.  Yes.  Yes.  Yes.  Yes.  Because I
21   pretty much -- just waiting on the correct
22   document to take this to another step, because
23   I don't believe the numbers that were cast at

Page 25

1    that precinct alone, so -- so the question you
2    asked me really is not a fair question.
3    Q.  Okay.
4    A.  Because I don't -- I don't believe that those
5    numbers that any of the candidates received at
6    that precinct are the actual numbers that went
7    for those candidates.
8    Q.  And you say at that precinct.  Are you --
9    A.  Any -- any -- any --
10   Q.  Any of the precincts?
11   A.  Any of the precincts.
12   Q.  Okay.
13   A.  Yes.  I think this election was -- you know,
14   because of the facts and because of the issue
15   and because of the walk-through -- I have
16   walked through a neighborhood.  And I'm just
17   waiting on signing an affidavit challenging --
18   you know, the numbers were too low.
19   Q.  You think a lot more people voted?
20   A.  Yes.  You know, there's a possibility, you
21   know, the votes that Bobby Bright got could
22   have been my votes, you know.
23   Q.  Okay.

Page 26

1  A.  Machines are made to be rigged according to
2      whoever put them out there, you know.
3  Q.  Okay.
4  A.  You know, elections were stolen numerous of --
5      numerous of times, you know.
6  Q.  And you think this one was stolen?
7  A.  Yes, I think that.
8  Q.  Okay.  Did you campaign hard for office?
9  A.  As -- as -- I wanted to win.  Yes, I did.
10     Yes, sir.
11 Q.  Did you attend most of the candidate forums?
12 A.  Yes, all of them.
13 Q.  What is ADC?
14 A.  Alabama Democratic Conference.
15 Q.  Are you a member?
16 A.  Yes, I am.
17 Q.  How long have you been a member?
18 A.  Back and forth probably around -- back and
19     forth, probably eight -- seven or eight years.
20 Q.  Did the county ADC office endorse you?
21 A.  The county, no, they didn't.
22 Q.  Okay.  Did they endorse your opponent,
23     Mr. Dow?

Page 27

1  A.  Yes, they did.
2  Q.  Does ADC have any white members, to your
3      knowledge?
4  A.  To my knowledge -- I don't know.
5  Q.  Who made the decision of who ADC would
6      endorse?
7  A.  I'm trying to find out myself.
8  Q.  You don't know?
9  A.  No, because this was done a little different.
10 Q.  Did you attend any meeting with ADC --
11 A.  Yes, I did.
12 Q.  -- county officers?
13 A.  Yes, I did.
14 Q.  And what was -- was the nature --
15 A.  Well, it was --
16 Q.  -- of the meeting that they were there and you
17     asked for their endorsement?
18 A.  There has not -- there has not been a meeting
19     after the endorsement to find out what took
20     place.
21 Q.  I mean, the meeting you attended.
22 A.  The meeting I attended, we all -- we went up
23     before -- we went -- we spoke before the

Page 28

1      organization.
2  Q.  Okay.
3  A.  The organization, due to the fact that they
4      were stuck on the change of the date, did not
5      make -- when they were supposed to make the
6      endorsement, they did not make the
7      endorsement.  So they pretty much did like a
8      secret endorsement.
9  Q.  I see.  Are there any other endorsing
10     organizations like that in the city, county of
11     Montgomery, that you're aware of?
12 A.  Yes.
13 Q.  Who?
14 A.  They have the -- a lot of -- they have plenty
15     of people that -- you know, Concerned Citizens
16     Organization.  They have --
17 Q.  Did you appear before any and get endorsements
18     of any of them?
19 A.  No, I just -- I just went before the ADC and
20     maybe the firefighters, just two.
21 Q.  The firefighters.
22 A.  I really -- I really wasn't concerned about
23     endorsements, but I --

Page 29

1  Q.  I see.
2  A.  -- I just did it just because of protocol.
3  Q.  Did you understand that the city might have to
4      comply with the Uniform Overseas Voters Act in
5      terms of the absentee ballot availability?
6  A.  Yes, I knew about that in 2003.
7  Q.  Did you?
8  A.  Yes.
9  Q.  And how did you understand the city was going
10     to comply with that?
11 A.  Well, I think at the time frame they -- they
12     should have complied when they were first
13     notified during an off-peak election.  I think
14     that they -- they should have done it, but at
15     the same time I think they should have, you
16     know, done it not the year -- or not days or
17     weeks before a major election in the city of
18     Montgomery, Alabama.  I think it should have
19     been done in an adequate enough time whereby
20     you can get Alabama State and the other people
21     that wanted to participate in this mayoral
22     election.
23     I think they should have did it, and they

db6c6add-9a1a-4a99-aed2-fa74d6b3ebb2

Page 30

1   should have educated people that the process
2   would take place at this time or that time or
3   this place or that place.  I think it should
4   have been advertised.  There should have been
5   a lot of money spent to inform the people that
6   this would affect certain people.  And then if
7   they wanted the opportunity to vote, that they
8   needed to go ahead on and start making
9   preparations.
10  Q.  And would that have been okay --
11  A.  Yes.
12  Q.  -- with you?
13  A.  Yes, probably given -- given -- given the base
14      that -- that I wanted to target, which would
15      have been Alabama State University, yes, I
16      think giving them the opportunity or giving
17      them some type of -- aware that if you're not
18      going to -- if you're planning on -- well, I
19      have to take that -- I have to rewind that.
20      Due to the fact that new students -- new
21      students also, freshmen, incoming freshmen
22      would not have been properly notified, because
23      you don't know whether or not new students are

Page 31

1   actually coming to the campus, or a transfer
2   student coming from another college.  So,
3   therefore, yeah.  I think they should have --
4   they should have did some type of campaigning
5   awareness before, two or three weeks before
6   the change of the date.  And I wouldn't have
7   been satisfied with that; but, nevertheless,
8   you know -- well, no, you're still going to
9   disenfranchise people.  I wouldn't have been
10  satisfied with that either.  No.
11  Q.  Okay.  I'm sorry.  I'm a little bit
12      confused --
13  A.  Yes, I'm confused.
14  Q.  -- if you can appreciate my situation.
15  A.  Yes, sir.  I understand.
16  Q.  So do you want to try your answer again?
17  A.  Yes.  I would not be satisfied still.
18  Q.  Okay.
19  A.  Because it still would have put -- it still
20      would have put the people in some type of
21      predicament, whereby -- whereby they would not
22      have been able to participate.  You're still
23      going to cut some people out.

Page 32

1   Q.  Okay.
2           MR. MENEFEE:  That's all the
3       questions I have.
4           Thanks.
5           MR. STILL:  Thank you very much.
6
7
8       (The deposition concluded at
9       approximately 1:35 p.m.)
10
11      * * * * * * * * * * * *
12      FURTHER DEPONENT SAITH NOT
13      * * * * * * * * * * * *
14
15
16
17
18
19
20
21
22
23

