IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| Janet May, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Civil Action No. 2:07-cv-738-N |
| v. | ) | |
| | ) | |
| City of Montgomery, Al. et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**DEFENDANTS' SECOND EVIDENTIARY SUBMISSION**

Defendants submit the following additional documentary evidence, consisting of seven

numbered exhibits, in support of Defendants' Brief Opposing Partial Summary Judgment filed

contemporaneously.

The following seven exhibits are submitted.

16. Code of Alabama Excerpts: Sections 11-46-5 and 11-46-21, 1 page.

17. Ordinance 42-2007, 1 page.

18. Deposition of Walter Byars, 11 pages.

19. Exhibit 1 to the deposition of Walter Byars, 5 pages.

20. Exhibit 2 to the deposition of Walter Byars, 4 pages.

21.  Exhibit 3 to the deposition of Walter Byars, 12 pages.

22. Declaration of Larry Menefee, 5 pages.

Respectfully submitted this 14th   day of December,  2007.

**/s/ Larry Menefee**
LARRY T. MENEFEE

LARRY T. MENEFEE
407 S. McDonough Street

Montgomery, AL 36104
(334) 265-6002
Fax: (334) 832-9476
Bar No: ASB-0745-F35L
lmenefee@knology.net

J. Gerald Hebert
Campaign Legal Center
1640 Rhode Island Ave., NW Suite 650
Washington, DC 20036
(202) 736-2200 ext. 11 (office)
(202) 736-2222 (fax)
Virginia Bar Number 38432
Ghebert@campaignlegalcenter.org

Attorneys  for Defendants


### CERTIFICATE OF SERVICE

I certify that on this 14th  day of December, 2007 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following attorneys:

Edward Still                                        Sam Heldman
Email: still@votelaw.com                    sam@heldman.net


Cecil Gardner                                     **/s/ Larry Menefee**
cgardner@gmlegal.com                      LARRY T. MENEFEE

Excerpts from Code of Alabama (1975) as amended, found at
http://alisdb.legislature.state.al.us/acas/ACASLogin.asp   **Emphasis added**.

**Section 11-46-5**

1. **Date of elections in certain municipalities.**

The governing body of a municipality having a general municipal election or runoff election required **by general or local act** at a time different from the **dates** now or hereafter provided by Article 2, Chapter 46 of Title 11, **may elect by ordinance to have the election at the same time required by Article 2** and the election made by ordinance shall not have the effect of changing the beginning of a term of office or the time for taking office.

*(Acts 1980, No. 80-243, p. 320; Acts 1993, No. 93-760, p. 1514, §1.)*

**Section 11-46-21**

1. **Time of elections; notice; assumption of duties by elected officers.**

(a) The regular municipal elections in cities and towns **shall be held on the fourth Tuesday** in August 1984, and quadrennially thereafter, and, when necessary as provided in subsection (d) of Section 11-46-55, **a second or runoff election shall be held on the sixth Tuesday** next thereafter following the regular election.

*(Acts 1961, No. 663, p. 827, §2; Acts 1971, No. 159, p. 434; Acts 1980, No. 80-94, p. 140, §1; Acts 1982, No. 82-458, p. 711, §2; Acts 1987, No. 87-581, p. 928, §1; Act 2006-354, §2.)*

ORDINANCE NO. 42-2007

AN ORDINANCE SETTING THE DATES
FOR GENERAL MUNICIPAL ELECTIONS AND RUNOFF ELECTIONS AND
THE DATES FOR FILING AS CANDIDATES IN SUCH ELECTIONS

BE IT ORDAINED BY THE COUNCIL OF THE CITY OF MONTGOMERY,
ALABAMA as follows:

SECTION 1.  Pursuant to and under the authority granted by *Alabama Code* (1975) §11-46-5, as amended, the City Council of the City of Montgomery, Alabama elects by ordinance to have the general municipal election and runoff election required by Act 618, *Acts of Alabama (1973)*, to be held at the same time required by Article 2, Chapter 46 of Title 11, *Alabama Code (1975)*, as amended, including specifically §11-46-21 thereof, as follows:

(A)    The regular municipal elections in the City of Montgomery shall be held on the fourth Tuesday in August 2007 and quadrennially thereafter, and, when necessary as provided in said Act 618, a second or runoff election shall be held on the sixth Tuesday next thereafter following the general election.

(B)    The date for filing a statement of candidacy for the office of Mayor or for member of the City Council shall be no earlier than the first Tuesday in July and no later than the third Tuesday in July preceding the regular municipal election for Mayor and members of the City Council.

Provided nothing contained in Article 2, Chapter 46 of Title 11, *Alabama Code (1975)*, as amended, shall have the effect of changing the beginning of the term of office or the time for taking office or the year during which a municipal election is to be held, or the qualifications or requirements of candidates for election to the office of Mayor or member of the City Council.

SECTION 2.  The provisions of said Act 618 relating to the dates of the elections and for filing statements of candidacy for Mayor or City Council in a general municipal election are superseded to the extent the same are in conflict herewith.

SECTION 3.  This Ordinance shall become effective upon passage, approval and publication or as otherwise provided by law.

ADOPTED this the ___5th___ day of ___June___, 2007.

*Bobby Bright*

BOBBY N. BRIGHT, MAYOR

ATTEST:

*Brenda Gale Blalock*

BRENDA GALE BLALOCK, CITY CLERK                    42-2007

1

```
 1          IN THE DISTRICT COURT OF

 2          THE UNITED STATES FOR THE

 3          MIDDLE DISTRICT OF ALABAMA

 4              NORTHERN DIVISION

 5

 6    CASE NUMBER:  C:2:07-CV-00738-MHT-WC

 7

 8    JANET MAY, et al.,

 9          Plaintiffs,

10          vs.

11

12    CITY OF MONTGOMERY, et al.,

13          Defendants.

14

15         S T I P U L A T I O N

16          IT IS STIPULATED AND AGREED by

17    and between the parties through their

18    respective counsel, that the deposition

19    of WALTER BYARS may be taken before

20    Leslie K. Hartsfield, at the offices of

21    Larry Menefee, 407 South McDonough

22    Street, Montgomery, Alabama, 36104,

23          DEPOSITION OF WALTER BYARS
```

Page 2

1 taken on the 14th day of November, 2007.
2      IT IS FURTHER STIPULATED AND
3 AGREED that the signature to and the
4 reading of the deposition by the witness
5 is waived, the deposition to have the
6 same force and effect as if full
7 compliance had been had with all laws
8 and rules of Court relating to the
9 taking of the deposition.
10      IT IS FURTHER STIPULATED AND
11 AGREED that it shall not be necessary
12 for any objections to be made by counsel
13 to any questions except as to the form
14 or leading questions, and that counsel
15 for the parties may make objections and
16 assign grounds at the time of the trial,
17 or at the time said deposition is
18 offered in evidence, or prior thereto.
19      IT IS FURTHER STIPULATED AND
20 AGREED that the notice of filing of the
21 deposition by the Commissioner is
22 waived.
23

Page 4

1 BEFORE:
2      LESLIE K. HARTSFIELD,
3      Commissioner.
4
5 APPEARANCES:
6      EDWARD STILL LAW FIRM, LLC, by
7 Mr. Edward Still, 2112 11th Avenue
8 South, Suite 201, Birmingham, Alabama,
9 35205-2844, appearing on behalf of the
10 Plaintiffs.
11      LARRY T. MENEFEE, ATTORNEY AT
12 LAW, 407 South McDonough Street,
13 Montgomery, Alabama, 36104, appearing on
14 behalf of the Defendants.
15
16      ********
17
18      I, LESLIE K. HARTSFIELD, a Court
19 Reporter of Prattville, Alabama, acting
20 as Commissioner, certify that on this
21 date, as provided by the Federal Rules
22 of Civil Procedure and the foregoing
23 stipulation of counsel, there came

Page 3

1           INDEX
2 EXAMINATION BY:    PAGE NUMBER:
3 Mr. Still          6
4
5
6
7
8 PLAINTIFFS' EXHIBITS:
9 1 - E-mails          7
10 2 - E-mail and attachments  10
11 3 - Council minutes      17
12 4 - Dr. Reed's version    27
13
14
15
16
17
18
19
20
21
22
23

Page 5

1 before me at the offices of Larry
2 Menefee, 407 South McDonough Street,
3 Montgomery, Alabama, 36104, beginning at
4 10:25 a.m., WALTER BYARS, witness in the
5 above cause, for oral examination,
6 whereupon, the following proceedings
7 were had:
8
9           WALTER BYARS
10  being first, duly sworn, was examined
11      and testified as follows:
12
13      THE REPORTER:  Usual
14 stipulations?
15      MR. MENEFEE:  Yeah.
16      MR. STILL:  Yes.
17      MR. MENEFEE:  Are you going
18 to make a statement on this or your
19 notice or shall I?
20      MR. STILL:  Go ahead.
21      MR. MENEFEE:  We are here
22 for the deposition noticed pursuant to
23 Rule 30(b)6 to the City of Montgomery in

1 this matter and we have produced as the
2 deponent Walter Byars. And the subject
3 to testify about the subject designated
4 is the need or advisability of changing
5 the 2007 election schedule, all plans,
6 proposed ordinances, proposed
7 legislation, parenthesis, whether
8 adopted or not, closed parenthesis,
9 regarding the date of the 2007 election
10 and the reasons each suggested plan for
11 the date of the 2007 city election was
12 adopted or rejected. So Mr. Byars is a
13 lawyer and will to the best of his
14 ability answer your questions on that
15 subject.
16         MR. STILL: Thank you very
17 much.
18
19 EXAMINATION BY MR. STILL:
20     Q.    Mr. Byars, I don't have to
21 go through the usual introduction to
22 you.
23     A.    No, you don't.