Page 33

1           SIGNATURE PAGE
2           I, WILLIAM FRANKLIN BOYD, hereby
3   certify that I have read the foregoing transcript
4   of my deposition given on Monday, October 1, 2007,
5   and it is a true and correct transcript of the
6   testimony given by me at the time and place stated
7   with the corrections, if any, and the reasons
8   therefor noted below.
9   PAGE   LINE   CORRECTION AND REASON THEREFOR
10
11
12
13
                   _____
14      WILLIAM FRANKLIN BOYD
15
        SWORN TO AND SUBSCRIBED before me this
16  _____ day of _____, 20 __.
17
18                 _____
        NOTARY PUBLIC
19
20      MY COMMISSION EXPIRES:
21                 _____
22
23

db6c6add-9a1a-4a99-aed2-fa74d6b3ebb2

Page 34

1           REPORTER'S CERTIFICATE
2    STATE OF ALABAMA:
3    BUTLER COUNTY:
4           I, Julie A. Duncan, Court Reporter and
5    Commissioner for the State of Alabama at Large, do
6    hereby certify that I reported the deposition of:
7           WILLIAM FRANKLIN BOYD
8    who was first duly sworn by me to speak the truth,
9    the whole truth and nothing but the truth, in the
10   matter of:
11          JANET MAY, et al.,
12          Plaintiffs,
13          vs.
14          CITY OF MONTGOMERY, ALABAMA,
15          et al.,
16          Defendants.
17          In the United States District Court
18          for the Middle District of Alabama,
19          Northern Division,
20          Civil Action No. 2:07-cv-738-N,
21   on Monday, October 1, 2007.
22          The foregoing 34 computer-printed pages
23   contain a true and correct transcript of the

Page 35

1    examination of said witness by counsel for the parties
2    set out herein.  The reading and signing of same is
3    hereby not waived.
4           I further certify that I am neither of kin
5    nor of counsel to the parties to said cause nor in any
6    manner interested in the results thereof.
7           This 15th day of October, 2007.
8
9
10          _____
            Julie A. Duncan, ACCR#: 256
11          Certified Court Reporter and
            Commissioner for the State
12          of Alabama at Large
13
14
15
16
17
18
19
20
21
22
23

db6c6add-9a1a-4a99-aed2-fa74d6b3ebb2

# DEPOSITION OF DUNCAN E. KIRKWOOD

## October 1, 2007

## Pages 1 through 32

## PREPARED BY:

**Haislip, Ragan, Green, Starkie & Watson, P.C.**
**566 South Perry Street**
**Post Office Box 62**
**Montgomery, AL  36104**
**Phone: (334) 263-4455**
**Fax: (334) 263-9167**
**E-mail: haislipragan@charter.net**

Page 1

IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF ALABAMA

NORTHERN DIVISION


JANET MAY, et al.,

        Plaintiffs,

vs.                                   CIVIL ACTION NO.
                                      2:07-cv-738-N

CITY OF MONTGOMERY,
ALABAMA, et al.,

        Defendants.




        * * * * * * * * * * * *


        DEPOSITION OF DUNCAN ELLIOTT KIRKWOOD, taken

pursuant to stipulation and agreement before Julie A.

Duncan, Certified Court Reporter and Commissioner for

the State of Alabama at Large, in the Law Offices of

Larry T. Menefee, 407 South McDonough Street,

Montgomery, Alabama, on Monday, October 1, 2007,

commencing at approximately 1:40 p.m.



        * * * * * * * * * * * *

Page 2

1                           APPEARANCES

2       ON BEHALF OF THE PLAINTIFFS:

3       Mr. Edward Still
        EDWARD STILL LAW FIRM, L.L.C.
4       Attorney at Law
        2112 11th Avenue South
5       Suite 201
        Birmingham, Alabama  35205-2844
6
        ON BEHALF OF THE DEFENDANTS:
7
        Mr. Larry T. Menefee
8       Attorney at Law
        407 South McDonough Street
9       Montgomery, Alabama  36104

10

11

12                   *  *  *  *  *  *  *  *  *  *  *  *

13

14

                        EXAMINATION INDEX
15

16    DUNCAN KIRKWOOD

17        BY MR. MENEFEE . . . . . . . . . . . .    4

18

19

20                   *  *  *  *  *  *  *  *  *  *  *  *

21

22

23

Page 3

1                        EXHIBIT INDEX

2

3            (No exhibits marked to this deposition.)

4

5

6                * * * * * * * * * * * *

7

8                        STIPULATION

9            It is hereby stipulated and agreed by and

10    between counsel representing the parties that the

11    deposition of DUNCAN ELLIOTT KIRKWOOD is taken

12    pursuant to the Federal Rules of Civil Procedure and

13    that said deposition may be taken before Julie A.

14    Duncan, Court Reporter and Commissioner for the State

15    of Alabama at Large, without the formality of a

16    commission, that objections to questions other than

17    objections as to the form of the question need not be

18    made at this time but may be reserved for a ruling at

19    such time as the said deposition may be offered in

20    evidence or used for any other purpose by either party

21    provided for by the Statute.

22            It is further stipulated and agreed by and

23    between counsel representing the parties in this case

Page 4

1    that the filing of said deposition is hereby waived

2    and may be introduced at the trial of this case or

3    used in any other manner by either party hereto

4    provided for by the Statute regardless of the waiving

5    of the filing of the same.

6        It is further stipulated and agreed by and

7    between the parties hereto and the witness that the

8    signature of the witness to this deposition is hereby

9    not waived.

10

11              *  *  *  *  *  *  *  *  *  *  *  *  *

12

13              DUNCAN ELLIOTT KIRKWOOD

14        The witness, after having first been duly sworn

15    to speak the truth, the whole truth and nothing but

16    the truth testified as follows:

17                    EXAMINATION

18    BY MR. MENEFEE:

19    Q.    Would you please state your name and address.

20    A.    Duncan Elliot Kirkwood, D-U-N-C-A-N,

21          E-L-L-I-O-T-T, Kirkwood, K-I-R-K-W-O-O-D.

22              And would you like my school address or

23          my home address?

6fd4d326-afee-49f7-b554-d304a988101c

Page 5

1    Q.    Let's have both.

2    A.    School is 915 South Jackson Street,

3          Montgomery, Alabama 36101, McGinty,

4          M-C-G-I-N-T-Y, Apartments, C-101.

5              And my home address is 70 Manhattan

6          Street, Buffalo, New York 14215.

7    Q.    And how old are you?

8    A.    Twenty-two.

9    Q.    Twenty-two?

10   A.    Yes, sir.

11   Q.    What are you studying?

12   A.    Public relations.

13   Q.    You're a senior at ASU?

14   A.    Yes, sir.

15   Q.    Congratulations.

16   A.    Thank you very much.

17   Q.    We're going to try to get you out of here for

18         class, unless you want an excuse.

19              Let's see.  Have you ever been a

20         plaintiff or a defendant in a lawsuit before?

21   A.    No, sir.

22   Q.    Where do you vote now?

23   A.    At Alabama State University.

Page 6

1    Q.    So you're part of council district three?

2    A.    Yes.

3    Q.    Okay.  When and where did you first register

4          to vote?

5    A.    I think that I was registered before I left

6          home.  Because at our high school they used to

7          register all of the students to vote, but I

8          never voted until I came down to Alabama State

9          and registered here in Montgomery.

10   Q.    Do you remember when you registered at

11         Alabama State, which year in school maybe?

12   A.    2004.

13   Q.    2004.

14   A.    I think it was 2004.

15   Q.    Was that part of a voter registration drive on

16         campus that fall?

17   A.    No.  It was one -- it's a requirement for my

18         fraternity that everybody is a registered

19         voter.

20   Q.    What fraternity?

21   A.    Alpha Phi Alpha.

22   Q.    Did you vote in the 2004 election, that would

23         have been the presidential election of --

Page 7

1    A.    Yes.

2    Q.    -- Kerry and Bush?

3    A.    Yes, I did.

4    Q.    And --

5    A.    I'm -- I'm trying to think of who I voted

6          for.  Sorry.

7    Q.    If you've got to think about it that long,

8          we've got --

9    A.    Sorry.

10   Q.    How about in 2006?  Did you vote in the

11         elections in 2006?