1     Q.    Because you've been in a few
2 depositions, haven't you?
3     A.    A few, a few.
4     Q.    How long have you been city
5 attorney?
6     A.    Almost six years.
7 Approximately six years.
8     Q.    And you are full-time city
9 attorney?
10     A.    Not supposedly but almost.
11     Q.    But you also have a private
12 practice?
13     A.    I do.
14     Q.    And is part of your
15 responsibility to assist the city in
16 meeting the requirements of various
17 state laws regarding city elections?
18     A.    Yes.
19
20     (Plaintiffs' Exhibit No. 1 was
21     marked for identification and
22     attached hereto.)
23

1     Q.    Let me show you first of all
2 a group of e-mails that you provided to
3 me this morning. And first of all,
4 there are two pages of e-mails then a
5 letter from the Justice Department to
6 Misty Fairbanks, assistant attorney
7 general, and then two pages which are
8 labeled voting rights submission. And
9 I'm going to mark that as Plaintiffs'
10 Exhibit No. 1, these -- I think it's
11 five sheets. Let me count them to be
12 sure. Yes, sir, it's five sheets. And
13 I'd ask you to tell me what those are.
14     A.    Initially the -- Page 1 of
15 this exhibit is an e-mail from Brenda
16 Blalock, who is the city clerk, City of
17 Montgomery, to my secretary because I do
18 not open my e-mails and she gets all the
19 e-mails. And it's just -- it's a
20 reminder that Ken Smith, who was then
21 and still is the lawyer or general
22 counsel for league of municipalities,
23 had advised everyone that two acts had

1 passed which affected municipal
2 elections. And he states out there has
3 been no preclearance at this stage.
4 That's Page 1.
5         Page 2 is -- it's a
6 statement that those of you with
7 upcoming elections -- this is also from
8 Ken Smith but it came to me from the
9 same city clerk -- may not want to hear
10 this but the Department of Justice has
11 just precleared the two acts and the --
12 or the municipal portion of those two
13 acts, and that he's advising them that
14 his previous instructions to proceed
15 with the elections under the current law
16 is now -- since preclearance that there
17 will be change. That's what he meant by
18 that.
19         The preclearance letter is
20 the third page. It's addressed to Misty
21 Fairbanks, assistant attorney general,
22 from the chief of the voting section
23 preclearing those acts. And then here's

1 a summary prepared by Mr. Smith which
2 was attached to the two acts themselves
3 giving a summary of how it affected
4 municipalities.  That's in essence it.
5     Q.    Just to make it clear, when
6 you gave me the stack this morning, the
7 two acts were attached to it?
8     A.    That's correct.
9     Q.    We decided not to copy
10 those.
11     A.    That's correct.  They were
12 attached as well as this summary that
13 was to the letter about preclearance had
14 been granted.
15
16     (Plaintiffs' Exhibit No. 2 was
17      marked for identification and
18      attached hereto.)
19
20     Q.    Now, while I'm thinking
21 about it, is it true that most cities
22 hold their elections during presidential
23 years?

1     A.    I have no idea.
2     Q.    But Montgomery holds them
3 during -- well, held one in 2007 and we
4 can count back four years before or
5 after that.
6     A.    That's right.  It's really
7 in the odd years which would be not
8 presidential elections but that's
9 correct.  It's all set back 618.
10     Q.    Let me give you Plaintiffs'
11 Exhibit No. 2 and it looks to me like
12 the second and third pages of that may
13 be out of order but take a look at it
14 and tell me what that cover page is.
15     A.    The cover page again is an
16 e-mail from Ken Smith, general counsel
17 league, saying I haven't put anything
18 together on these bills talking about
19 the two that passed the Legislature.
20 They've not been precleared.  And he's
21 attached a copy of the summary which may
22 be out of order but that's what the next
23 three pages are.  They're the summary of

1 those two acts.  He refers to it, hope
2 it helps.
3         MR. STILL:  Let's go off the
4 record a second.
5
6     (A discussion was held off the
7      record.)
8
9     Q.    (By Mr. Still)  We've looked
10 at Exhibit 2 again and you -- tell me
11 what you think about Page 2 of this
12 exhibit now.
13     A.    I think it was part of an
14 earlier summary or something.  It's an
15 oddball page that does not fit with the
16 other two which I believe to be a
17 complete summary, Pages 3 and 4.
18     Q.    Now, part of the bills that
19 Ken Smith is talking about here deal
20 with what's known as UOCAVA, which is
21 all caps, U-O-C-A-V-A, which is a
22 federal law; is that correct?
23     A.    That's correct.

1     Q.    But Alabama was making it
2 applicable to nonfederal elections by --
3     A.    Yes.
4     Q.    -- so what they were
5 doing?
6     A.    Yes.  And in that it wound
7 up as Section 17-11-3 I believe in the
8 code that said UOCAVA is covered in
9 municipal elections.  It specifically
10 had municipal election in there.
11     Q.    And what was your
12 understanding then of what you would be
13 required to do with regard to making
14 absentee ballots available to overseas
15 Americans?
16     A.    The statute requires that we
17 do so and that was no problem.  We
18 already had that and we adopted in this
19 UOCAVA standard, so to speak.  But the
20 problem was that the regs, I'll call it
21 for no better term, or guidelines put
22 out by the feds was that there should be
23 approximately 45 days between the

Page 14

1  initial election and the runoff to give
2  the opportunity for the materials, the
3  ballots, to reach the subjects, the
4  people overseas, the uniformed folks,
5  whether they be overseas or not, and get
6  back in time for the election so they
7  could be counted. And so I felt that
8  our obligation was to get a 42 days, six
9  weeks spread in there in all, which was
10 what had been done in the state statute
11 for other municipalities.
12      Q.   And you mentioned it was
13 done for other municipalities, but is
14 Montgomery not covered by that general
15 law?
16      A.   It is not. It's not covered
17 by what came out as 11-46-21 which was
18 the general law setting all of the dates
19 to comply with UOCAVA. And Montgomery
20 was Act 618. It was a special act in
21 which it was organized as a
22 mayor/council form of government.
23 Previously it'd been a commission form

Page 15

1  of government. And so it took special
2  acts, so to speak, whether it be
3  legislative or ordinance for Montgomery
4  to do it. Montgomery did it under
5  11-46-5 which says we could adopt
6  11-46-21 any municipality in this state
7  could do so if it elected to do.
8       Q.   Well, given your reading of
9  these two acts and your understanding
10 about the responsibility to comply with
11 UOCAVA, what was the thing that you did
12 around the time of, let's see, the
13 e-mails from -- in Exhibit 2 is dated
14 December 8, 2006?
15      A.   Yes.
16      Q.   And you had an election
17 coming up in the fall or the late summer
18 of 2007?
19      A.   Correct.
20      Q.   So what did you do beginning
21 around December or January of this year
22 in order to make the changes
23 necessary?

Page 16

1       A.   We discussed, we being the
2  city clerk, the mayor and I, how we were
3  going to accomplish doing this. One of
4  the ways was to go to the Legislature
5  and we were not familiar with
6  11-46-5 which permitted by ordinance the
7  adoption. We turned that up in our
8  research and decided that it would be
9  very difficult because of the late
10 legislative session to pass something in
11 time for our election so we elected to
12 go under the ordinance procedure
13 provided by 11-46-5. And we did prepare
14 one that was adopted in February of 2007
15 unanimously.
16      Q.   So your office prepared the
17 ordinance that was introduced by one of
18 the members of the council; is that
19 correct?
20      A.   That's correct.
21      Q.   And who was the member of
22 the council who introduced that for
23 you?

Page 17

1       A.   I don't recall.
2
3       (Plaintiffs' Exhibit No. 3 was
4        marked for identification and
5        attached hereto.)
6
7       Q.   Let me show you what we'll
8  mark as Plaintiffs' Exhibit 3. There's
9  a copy for you, Larry.
10      MR. MENEFEE:  Okay.
11      Q.   And these are the -- some of
12 the documents you turned over to me at
13 the last depositions.
14      A.   Right.
15      Q.   And take a look at Page 2 of
16 this. I went through and numbered these
17 pages so I could keep up with them a
18 little bit better. But this particular
19 group is one Mr. Menefee identified to
20 me as a group regarding six work
21 sessions, work sessions --
22      A.   Okay.
23      Q.   -- of the council.

Page 18

1    A.    All right.
2    Q.    So --
3    A.    It's the second item on that
4 Page 2.
5    Q.    Right.  And so what is it
6 that the council does at a work
7 session?
8    A.    They go over what has been
9 proposed on the agenda for the council
10 meeting and they work on that.  They go
11 through it.  They have it explained or
12 they explain it themselves within them
13 or the sponsor would.  And they decide
14 sort of -- everybody gets to work out
15 whatever problems they might have, if
16 they have any questions, that sort of
17 thing.  That's the work session.
18    Q.    And is the work session
19 held -- it shows here these are -- most
20 of these I think are at 8:30 in the
21 morning?
22    A.    That's right.
23    Q.    And the city council meeting

Page 19

1 is later that morning?
2    A.    Ten.
3    Q.    And then there's also a work
4 session down here at 3:30 on Page 4.
5    A.    That's right.  And that one
6 meets at five.
7    Q.    So sometimes the council
8 meets at ten and some at five?
9    A.    The first Tuesday of the
10 month is at ten.  The third Tuesday in
11 the month it's at five.  Two meetings a
12 month.
13    Q.    So let's go back to Page 2
14 again.  There's just a discussion that's
15 listed -- let me put it this way.
16 There's an item that's listed that says,
17 Ordinance setting dates for general
18 municipal elections and runoff elections
19 and the dates for filing as candidates
20 in such elections.  Now, does that mean
21 that that was discussed at that
22 particular meeting?
23    A.    Yes, it was.