12   A.    I don't think I did.

13   Q.    Okay.  Do you remember the elections in 2006?

14   A.    (Witness shaking head).

15   Q.    Do you know who was running?

16   A.    (Witness shaking head).

17   Q.    What offices were up?

18   A.    Unh-unh (negative response).

19   Q.    One thing about depositions, you have to

20         speak --

21   A.    Oh, okay.

22   Q.    -- shaking heads, she can't record.

23   A.    Okay.  I'm sorry.  No.  No, I don't -- who

Page 8

1       did -- who ran in 2006?

2   Q.   There were gubernatorial -- it was a

3        governor's election, there were congressional

4        elections here in Alabama, the entire state

5        legislature was elected.

6   A.   Wait a minute.  No, I didn't.  I -- to my

7        knowledge, I don't think that I did.  I'm

8        pretty sure I didn't, because I have no

9        knowledge of who was running.

10  Q.   You didn't vote in the 2003 city election, did

11       you?

12  A.   No, sir.  That was when I first got to

13       Alabama State.  I wasn't registered to vote

14       then.

15  Q.   I see.  Why didn't you register to vote?

16  A.   It wasn't a big priority of mine when I first

17       got to college.  You know, I just started

18       classes, just -- you know, it's college life.

19       You know, you leave high school.  You get some

20       freedom.  Registering to vote wasn't something

21       that was, you know, big on my mind.  In

22       addition, the candidates don't really come to

23       Alabama State and make themselves known, make

Page 9

1    it personal.  You know, people usually vote

2    because they have a personal stake in the

3    election.  And when candidates don't come give

4    you that personal stake, you feel -- you feel,

5    you know, disassociated and disattached from

6    it.  So it doesn't -- it doesn't seem like

7    it's important.

8        So a lot of freshmen, they feel -- they

9    don't -- they don't know who is running a lot

10   of times, and they don't care who is running.

11   You know, and we don't watch the local news --

12   the local news, because when we first get

13   here, we're not part of the city yet.

14   We're -- I mean, we're part of the city in the

15   fact that we're citizens, but we still pull --

16   we still have those values and things we want

17   to see and everything from your home.

18       So, you know, your local news at home in

19   Buffalo they'll say, something happened on

20   Jefferson.  You might go, oh, that's down the

21   street.  But here in Montgomery, you know,

22   something happened on Decatur Street, you

23   don't even know that the school is right there

Page 10

1          on Decatur Street.  So a lot of times you feel

2          detached.

3     Q.   Do you think that's fairly common for --

4     A.   Usually --

5     Q.   -- students?

6     A.   -- usually, unless the candidates actually

7          come on campus.

8     Q.   Okay.

9     A.   And this year they've been there, for some

10         reason or another.  The city council

11         representatives have been -- and

12         Scott Simmons, his wife most -- his wife is

13         just like -- you know, she -- she was working,

14         you know.  So his wife and the -- and

15         Janet May and Tracy Larkin have been on campus

16         a large number of times.  So a lot of students

17         know them.  You know, they come to campus

18         events.  They come to speech competitions and

19         motivational rallies.  They're just -- they're

20         just there.

21    Q.   Those candidates come?

22    A.   Yes.

23    Q.   You've seen Janet May at these various --

Page 11

1    A.   Yes.

2    Q.   -- gatherings?

3    A.   I've seen Janet May at a program that one of

4         the sororities put on.  And also they had a

5         debate on campus.  And Tracy Larkin, I've seen

6         him at a motivational rally, our, you know,

7         fall convocation, speech competition, and

8         through Organization Fair Day.  He's just --

9         you know, they've been really around talking

10        to students.  So students kind of feel like,

11        oh, okay, I've got to go vote for him, you

12        know, or her.

13   Q.   Have y'all had any voter registration drives

14        on campus?

15   A.   Yes, sir.

16   Q.   How many students have registered during

17        September of this year?

18   A.   I can't -- I can't answer that question.

19   Q.   Who would know that?  Anybody on campus, any

20        student organizers that put it on?

21   A.   Unh-unh (negative response).  The only people

22        who would know that would probably be the

23        official record people downtown, because it's

Page 12

1    not one uniform -- like student government is

2    registering this many people to vote.  Student

3    government is having a voter registration

4    drive, the AEA, the sorority is having one,

5    this organization is having one, student YMCA

6    is having one.  So we -- all of the numbers

7    aren't like pooled like.

8  Q.  Did student government have one?

9  A.  We helped -- we helped with the one that

10    AKAs -- the sorority did.

11  Q.  Did the AKA -- do you know how many they

12    registered?

13  A.  That's -- I don't know offhand.

14  Q.  What about your fraternity?

15  A.  My fraternity, we -- we haven't had a voter

16    registration drive where you're actually

17    filling out people to vote yet.  But what we

18    did was, we got five thousand flyers, like

19    real glossy flyers, printed out.  And we've

20    been giving those out.  Like you know how

21    people give out party flyers, we're giving out

22    flyers that say, you know, Alpha Phi Alpha

23    votes; do you?  And we've been giving them

Page 13

1    out.  You know, they're really nice.  So

2    that's been kind of getting people like, maybe

3    I should go vote, or whatever.

4  Q.  Did you attend any of the city council

5    meetings where this election schedule was

6    discussed?

7  A.  No.  No, sir.

8  Q.  Have you ever attended a city council meeting?

9  A.  No, sir.  Well, not here.

10  Q.  Yes.  No, I mean in Montgomery.

11  A.  Okay.  No, sir.

12  Q.  Are you aware that the election schedule used

13    this year was approved for only this one time

14    by the Department of Justice?

15  A.  Yes, sir.

16  Q.  And it has not been approved for use in the

17    future?

18  A.  Well, I was informed that next year the

19    election would be moved to October 2nd, I

20    believe, or --

21  Q.  You mean in four years?

22  A.  Four years.

23  Q.  Next time?

Page 14

1    A.    Next time.  Thank you, sir.  It will be -- it

2          will be the first -- first week in October.

3    Q.    Do you have any complaints through this

4          lawsuit that you filed other than the effect

5          it has on newly arriving ASU black students

6          and their ability to establish residency and

7          vote?

8    A.    It's not a complaint necessarily against --

9          just for black students, just for ASU

10         students.  You know, I'm -- I'm the student

11         government president.  I'm their voice.  And

12         with this -- by moving the election day, what

13         it did was silence a lot of students and, you

14         know, that's wrong.

15   Q.    So it's on behalf of white students also?

16   A.    Yeah, it's on behalf of every student that

17         wasn't afforded the chance to vote that

18         normally would have been.  And I understand

19         that they had to comply with the Uniform and

20         Overseas Voting Act, but -- Absentee Voting

21         Act.  But, you know, there has to have --

22         there had to have been another way to comply

23         with that and not -- and not take these

Page 15

1          students' ability to vote away.

2              And I know a lot of people were -- had

3          the issue where, you know, they don't know

4          anything about city politics, you know, they

5          don't know anything, they're not really

6          residents yet, they shouldn't have a voice

7          anyway.  But that's false, that's --

8    Q.    I'm sorry?

9    A.    Well, that's false, because -- not so much for

10         the mayoral election, because, I know the --

11         you know, the mayor election is not going to

12         be decided -- just say, I don't know, five

13         hundred students vote, best-case scenario most

14         times.  But just say five hundred students

15         vote, that's not really going to change the

16         mayoral election, for the most part.

17             But the city council seat that is housed

18         in Alabama State, that person directly

19         represents Alabama State every day for the

20         next four years.  And whether you're

21         knowledgeable or not, you should have a say-so

22         in who that person is, you know.  I mean --

23   Q.    Do you plan to vote at the runoff election?

Page 16

1    A.    Absolutely.

2    Q.    A week from tomorrow?

3    A.    Absolutely.  And we have been -- you know, on

4          campus there has been a lot of voter

5          registration drives.