Page 20

1    Q.    And then it came up at the
2 city council meeting later during the
3 day; is that right?
4    A.    The same day.  That's
5 correct.
6    Q.    Is that -- did the council
7 adopt the ordinance that day?
8    A.    It did.  It waived which
9 takes unanimous consent.  It gave
10 unanimous consent and went right on into
11 the adoption process which again was a
12 unanimous vote nine to zero in favor of
13 it.
14    Q.    Until the council members
15 had seen this on the morning of February
16 the 6th, you and the mayor and the city
17 clerk had discussed this idea generally;
18 is that right?
19    A.    Correct.
20    Q.    And then who else had worked
21 on it?
22    A.    President of the city
23 council had it discussed with them,

Page 21

1 Charlie Jinright.  I don't know other
2 than that.
3    Q.    Who actually drafted the
4 bill or --
5    A.    I personally did.
6    Q.    Had you discussed it with
7 anybody outside the city government?
8    A.    Maybe Ken Smith, the league.
9 I don't believe so at that stage but I
10 may have.  Other than that, no one that
11 I can recall.
12    Q.    So after the council passed
13 this ordinance, did the mayor sign it?
14    A.    No.
15    Q.    And -- so he -- did he veto
16 it?
17    A.    He did veto it because Dr.
18 Reed had said it took a legislative act
19 to do this and cited a case to us and
20 the mayor said okay with a promise of
21 his cooperation we would go that route.
22    Q.    Were you in the meeting with
23 the mayor and Dr. Reed?

Page 22

1    A.    I was in a meeting with
2 them.  I can't remember whether they had
3 discussed it earlier, you know, before
4 but a meeting before the veto, yes, I
5 was there.
6    Q.    So how long does the mayor
7 have to veto an ordinance?
8    A.    Memory is ten days but you
9 have my 618 there.  I think it's ten
10 days.
11    Q.    Take a look again at Exhibit
12 3.
13    A.    Got it.
14    Q.    And look at Page 4 of that.
15    A.    All right.
16    Q.    If we can find it on here.
17    A.    It's about the second of the
18 following items were discussed.  Mayoral
19 veto and the mayoral veto of another
20 resolution both relating to the
21 municipal elections, is that what you're
22 talking about?
23    Q.    That's right.  I'm looking

Page 23

1 on the wrong page.  Thank you.  I see
2 them.  And the second of those
3 ordinances dealt with changing the dates
4 of the council meeting to coincide with
5 the municipal election?
6    A.    That's right.
7    Q.    Council meetings are on
8 Tuesday.  Elections are on Tuesday.
9 They're going to bump into each other
10 sometimes?
11    A.    Yes.  Yes.  And also you
12 have to go through a procedure whereby
13 the council signs that all were elected
14 and so forth so they try to make the
15 meetings coincide with the election so
16 that can all be done.
17    Q.    So at this work session, the
18 veto was discussed and --
19    A.    Yes.
20    Q.    And later that day did the
21 council override the mayor's veto or
22 sustain it?
23    A.    No, they sustained it.

Page 24

1    Q.    Now, take a look at Page 7
2 and down at the bottom of Page 7 it
3 says, Mr. Joe L. Reed discussed election
4 dates with the council.  And this is the
5 meeting of March 6th.  Were you there
6 when --
7    A.    Yes.
8    Q.    -- Dr. Reed discussed that
9 with the council?
10    A.    Yes.
11    Q.    What did he tell the
12 council?
13    A.    He said that because of
14 Seamon against Farmer it required
15 legislative approval of any change in
16 the election dates with an amendment
17 that would affect Act 618 election dates
18 and that he wanted to make certain that
19 UOCAVA people were covered, and that was
20 his reason that he wanted to make sure
21 that it was legal.  That was in essence
22 what he said.  I cannot remember but
23 maybe that day for the first time he

Page 25

1 said something about Alabama State.
2    Q.    And what is it he said about
3 Alabama State?
4    A.    Wanted to make sure that
5 they were covered in the election; that
6 they had time to get to school and would
7 have an opportunity to vote in the
8 election, students would.
9    Q.    Did he mention anything
10 about what date they came back to campus
11 to begin their fall semester?
12    A.    I can't remember that he
13 knew that day.  It was later determined
14 as I recall it was August the 23rd that
15 they would be back.
16    Q.    Now, at this point to recap,
17 the mayor has vetoed the ordinance and
18 that has been sustained by the council,
19 and so is it at this point that you
20 begin work on a legislative act?
21    A.    That's correct.
22    Q.    You've given me a pile of
23 various drafts --

Page 26

1    A.   Yes.
2    Q.   -- of these things.  And I'm
3  going to take a chance and not burden
4  the record with those things because I
5  think what's important is probably the
6  thing that actually got introduced.
7    A.   All right.
8    Q.   The bill that was introduced
9  in the Legislature by Representative
10  Holmes, who drafted that bill?
11    A.   He had the legislative
12  reference service draft it, and in my
13  opinion, it was unconstitutional.  He
14  did not use the bill that Dr. Reed had
15  approved and the mayor had approved.  He
16  went on his own and came up with an
17  amendment to Act 618 as local
18  legislation.
19    Q.   What was the problem with
20  the one that Representative Holmes had
21  the legislative reference service
22  draft?
23    A.   The City of Montgomery grown

Page 27

1  out of the category.  618 was one of
2  those old population categories.  And I
3  was fearful because we had discussed it
4  earlier with other -- the league and
5  other lawyers that it -- just to amend
6  Section 618 probably wouldn't affect the
7  City of Montgomery.  We'd still be under
8  the unamended 618.
9
10    (Plaintiffs' Exhibit No. 4 was
11       marked for identification and
12       attached hereto.)
13
14    Q.   So let me -- I am going to
15  mark one of these versions here as
16  Exhibit No. 4.  And this one says in the
17  upper right-hand corner Dr. Reed's
18  version?
19    A.   Correct.  And this is the
20  one that we sent to the Legislature,
21  sent to Mr. Reed and to -- not Mr. Reed,
22  to Mr. Holmes, who was chairman of the
23  delegation in the House, and to the two

Page 28

1  senators, Larry Dixon and Quinton
2  Ross.
3    Q.   Now, that bill I note refers
4  to Class 3 municipalities?
5    A.   That's right.  There was a
6  reason.
7    Q.   And what's your reason for
8  that?
9    A.   One of the members of the
10  House had threatened to kill the bill if
11  it were a local legislation because the
12  mayor hadn't come and talked to him
13  about it.  And if you do Class 3, no one
14  member of the delegation can kill it;
15  therefore, I drew it as Class 3 and that
16  was the reason.  And shopped it --
17  Huntsville is the other Class 3.  Sent
18  it to Huntsville and got their approval.
19    Q.   Let me get into the
20  nitty-gritty of legislation here.  If
21  it's a local -- if it's a piece of local
22  legislation, it would say this bill
23  applies to Montgomery -- City of

Page 29

1  Montgomery; is that right?
2    A.   Yes.
3    Q.   But -- and in that
4  situation, it would have to be
5  advertised --
6    A.   Yes.
7    Q.   -- as in a local newspaper
8  for a certain number of weeks?
9    A.   Correct.
10    Q.   Following all of the
11  constitutional procedures?
12    A.   Correct.
13    Q.   But we have an amendment to
14  the Constitution about dividing what we
15  got, eight classes or seven classes of
16  cities?
17    A.   I believe it's eight.  I
18  don't remember exactly.  We're Class 3
19  though.
20    Q.   You probably don't worry
21  about those --
22    A.   I don't.
23    Q.   -- with higher numbers than

1 you; right?
2    A.    That's right.  That's right.
3    Q.    So if it's Class 3
4 legislation -- excuse me.  If it applies
5 only to Class 3 cities, it's not local
6 legislation?
7    A.    It's general legislation.
8    Q.    And does not need to be
9 advertised?
10    A.    Correct.
11    Q.    So that simplifies things?
12    A.    It does.  It does.
13    Q.    Now, when did you realize
14 Representative Holmes had gone off and
15 gone to the legislative reference
16 service?
17    A.    He sent it to me.  And
18 you'll find that in this folder you
19 took.
20    Q.    Okay.
21    A.    Where it says legislative
22 right there (indicated).
23    Q.    When you found out

1 Representative Holmes had gotten the
2 reference service -- grab this.  Leave
3 the sticker on it.
4    A.    Yeah, let's see.  Yeah, this
5 is the one by Representative Holmes and
6 so forth.  He sent that to me.
7    Q.    Is that the one he
8 introduced?
9    A.    No.
10    Q.    So did you --
11    A.    I redid it hopefully to make
12 it constitutional by saying any city
13 that had previously elected to come
14 under 618 would be covered by this
15 amendment so it would be certain that
16 Montgomery County would be.
17          Now, under that class,
18 former -- whatever the population
19 classification was, to amend that 618 is
20 local and requires all the publications
21 and everything.  Even though it was a
22 general act of local application, you
23 must publish it if you amend it.