6    Q.    Are you campaigning for either one of the

7          particular candidates?

8    A.    No.  No, sir.  I've -- Janet May has been a

9          city council person for the last four years.

10         And it disturbs me that I haven't met her,

11         because I've been -- you know, I've gone to

12         Alabama State the last four years.  And it

13         disturbs me that I haven't met her until it

14         was time to start campaigning again.  It

15         really disturbed me.  But I haven't told any

16         students to vote for Tracy Larkin or not to

17         vote for Janet May.  You know, I let the

18         students decide on their own.  My only concern

19         is that they have the chance to decide.  You

20         know, even if only six students from Alabama

21         State vote, that's their right.  That's their

22         right as a U.S. citizen to either vote or not

23         vote.  But it's their right to have a chance,

6fd4d326-afee-49f7-b554-d304a988101c

Page 17

1    so -- or a choice rather.

2          So I'm not really pulling for either

3    candidate.  I just hope whoever wins will come

4    back to Alabama State as frequently as they

5    have been over this past month and a half and

6    to -- to help the school.

7    Q.   Okay.  There are two points I would like to

8         follow up on.  One, you were discussing that

9         you were -- as student government president

10        and a plaintiff in this lawsuit, as I

11        understood you to say, you're pulling for

12        all -- your complaint was for all students to

13        be able to vote.  That was in my response to

14        whether it was just for African-American

15        students.

16   A.   Yes, sir.

17   Q.   Okay.  Do you broaden that to say all college

18        students in the city of Montgomery that may be

19        attending other colleges that may be affected

20        by this?

21   A.   If they're affected, then yes.

22   Q.   Okay.

23   A.   But, to my knowledge, I can't sit here and

Page 18

1          tell you, you know, Auburn -- not Auburn, AUM

2          or --

3   Q.   Faulkner or Huntingdon.

4   A.   -- or Faulkner or Huntingdon, they -- you

5          know, they begin classes on what day.  You

6          know, they might have early registration for

7          classes.  So, you know, you can move into your

8          dorm at the beginning of August or some -- you

9          know, I'm not sure on how their campuses

10         work.  But if they are negatively affected and

11         they're not able to vote in that -- or they

12         weren't able to vote, then, yes, the concern

13         is for them as well.  But I don't -- you know,

14         I'm under oath and stuff.  You know, I can't

15         say this affected them like this, because I --

16         you know, I don't know.

17   Q.   If it had an affect on those who are entering

18         the Air War College at Maxwell Air Force Base

19         for courses, would you also embrace those

20         people in your complaint?

21   A.   I'm not sure of the logistics of their

22         college, but --

23   Q.   They come in and enroll for one year or longer

Page 19

1    periods of time as part of the Air Force --

2  A.    Then, yes.

3  Q.    -- graduate program.

4  A.    Absolutely.  Every -- everybody should get to

5       vote.  Everybody -- everybody should vote.

6       But, you know, everybody doesn't vote;

7       however -- you know, it's not a utopian

8       society.  Everybody doesn't vote.  But

9       everybody has that right.  Everybody has to

10      have the right to vote.  That's the way --

11      that's the only way our society is going to

12      work.  Because if you can say, well, they

13      don't really know nothing about the city or

14      they're not going to be here the whole time or

15      whatever, whatever, now you're starting to cut

16      into -- you're starting to chop up the way --

17      you know, cutting people out of voting.  I'm

18      not really -- a lot of people are saying it's

19      like a black thing.  They're trying to stop

20      Alabama State students from voting.  They

21      don't want the black kids to vote, yada, yada,

22      yada.  It's not so much that for me as these

23      students won't have the chance to pick who

Page 20

1      represents them for the next four years.

2            And in district three, you know, the last

3      election was decided by two hundred and

4      fifty-five votes.  That's, you know, like less

5      than one fifth of our student population.  So

6      that means if one out of six students vote, we

7      change who represents us, possibly.  And

8      that's -- that's too much for us not to have

9      that -- that chance.

10           Thankfully, we're in a runoff election.

11     So we can now register those students to

12     vote.  Now everybody has their chance.  But,

13     you know, they kind of still cut them off for

14     the mayoral election.

15  Q.   You don't think it would have made any

16     difference in the mayoral election this time,

17     do you?  Would you like to see the results?

18  A.   Yes.  Absolutely.

19  Q.   It's the first two pages, but that's the --

20     that's the bottom line on it.  It just lists

21     precinct by precinct the number of votes cast

22     for each of the four candidates and then the

23     percentage of votes.

Page 21

1    A.    Well, it says here, if I'm reading this

2          correctly, that Bobby Bright got twenty --

3          almost twenty-three thousand votes.

4    Q.    That's correct.

5    A.    And Scott Simmons got about thirteen thousand

6          votes.  So, what's that, about nine, ten

7          thousand difference, just about.  And there's

8          only six thousand, fifty-seven -- I mean,

9          fifty-eight to six thousand students at

10         Alabama State.  Even if every student voted,

11         it wouldn't have made a difference.  But, you

12         know, as I said, it's one of our civic duties

13         to vote.

14   Q.    I appreciate that.

15   A.    So whether -- whether it makes a difference or

16         not, you still wanted your voice to be heard.

17   Q.    I understand.

18   A.    Because if all six thousand students voted for

19         Scott Simmons and it's, you know, nineteen

20         thousand to twenty-three thousand, now at

21         least Scott Simmons can say, you know what, I

22         should run again.  Or, you know, it was close,

23         maybe this group of people I missed out on, as

Page 22

1    opposed to, wow, Bobby Bright is just a

2    monster on -- in the campaign.  And he is just

3    unanimous -- almost a unanimous decision, or

4    super majority for the city, you know.  He --

5    it -- it would make a difference in saying --

6    or if they voted for William Boyd, then

7    instead of getting seven hundred and twenty --

8    yes, seven hundred twenty-one votes, he got,

9    you know, three thousand or something.  He can

10   say, well, next time John Dow -- you know, he

11   will support William Boyd because he got so

12   many more votes, you know, whatever.  It says

13   something different when -- when the numbers

14   are different.  I hope that wasn't too long of

15   an answer.

16   Q.    That's all right.  That's okay.

17         The other point was, if I recall

18   correctly, you said that the city had an

19   obligation to these overseas voters, they

20   should have found either a better or earlier

21   way to accommodate their needs.  If I've

22   mischaracterized what you said -- tell me what

23   you said, and --

Page 23

1   A.   Well --

2   Q.   -- explain what that other or better way might

3        be.

4   A.   I was -- I was informed -- okay.  I guess I --

5        I don't want to say something that's wrong,

6        you know, go to jail for the rest of my life.

7            I was informed that they could have moved

8        the elections up, I think, maybe a week or two

9        weeks, and pushed the runoffs back two weeks,

10       or something like that.  And it still could

11       have complied with the Uniform and Overseas

12       Absentee Voting Act.  That's what I was told.

13  Q.   Okay.

14  A.   So if that was a solution, or if there was

15       another solution, you know, I would really

16       have hoped that the city would have come up

17       with it.

18           And in addition, the one thing

19       Mr. Boyd -- was that Mr. Boyd --

20  Q.   Yes.

21  A.   -- said that I thought was good, you know,

22       was -- oh, geez.  I'm sorry.  I lost track.

23       The one thing he said was good was that --

Page 24

1   Q.   You're not saying everything else he said was

2        bad, are you?

3   A.   No.  No.  Y'all made me lose my train of

4        thought.  Oh, geez.