1    Q.    So did Representative Holmes
2 or the city advertise the bill?
3    A.    Yes.  Which was 866, House
4 Bill 866.
5    Q.    Now, 866 passed the House of
6 Representatives?
7    A.    Yes.
8    Q.    And when it went to the
9 Senate, what happened to it?
10    A.    The Senate was in a stall
11 situation at that time; very little was
12 passing.  But when it came to the
13 Senate, as I recall the next to the last
14 legislative date, it was opposed by one
15 of the senators from Montgomery County,
16 which in essence means it will not come
17 up in the Senate.
18    Q.    And that was Senator Dixon
19 who opposed it?
20    A.    That is correct.
21    Q.    Did he tell you directly why
22 he opposed the bill?
23    A.    I can't remember.  I know

1 what he said to the newspaper and I know
2 he said to me he was doing it, but I
3 can't remember that he gave me any
4 reason whatsoever.
5    Q.    So that happened as you said
6 about the end of the legislative
7 session?
8    A.    It would have been -- my
9 memory was the next to the last
10 legislative date.
11    Q.    And that would have been
12 around the end of May; is that right?
13    A.    I think that's right.
14    Q.    So after the Legislature
15 left and -- without passing this bill,
16 did you have a meeting with the mayor
17 and the city clerk again?
18    A.    I did.
19    Q.    Did you bring Dr. Reed in on
20 that meeting?
21    A.    I don't know that I brought
22 him in or they brought him in on that
23 meeting, but we informed him that we

Page 34

1  were going to have to go with that same
2  11-46-5.  And we redid the resolution
3  and the ordinance that was passed or let
4  me say we redid the ordinance -- I don't
5  think there was a resolution -- that was
6  identical with the one that'd previously
7  been passed and vetoed.
8      Q.    So you were going back to
9  the same thing you had in February?
10     A.    The only thing we felt was
11  available to us before election day.
12     Q.    And did Dr. Reed oppose that
13  at that time?
14     A.    He didn't at the meeting.
15  It passed unanimously.  You know, we
16  have a diverse council of five, four and
17  it passed unanimously even after what
18  Dr. Reed appeared and told them earlier.
19     Q.    Had you had additional
20  conversations before this ordinance
21  passed that -- with Dr. Reed about the
22  affect on Alabama State students?
23     A.    I don't think we had any

Page 35

1  additional information or discussion
2  about it.  He had discussed it earlier.
3  In fact his reason that August 23 didn't
4  affect him is he said, well, suppose
5  some of them register late.  So he
6  wanted more time than just beyond the
7  registration date, closing date.
8      Q.    Now, I notice that in the --
9  all the different versions of the bill
10  that you have given to me you have one
11  that has a handwritten note in the upper
12  right-hand corner that says e-mailed to
13  Peter Joffrion, J-O-F-F-R-I-O-N.  Who is
14  Peter Joffrion?
15     A.    He at the time, I assume
16  still is, but at the time was city
17  attorney, City of Huntsville.  Since
18  they were the only other Class 3
19  municipality, I wanted to make certain
20  they were -- had no objection to the
21  proposed Class 3 legislation.
22     Q.    Was Mr. Joffrion
23  agreeable?

Page 36

1      A.    He carried it around to the
2  mayor, to his lobbyist and so forth and
3  was agreeable.  'Cause it did not affect
4  them unless they passed an ordinance.
5      Q.    Now, I'm going back to our
6  Exhibit 3 again which is the council
7  work session minutes.
8      A.    Yeah.
9      Q.    Take a look at Page 12.
10         MR. MENEFEE:  Off the
11  record.
12
13         (A discussion was held off the
14         record.)
15
16     Q.    (By Mr. Still)  We're
17  looking at Page 12.  There's an item on
18  here about discussing -- its down toward
19  the bottom just below the indented
20  Councilor Pruitt entered.  And it says,
21  Ordinance repealing Ordinance 42-2000,
22  dates for general municipal elections
23  and runoff elections and filing as

Page 37

1  candidates.
2         MR. MENEFEE:  It was 2007.
3      Q.    What did I say?
4         MR. MENEFEE:  2000.
5      Q.    Excuse me.  Thank you.
6  42-2007.
7      A.    I see.
8      Q.    And so that just means the
9  council discussed it at the work
10  session; is that correct?
11     A.    Yes.
12     Q.    And I notice that it's also
13  on the agenda for 17 July which is Page
14  17.  And it's the --
15     A.    It must be 16.
16     Q.    I don't know.  Maybe I just
17  wrote the wrong page number down.  No.
18  I'm sorry.  It's Page 15.
19     A.    15?
20     Q.    15.  That's right.  It is
21  still the 17th of July.  It's just Page
22  15.  And under the following items were
23  discussed, again ordinance 42-2007.

Page 38

1    A.    No. 2.
2    Q.    That's right.  Were you
3 there for either one of those council
4 work sessions?
5    A.    I believe I was there for
6 both.
7    Q.    And would the reason that
8 this was on the work session for the
9 second time be that they couldn't get
10 unanimous consent to bring it up the
11 first time?
12    A.    Absolutely that was the
13 reason.
14    Q.    When they did bring it to a
15 vote, it was defeated; is that right?
16    A.    That's correct.
17    Q.    And 42-2007 is the ordinance
18 that changes the city council elections;
19 is that right?
20    A.    Dates, yes.
21    MR. STILL:  I believe that's
22 all the questions I've got.
23    MR. MENEFEE:  We've got no

Page 39

1 questions.
2
3
4
5
6
7
8
9
10    FURTHER DEPONENT SAITH NOT
11
12
13
14
15
16
17
18
19
20
21
22
23

Page 40

1    CERTIFICATE
2
3 STATE OF ALABAMA)
4 AUTAUGA COUNTY)
5
6    I hereby certify that the above
7 and foregoing deposition was taken down
8 by me in stenotype and the questions and
9 answers thereto were transcribed by
10 means of computer-aided transcription,
11 and that the foregoing represents a true
12 and correct transcript of the testimony
13 given by said witness upon said hearing.
14    I further certify that I am
15 neither of counsel, nor of kin to the
16 parties to the action, nor am I in
17 anywise interested in the result of said
18 cause.
19
20    _____
21    LESLIE K. HARTSFIELD,
22    Certified Court Reporter
23    ACCR:  #312

**Davis, Tracie**

| | |
|---|---|
| **From:** | Blalock, Brenda |
| **Sent:** | Tuesday, May 16, 2006 9:19 AM |
| **To:** | Davis, Tracie |
| **Subject:** | FW: Elections |

Please print out as a reminder to Mr. Walter.....Thank you.

*Brenda Gale Blalock, City Clerk*
City of Montgomery
Post Office Box 1111
Montgomery, AL  36101-1111
Phone:  334/241-2096
Fax:     334/241-2056
bblalock@ci.montgomery.al.us

PLAINTIFF'S
EXHIBIT

*1 Cigars*

---

**From:** Ken Smith [mailto:kens@alalm.org]
**Sent:** Monday, May 15, 2006 11:06 AM
**To:** Clerks List
**Subject:** Elections

Just to let everyone know and hopefully avoid any continuing confusion--

Two Acts passed this year affecting municipal elections.  One eliminates challenged balloting and instead adopts provisional voting for municipalities.  The other moves the municipal run-off date to accommodate the provisional voting time schedule.

To avoid timing problems in municipalities holding their regular elections for municipal officials this year, we have worked with the Attorney General's office to submit these bills for preclearance later.  Therefore, the municipalities who have their regular elections scheduled this year (Scottsboro, Huntsville and Gadsden are the ones I'm aware of) will continue to follow the previous time schedules for their elections and will use challenged ballots in their elections.

Additionally, if you have a special election prior to the date these bills are precleared, you will also follow challenged balloting.

I hope this clarifies the issues.

_____
Ken Smith
Deputy Director/General Counsel
Alabama League of Municipalities
kens@alalm.org

DISCLAIMER:  Please read this notice before using any materials or relying on any advice from the League:

Any advice, ordinances, contracts, policies or other information of whatever nature which are mentioned and included in this mailing are not a substitute for obtaining individualized legal advice.  Users are advised that all materials must be updated and adapted to local needs and circumstances.  Use of these samples or advice is at the sole risk of the user.  The Alabama League of Municipalities and its staff disclaim any responsibility or liability which may arise or result from the use or implementation of all or any portion of the advice or materials included in this message.

5/16/2006

Exhibit 19 Page 1

For Walter.

*Brenda Gale Blalock, City Clerk*
City of Montgomery
Post Office Box 1111
Montgomery, AL 36101-1111
Phone: 334/241-2096
Fax:    334/241-2056
bblalock@ci.montgomery.al.us

**From:** Ken Smith [mailto:Kens@alalm.org]
**Sent:** Thursday, December 21, 2006 9:53 AM
**To:** AAMA List; Clerks List
**Cc:** Brenda Smith; Lori Lein; Perry Roquemore (League); Tracy Roberts
**Subject:** FW: preclearance

Those of you with upcoming elections may not want to hear this, but the Department of Justice has just precleared Act No. 2006-281 (HB479) and the municipal portions of Act No. 2006-354 (SB529). I've attached their preclearance letter and copies of both Act for those of you who may be holding elections in the near future. I've also included a simplified summary of the provisions explaining how these bills affect municipalities I prepared for DOJ to help you apply these Acts.

Hope this info helps.

Ken Smith
Deputy Director/General Counsel
kens@alalm.org

DISCLAIMER: Please read this notice before using any materials or relying on any advice from the League:

Any advice, ordinances, contracts, policies or other information of whatever nature which are mentioned and included in this mailing are not a substitute for obtaining individualized legal advice. Users are advised that all materials must be updated and adapted to local needs and circumstances. Use of these samples or advice is at the sole risk of the user. The Alabama League of Municipalities,it's instrumentalities, and their staff disclaim any responsibility or liability which may arise or result from the use or implementation of all or any portion of the advice or materials included in this message.