5   Q.   It's really not -- look, I don't mean to cut

6        you off, but it's not necessary to repeat

7        something he said.

8   A.   Okay.  Yes.  Well, the point -- the point is,

9        if there had been another way to comply --

10  Q.   Well, then let me take that point.  Suppose

11       there was no other option, the only option is

12       you hold the election in October under the old

13       schedule, and there's not time to handle the

14       absentee ballots under that schedule; or you

15       hold it in this late August, early October

16       runoff schedule so that you can accommodate

17       it.

18           Does that make a difference, if that was

19       the only two available options under Alabama

20       State law?

21  A.   It makes a difference, but it doesn't change

22       the fact that you have silenced a large number

23       of people.

Page 25

1    Q.    You understand that the other way you --

2    A.    Yes, you silence --

3    Q.    -- may be saying --

4    A.    You silence --

5    Q.    -- that the people who have lived in

6          Montgomery who have already registered to vote

7          and who are serving overseas in the military

8          can't vote in the runoff?

9    A.    Well, I don't -- I don't deal in absolutes,

10         you know, like it has to be this way or it has

11         to be this way.

12   Q.    Well, with due respect, there are only a

13         certain number of options that a municipality

14         has to conduct elections under.  Are you --

15   A.    Right.

16   Q.    And are you aware that they made an effort to

17         get a new law passed in the legislature during

18         the spring?

19   A.    Absolutely.

20   Q.    And that failed?

21   A.    That failed because of, I believe,

22         Senator Dixon.

23   Q.    So after that, on June 5th --

Page 26

1    A.    I was unaware that the city council had the

2          authority to pass an ordinance that would --

3          that would override an act that was passed by

4          the state legislature.

5    Q.    Well, there may be some dispute on that, but

6          there is a provision in Alabama law that lets

7          municipalities elect -- decide to hold

8          elections on this August 28th, early -- let's

9          see -- that would be the 9th of October

10         schedule, a six-week interval.

11                    MR. STILL:  Objection, because I

12                        don't think that's a fair

13                        statement of the law.  But

14                        that's one of the points in the

15                        case.

16                    MR. MENEFEE:  Yes.

17   Q.    Well, and we're arguing about that point of

18         Alabama law.  But the city of Montgomery

19         felt -- it is for some -- some municipalities

20         in Alabama.  I guess the only question is,

21         according to your counsel, whether or not

22         Montgomery has the option of doing what the

23         other municipalities are doing, to hold

Page 27

1       elections under this current schedule.  But,

2       basically, that's it.

3    A.    Should I have not mentioned that?

4    Q.    No.  No.  That's fine.  I was just testing to

5          see how you balanced the fairness.  On one

6          hand, the overseas voters being able to

7          participate versus your desire to give

8          students an option to start participating in

9          the electoral process.

10   A.    And my statement or remarks, sir, to that

11         would be, you know, there's got to be a middle

12         ground.  I believe that the overseas people --

13         they've got to vote.  You know, they're

14         actually overseas and, you know, they have to

15         be able to vote; but so do the students, you

16         know.

17             Every major change in U.S. history has

18         come from the age range of college students,

19         you know.  So they have to have a say-so as

20         well.  Maybe if they could have done a

21         possible -- I don't know -- I don't think it

22         would be called absentee, but some type of

23         voting act where all of the new incoming

Page 28

1    college students could register or have a rush

2    residency since they're -- you know, they're

3    staying on campus or -- either do a rush

4    residency or take their votes and -- or let

5    them vote under the auspices that they will

6    obtain a residency in thirty days, or

7    something to that nature, some type of

8    compromise so everybody wins, everybody gets

9    heard.

10   Q.    But as you noted, they're going to be able

11         to -- they have had an opportunity to register

12         in September?

13   A.    Yes, sir.

14   Q.    And they'll be able to vote in the runoff, is

15         that correct?

16   A.    Yes, sir.

17   Q.    Okay.

18                    MR. MENEFEE:  That's all I have.

19                    Thanks.

20

21                    (The deposition concluded at

22                    approximately 2:00 p.m.)

23

Page 29

1                    *  *  *  *  *  *  *  *  *  *  *  *  *

2               FURTHER DEPONENT SAITH NOT

3                    *  *  *  *  *  *  *  *  *  *  *  *  *

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

Deposition of Duncan E. Kirkwood        MAY vs. CITY OF MONTGOMERY                    October 1, 2007

Page 30

1                          SIGNATURE PAGE

2              I, DUNCAN ELLIOTT KIRKWOOD, hereby

3     certify that I have read the foregoing transcript

4     of my deposition given on Monday, October 1, 2007,

5     and it is a true and correct transcript of the

6     testimony given by me at the time and place stated

7     with the corrections, if any, and the reasons

8     therefor noted below.

9     PAGE     LINE    CORRECTION AND REASON THEREFOR

10

11

12

13

14                         _____
                           DUNCAN ELLIOTT KIRKWOOD

15

16              SWORN TO AND SUBSCRIBED before me this
      _____ day of _____, 20 __.

17

18                         _____
                           NOTARY PUBLIC

19

20              MY COMMISSION EXPIRES:

21                         _____

22

23

6fd4d326-afee-49f7-b554-d304a988101c

Page 31

¹                         REPORTER'S CERTIFICATE

²     STATE OF ALABAMA:

³     BUTLER COUNTY:

⁴             I, Julie A. Duncan, Court Reporter and

⁵     Commissioner for the State of Alabama at Large, do

⁶     hereby certify that I reported the deposition of:

⁷                     DUNCAN ELLIOTT KIRKWOOD

⁸      who was first duly sworn by me to speak the truth,

⁹       the whole truth and nothing but the truth, in the

¹⁰      matter of:

¹¹                     JANET MAY, et al.,

¹²                     Plaintiffs,

¹³                     vs.

¹⁴                     CITY OF MONTGOMERY, ALABAMA,

¹⁵                     et al.,

¹⁶                     Defendants.

¹⁷                     In the United States District Court

¹⁸                     for the Middle District of Alabama,

¹⁹                     Northern Division,

²⁰                     Civil Action No. 2:07-cv-738-N,

²¹      on Monday, October 1, 2007.

²²             The foregoing 31 computer-printed pages

²³      contain a true and correct transcript of the

Page 32

1    examination of said witness by counsel for the parties

2    set out herein.  The reading and signing of same is

3    hereby not waived.

4         I further certify that I am neither of kin

5    nor of counsel to the parties to said cause nor in any

6    manner interested in the results thereof.

7         This 15th day of October, 2007.

8

9

10

   _____
11   Julie A. Duncan, ACCR#: 256
   Certified Court Reporter and
   Commissioner for the State
12   of Alabama at Large
                13
14

15

16

17

18

19

20

21

22

23

# DEPOSITION OF KENYADA ADAMS

## October 1, 2007

## Pages 1 through 27

## PREPARED BY:

**Haislip, Ragan, Green, Starkie & Watson, P.C.**
**566 South Perry Street**
**Post Office Box 62**
**Montgomery, AL 36104**
**Phone: (334) 263-4455**
**Fax: (334) 263-9167**
**E-mail: haislipragan@charter.net**

Case 2:07-cv-00738-MHT-WC    Document 41-16    Filed 11/16/2007    Page 2 of 9

Deposition of Kenyada Adams MAY vs. CITY OF MONTGOMERY          October 1, 2007

Page 1

IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF ALABAMA

NORTHERN DIVISION


JANET MAY, et al.,

     Plaintiffs,

vs.                              CIVIL ACTION NO.
                                 2:07-cv-738-N

CITY OF MONTGOMERY,
ALABAMA, et al.,

     Defendants.