Exhibit 19 Page 2

12/26/2006



U.S. Department of Justice

Civil Rights Division

JE. I:MSR:HM:jdh
DJ 166-012-3
2006-6793

*Voting Section - NWB*
*950 Pennsylvania Avenue, NW*
*Washington, DC 20530*

December 20, 2006

Ms. Misty Fairbanks
Assistant Attorney General
11 South Union Street
Montgomery, Alabama 36130

Dear Ms. Fairbanks:

This refers to Act Nos. 2006-281 and 2006-354, which provide for the elimination of challenged ballots and the adoption of provisional ballots in municipal elections, allows municipalities operating on eastern time to conduct elections on eastern time; changes canvassing dates; allows the city clerk to receive notice of proposed rules adopted that apply to provisional ballots at least 30 days prior to the certification of the rule or amendment; changes the date that municipal elected officials take office and the date for run-off elections and accommodates UOCAVA voters in State, county and municipal elections for the State of Alabama, submitted to the Attorney General pursuant to Section 5 of the Voting Rights Act, 42 U.S.C. 1973c. We received your submission on November 13, 2006; supplemental information was received on December 8, 2006.

The Attorney General does not interpose any objection to the specified changes. However, we note that Section 5 expressly provides that the failure of the Attorney General to object does not bar subsequent litigation to enjoin the enforcement of the changes. Procedures for the Administration of Section 5 of the Voting Rights Act (28 C.F.R. 51.41).

Act No. 2006-281 includes provisions that are enabling in nature. Therefore, local jurisdictions are not relieved of their responsibility to seek Section 5 review of any changes affecting voting that are adopted pursuant to this legislation (e.g., procedures for municipal elections held on eastern time. See 28 C.F.R. 51.15.

Sincerely,

John Tanner
Chief, Voting Section

**Voting Rights Submission**

## HB479 – Act 2006-281

- Makes clear that local governments operating on Eastern time due to proximity to Georgia can conduct elections on eastern time. Existing law provided that municipalities in the Eastern Time Zone could conduct elections on eastern time. Some Alabama municipalities have numerous residents who work in the eastern time zone and operate on eastern time to accommodate their residents. This change allows them to conduct their elections on eastern time to make that consistent with other activities in the municipality.

- In 2003, the state eliminated challenged balloting procedure as a result of the federal Help America Vote Act (HAVA) requirements. This bill eliminates challenged balloting in municipal elections, replacing it with provisional balloting. This makes procedure uniform with the current process followed state, federal and county elections. As a result, numerous provisions of existing law relating to challenged ballots were amended or repealed since these procedures do not work when using provisional ballots.

- Changes the date for canvassing the election results to noon, seven days after the election, rather than by noon the day after the election. This allows the board of registrars time to verify provisional ballots and return them to the city.

- Requires printing of ballots ten days after the first election, rather than seven. (NOTE: This was changed in SB529, part of which is being submitted for preclearance with this submission and is discussed below, to allow the same time frame for printing ballots as is in place now, once the provisional ballots are returned. Since the time to canvas the results is moved to a week after the election, keeping this date at seven days meant having the ballots printed before the candidates were known. This allows time to canvas the results and to order the ballots and supplies.

- This Act also allows the city clerk to receive notice of proposed rules adopted applying to provisional ballots at least 30 prior to the certification of the rule or amendment under the Administrative Procedures Act since any future rules changes related to provisional ballots at the state level may also apply in municipal elections.

## SB529 – Act 2006-354

- Changes the run-off date in municipal elections from the third Tuesday following the regular election to the sixth Tuesday following the election to allow time for counting provisional ballots, getting new supplies and sending absentee ballots to military voters and receiving their votes.

Exhibit 19 Page 4

- Changes the time for having absentee ballot supplies ready from seven days following the regular election to fourteen days following the regular election to allow seven days to count the provisional ballots.

- Changes the date municipal elected officials take office from the first Monday in October to the first Monday in November to allow time to hold the run-off election and count provisional ballots.

Exhibit 19 Page 5

Please give this to Walter.  Thanks.

I requested any information the League has on the new election laws.  See below, as well as, attached.

*Brenda Gale Blalock, City Clerk,*
City of Montgomery
Post Office Box 1111
Montgomery, AL  36101-1111
Phone:  334/241-2096
Fax:     334/241-2056
bblalock@ci.montgomery.al.us

PLAINTIFF'S
EXHIBIT

2 - Byers

**From:** Ken Smith [mailto:Kens@alalm.org]
**Sent:** Friday, December 08, 2006 11:31 AM
**To:** Blalock, Brenda
**Subject:** RE: New Election Laws

Brenda—

I haven't put anything together on these bills yet.  They have not been precleared by DOJ yet, and they've raised questions regarding the procedures so there may be changes mandated in order to get them precleared.  I've attached a copy of a summary I did during the session and one I put together for the AG's office to make the DOJ preclearance submission.  Hope it helps.

_____
Ken Smith
Deputy Director/General Counsel
kens@alalm.org


DISCLAIMER: Please read this notice before using any materials or relying on any advice from the League:

Any advice, ordinances, contracts, policies or other information of whatever nature which are mentioned and included in this mailing are not a substitute for obtaining individualized legal advice. Users are advised that all materials must be updated and adapted to local needs and circumstances. Use of these samples or advice is at the sole risk of the user. The Alabama League of Municipalities,it's instrumentalities, and their staff disclaim any responsibility or liability which may arise or result from the use or implementation of all or any portion of the advice or materials included in this message.

Exhibit 20 Page 1

12/8/2006

- Makes clear that local governments operating on Eastern time due to proximity to Georgia can conduct elections on eastern time.

- State eliminated challenged balloting procedure as a result of the federal Help America Vote Act (HAVA) requirements. This bill eliminates challenged balloting in municipal elections, replacing it with provisional balloting. This makes procedure uniform with state, federal and county elections.

- Changes the date for canvassing the election results to noon, seven days after the election, rather than by noon the day after the election. This allows the board of registrars time to verify provisional ballots and return them to the city.

- Requires printing of ballots ten days after the first election, rather than seven. Since the time to canvas moved to a week after the election, keeping this date at seven days meant having the ballots printed before the candidates were known. This allows time to canvas the results and to order the ballots and supplies.

- City clerk shall receive notice of proposed rules adopted applying to provisional ballots at least 30 prior to the certification of the rule or amendment under the Administrative Procedures Act.

Process in Municipal Elections, Example using provisional ballots, using 2008 municipal election—

- Election Day – Fourth Tuesday in August, 2008 (August 26, 2008)

  o Clerk takes possession of ballot box of provisional ballots. Clerks takes sealed materials relating to provisional ballots (reidentification cards, challenged statements and affirmations) and delivers them to board of registrars

  o Board updates voter's list using reidentification cards and verifies voter's authority to vote – Involves notice to voter and opportunity for voter to respond to any problems

  o Board returns certified findings to clerk by noon, seven days later (September 2, 2008)

- Council canvases election returns, including provisional ballots seven days later (September 2, 2008)

- If run-off election is necessary, ballots and supplies must be prepared within three days of canvas (September 5, 2008)

Exhibit 20 Page 2

## Voting Rights Submission

### HB479 – Act 2006-281

- Makes clear that local governments operating on Eastern time due to proximity to Georgia can conduct elections on eastern time. Existing law provided that municipalities in the Eastern Time Zone could conduct elections on eastern time. Some Alabama municipalities have numerous residents who work in the eastern time zone and operate on eastern time to accommodate their residents. This change allows them to conduct their elections on eastern time to make that consistent with other activities in the municipality.

- In 2003, the state eliminated challenged balloting procedure as a result of the federal Help America Vote Act (HAVA) requirements. This bill eliminates challenged balloting in municipal elections, replacing it with provisional balloting. This makes procedure uniform with the current process followed state, federal and county elections. As a result, numerous provisions of existing law relating to challenged ballots were amended or repealed since these procedures do not work when using provisional ballots.

- Changes the date for canvassing the election results to noon, seven days after the election, rather than by noon the day after the election. This allows the board of registrars time to verify provisional ballots and return them to the city.

- Requires printing of ballots ten days after the first election, rather than seven. (NOTE: This was changed in SB529, part of which is being submitted for preclearance with this submission and is discussed below, to allow the same time frame for printing ballots as is in place now, once the provisional ballots are returned. Since the time to canvas the results is moved to a week after the election, keeping this date at seven days meant having the ballots printed before the candidates were known. This allows time to canvas the results and to order the ballots and supplies.

- This Act also allows the city clerk to receive notice of proposed rules adopted applying to provisional ballots at least 30 prior to the certification of the rule or amendment under the Administrative Procedures Act since any future rules changes related to provisional ballots at the state level may also apply in municipal elections.

### SB529 – Act 2006-354

- Changes the run-off date in municipal elections from the third Tuesday following the regular election to the sixth Tuesday following the election to allow time for counting provisional ballots, getting new supplies and sending absentee ballots to military voters and receiving their votes.

Exhibit 20 Page 3

- Changes the time for having absentee ballot supplies ready from seven days following the regular election to fourteen days following the regular election to allow seven days to count the provisional ballots.

- Changes the date municipal elected officials take office from the first Monday in October to the first Monday in November to allow time to hold the run-off election and count provisional ballots.

Exhibit 20 Page 4



PLAINTIFF'S EXHIBIT

3 Byars

AGENDA
MONTGOMERY CITY COUNCIL
FEBRUARY 6, 2007 - 8:30 A.M.
COUNCIL CHAMBER

The Council met in work session on Tuesday, Feburary 6, 2007, at 8:30 a.m., in the Mayor's Conference Room, City Hall, with the following members present:

PRESENT: SPEAR, MAY, NUCKLES, COOK, PRUITT, JINRIGHT                    --6

ABSENT:  HEAD, CALHOUN, ROBY                    --3

Also present for the meeting were: Mayor Bobby Bright, Jeff Downes and Michael Briddell, Executive Assistants to the Mayor, Lloyd Faulkner, Finance Director, Walter Byars, City Attorney, Ken Groves, City Planner, Tommy Tyson, Planning Controls, and Russell Stringer, City Forrester.