* * * * * * * * * * * *


     DEPOSITION OF KENYADA ADAMS, taken pursuant
to stipulation and agreement before Julie A. Duncan,
Certified Court Reporter and Commissioner for the
State of Alabama at Large, in the Law Offices of Larry
T. Menefee, 407 South McDonough Street, Montgomery,
Alabama, on Monday, October 1, 2007, commencing at
approximately 3:15 p.m.


* * * * * * * * * * * *

56db32fe-31f9-4e59-801e-3fbd78b4879b

Case 2:07-cv-00738-MHT-WC    Document 41-16    Filed 11/16/2007    Page 3 of 9

Deposition of Kenyada Adams MAY vs. CITY OF MONTGOMERY                    October 1, 2007

<table>
<tr><td>

Page 2

1           APPEARANCES
2   ON BEHALF OF THE PLAINTIFFS:
3   Mr. Edward Still
    EDWARD STILL LAW FIRM, L.L.C.
4   Attorney at Law
    2112 11th Avenue South
5   Suite 201
    Birmingham, Alabama  35205-2844
6
    ON BEHALF OF THE DEFENDANTS:
7
    Mr. Larry T. Menefee
8   Attorney at Law
    407 South McDonough Street
9   Montgomery, Alabama  36104
10
11
12          * * * * * * * * * * * * *
13
14
15          EXAMINATION INDEX
16
    KENYADA ADAMS
17
      BY MR. MENEFEE . . . . . . . . . . .   4
18
19
20
            * * * * * * * * * * * * *
21
22
23

</td><td>

Page 4

1   that the filing of said deposition is hereby waived
2   and may be introduced at the trial of this case or
3   used in any other manner by either party hereto
4   provided for by the Statute regardless of the waiving
5   of the filing of the same.
6        It is further stipulated and agreed by and
7   between the parties hereto and the witness that the
8   signature of the witness to this deposition is hereby
9   not waived.
10
11          * * * * * * * * * * * * *
12
13          KENYADA ADAMS
14      The witness, after having first been duly sworn
15   to speak the truth, the whole truth and nothing but
16   the truth testified as follows:
17              EXAMINATION
18   BY MR. MENEFEE:
19   Q.   Would you please state your name and address.
20   A.   Kenyada Adams.  My home address?
21   Q.   Sure.
22   A.   123 17th Street Southwest, Birmingham, Alabama
23        35211.

</td></tr>
<tr><td>

Page 3

1           EXHIBIT INDEX
2
3      (No exhibits marked to this deposition.)
4
5           * * * * * * * * * * * * *
6
7
8           STIPULATION
9        It is hereby stipulated and agreed by and
10   between counsel representing the parties that the
11   deposition of KENYADA ADAMS is taken pursuant to the
12   Federal Rules of Civil Procedure and that said
13   deposition may be taken before Julie A. Duncan, Court
14   Reporter and Commissioner for the State of Alabama at
15   Large, without the formality of a commission, that
16   objections to questions other than objections as to
17   the form of the question need not be made at this time
18   but may be reserved for a ruling at such time as the
19   said deposition may be offered in evidence or used for
20   any other purpose by either party provided for by the
21   Statute.
22        It is further stipulated and agreed by and
23   between counsel representing the parties in this case

</td><td>

Page 5

1   Q.   And your address here in Montgomery?
2   A.   I think it's 1535 Robert C. Hatch Drive, Room
3        1101-A, C.J. Dunn Towers.
4   Q.   Is that on campus at ASU?
5   A.   Yes.
6   Q.   Is that a dormitory?
7   A.   Yes.  C.J. Dunn Towers.
8   Q.   Okay.
9            COURT REPORTER:  Can you repeat the
10           towers?
11           THE WITNESS:  C.J. Dunn.
12           COURT REPORTER:  Thank you.
13   Q.   D-U-N-N?
14   A.   Yes.
15   Q.   Okay.  How old are you?
16   A.   I'm eighteen years old.
17   Q.   When was your birthday?
18   A.   1/10/89.
19   Q.   So -- oh, 1/10, so January 10th?
20   A.   Uh-huh (positive response).
21   Q.   Okay.  Did you register to vote while you were
22        in Birmingham?
23   A.   Yes.

</td></tr>
</table>

56db32fe-31f9-4e59-801e-3fbd78b4879b

Page 6

1  Q.  And have you registered to vote here in
2      Montgomery?
3  A.  Yes.
4  Q.  When did you register?
5  A.  I want to say last Tuesday.
6  Q.  Last Tuesday.  Sometime maybe last week?
7  A.  It was last week, early last week.
8  Q.  Have you ever voted in an election before?
9  A.  No.
10 Q.  Do you intend to vote in the runoff for the
11     Montgomery City Council --
12 A.  Yes, I do.
13 Q.  -- district three?
14 A.  Yes.
15 Q.  Have you followed the candidates?  Do you know
16     who the candidates are?
17 A.  No.
18 Q.  Have you seen any of the candidates on the
19     campus?
20 A.  Uh-huh (positive response).  Yes, I have.
21 Q.  But you don't know their names?
22 A.  No.
23 Q.  What prompted you to register to vote?

Page 7

1  A.  Well, voting is like my opinion, and that's my
2      way to be heard.  So I felt like it was
3      necessary for me to register.
4  Q.  Good for you.
5          Did anyone come up to you and say -- hand
6      you some -- here is a place where you can go
7      register to vote or --
8  A.  Yes.  Yes.
9  Q.  Who was doing that?
10 A.  I have no idea.  It was a fraternity --
11 Q.  I see.
12 A.  -- passing them out.
13         (Off-the-record discussion.)
14 Q.  Let's see.  What day did you arrive at ASU for
15     school?  Do you remember the date?
16 A.  August 16th.
17 Q.  16th.  Okay.  And my memory is that the first
18     day of any classes were the 23rd; does that
19     sound about right or --
20 A.  It was that following Wednesday, whatever that
21     date was.
22 Q.  And you moved right into the dormitory on
23     campus?

Page 8

1  A.  Yes.
2  Q.  Are most of the residents in that dorm
3      freshmen?
4  A.  No.
5  Q.  Was it difficult to get a dormitory room on
6      campus?
7  A.  Not for me.
8  Q.  Okay.
9  A.  No, it wasn't.  No.
10 Q.  Okay.  Do they require freshmen to live on
11     campus, or anything like that?
12 A.  No.
13 Q.  How did you choose ASU?
14 A.  Well, it was location, number one.  And the
15     price of it was like big.  That was number
16     two.  That was ...
17 Q.  So location was not in Birmingham but not too
18     far away?
19 A.  Exactly.
20 Q.  Let's see.  Did you make any effort to
21     register and vote before the first election on
22     August 28th?
23 A.  In Montgomery?

Page 9

1  Q.  Yes.
2  A.  No.
3  Q.  Did you ask anybody about it?
4  A.  Yes.
5  Q.  Who did you ask?
6  A.  The -- who is she?  It's like the person over
7      our dorm.
8  Q.  Dorm counselor or advisor or --
9  A.  I think it was like the advisor over the whole
10     dorm.
11 Q.  And what were you told?
12 A.  I was told that -- well, she didn't know.  She
13     didn't know what I was supposed to do.
14 Q.  And that was where it stood for that; is that
15     right?
16 A.  Say that again?
17 Q.  You didn't go further and ask anybody else?
18 A.  Oh, yes, I did.
19 Q.  Oh, did you?  Okay.
20 A.  But nobody could tell me -- they just told me
21     that later on in the month that they would be
22     passing out voter registration forms.
23 Q.  I see.