The President of the Council, Charles W. Jinright, presided as Chairman of the meeting, and Brenda Gale Blalock, City Clerk, served as the Clerk of the meeting.

The following items were discussed:

Hearing on proposed Ordinance rezoning one parcel of land on the northwest corner of Madison Avenue and Vonora Avenue from an INST District to a B-2 District. Recommended by the Planning Commission. (Z-41-1956)

Councillor Head and Councillor Roby entered the Mayor's Conference Room at 8:32 a.m.

Hearing on proposed Ordinance rezoning one parcel of land (5 lots) containing 2.25 acres located on the west side of Perry Hill Road, approximately 130 feet south of Haynes Lane, from an R-75-s District to a B-1-a-Q District. Recommended by the Planning Commission, restricted as follows: Stores selling good, general merchandise, apparel, furniture, housewares and household wares, drugs and sundries, jewelry, gift items, flowers, sporting goods, and similar types; small dry cleaning offices, banks, post offices, and similar services; and dwellings for any number of families. (Z-26-1981)

Hearing on proposed Ordinance rezoning one parcel of land located on the southeast corner of Palmetto Street and Arthur Street (2102Palmetto Street) from an R-60-s District to an R-60-d District. Recommended by the Planning Commission. (Z-38-2006)

Hearing on proposed Ordinance rezoning one parcel of land containing 10.13 acres located on the east side of Taylor Road and the north side of Taylor Road East from an AGR-1 District to an O-1 District. Recommended by the Planning Commission. (Z-39-2006)

Hearing on proposed Ordinance rezoning one parcel of land located on the southwest corner of Mulberry Street and West Second Street (1500 Mulberry Street) from O-1 District to a B-2 District. Recommended by the Planning Commission. (Z-40-2006)

Councillor Calhoun entered the Mayor's Conference Room at 8:40 a.m.

Ordinance allowing for Automated Photographic Enforcement of Traffic Control Device Violations. (Sponsored by Councillor Pruitt)

Resolution assessing the cost of abatement of noxious and dangerous weeds at 0 Aaron Street. (Carried over at last meeting)

Ordinance amending portions of Ordinance No. 28-2004, Historical Preservation Commission.

Exhibit 21 Page 1

May v Mont-000001-City
11/1/07

Resolution authorizing the abatement of noxious and dangerous weeds on various lots pursuant to Ordinance No. 29-2002.

Resolution assessing the cost of abatement of noxious and dangerous weeds on various lots pursuant to Ordinance No. 29-2002.

There being no further business to come before the Council, the meeting adjourned at 9:18 a.m.

BRENDA GALE BLALOCK
CITY CLERK

CHARLES W. JINRIGHT, PRESIDENT
COUNCIL OF THE CITY OF MONTGOMERY

Exhibit 21 Page 2

May v Mont-000003-City
11/1/07

Application for a Private Investigator's Agency License by Francis R. Curry, d/b/a Southland Investigators, LLC.

Application for a Restaurant Retail Liquor License by Los Vaqueros, LLC, d/b/a Los Vaqueros, 2195 East Boulevard.

Application for a Restaurant Retail Liquor License by Martell Dewan Watson, d/b/a Better Days, 2477 East South Boulevard.

Application for a Lounge Retail Liquor License, Class I, by Darryl L. McWhorter, d/b/a 30 & Up, 2840 Birmingham Highway.

Application for a Lounge Retail Liquor License, Class I, by Daran Christopher Gaskin, d/b/a Club G's, 1187 West South Boulevard.

Resolution reappointing Carl Heal to the Planning Commission by Councillor Spear.

Resolution appointing Aduston Rogers to the Architectural Review Board replacing James L. Barganier by Councillor Roby.

Pursuant to Section 11-53B-1, et seq, Code of Alabama, authorization of demolition of an unsafe structure at 1120 Avondale Road.

Pursuant to Section 11-53B-1, et seq, Code of Alabama, authorization of demolition of an unsafe structure at 748 Clinton Street.

Pursuant to Section 11-53B-1, et seq, Code of Alabama, authorization of demolition of an unsafe structure at 1424 Mobile Road.

Pursuant to Section 11-53-B-1, et seq, Code of Alabama, authorization of demolition of an unsafe structure at 3743 Oak Street.

Resolution assessing the cost of abatement of unsafe structures on various lots pursuant to Ordinance No. 44-2006.

Resolution designating Nuisance Abatement Agents.

Resolution declaring dangerous nuisances on various lots and ordering their immediate abatement by owner pursuant to Ordinance No. 28-2002.

Resolution assessing the cost of abatement of dangerous nuisances on various lots pursuant to Ordinance No. 28-2002.

Resolution declaring noxious and dangerous weeds on various lots and ordering their immediate abatement by owner pursuant to Ordinance No. 29-2002.

Resolution authorizing the abatement of noxious and dangerous weeds on various lots pursuant to Ordinance No. 29-2002.

There being no further business to come before the Council, the meeting adjourned at 4:25 p.m.

BRENDA GALE BLALOCK
CITY CLERK

CHARLES W. JINRIGHT, PRESIDENT
COUNCIL OF THE CITY OF MONTGOMERY

May v Mont-000005-City
11/1/07

Exhibit 21 Page 3

Resolution designating Voting Delegate to the Alabama League of Municipalities Convention April 21-24, 2007.

Resolution designating 1st Alternate Voting Delegate to the Alabama League of Municipalities Convention April 21-24, 2007.

Resolution designating 2nd Alternate Voting Delegate to the Alabama League of Municipalities Convention April 21-24, 2007.

Application for a Lounge Retail Liquor License, Class II (Package Store) by Roosevelt Pettiway, d/b/a Hattie's, 2421-B Lower Wetumpka Road.

Application for a Restaurant Retail Liquor License by Nancy Paterson Catering, LLC, d/b/a Nancy Paterson's Bistro, 503 Cloverdale Road.

Resolution authorizing Mayor Bright to make application to the Alabama Law Enforcement Traffic Safety Division for $24,742.00 for overtime enforcement in the Central Region of Alabama.

Resolution authorizing Mayor Bright to make application to the Alabama Law Enforcement Traffic Safety Division for $30,746.00 for overtime funding for DUI enforcement.

Resolution appointing Will Barfoot to the Board of Adjustment by Councillor Head replacing Paul Blake.

Resolution reappointing Robert M. Hardwich, Jr. to the Industrial Development Board by Councillor Head.

Resolution reappointing Jeanne Smiley to the Mental Health Authority. (Sponsored by Councillor Jinright)

Resolution reappointing Glenn Rufrano to The Taylor-Ryan Improvement District No. 2. (Sponsored by Councillor Jinright)

Resolution designating Nuisance Abatement Agents.

Resolution assessing the cost of abatement of unsafe structures on various lots pursuant to Ordinance No. 44-2006.

Resolution declaring dangerous nuisances on various lots and ordering their immediate abatement by owner pursuant to Ordinance No. 28-2002.

Resolution declaring noxious and dangerous weeds on various lots and ordering their immediate abatement by owner pursuant to Ordinance No. 29-2002.

Resolution authorizing the abatement of noxious and dangerous weeds on various lots pursuant to Ordinance No. 29-2002.

Resolution assessing the cost of abatement of noxious and dangerous weeds on various lots pursuant to Ordinance No. 29-2002.

Councillor Tim Head entered the Mayor's Conference Room at 9:17 a.m.

Mr. Joe L. Reed discussed Election Dates with the Council.

May v Mont-000007-City
11/1/07

Exhibit 21 Page 4

MONTGOMERY CITY COUNCIL
WORK SESSION
JUNE 19, 2007 – 3:30 P.M.
MAYOR'S CONFERENCE ROOM


The Council met in work session on Tuesday, June 19, 2007, at 3:34 p.m., in the Mayor's Conference Room, City Hall, with the following members present:

PRESENT: SPEAR, MAY, NUCKLES, COOK, ROBY, JINRIGHT                    –6

ABSENT:  HEAD, CALHOUN, PRUITT                                        –3

Also present for the meeting were: Mayor Bobby Bright, Michael Briddell, Executive Assistants to the Mayor, Betty Beville, Deputy Finance Director, Walter Byars and Wallace Mills, City Attorneys, and Tommy Tyson, Planning Controls.

The President of the Council, Charles W. Jinright, presided as Chairman of the meeting, and Brenda Gale Blalock, City Clerk, served as the Clerk of the meeting.

The following items were discussed:

Ordinance rezoning one parcel of land containing 18.65 acres located on the side of Mobile Highway, approximately 450 feet north of I-65 from AGR-1 (Residential Agriculture) District to a B-2 (Commercial) District. Recommended by the Planning Commission. (Z-16-2007) Carried over at June 5th meeting.

Hearing on proposed Ordinance rezoning one parcel of land containing 20.051 acres located on the west side of Sanders Lane, approximately 40 feet north of Hayden Lane, from an R-50 (Single-Family Residential) District to an M-1 (Light Industrial) District. Planning Commission's motion for an unfavorable recommendation failed to pass. Appealed. (Z-32-2006)

Ordinance renaming Goode Street to Edgar D. Nixon Avenue. (Sponsored by Councillors Calhoun & Roby)

Resolution adopting a new Solid Waste Management Plan and repealing Resolution No. 128-2005.

Application for Off-Premise Retail Beer and Wine Licenses by Minar, Inc., d/b/a Shell Food Mart #28, 6890 Vaughn Road. Protested

Application for Off-Premise Retail Beer and Wine Licenses by Minar, Inc., d/b/a Shell Food Mart #36, 4000 Troy Highway. Protested

Ordinance establishing the Oath of Office for Law Enforcement.

Resolution approving the Petition for authority to incorporate The Somerhill Improvement District No. 2.