Deposition of Kenyada Adams MAY vs. CITY OF MONTGOMERY                October 1, 2007

| Page 10 | Page 12 |
|---|---|
| 1  A.  And that was like later on in -- like a month | 1  Q.  -- a week from Tuesday? |
| 2      later, which was September. | 2  A.  Yes. |
| 3  Q.  I meant to ask, what are you planning to study | 3  Q.  And you just have to make up your mind who the |
| 4      at -- | 4      candidates are? |
| 5  A.  Biology. | 5  A.  Yes. |
| 6  Q.  Biology.  And what are you going to do with a | 6  Q.  Did you go to the board of registrars to try |
| 7      biology degree, do you think? | 7      to register for August 28th, for the first |
| 8  A.  Obstetrician, gynecologist. | 8      election? |
| 9  Q.  Good for you.  Let's see.  Have you ever | 9  A.  I don't know what that is. |
| 10     worked in any election campaigns? | 10 Q.  The board of registrars are the people that |
| 11 A.  Yes, I have. | 11     register -- that register voters. |
| 12 Q.  Could you give me some examples of ones you've | 12 A.  Well -- |
| 13     worked in? | 13 Q.  You didn't go -- |
| 14 A.  Well, it was just one.  It was -- it was city | 14 A.  No. |
| 15     council. | 15 Q.  -- there? |
| 16 Q.  In Birmingham? | 16 A.  No.  I don't have a car, so I don't ever leave |
| 17 A.  Yes, it was. | 17     campus. |
| 18 Q.  Do you remember whose campaign it was? | 18 Q.  Did you fill out a registration form on |
| 19 A.  Oh, my gosh, it was so long ago.  It was | 19     campus? |
| 20     William -- I can't remember his last name. | 20 A.  Yes, I did. |
| 21         MR. STILL:  Bell?  Could it have | 21 Q.  Do you know the name of the fraternity that |
| 22         been Bell? | 22     was registering? |
| 23         THE WITNESS:  No, it wasn't -- | 23 A.  It was Alpha Phi Alpha.  Well, it was the |

| Page 11 | Page 13 |
|---|---|
| 1         MR. STILL:  It wasn't Bell? | 1      sorority that's -- I think -- no, they're not |
| 2         THE WITNESS:  No, it wasn't Bell. | 2      sisters, but they do -- Zeta Phi Beta were |
| 3         No, because it was city | 3      doing it too. |
| 4         council. | 4  Q.  I've got you.  How did you come to be involved |
| 5  Q.  Are your parents active in politics? | 5      in this lawsuit? |
| 6  A.  Yes. | 6  A.  When I came down for orientation, it was |
| 7  Q.  And they encouraged you to participate? | 7      July 15th through the 17th, I met Duncan.  And |
| 8  A.  Yes. | 8      he was just telling a lot of students about |
| 9  Q.  Are any of them officeholders or -- | 9      what was going on and, you know, how we felt |
| 10 A.  No. | 10     about what was happening.  And he asked people |
| 11 Q.  -- anything like that? | 11     would they like to be involved, you know, and |
| 12 A.  No. | 12     I told him yes. |
| 13 Q.  The current election schedule permits you to | 13 Q.  Did he say that they were -- did he invite you |
| 14     vote in the runoff election that's going to be | 14     to become a plaintiff in the lawsuit? |
| 15     held a week from tomorrow, doesn't it? | 15 A.  Yes. |
| 16 A.  Yes. | 16 Q.  And that was at this July 15th -- |
| 17 Q.  You're not being disenfranchised from your | 17 A.  Uh-huh (positive response). |
| 18     right to vote in the runoff election, are you? | 18 Q.  -- the time you met him? |
| 19 A.  I'm not really sure.  I don't believe so. | 19 A.  Yes. |
| 20 Q.  You've been allowed to register and vote? | 20 Q.  Do you know if he asked any other students to |
| 21 A.  Yes. | 21     be -- |
| 22 Q.  And you expect to be able to vote -- | 22 A.  He did. |
| 23 A.  Yes. | 23 Q.  -- plaintiffs?  Did many others come forward? |

56db32fe-31f9-4e59-801e-3fbd78b4879b

Page 14

1   A.  I don't believe so.  They did, but it was
2       after the fact, after everything had already
3       been --
4   Q.  Been filed?
5   A.  Uh-huh (positive response).
6   Q.  I see.  What do you understand to be the
7       subject of your complaint in federal court?
8   A.  Well, I understand that -- I guess you have to
9       be a resident of Montgomery for a certain
10      amount of time before you're allowed to vote.
11      And we weren't allowed in that first election
12      that they had on campus -- well, I know they
13      voted on campus.  And being freshmen, you
14      know, just coming in, we couldn't vote.
15  Q.  Did you file this lawsuit for all of the ASU
16      students, both black and white?
17  A.  Yes.
18  Q.  Would you say the same thing for all of the
19      college students that may be coming into
20      Montgomery?
21  A.  Yes.
22  Q.  Do you know any of the candidates -- the names
23      of any of the candidates who have run for city

Page 15

1       council or mayor --
2   A.  No.
3   Q.  -- in this election?
4   A.  No.
5   Q.  Do you know the name of the mayor of the city
6       of Montgomery?
7   A.  No.
8   Q.  Do you know the name of the city council
9       person that represents Alabama State
10      University?
11  A.  No.
12  Q.  Do you know the name of the U.S. congressman
13      that represents the area at ASU?
14  A.  No.
15  Q.  Do you suggest that the inability to register
16      and vote in the first election on August 28th
17      was -- affected the results of that election?
18  A.  It's a possibility.
19  Q.  Why do you say that?
20  A.  Well, because a lot of us couldn't vote in
21      that election.  And so -- I mean, over
22      thirty-five hundred students, well, freshmen,
23      I know at Alabama State University alone that

Page 16

1       could vote, and that could have -- you know,
2       could have made it go one way or the other.
3   Q.  Do you think that's true for the mayor's race?
4   A.  Yes.
5   Q.  Do you know how many votes were cast in the
6       mayor's race?
7   A.  No.
8   Q.  Do you know that the leading candidate got
9       right at twenty-three thousand votes and the
10      second place candidate got thirteen thousand
11      votes?  There was a ten thousand vote
12      difference?
13  A.  No.
14  Q.  Do you think --
15  A.  I didn't know.
16  Q.  Between the first and second candidate.  Do
17      you think the votes from the ASU students that
18      you seek to represent are -- could have
19      affected --
20  A.  Could have been.
21  Q.  How so?
22  A.  I'm not actually sure how many students go
23      there.  I just know there's a lot of freshmen

Page 17

1       as it is, so ...
2   Q.  Have you ever heard any rate on the attrition,
3       that is, the number of students that do not
4       come back for their sophomore year?
5   A.  I know it's a high percentage.
6   Q.  What do you think that means when you say it's
7       a high percentage?
8   A.  Well, I -- speaking in my terms --
9   Q.  Sure.
10  A.  -- I can say that I know that probably a
11      little over half of the people that are there
12      now won't be there next year.
13  Q.  Thank you.  As to the city council district
14      where there is a runoff and that you will be
15      able to vote in, isn't it true that you and
16      any of the other students that want to vote
17      can do so, and it is the deciding election for
18      that contest?
19  A.  Yes.
20  Q.  Do you know how many students vote at
21      Alabama State?
22  A.  No.
23  Q.  Do you think it's necessary to cancel the

56db32fe-31f9-4e59-801e-3fbd78b4879b

Page 18

1    election held on August 28th and hold a new
2    election?
3  A.  This year?
4  Q.  Yes, the one that was held, what, a month
5    ago.
6  A.  Probably not now, but maybe next time.
7  Q.  Next time?
8  A.  Yes.  Next time that one -- whatever it was --
9    you know, whenever it's time to run for that
10    again.  That would be ...
11  Q.  What elections were up for office on
12    August 28th?
13  A.  I'm not sure.
14  Q.  Do you know what offices are up for election a
15    week from tomorrow?
16  A.  No.
17  Q.  Have you previously met Mr. Still?
18  A.  I've talked to him.
19  Q.  You've talked to him?
20  A.  Uh-huh (positive response).
21  Q.  Have you ever seen a copy of the complaint
22    that was filed with your name on it in federal
23    court?