Resolution authorizing Mayor Bright to make application to the Department of Justice for FY2007 Justice Assistance Grant for $231,478.00 to be divided between City & County; City to purchase two bomb dogs and train two handlers and purchase in-car cameras for marked police vehicles.

Application for a Taxi Cab Company by Bernice Williams Adams, d/b/a Jazzy Airport Cab, 1932 Rosa L. Parks Avenue.

Application for a Special Retail – More than 30 Days Liquor License by Montgomery Trading Company, LLC, d/b/a Marquirette's Exquisite Jewelry, 7818 Vaughn Road.

Exhibit 21 Page 5

May v Mont-000009-City
11/1/07

There being no further business to come before the Council, the meeting adjourned at 4:24 p.m.

BRENDA GALE BLALOCK
CITY CLERK

CHARLES W. JINRIGHT, PRESIDENT
COUNCIL OF THE CITY OF MONTGOMERY

Exhibit 21 Page 6

May v Mont-000011-City
11/1/07

Application for an Alternative Transportation Service by Willie Ann Williams, d/b/a Medical Wheels, 1632 Robinson Hill Road.

Resolution appointing Glenn Crumpton to the Montgomery Clean City Commission by Councillor Jinright replacing Dawn Hathcock.

Resolution reappointing Mike Jenkins to the Board of Trustees – Montgomery City/County Library by Councillor Jinright.

Appeal by Samuel Poole of proposed demolition of an unsafe structure at 27 Gordon Street.

Appeal by Okeala Martin of proposed demolition of an unsafe structure at 112 Kenilworth Street.

Pursuant to Section 11-53B-1 et. seq. Code of Alabama, authorization of demolition of an unsafe structure at 2268 Ajax Street.

Pursuant to Section 11-53B-1 et. seq. Code of Alabama, authorization of demolition of an unsafe structure at 2312 Ajax Street.

Pursuant to Section 11-53B-1 et. seq. Code of Alabama, authorization of demolition of an unsafe structure at 115-117 Cromwell Street.

Pursuant to Section 11-53B-1 et. seq. Code of Alabama, authorization of demolition of an unsafe structure at 739 Howe Street.

Pursuant to Section 11-53B-1 et. seq. Code of Alabama, authorization of demolition of an unsafe structure at 18 Michigan Avenue.

Pursuant to Section 11-53B-1 et. seq. Code of Alabama, authorization of demolition of an unsafe structure at 840 Murray Street.

Pursuant to Section 11-53B-1 et. seq. Code of Alabama, authorization of demolition of an unsafe structure at 2117 Stella Drive.

Pursuant to Section 11-53B-1 et. seq. Code of Alabama, authorization of demolition of an unsafe structure at 2127 Stella Street.

Pursuant to Section 11-53B-1 et. seq. Code of Alabama, authorization of demolition of an unsafe structure at 1903 Stokes Street.

Resolution designating nuisance abatement agent.

Resolution assessing the cost of abatement of unsafe structures pursuant to Ordinance No. 44-2006.

Resolution declaring dangerous nuisances on various lots and ordering their immediate abatement by owner pursuant to Ordinance No. 28-2002.

Resolution declaring noxious and dangerous weeds on various lots and ordering their immediate abatement by owner pursuant to Ordinance No. 29-2002.

Resolution authorizing the abatement of noxious and dangerous weeds on various lots pursuant to Ordinance No. 29-2002.

Resolution assessing the cost of abatement of noxious and dangerous weeds on various lots pursuant to Ordinance No. 29-2002.

Councillor Nuckles asked Mayor Bright to appoint someone from Law Enforcement to serve on the Ad Hoc Committee on Copper Theft. Mayor Bright appointed Lt. Col. Steve Thompson to serve on this committee.

May v Mont-000013-City
11/1/07

Exhibit 21 Page 7

MONTGOMERY CITY COUNCIL
WORK SESSION
JULY 17, 2007 - 5:00 P.M.
MAYOR'S CONFERENCE ROOM

The Council met in work session on Tuesday, July 17, 2007, at 3:40 p.m., in the Mayor's Conference Room, City Hall, with the following members present:

PRESENT: MAY, NUCKLES, CALHOUN, ROBY, JINRIGHT                    --5

ABSENT:  SPEAR, HEAD, COOK, PRUITT                               --4

Also present for the meeting were: Mayor Bobby Bright, Jeff Downes and Michael Briddell, Executive Assistants to the Mayor, Lloyd Faulkner, Finance Director, Walter Byars and Wallace Mills, City Attorneys, and Carlos Kimbrough, Planning Department.

The President of the Council, Charles W. Jinright, presided as Chairman of the meeting, and Brenda Gale Blalock, City Clerk, served as the Clerk of the meeting.

The Chairman called on Jaunita Owes, Library Director and The Reverend Gary Burton, Chairman of the Library Board. They addressed the Council regarding the need for renovation or replacement of the libraries. They presented a study prepared by a consultant and requested the Council's support in the future with proposed changes.

Councillor Cook entered the Mayor's conference Room at 3:47 p.m.

The Chairman called on Mary Ann McCloud, Director of Jubilee Festival. Mrs. McCloud requested additional funding to help pay for outstanding bills from the previous Jubilee Weekend. The Jubilee Committee is asking for $200,000 from the City for the next three years. Mr. Jim Farrior also addressed the Council regarding this issue.

Councillor Pruitt entered the Mayor's Conference Room at 4:01 p.m.

The following items were discussed:

Ordinance requiring complaint and law enforcement contact report to City Council. (Sponsored by Councillors Cook, May, Nuckles)

Ordinance repealing Ordinance No. 42-2007, dates for general municipal elections and runoff elections and filing as candidates.  (Sponsored by Councillors May, Nuckles, Calhoun, Cook)

Ordinance granting a franchise to Atlantic and Pacific Development LLC to construct, install and maintain a Balcony over a portion of Graham Street right-of-way.

Ordinance granting a franchise to Cook's Properties, L.L.C. to construct, maintain and use a paved parking lot over existing City drainage easement at 1861 Congressman Dickinson Boulevard.

Ordinance granting a franchise to Montgomery Cardiovascular Associates, P.C. to construct, maintain and use a paved parking lot over City drainage easement on Winton Blount Loop (Parcel 1).

Ordinance granting a franchise to Montgomery Cardiovascular Associates, P.C. to construct, maintain and use a paved parking lot over City drainage easement on Winton Blount Loop (Parcel 2).

Public Hearing to receive public comment on Formal Renewal Proposal for a Cable Franchise by Knology of Montgomery, Inc.

May v Mont-000015-City
11/1/07

Exhibit 21 Page 8

Pursuant to Section 11-53B-1 et. seq. Code of Alabama, authorization of demolition of an unsafe structure at 807 Travis Street.

Resolution assessing the cost of abatement of unsafe structures pursuant to Ordinance No. 44-2006.

Resolution declaring dangerous nuisances on various lots and ordering their immediate abatement by owner pursuant to Ordinance No. 28-2002.

Resolution assessing the cost of abatement of dangerous nuisance on various lots pursuant to ordinance No. 28-2002.

Resolution declaring noxious and dangerous weeds on various lots and ordering their immediate abatement by owner pursuant to Ordinance No. 29-2002.

Resolution authorizing the abatement of noxious and dangerous weeds on various lots pursuant to Ordinance No. 29-2002.

Resolution assessing the cost of abatement of noxious and dangerous weeds on various lots pursuant to Ordinance No. 29-2002.

Councillor Calhoun reported that he would be introduced two resolutions for board appointments during the meeting.

The Chairman reported that Resolutions regarding Somerhill Improvement District No. 2 Assessment and appointing Pollworkers would be introduced.

There being no further business to come before the Council, the meeting adjourned at 4:40 p.m.

BRENDA GALE BLALOCK
CITY CLERK

CHARLES W. JINRIGHT, PRESIDENT
COUNCIL OF THE CITY OF MONTGOMERY

Exhibit 21 Page 9

May v Mont-000017-City
11/1/07

PLAINTIFF'S
EXHIBIT
4 Byers

1

2  SYNOPSIS:    Under current law, certain class 3 municipalities have a Mayor-

3              Council form of government adopted pursuant to a general or local

4              act which requires a general municipal election or runoff

5              election at a time different from the dates which are in

6              compliance with the Federal standards requirements and guidelines

7              set forth in the Uniformed and Oversees Citizens Absentee Voting

8              Act (UOCAVA) and which were not included within the amendment to

9              Alabama Code § 11-46-21, as amended by Act 2006-354, Acts of

10             Alabama, 2006.  This Act would permit those class 3

11             municipalities to adopt, by ordinance, election times and dates

12             in compliance with UOCAVA.

13

14                          A BILL

15                       TO BE ENTITLED

16                          AN ACT

17

18      Relating to Mayor-Council elections in class 3 municipalities; to

19  provide that the governing body of a class 3 municipality having a Mayor-

20  Council form of government may elect by ordinance to have the general

21  municipal election or runoff election required by a general or local act,

22  under which its form of government was adopted, to be held at a time

23  different from that required by said general or local act so as to be in

24  compliance with the Federal standards, requirements and guidelines in

25  accordance with the schedule of times and dates set forth in this Act; and to

Exhibit 21 Page 10
-1-

1  repeal all provisions of such existing general or local act which require a

2  time different from the dates set out in this Act and in the ordinance

3  adopted by the class 3 pursuant to this Act.