Page 19

1  A.  Yes.
2  Q.  Have you met the other lawyers that represent
3    you?
4  A.  No.  Well, yes, I have.  Yes.  Yes.  I met one
5    other person.  I'm not sure if he was -- I
6    think he was a lawyer.
7  Q.  Do you remember his name?
8  A.  Unh-unh (negative response).
9  Q.  Where did he meet you?
10  A.  At school to sign the -- whatever it was.
11  Q.  Are you responsible for paying any of the
12    attorney fees or expenses for your case?
13  A.  No.
14  Q.  Do you know who is going to pay them?
15  A.  No.
16  Q.  Do you have some ideas about what the
17    principal issues relating to the Montgomery
18    community are?
19  A.  What do you mean?
20  Q.  What will help you decide -- the candidates
21    will have to be in favor of -- what type of
22    issues are you looking for in a candidate?
23  A.  Okay.  I don't understand the question.

Page 20

1  Q.  A candidate that advocates what position would
2    be attractive to you and would get your vote?
3  A.  I'm still lost.
4  Q.  Okay.  What will make your decision about who
5    you decide to vote for?  Free medical school
6    education, for example.
7  A.  I wish.  Well, that all depends.  I'm not sure
8    if it's a specific thing.  It might be
9    overall.  But I'm not sure like of a -- one
10    set specific thing.
11  Q.  Are you following the national elections that
12    are starting now for 2008 for president?
13  A.  Yes.
14  Q.  Can you name some of the candidates for the
15    presidential election to succeed George Bush?
16  A.  Well, we have Hillary Clinton -- Hillary
17    Clinton, and -- I can never say his name
18    right.  Barack --
19  Q.  Barack.
20  A.  Barack O'Bama.  Yes, him.  Those are like
21    the -- I know those two, because those are
22    like the main candidates.
23  Q.  Do you know any of the Republicans that are

Page 21

1    seeking the office?
2  A.  No.
3  Q.  You know those two that you named are both
4    Democrats?
5  A.  Yes.
6  Q.  Do you know the names of the two U.S. senators
7    from Alabama?
8        MR. STILL:  Objection.  Relevance.
9          You can go ahead and
10          answer, if you know the answer.
11  A.  This takes me back to like government, senior
12    year.  I do not remember.
13  Q.  That was last year.
14  A.  Yes.  I do not remember.
15  Q.  What about the governor?  Who is the governor?
16  A.  Of?
17  Q.  This state.
18  A.  Is it Riley?
19  Q.  When you came to campus in the middle of July
20    and met with Mr. Kirkwood, how long were you
21    on campus?  Was that a one-day event or
22    several days?
23  A.  No, it was three days.

56db32fe-31f9-4e59-801e-3fbd78b4879b

Deposition of Kenyada Adams MAY vs. CITY OF MONTGOMERY                October 1, 2007

Page 22

1  Q.  Three day orientation type?
2  A.  Yes.  Two nights, three days.
3  Q.  Did anybody talk to you then about registering
4      to vote?
5  A.  He did.
6  Q.  Did you go try to register to vote then?
7  A.  No.
8  Q.  Could you have?
9  A.  I'm not sure.  I wasn't there long enough to
10     get into it.
11 Q.  Okay.
12 A.  I was like there for a set reason.
13 Q.  Had you been to Montgomery earlier --
14 A.  Yes.
15 Q.  -- for ASU?
16 A.  Yes.
17 Q.  When and what were you doing, just touring the
18     campus or some kind --
19 A.  Well, it's actually been a couple of times.
20 Q.  Okay.
21 A.  I came back in -- I want to say it was May
22     maybe, May or April, to check on school stuff,
23     make sure everything was okay.  And I came

Page 23

1      back in November to -- it was just like an
2      open house.  And then two years ago for an
3      event that they had on campus.
4  Q.  Now, in May or so when you came, had you been
5      accepted and were planning to enroll?
6  A.  Yes.
7  Q.  Was that for one day or --
8  A.  Yes.
9  Q.  Just down here for the day from Birmingham?
10 A.  Yes.
11 Q.  Did you know at that time whether you would be
12     living in the dormitory?
13 A.  Yes.
14 Q.  You knew as early as May --
15 A.  Yes.
16 Q.  -- that you would be living in a dorm?
17 A.  Yes.
18 Q.  Did you inquire then about registering to
19     vote --
20 A.  No.
21 Q.  -- in the city elections?
22 A.  No.
23 Q.  Okay.

Page 24

1         MR. MENEFEE:  I don't think I have
2      any other questions.
3         Thank you very much.
4      THE WITNESS:  You're welcome.
5
6
7      (The deposition concluded at
8      approximately 3:35 p.m.)
9
10     * * * * * * * * * * * *
11     FURTHER DEPONENT SAITH NOT
12     * * * * * * * * * * * *
13
14
15
16
17
18
19
20
21
22
23

Page 25

1         SIGNATURE PAGE
2         I, KENYADA ADAMS, hereby certify that
3  I have read the foregoing transcript of my
4  deposition given on Monday, October 1, 2007, and it
5  is a true and correct transcript of the testimony
6  given by me at the time and place stated with the
7  corrections, if any, and the reasons therefor noted
8  below.
9  PAGE   LINE   CORRECTION AND REASON THEREFOR
10
11
12
13
                _____
14     KENYADA ADAMS
15
       SWORN TO AND SUBSCRIBED before me this
16 _____ day of _____, 20 __.
17
18     _____
       NOTARY PUBLIC
19
20     MY COMMISSION EXPIRES:
21     _____
22
23

56db32fe-31f9-4e59-801e-3fbd78b4879b

Deposition of Kenyada Adams MAY vs. CITY OF MONTGOMERY                October 1, 2007

Page 26

1              REPORTER'S CERTIFICATE
2   STATE OF ALABAMA:
3   BUTLER COUNTY:
4          I, Julie A. Duncan, Court Reporter and
5   Commissioner for the State of Alabama at Large, do
6   hereby certify that I reported the deposition of:
7              KENYADA ADAMS
8   who was first duly sworn by me to speak the truth,
9   the whole truth and nothing but the truth, in the
10  matter of:
11         JANET MAY, et al.,
12         Plaintiffs,
13         vs.
14         CITY OF MONTGOMERY, ALABAMA,
15         et al.,
16         Defendants.
17         In the United States District Court
18         for the Middle District of Alabama,
19         Northern Division,
20         Civil Action No. 2:07-cv-738-N,
21  on Monday, October 1, 2007.
22         The foregoing 26 computer-printed pages
23  contain a true and correct transcript of the

Page 27

1   examination of said witness by counsel for the parties
2   set out herein.  The reading and signing of same is
3   hereby not waived.
4          I further certify that I am neither of kin
5   nor of counsel to said cause nor in any
6   manner interested in the results thereof.
7          This 15th day of October, 2007.
8
9
10         _____
           Julie A. Duncan, ACCR#: 256
11         Certified Court Reporter and
           Commissioner for the State
12         of Alabama at Large
13
14
15
16
17
18
19
20
21
22
23

56db32fe-31f9-4e59-801e-3fbd78b4879b