4

5  BE IT ENACTED BY THE LEGISLATURE OF ALABAMA:

6

7      Section 1.  The governing body of a class 3 municipality having adopted

8  a Mayor-Council form of government pursuant to a general or local act which

9  act required a general municipal election or a runoff election at a time not

10  in compliance with Federal standards, requirements and guidelines may elect

11  by ordinance to have the general or runoff election at the times and dates

12  provided herein, as follows:

13      (a)      The regular general municipal elections in said class 3

14              municipality shall be held on the 1st Tuesday in October in the

15              year during which its next municipal election is to be held in

16              accordance with the statute under which it is organized, and

17              quadrennially thereafter, and when necessary as provided in said

18              statute, a second or runoff election shall be held on the sixth

19              Tuesday next thereafter following the regular election.

20      (b)      Municipal officers elected at regular municipal elections shall

21              assume the duties of their respective offices on the third

22              Tuesday in November following their election.  Those individuals

23              serving as Mayor or member of the City Council on the effective

24              date of this Act shall serve until the third Tuesday in November

25              following the effective date of this Act.

Exhibit 21 Page 11
-2-

1      (c)   The date for filing a statement of candidacy for the office of

2              Mayor or member of the City Council shall be no earlier than the

3              fourth Tuesday in July and no later than the third Tuesday in

4              August preceding the regular municipal election for Mayor and

5              members of the City Council.

6      Provided nothing contained in this Act shall have the effect of

7   changing the year during which a regular municipal election is to be held, or

8   the qualifications or requirements of candidates for election to the office

9   of Mayor or member of the City Council.

10      Section 2.  The provisions of the Act under which the class 3

11   municipality adopted its Mayor-Council form of government, including without

12   limitation the provisions of Act 618, Acts of Alabama (1973), relating to the

13   dates of the elections, for filing statements of candidacy or, and for taking

14   office of Mayor or City Council during a regular municipal election are

15   superseded to the extent the same are in conflict with the ordinance adopted

16   by the governing body of the class 3 municipality pursuant to this Act.

17      Section 3.  This Act shall become effective immediately following its

18   passage and approval by the Governor or is otherwise becoming law.

19

20

21

22

23

24

25

Exhibit 21 Page 12

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| Janet May, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Civil Action No. 2:07-cv-738-N |
| v. | ) | |
| | ) | |
| City of Montgomery, Al. et al., | ) | |
| | ) | |
| Defendants. | ) | |

**DECLARATION OF LARRY T. MENEFEE**

I, Larry T. Menefee, make the following declaration in the above-styled case.

1. I am counsel of record for Defendants in this action. I make this Declaration in support of the defendants' brief opposing the plaintiffs' motion for partial summary judgment.

2. On November 15, 2007 I obtained an electronic file containing all of the registered voters at the ASU precinct from Montgomery County. This is publically available information maintained by Montgomery County.

3. There are 4,799 registered voters contained in the file. The file includes, among other information, name, address, date of birth, date registered to vote, whether they voted in the August 28th city election, and whether they voted in the October 9th runoff election.

4. First I selected the records on the two named plaintiffs, Ms. Adams and Mr. Kirkwood. That information is attached as pages 3 and 4. Mr. Kirkwood registered to vote October 25, 2004 and voted in the August 28th city election but did not vote in the October 9th runoff. Ms. Adams registered to vote on September 28, 2007 and did not vote in the October 9th runoff election.

5. Next, I sorted the data to select those persons who registered to vote after July 1, 2007

Exhibit 22 Page 1

but before August 28, 2007 and had a birthdate after August 1, 1986. This was an effort look at ASU students. It approximately captures the high school graduating classes of 2005, 2006, and 2007. The attached spreadsheet at page 5 shows that 23 voters registered on or before August 17, 2007 and who, by date of their birth, were likely members of the high school classes of 2005, 2006, and 2007. Nine of them were apparently members of the 2007 high school class and are likely entering freshmen at ASU in August 2007, just as plaintiff Adams was. Of the nine who registered, three voted in the August 28th election and none voted in the October 9th runoff.

6. Next I considered the entire file of 4,799 and sorted on address for "915 S. Jackson", the address for ASU. 3,518 of the registered voters show that address. 68 of the 3,518 students voted in the August 28th first election (1.9%) and 56 voted in the October 9th runoff. Of the1,226 registrants who did not list 915 S Jackson as the residence 321 (26.2%) voted August 28th and 165 voted October 9th.

I declare, under penalty of perjury, that the foregoing is true and correct to the best of my knowledge and belief.

Executed on _December 10_, 2007.

Larry T. Menefee

2

Exhibit 22 Page 2

# Form 1

| registrant_id | registrant_status | registrant_name | residence_address |
|---|---|---|---|
| 030117495 | ACTIVE | KIRKWOOD, DUNCAN ELLIO | 915 S JACKSON ST, MONTG |

| date_of_birth | date_of_registration | precinct_part | political_party | gender |
|---|---|---|---|---|
| 6/9/1985 | 10/25/2004 | 0403.03 | PARTY NOT DESIGNATED | MALE |

| race | jurisdiction | aug28 | oct09 |
|---|---|---|---|
| BLACK | MONTGOMERY | Y | |

Exhibit 22 Page 3

3

# Form 1

| registrant_id | registrant_status | registrant_name | residence_address |
|---|---|---|---|
| 673017332 | INACTIVE | ADAMS, KENYADA SHANAE | 1535 ROBERT C HATCH DR, |

| date_of_birth | date_of_registration | precinct_part | political_party | gender |
|---|---|---|---|---|
| 1/10/1989 | 9/28/2007 | 0403.03 | PARTY NOT DESIGNATED | FEMALE |

| race | jurisdiction | aug28 | oct09 |
|---|---|---|---|
| BLACK | MONTGOMERY | | |

Exhibit 22 Page 4    4

**Registered to vote after July 1, 2007 and before August 28, 2007 and with a birthdate after August 1, 1986**

| registrant_name | residence_address | date_of_birth | date_of_registra | Aug 28 | Oct 09 |
|---|---|---|---|---|---|
| **HS Class of 2005** | | | | | |
| DAWSON, DARRON WADE, JR | 915 S JACKSON ST, MONTGOMERY, AL 36104-5732 | 09/25/1986 | 08/17/2007 | | |
| JONES, LELAND L | 2205 E 3RD ST, MONTGOMERY, AL 36106-1636 | 10/07/1986 | 08/16/2007 | | |
| DAVIS, RONALD J | 915 S JACKSON ST, MONTGOMERY, AL 36104-5732 | 10/19/1986 | 08/17/2007 | Y | |
| HARDEN, CODY BILL | 915 S JACKSON ST, MONTGOMERY, AL 36104-5732 | 11/04/1986 | 08/17/2007 | | |
| DAWSON, CLAY SETH | 915 S JACKSON ST, MONTGOMERY, AL 36104-5732 | 04/17/1987 | 08/17/2007 | | |
| TRAYLOR, RAHMOD EDWARD | 915 S JACKSON ST, MONTGOMERY, AL 36104-5732 | 05/22/1987 | 08/17/2007 | | |
| RAGGINS, JOEL L | 915 S JACKSON ST, MONTGOMERY, AL 36104-5732 | 07/19/1987 | 08/17/2007 | | |
| **HS Class of 2006** | | | | | |
| MOORE, ERIC DESEAN | 915 S JACKSON ST, MONTGOMERY, AL 36104-5732 | 09/28/1987 | 08/17/2007 | | |
| JOHNSON, RODNEY DWAYNE | 713 GENETTA CT, MONTGOMERY, AL 36104-5701 | 12/01/1987 | 08/07/2007 | Y | |
| WRIGHT, JUSTIN L | 915 S JACKSON ST, MONTGOMERY, AL 36104-5732 | 12/20/1987 | 08/17/2007 | | |
| HANDY, ADRIAN D | 915 S JACKSON ST, MONTGOMERY, AL 36104-5732 | 03/30/1988 | 08/17/2007 | | |
| PREER, CHRISTOPHER L | 915 S JACKSON ST, MONTGOMERY, AL 36104-5732 | 04/14/1988 | 08/17/2007 | | |
| LACY, SOLOMON | 915 S JACKSON ST, MONTGOMERY, AL 36104-3752 | 04/22/1988 | 08/17/2007 | | |
| STEVENS, MICHAEL DAVID | 915 S JACKSON ST, MONTGOMERY, AL 36104-5732 | 06/06/1988 | 08/17/2007 | Y | |
| **HS Class of 2007** | | | | | |
| MATHIS-WEBB, DARIUS LEONAR | 915 S JACKSON ST, MONTGOMERY, AL 36104-5732 | 08/10/1988 | 08/17/2007 | | |
| ANDREWS, JOHN WAYNE, JR | 915 S JACKSON ST, MONTGOMERY, AL 36104-5732 | 09/05/1988 | 08/17/2007 | | |
| WALDON, MICHAEL L | 915 S JACKSON ST, MONTGOMERY, AL 36104-5732 | 10/16/1988 | 08/17/2007 | | |
| WILSON, DAMION M | 915 S JACKSON ST, MONTGOMERY, AL 36104-5732 | 01/05/1989 | 08/17/2007 | Y | |
| DOMINQUEZ, DEVIN P | 915 S JACKSON ST, MONTGOMERY, AL 36104-5732 | 02/09/1989 | 08/17/2007 | Y | |
| OVERTON, DARYLL L | 915 S JACKSON ST, MONTGOMERY, AL 36104-5732 | 03/05/1989 | 08/17/2007 | Y | |
| ROBINSON, RICO ANTONIO, JR | 915 S JACKSON ST, MONTGOMERY, AL 36104-5732 | 04/28/1989 | 08/17/2007 | | |
| JACKSON, QUARTIZE O | 915 S JACKSON ST, MONTGOMERY, AL 36104-5732 | 05/18/1989 | 08/17/2007 | | |
| WAITS, AASHA BIANCA | 2441 E 5TH ST, MONTGOMERY, AL 36106-1706 | 07/28/1989 | 08/07/2007 | | |

Exhibit 22 Page 5